UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY ZIMMERMAN, et al.,
*on behalf of themselves and all others similarly situated*,

    Plaintiffs,

v.

THE 3M COMPANY, et al.,

    Defendants.
_____/

Case No. 1:17-cv-1062

Hon. Hala Y. Jarbou

## **OPINION**

This is a putative class action arising from alleged exposure to a toxic substance. (Second Am. Compl., ECF No. 197.) Plaintiffs assert claims for negligence (Count I), private nuisance (Count II), and public nuisance (Count III) against Defendant Wolverine World Wide, Inc. Plaintiffs also sue the 3M Company for negligence. Wolverine has moved to dismiss the complaint (ECF No. 209), as has 3M (ECF No. 211). In the alternative, both motions seek to strike particular requests for relief that Defendants claim are unavailable as a matter of law. Count I will be dismissed to the extent the negligence claim is based on alleged personal injury. The motions will be denied in all other respects.

### **I. Jurisdiction**

Plaintiffs claim that the Court has subject matter jurisdiction over this case through portions of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) and (d)(6). Section 1332(d)(2) confers original jurisdiction over class actions where the amount in controversy exceeds $5 million and "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id.* § 1332(d)(2)(A).

"In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6). Aggregating the claims of individual class members, Plaintiffs allege that the amount in controversy exceeds $5 million. (Second Am. Compl. ¶ 32.) Thus, the $5 million threshold set by section 1332(d)(2) is met.

The diversity of citizenship requirement in section 1332(d)(2)(A) is also satisfied. Plaintiffs are all individuals who are citizens of Michigan. (Second Am. Compl. ¶¶ 19-29.) Defendant Wolverine is a citizen of Delaware, where it is incorporated, and Michigan, where it maintains its principal place of business. (*Id.* ¶ 30; 28 U.S.C. § 1332(c)(1).) Defendant 3M is also incorporated in Delaware and has its principal place of business in Minnesota. (*Id.* ¶ 31.) Plaintiffs are citizens of Michigan, while 3M is not; section 1332(d)(2)(A) is satisfied. The Court has subject matter jurisdiction over this case.[1]

## II. Background

The factual background of this case comes from the allegations in Plaintiffs' Second Amended Complaint, which the Court assumes are true in considering Defendants' present motions. At issue in this case are a line of 3M-created products called Scotchgard, which contain chemical compounds broadly known as per- and poly-fluoroalkyl substances (PFAS). (Second Am. Compl. ¶ 4.) Certain forms of PFAS contain perfluorooctanic acid (PFOA) and perfluorooctane sulfonate (PFOS). (*Id.* ¶ 2.) Studies have linked PFOA and PFOS exposure to a variety of health issues, including birth defects, liver damage, certain cancers, immunosuppression, gastrointestinal problems, and thyroid maladies. (*Id.* ¶ 3.)

---

[1] Wolverine previously sought to dismiss the case for lack of subject matter jurisdiction by relying on the "local controversy" exception to the Class Action Fairness Act found in 28 U.S.C. § 1332(d)(4). (ECF No. 51.) The Court denied Wolverine's motion. (3/29/2019, Mem. Op. & Order, ECF No. 124.)

In the 1940s and 1950s, 3M began manufacturing PFAS and incorporating the chemical into different products. (*Id.* ¶ 4.) One such product was called Scotchgard. Scotchgard can make leather water-resistant. Wolverine, a shoe manufacturer in Grand Rapids, Michigan, was looking for ways to produce leather shoes that were water resistant and weatherproof. To that end, chemists at 3M and Wolverine "collaborated" for several years and developed a method for treating leather with Scotchgard to make water-and-weather-resistant shoes. (*Id.* ¶¶ 36-37.) In 1958, Wolverine began treating leather with Scotchgard at its tannery in Rockford, Michigan. (*Id.* ¶ 37.)

Wolverine employees at the Rockford tannery "washed out and discharged remaining PFAS solution on a daily basis, resulting in discharge into the environment, soil, and nearby waterways." (*Id.* ¶ 47.) Employees also dumped PFAS-containing waste at various landfills, as well as at a dumpsite owned by Wolverine between 1964 and 1978. (*Id.* ¶¶ 48-49.) In 2017, the United States Belmont Armory, "located less than a mile from Wolverine's . . . dump site," discovered that drinking water at the armory contained PFAS at a level of 96.9 parts-per-trillion (ppt). (*Id.* ¶ 52.) The Michigan Department of Environmental Quality (MDEQ)[2] commenced an investigation. (*Id.* ¶ 56.) Extraordinarily high levels of PFOA and PFOS—PFAS components known to be toxic—were found in wells, soil, ground water, and rivers in the areas of Kent County, Michigan, that the MDEQ investigated. Plaintiffs, all residents of Kent County, allege that their drinking water and property have been contaminated, too.

Plaintiffs go on to allege what Defendants knew, and when. Plaintiffs allege that, as early as the 1950s, 3M discovered that PFAS chemicals "posed substantial risks to human health[.]" (*Id.* ¶ 10.) By the 1960s, 3M allegedly knew "that PFAS from industrial disposal sites would likely

---

[2] The MDEQ has recently been renamed the Michigan Department of Environment, Great Lakes, and Energy. All parties in the present action refer to the agency as MDEQ, so the Court will follow suit.

3

pollute domestic wells." (*Id.* ¶ 104.) And by the 1970s, 3M allegedly learned that PFAS "bioaccumulates in the human body." (*Id.*) Plaintiffs further allege that 3M attempted to conceal all this information. (*Id.* ¶¶ 11, 111-167.) The company was eventually fined by the Environmental Protection Agency and announced it would phase out PFAS production by the end of 2002. (*Id.* ¶¶ 163, 168.)

Plaintiffs allege that Wolverine learned of PFAS risks by 1998 at the latest. (*Id.* ¶ 12.) They claim that, in 1998, 3M "informed Wolverine . . . that PFOS was a component of Scotchgard, that PFOS has the potential to accumulate in the human body with repeated exposure, and that PFOS can resist degradation in the environment." (*Id.* ¶ 169.) Nevertheless, Wolverine continued "to purchase the PFAS-containing version of Scotchgard through the end of 3M's phase-out process" in 2002. (*Id.* ¶ 173.) "Wolverine continued to dispose of PFAS, failed to remediate any of its PFAS dump sites, failed to test and monitor for the presence of PFAS in the ground water, surface water, and well water in the community, and failed to warn the residents of Kent County" of the possibility of PFAS contamination and its accompanying health risks. (*Id.* ¶ 175.)

### III. Standards

**A. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss for failure to state a claim, the court assumes that all well-pleaded allegations in the complaint are true. *Ass'n of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

### B. Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous matter." Fed. R. Civ. P. 12(f). However, a motion to strike "is neither an authorized nor proper way to procure the dismissal of all or part of a complaint." *Olagues v. Timken*, 908 F.3d 200, 204 (6th Cir. 2018).

## IV. Analysis

Defendants' respective motions seek the dismissal of all underlying claims against them or, in the alternative to trim the forms of relief requested in Plaintiffs' Second Amended Complaint. The Court will first address Defendants' arguments in favor of dismissing claims whole cloth before turning to their attacks on specific remedies.

### A. Challenges to Claims

#### 1. Negligence

##### (a) Against 3M

Plaintiffs' negligence claim is premised on both personal injury (exposure to allegedly toxic chemicals) and damage to property (contaminated by those toxic chemicals). Their claim is governed by Michigan law. A properly alleged negligence claim establishes four elements. "[P]laintiffs must prove (1) that defendant owed them a duty of care, (2) that defendant breached

5

that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688 (Mich. 2005). 3M argues that Plaintiffs have failed to satisfy the duty prong; no duty exists, 3M says, because it has no relationship with Plaintiffs. 3M's argument relies heavily on *In re Certified Question from Fourteenth District Court of Appeals of Texas*, 740 N.W.2d 206 (Mich. 2007). Some explanation of the case is warranted.

Cleveland "John" Roland lived in Texas, but occasionally traveled to Dearborn, Michigan to "reline the interiors of blast furnaces" at a factory owned by the Ford Motor Company. *Id.* at 210. Roland was not a Ford employee, but rather "worked for independent contractors" that Ford occasionally hired to work on the blast furnaces. *Id.* When he would return to Texas, his daughter-in-law, Carolyn Miller, would wash Roland's work clothes. *Id.* By washing Roland's clothes, Miller was exposed to asbestos from Ford's plant. She contracted mesothelioma, which is caused by asbestos exposure, and died. *Id.*

The plaintiffs in *In re Certified Question* sued Ford in Texas court, seeking to hold the company liable for Miller's death. Needing to interpret Michigan law, an appellate court in Texas certified the following question to Michigan's Supreme Court:

> Whether, under Michigan law, Ford, as owner of the property on which asbestos-containing products were located, owed to Carolyn Miller, who was never on or near that property, a legal duty . . . to protect her from exposure to any asbestos fibers carried home on the clothing of a member of Carolyn Miller's household who was working on that property as the employee of an independent contractor.

*Id.* at 209.

The Michigan Supreme Court held that Ford owed no duty to Miller. *Id.* at 209-10. *In re Certified Question* reiterated that "the ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty." *Id.* at 211. "The inquiry involves considering, among any other relevant considerations,

'the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented.'" *Id.* (quoting *Dyer v. Trachtman*, 679 N.W.2d 311, 314 (Mich. 2004) (internal quotation marks omitted)). *In re Certified Question* describes the relationship between the parties as "the most important factor." *Id.* The opinion goes on to say that a "duty arises out of the existence of a relationship between the parties of such a character that social policy justifies its imposition." *Id.* (quoting *Dyer*, 679 N.W.2d at 314 (internal quotation marks omitted)). Despite being one factor among many, the relationship between the parties is also a threshold issue. "Where there is no relationship between the parties, no duty can be imposed." *Id.* at 213. Other factors are to be weighed only after a relationship has been established. The foreseeability of harm is another threshold factor. *Id.*

*In re Certified Question* thus lays out a two-step analysis for imposing a duty on a defendant in a negligence action. First, courts must ask whether the defendant had any relationship with the plaintiff *and* whether the harm alleged was foreseeable to the defendant. If the answer to *both* those questions is yes, then courts must consider all relevant factors—including the depth of the relationship and foreseeability of the harm—to determine whether the social benefits of imposing a duty outweighs the social costs of doing so.

Unfortunately, *In re Certified Question* gives little guidance on how to determine whether a relationship exists. For direction, Plaintiffs point to a recent Kent County Circuit Court decision in which the court denied a motion for summary disposition by 3M on the very grounds asserted here. (*McNaughton v. Wolverine World Wide, Inc.*, Case No. 18-00086-CZ (Kent Cnty. Cir. Ct. Jan. 10, 2020), ECF No. 226-3.) In *McNaughton*, the court found that 3M owed a duty to plaintiffs who claimed that PFAS seeped into their property through groundwater contaminated by Wolverine's tannery operation. (*Id.*, PageID.7178.) After acknowledging the relationship rule

7

from *In re Certified Question*, the court stated that "a duty exists between manufacturers and foreseeable plaintiffs" and that "[s]uch duty is not predicated on direct manufacturer/plaintiff contact." (*Id.*)

Although the reasoning in the *McNaughton* opinion is brief, that opinion is the best evidence to date of how a Michigan state court would rule on the very issue the Court faces here. Considering "the ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty," *In re Certified Question*, 740 N.W.2d at 211, the Court is inclined to follow the cost-benefit determination made by the court in *McNaughton*. Because Plaintiffs were foreseeable victims of PFAS contamination, a relationship existed between Plaintiffs and 3M sufficient to impose a duty. 3M's motion to dismiss the negligence claim against it will be denied.

### (b) Against Wolverine

Wolverine also argues that it owed no duty to Plaintiffs because it had no relationship with them. If there is a sufficient relationship between 3M and Plaintiffs to impose a duty on 3M, then the same is undoubtedly true for Wolverine. Moreover, any company "engaged in the performance of an undertaking has an obligation to use due care, or to so govern [its] actions as not to unreasonably endanger the person or property of others." *Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 197 (Mich. 2012) (internal quotation marks omitted). This principle extends to a company disposing hazardous materials that could damage the nearby property of others. *See Gabrielle/HMT Ltd. Dividend Hous. P'ship v. Hamilton Ave. Prop. Holding, LLC*, No. 346058, 2020 WL 4724553, at *4 (Mich. Ct. App. Aug. 13, 2020) ("It was reasonably foreseeable that the recycling of materials that are considered hazardous or flammable presented a risk of harm to neighboring property owners[.]").

Next, Wolverine contends that Plaintiffs have provided insufficient allegations to show that their properties have been damaged by PFAS. The company demands additional facts, such as the addresses of the properties at issue, whether Plaintiffs own or lease the properties in question, whether any PFAS has been detected in their drinking water, and if so, how much. The named Plaintiffs in the complaint all allege that they reside in Kent County and were "exposed to PFAS . . . through drinking water supplied by [their] residential well[s] and [their] property interests have been impaired by PFAS contamination." (Second Am. Compl. ¶¶ 19-29.) In the Court's view, these allegations satisfy the notice pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure. Combined with the voluminous allegations in the remainder of the complaint, Plaintiffs have sufficiently alleged damage to their properties.

Personal injury is another story, though. Wolverine argues that Plaintiffs have not alleged any present physical injury capable of sustaining a negligence claim. The company is correct. Under Michigan law, plaintiffs exposed to a toxic substance may only claim negligence if they have suffered an actual physical injury as a result; "fear of an injury in the future" is not enough. *Henry*, 701 N.W.2d at 688-89. Plaintiffs' "heightened risk . . . of developing serious illnesses caused by PFAS exposure" is not a cognizable injury under Michigan law. (Pls.' Omnibus Opp'n Br., ECF No. 226, PageID.7075.) Their lawsuit may not proceed on the basis of personal injury.

### 2. Private nuisance claim against Wolverine

As with the negligence claim, Wolverine argues that Plaintiffs have failed to state a claim because the complaint does not assert "*where* they live . . . what the levels of PFAS are in their drinking water . . . whether those levels exceed any regulatory standards, or other such basic information." (Wolverine's Br. in Supp. of Mot. to Dismiss, ECF No. 209, PageID.6765 (emphasis in original).) For the reasons explained in the previous section, the Court finds that

9

Plaintiffs have provided sufficient allegations to survive a motion to dismiss for failure to state a claim.

Wolverine further contends that Plaintiffs cannot bring a claim for private nuisance as they are really complaining about a *public* nuisance. But "[t]he pollution of ground water may constitute a public *or* private nuisance." *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 (Mich. 1992) (emphasis added). It is true that Plaintiffs allege PFAS contamination throughout Kent County. However, they also claim that PFAS has contaminated drinking water in their residential wells on their properties. A plaintiff may bring a private nuisance action over an allegedly poisoned well. The private nuisance claim will not be dismissed.

### 3. Public nuisance claim against Wolverine

Finally, Wolverine argues that Plaintiffs' public nuisance claim is barred by *res judicata*. However, Wolverine does not really advance this argument to challenge the validity of Plaintiffs' public nuisance claim so much as the company seeks to foreclose injunctive relief requested under the public nuisance claim. (Wolverine's Reply Br., ECF No. 228, PageID.7195 ("Wolverine . . . argue[s] only that Plaintiffs' *injunctive* relief claims are barred by res judicata—not their damages claims.").) The Court will thus address Wolverine's *res judicata* argument in Part IV.B below.

### B. Challenges to Requested Relief

Defendants believe that Plaintiffs' requests for injunctive relief and medical monitoring are unavailable as a matter of law. Therefore, they ask the Court to either "dismiss" those requests for relief through Rule 12(b)(6) or instead "strike" them under Rule 12(f) of the Federal Rules of Civil Procedure. Frustrating as it may be, the Court is of the opinion that pre-answer motions do not generally permit parties to attack particular request for relief. The text of the rules invoked simply do not lend themselves to the judicial action sought. The Court will analyze this issue below.

First, though, the Court will address two arguments, raised by Wolverine to attack remedies, that have broader implications. Wolverine argues that all of Plaintiffs' requests for injunctive relief should be dismissed under the doctrine of primary jurisdiction. Next, as mentioned earlier, Wolverine contends that any injunctive relief that could flow from Plaintiffs' public nuisance claim is barred by *res judicata*.

### 1. Primary Jurisdiction

The doctrine of primary jurisdiction "applies to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). There is both a *federal* primary jurisdiction doctrine and a *Michigan* primary jurisdiction doctrine. The parties do not say which doctrine the Court must apply. Nevertheless, the question is irrelevant because both the federal and Michigan doctrines are substantially the same.

Crucially, when the doctrine applies, courts must either stay proceedings or dismiss the case without prejudice to give the parties a chance to refer the issue in question to the appropriate government agency. *Id.* at 268-69; *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 652 (Mich. 1997) (doctrine of primary jurisdiction "does not preclude civil litigation; it merely suspends court action"); *Carson City Hosp. v. Quick-Sav Food Stores, Ltd.*, No. 325187, 2016 WL 1719047, at *7 (Mich. Ct. App. Apr. 28, 2016) (citing *Att'y Gen. v. Blue Cross Blue Shield of Mich.*, 810 N.W.2d 603, 615-16 (Mich. Ct. App. 2010)) ("Under the doctrine of primary jurisdiction, referral to an administrative agency is proper[.]"). Thus, if the Court found that the doctrine of primary jurisdiction applied in this case, it could not simply dismiss particular requests for relief; the Court would have to suspend proceedings or dismiss the case entirely.

Wolverine argues that primary jurisdiction applies here because "MDEQ clearly has the expertise and authority to address PFAS contamination[.]" (Wolverine's Br., PageID.6749.)

Hence, the Court would have to refer this matter to MDEQ to answer various questions about PFAS contamination. But in a previous hearing in this very case, MDEQ functionally declined to get involved. (*See* 4/11/2018 Hr'g Tr., ECF No. 47, PageID.181.) At the hearing, the Court asked MDEQ's counsel whether she believed this case should be consolidated with the agency's lawsuit against Wolverine. MDEQ replied that its lawsuit "should not disturb, interfere with or slow down what happens with the class action plaintiffs at all." (*Id.*) MDEQ was seeking to address "the presence of contaminants at certain levels, and posing threats to people generally"; its lawsuit did "not rely in any way on any individual person's injuries or damages." (*Id.*, PageID.182.)

From these statements, the Court concludes that MDEQ did not find any questions in Plaintiffs' lawsuit requiring aid of the agency's expertise. Therefore, the Court sees little utility in referring any issue in this action to the MDEQ under the doctrine of primary jurisdiction. Even if primary jurisdiction could be invoked to dismiss requests for particular remedies, which the Court doubts, the Court finds that the doctrine is not applicable in this case.

### 2. *Parens Patriae* and *Res Judicata*

*Res judicata* bars relitigation of claims and issues. In its reply brief, Wolverine clarified that it is not arguing Plaintiffs are barred from bringing a public nuisance claim, but rather that Plaintiffs' injunctive relief "claims" are barred. (Wolverine's Reply Br., PageID.7195.) However, if Wolverine is not arguing against the validity of Plaintiffs' public nuisance claim, then the Court believes it is premature to decide what remedies are available should Plaintiffs succeed on the merits.

In support of its position, Wolverine cites *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464 (10th Cir. 1993) to support its contention that certain actions by private plaintiffs are

barred by *res judicata* following a prior lawsuit made by a State as *parens patriae*.[3] In *Satsky*, though, the Tenth Circuit simply held that "claims based on injuries to natural resources" belonging to the public were barred by *res judicata*. The Court does not read *Satsky* to say that, at the pleadings stage, particular forms of relief may be denied to a plaintiff claiming injury to a private interest.

### 3. Eliminating requests for relief

A final vexing question remains: at the pre-answer stage, can a defendant attack particular requests for relief, and if so, how? Defendants argue that Rule 12(b)(6) is the proper mechanism. If 12(b)(6) cannot be used, then they argue that Rule 12(f) can. Plaintiffs argue neither rule is appropriate.

Though not squarely on point, the Sixth Circuit has held that Rule 12(f) "is neither an authorized nor proper way to procure the dismissal of all or part of a complaint," which strongly suggests that Rule 12(f) may not be used to strike legally improper requests for relief. *Olagues*, 908 F.3d at 204. However, the Sixth Circuit "has not expressly addressed" whether Rule 12(b)(6) or 12(f) may be used to attack specific requests for relief. *Yannotti v. City of Ann Arbor*, No. 19-11189, 2019 WL 5540982, at *4 (E.D. Mich. Oct. 28, 2019).

To answer this question, the court in *Yannotti* looked to the Ninth Circuit's opinion in *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010). *Whittlestone* held that Rule 12(f) could not be used to strike requests for lost profits and consequential damages from a complaint where those forms of damages were unavailable as a matter of law. *Id.* at 974. Performing textual analysis, the Ninth Circuit found that a request for relief could not be

---

[3] Literally translated, *parens patriae* means "parent of his or her country." *Parens Patriae*, *Black's Law Dictionary* (11th ed. 2019).

13

characterized as an "insufficient defense" or as "redundant, immaterial, impertinent, or scandalous[.]" Fed. R. Civ. P. 12(f). Using Rule 12(f) to strike requested relief was also inappropriate as it would create "redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion . . . already serves such a purpose." *Whittlestone*, 618 F.3d at 974 (citations and internal quotation marks omitted).

But the Court finds even less textual support for such an action under Rule 12(b)(6), which concerns the "failure to state a *claim* upon which *relief can be granted*." Fed. R. Civ. P. 12(b)(6) (emphasis added). The Seventh Circuit has held that a complaint cannot be dismissed simply because the plaintiff seeks relief that is not recoverable as a matter of law. *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002). Dismissal would be warranted only where "the plaintiff wants the improper relief sought in the complaint or nothing" at all. *Id.*

Here, Plaintiffs have stated valid claims upon which relief can be granted. And though particular requests for relief, such as medical monitoring, are almost certainly improper under Michigan law, Plaintiffs also seek legally permissible relief. Simply put, the Court does not see a way for Defendants to trim remedies from Plaintiffs' complaint at the pre-answer stage.

## V. Conclusion

For the foregoing reasons, the motions will be granted in part and denied in part. Count I will be dismissed to the extent the negligence claim is based on personal injury, but survives to the extent the negligence claim alleges damage to property. The motions will be denied in all other respects. An order will enter consistent with this Opinion.

Dated: June 8, 2021 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE

14