## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| BEVERLY ZIMMERMAN, et al., on behalf of themselves and all others similarly situated, | Case No. 1:17-cv-1062 |
| Plaintiffs, | Hon. Hala Y. Jarbou |
| v. | |
| THE 3M COMPANY f/k/a Minnesota Mining and Manufacturing Co., et al., | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), and Terry VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Rosalyn Ingham, Paul Groenendal, Nancy James, individually and as Trustee of the James Nancy I Trust, and Theodore James (collectively "Plaintiffs"), by and through their undesigned attorneys, respectfully move the Court for an Order:

1. Granting preliminary approval of the proposed class action Settlement pursuant to Fed. R. Civ. P. 23(e);

2. Preliminarily certifying, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the proposed Settlement Class for the purposes of providing notice to the Members of the proposed Settlement Class, and approving the form and

content and directing the distribution of the proposed Class Notice, attached to the
Settlement Agreement as Exhibits D and E;

3.   Approving the proposed Methodology and Plan of Allocation;

4.   Authorizing and directing Plaintiffs to retain Angeion Group, LLC as the General
Administrator;

5.   Appointing Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael
Johns, Michelle VanWuffen (individually and as trustee of the Terry Alan VanWuffen
and Michelle Lisa VanWuffen Trust), Terry VanWuffen (individually and as trustee of
the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Rosalyn Ingham,
Paul Groenendal, Nancy James, individually and as Trustee of the James Nancy I Trust,
and Theodore James as Settlement Class Representatives and appointing the following
as Settlement Subclass Representatives:

   a.   Appoint Therese Cooper, Michelle VanWuffen (individually and as trustee of the
Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust) and Terry
VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle
Lisa VanWuffen Trust), Malia and Dennis Gregory, Michael and Megan Johns as
Settlement Subclass 1 Representatives.

   b.   Appoint Rosalyn Ingham as Settlement Subclass 2 Representative; and;

   c.   Appoint Paul Groenendal, Nancy James, individually and as Trustee of the James
Nancy I Trust, and Theodore James as Settlement Subclass 3 Representatives;

7.   Appoint current Interim Lead Counsel Esther Berezofsky of Motley Rice LLC and Sharon
Almonrode of The Miller Law Firm P.C. as Co-Lead Class Counsel; and

2

8. Scheduling a date for the Final Approval Hearing not earlier than 195 days after Preliminary Approval is granted.

In support of this Motion, Plaintiffs have contemporaneously filed a Brief in Support, with Exhibits thereto.

For the reasons set forth in the Brief in Support of this Motion and the accompanying exhibits to that Brief, Plaintiffs respectfully request that the Court grant their Unopposed Motion.


Dated: September 15, 2022

Respectfully submitted,

*/s/ Sharon S. Almonrode*
Sharon S. Almonrode (P33938)
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
ssa@millerlawpc.com
epm@millerlawpc.com
eeh@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com


*Interim Co-Lead Counsel*

Esther Berezofsky (P00148)
Sarah Hansel (P00152)
**MOTLEY RICE, LLC**
210 Lake Drive East, Ste. 101
Cherry Hill, NJ 08002
Telephone: (856) 667-0500
eberezofsky@motleyrice.com
shansel@motleyrice.com


Anne McGinness Kearse
T. David Hoyle
Fidelma L. Fitzpatrick
**MOTLEY RICE, LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9140

*Interim Co-Lead Counsel*

Dorothy P. Antullis
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
dantullis@rgrdlaw.com
mdearman@rgrdlaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
**WEITZ & LUXENBERG, P.C.**
719 Griswold, Suite 620
Detroit, MI 48226
Telephone: 313/800-4170
pnovak@weitzlux.com
dgjonaj@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5642
rgreenwald@weitzlux.com

Kara A. Elgersma
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Dr., Ste. 5450
Chicago, IL 60606
Telephone: (312) 346-2222

Robert Palmer (P31704)
Megan A. Bonanni (P52079)
**PITT, MCGEHEE, PALMER &
RIVERS, PC**
117 West 4th Street, Ste. 200
Royal Oak, MI 48067
Telephone: (248) 398-9800

Jason J. Thompson (P47184)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
jthompson@sommerspc.com

Alistair J. M. Findeis
**NAPOLI, SHKOLNIK, LLC**
360 Lexington Ave., 10th Fl.
New York, NY 10019
Telephone: (212) 397-1000

afindeis@NapoliLaw.com

*Interim Plaintiffs' Steering Committee*

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| BEVERLY ZIMMERMAN, et al., on behalf of themselves and all others similarly situated, | Case No. 1:17-cv-1062 |
| Plaintiffs, | Hon. Hala Y. Jarbou |
| v. | |
| THE 3M COMPANY f/k/a Minnesota Mining and Manufacturing Co., et al., | |
| Defendants. | |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.  Whether Plaintiffs' settlement with Defendants, embodied in the Settlement Agreement which involves payment of $54,000,000 in cash for the benefit of the Settlement Class (attached as Exhibit 1) and the product of extensive good-faith, arm's length negotiations facilitated by a well-respected and experienced mediator, is fair, reasonable, and adequate and should be preliminarily approved under Federal Rule of Civil Procedure 23(e)?

    Plaintiffs' Answer:          Yes
    Suggested Answer:          Yes

2.  Whether the Court should provisionally certify the Settlement Class and Subclasses as they are defined herein under Federal Rule Civil Procedure 23(a) and 23(b)(3) for settlement purposes?

    Plaintiffs' Answer:          Yes
    Suggested Answer:          Yes

3.  Whether the Court should appoint current Interim Co-Lead Counsel Esther Berezofsky of Motley Rice LLC and Sharon Almonrode of the Miller Law Firm, P.C. as Co-Lead Class Counsel where they fairly and adequately represent the interests of the Settlement Class and Subclasses?

    Plaintiffs' Answer:          Yes
    Suggested Answer:          Yes

4.  Whether the Court should grant preliminary approval of the Parties' proposed class action settlement agreement where federal policy favors settlement of class actions; the Parties negotiated the proposed settlement at arm's-length and in good faith; and the settlement reflects a fair, adequate, and reasonable resolution to the dispute?

    Plaintiffs' Answer:          Yes
    Suggested Answer:          Yes

5.  Whether the Court should approve the Parties' proposed Notices to Class Members where they fairly and fully apprise the prospective Members of the Class of the terms proposed in the settlement, the reasons for the settlement, and the legal effect of the settlement, and provide Class Members with an opportunity to lodge objections and/or opt out?

    Plaintiffs' Answer:          Yes
    Suggested Answer:          Yes

6.  Whether the Court should set a date for a fairness hearing at an appropriate time to consider any objections to the proposed settlement?

     Plaintiffs' Answer:        Yes

     Suggested Answer:     Yes

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614 (E.D. Mich. 2020)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 516-17 (E.D. Mich. 2003)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)

*Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988)

*Widdis v. Marathon Petroleum Co.*, 2014 WL 11444248 (E.D. Mich. Nov. 18, 2014)

# TABLE OF CONTENTS

CONCISE STATEMENT OF THE ISSUES PRESENTED ........................................... ii

TABLE OF CONTENTS ............................................................................................ v

TABLE OF AUTHORITIES ..................................................................................... vii

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND .............................................................................................. 2
        A.      Procedural History ............................................................................... 2
        B.      Mediation and Settlement Negotiations ............................................... 4

III.    THE SETTLEMENT AGREEMENT AND TERMS ........................................ 5
        A.      The Proposed Settlement Class ............................................................. 6
        B.      The Relief and Settlement Consideration ............................................. 8
        C.      Allocation of Settlement Fund ............................................................. 9
        D.      Settlement Notice and Right to Opt Out ............................................ 10
                1.      Settlement Notice .................................................................... 10
                2.      Opt-Outs ................................................................................. 11
        E.      Process for Claims Submissions ........................................................ 11
        F.      Class Counsel Fees, Expenses, and Plaintiffs' Service Awards .......... 14

IV.     THE SETTLEMENT CLASS AND SUBCLASSES SHOULD BE
        PRELIMINARILY CERTIFIED ................................................................... 14
        A.      The Proposed Settlement Class and Subclasses Satisfy Rule 23(a) .... 16
                1.      The Class and Subclasses Meet the Numerosity Requirement ..... 16
                2.      The Litigation Presents Factual and Legal Questions Common to
                        the Class .................................................................................. 17
                3.      Settlement Class Representatives' Claims Are Typical of the
                        Claims of the Settlement Class ................................................ 19
                4.      Settlement Class Representatives Will Fairly and Adequately
                        Protect the Interests of the Settlement Class ............................ 20
                5.      Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for
                        Settlement Purposes ................................................................ 22

V.      THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR
        PRELIMINARY APPROVAL ....................................................................... 26
        A.      The Court Should Grant Preliminary Approval of the Proposed Class
                Settlement, and of the Class and Subclasses ...................................... 26
        B.      Settlement Satisfies Rule 23(e)(2)'s "Fair, Reasonable and Adequate"
                Factors ................................................................................................ 28
                1.      The Relief Provided to the Class Is More than Adequate ......... 28
                2.      The Proposed Method of Distributing Relief to the Class, Including
                        the Method of Processing Class Member Claims, Is Effective and
                        Based on Objective Factors ...................................................... 29
                3.      Proposed Award of Attorneys' Fees, Including Timing of Payment ........ 29

|   | 4. | The Settlement Treats Class Members Equitably in Relation to Each Other | 30 |
|   | 5. | Settlement Is Consistent with the Public Interest | 32 |
| C. |   | Sixth Circuit's Factors Further Support Settlement Approval | 32 |
|   | 1. | Complexity, Expense and Likely Duration of the Litigation Favor Approval | 32 |
|   | 2. | The Extensive Discovery Engaged in by the Parties Favors Approval | 34 |
|   | 3. | The Settlement Agreement Was Achieved as a Result of Arm's-Length and Good Faith Negotiations Without Fraud or Collusion | 34 |
|   | 4. | The Likelihood of Success on the Merits Favors Approval | 35 |
|   | 5. | Experienced Class Counsel's Opinions Favor Approval | 36 |
|   | 6. | The Settlement Is Fair to Absent Class Members | 38 |

| VI. | THE FORM AND MANNER OF NOTICE ARE PROPER | 40 |
| A. | The Proposed Notice and Dissemination Plan Fully Describes the Class Settlement and Is Designed to Reach as Many Potential Participants as Possible | 41 |

| VII. | THE COURT SHOULD APPOINT CLASS COUNSEL | 42 |

| VIII. | CONCLUSION | 43 |

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Adkins v. Thomas Solvent Co.*,
    487 N.W.2d 715 (Mich. 1992) ............................................................................... 19

*Afro Am. Patrolmen's League v. Duck*,
    503 F.2d 294 (6th Cir. 1974) ................................................................................ 16

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................... 15, 25

*Appoloni v. United States*,
    218 F.R.D. 556 (W.D. Mich. 2003) ...................................................................... 16

*Barry v. Corrigan*,
    79 F. Supp. 3d 712 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir.
    2016) ..................................................................................................................... 20

*Bautista v. Twin Lakes Farms, Inc*.,
    2007 WL 329162 (W.D. Mich. Jan. 31, 2007) ..................................................... 27

*Brotherton v. Cleveland*,
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................................. 29

*Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*,
    727 F.3d 633 (6th Cir. 2013) ................................................................................ 24

*Craton v. Birds Eye Foods, Inc.*,
    2013 WL 12421822 (W.D. Mich. Dec. 20, 2013) ................................................. 18

*Crawford v. TRW Auto U.S. LLC*,
    2007 WL 851627 (E.D. Mich. Mar. 21, 2007) ..................................................... 16

*Daoust v. Maru Rest., LLC*,
    2019 WL 1055231 (E.D. Mich. Feb. 2, 2019) ...................................................... 15

*Date v. Sony Elecs., Inc.*,
    2013 WL 3945981 (E.D. Mich. July 31, 2013) ............................................... 19, 38

*Dick v. Sprint Commc'ns Co.*,
    297 F.R.D. 283 (W.D. Ky. 2014).......................................................................... 37

*Fallick v. Nationwide Mut. Ins. Co*.,
    162 F.3d 410 (6th Cir. 1998) ................................................................................ 17

*Ford v. Fed.-Mogul Corp.*,
    2015 WL 110340 (E.D. Mich. Jan. 7, 2015).................................................... 33, 38

*Franks v. Kroger Co*.,
    649 F.2d 1216 (6th Cir. 1981) .............................................................................. 26

*Garner Props. & Mgmt., LLC v. City of Inkster*,
    2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) ................................................... 32

*Garner Props. & Mgmt., LLC v. City of Inkster*,
    333 F.R.D. 614 (E.D. Mich. 2020) ....................................................... 26, 33, 35, 37

*Granada Inv., Inc. v. DWG Corp*.,
    962 F.2d 1203 (6th Cir. 1992) ........................................................................ 26, 32

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .............................................. 19, 32

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) ......................................................................... 32
*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ......................................................... 35
*Henry v. Wolverine World Wide, Inc. et al.*,
    Case No. 19-cv-00379 (W.D. Mich.)............................................................... 2
*Hoving v. Lawyers Title Ins. Co.*,
    256 F.R.D. 555 (E.D. Mich. 2009) ............................................................... 22
*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................................. 20, 22
*In re Auto. Refinishing Paint Antitrust Litig.*,
    617 F. Supp. 2d 336 (E.D. Pa. 2007) ........................................................... 37
*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ......................................................... passim
*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ....................................................................... 21
*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ............................................. 37
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ............................................................... 38
*In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191 (E.D. Pa. 2014) ... 31
*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,
    910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790
    (5th Cir. 2014)...................................................................................... 25, 31
*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................. 32, 36, 38
*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016)......................................................... 32
*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
    1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ............................................. 39
*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ....................................................................... 22
*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155379 (E.D. Tenn. May 17, 2013)............................................. 37
*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................... 27, 34, 36
*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ....................................................................... 15
*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    2016 WL 5338012 (N.D. Ohio Sept. 23, 2016)............................................. 30
*Int'l Union v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) ................................. 15, 19, 33
*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ................................................................. passim
*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ............................................................... 33

*Johns v. Wolverine World Wide, Inc., et al.*,
    Case No. 18-cv-01302 (W.D. Mich.)..................................................................... 2
*Kis v. Covelli Enters., Inc.*,
    2020 WL 2812405 (N.D. Ohio May 29, 2020).................................................... 30
*Lozar v. Birds Eye Foods, Inc.*,
    678 F. Supp. 2d 589 (W.D. Mich. 2009) ........................................................... 19
*Mitcham v. Intrepid U.S.A., Inc.*,
    2019 WL 2269918 (W.D. Ky. May 28, 2019)..................................................... 22
*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950).......................................................................................... 40
*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) ..................................................................... 38
*Potter v. Blue Cross Blue Shield*,
    2011 WL 9378789 (E.D. Mich. July 14, 2018) ................................................. 42
*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ............................................................................ 20
*Rankin v. Rots*,
    2006 WL 1876538 (E.D. Mich. June 27, 2006)........................................... 37, 38
*Rodriquez by Rodriquez v. Berrybrook Farms, Inc.*,
    672 F. Supp. 1009 (W.D. Mich. 1987) .............................................................. 17
*Senter v. General Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ....................................................................... 16, 20
*Sheick v. Auto. Component Carrier, LLC*,
    2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ....................................... 20, 32, 38
*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ............................................................................ 17
*Sterling v. Velsicol Chemical Corp.*,
    855 F.2d 1188 (6th Cir. 1988) .......................................................................... 23
*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
    2019 WL 8272995 (D. Vt. Aug. 23, 2019)........................................................ 19
*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ....................................................................... 21, 35
*Widdis v. Marathon Petroleum Co.*,
    2014 WL 11444248 (E.D. Mich. Nov. 18, 2014) ............................... 17, 18, 19, 23
*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ................................................................. 26, 27, 38

**Other Authorities**

4 William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2020)............................ 26

7A Fed. Prac. & Pro. §1762 (3d ed. 2005) ......................................................................... 16

Fed. R. Civ. P. 23 Advisory Committee Note (2018 Amendments) ............................................ 28

Fed. R. Civ. P. 23(e)(2)(D) Advisory Committee Note (2018 Amendments)............................... 30

*Newberg on Class Actions* § 11.51 (3d ed. 1992) ................................................................. 34

*Newberg on Class Actions* § 13:44 (5th ed. 2020) ............................................................... 38

**Rules**

Fed. R. Civ. P. 23.............................................................................................................. 14

Fed. R. Civ. P. 23(a)......................................................................................................... 15

Fed. R. Civ. P. 23(a)(1)..................................................................................................... 16

Fed. R. Civ. P. 23(a)(3)................................................................................................ 19, 20

Fed. R. Civ. P. 23(b)......................................................................................................... 15

Fed. R. Civ. P. 23(b)(3)(D)................................................................................................ 25

Fed. R. Civ. P. 23(c)(2)(B)........................................................................................... 40, 41

Fed. R. Civ. P. 23(e).......................................................................................................... 26

Fed. R. Civ. P. 23(e)(1)..................................................................................................... 40

Fed. R. Civ. P. 23(e)(1)(A)................................................................................................ 26

Fed. R. Civ. P. 23(e)(1)(B)................................................................................................ 26

Fed. R. Civ. P. 23(e)(2)................................................................................................ 26, 27

Fed. R. Civ. P. 23(g).......................................................................................................... 43

## I.    INTRODUCTION

Following almost five years of litigation, and over a year of mediation efforts, the $54 million proposed settlement of this environmental class action for damages to properties allegedly contaminated by PFAS chemicals in the area known as the North Kent Study Area ("NKSA") in Kent County, Michigan, represents a substantial recovery for the Settlement Class and Subclasses described herein.

Plaintiffs Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), and Terry VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Rosalyn Ingham, Paul Groenendal, Nancy James (individually and as Trustee of the James Nancy I Trust), and Theodore James (collectively "Plaintiffs"),[1] on behalf of themselves and others similarly situated, brought this action against Defendants. After extensive discovery, depositions of fact and expert witnesses, property inspections, motion practice, expert analysis, and mediation sessions with an experienced mediator over the period of a year, the proposed settlement of $54,000,000 for residents in the NKSA provides significant monetary relief to the Settlement Class Members ("Class Members") for claimed damages to properties for diminution of value, nuisance resulting in the inconvenience and loss of use and quiet enjoyment of Settlement Class Members' properties, and other relief. The Methodology and Plan for Allocation of the settlement monies has been developed by a neutral Special Master appointed by this Court, to ensure a fair, reasonable, and adequate allocation among Settlement Class Members based on objective criteria. This resolution is supported by each class

---

[1] Plaintiffs Rosalyn Ingham, Paul Groenendal, Nancy James (individually and as Trustee of the James Nancy I Trust), and Theodore James were added as named Plaintiffs pursuant to this Court's permission to file Plaintiffs Third Amended Consolidated Class Action Complaint. ECF No. 616.

representative Plaintiff and represents a resolution of all claims brought against Defendants 3M and Wolverine.

Given the risks and uncertainties of continued litigation against the Defendants, including the uncertainties associated with continued delay of monetary relief to the Settlement Class Members, the proposed Settlement readily meets the Sixth Circuit's standard for preliminary and, ultimately, final approval.

## II.   BACKGROUND

### A.  Procedural History

On December 1, 2017, the *Zimmerman* Plaintiffs filed the first-class action complaint in this litigation against Defendants 3M Company and Wolverine World Wide, Inc. ECF No. 1. Subsequently, the *Johns* and *Henry* Plaintiffs filed class action complaints October 8, 2018 (*Johns v. Wolverine World Wide, Inc., et al.*, Case No. 18-cv-01302 (W.D. Mich.)) and December 4, 2018 (*Henry v. Wolverine World Wide, Inc. et al.*, Case No. 19-cv-00379 (W.D. Mich.)). On October 3, 2019, this Court entered an Order consolidating the three cases under the *Zimmerman* case number and caption for all purposes and directing the filing of an amended consolidated complaint. ECF No. 151. *See also* Case Nos. 17-cv-1062, 18-cv-1302, 19-cv-379. Plaintiffs collectively filed a Consolidated Amended Class Action Complaint on October 17, 2019. ECF No. 154.

On May 22, 2020, Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint. ECF No. 197 (the "SAC"). The SAC asserts claims for negligence and nuisance against Defendants and seeks monetary compensation from Defendants for the contamination of Plaintiffs' soil and drinking water, the interference with and disruption of their lives, the loss of their right to quiet use and enjoyment of their properties, the diminution of the values of their properties as a result of Defendants' wrongful conduct, and the substantial risk of imminent harm

2

from the continuing increased risk of contamination and exposure. The SAC also seeks injunctive, remedial, and medical monitoring relief. Interim Co-Lead Class Counsel (or "Class Counsel") was appointed on June 4, 2020. ECF No. 198.

On January 11, 2021, Defendants moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 208-211. Defendants argued that Plaintiffs failed to state their negligence and private nuisance claims, that Wolverine's settlement with the Michigan Department of Environmental Quality ("MDEQ") precluded Plaintiffs' public nuisance claims, that the doctrine of primary jurisdiction barred Plaintiffs' claims for injunctive or remedial relief, and that Michigan law does not recognize medical monitoring. *Id*. On June 8, 2021, the Court entered an order granting in part and denying in part Defendants' motions to dismiss. ECF No. 262. The Court ruled that Plaintiffs' negligence claim was dismissed only "to the extent the claim [wa]s based on physical injury, as opposed to injury to property." *Id.* The Court denied Defendants' motions in all other respects. *Id*.

More recently, the following motions were filed and remain pending:

- On August 30, 2021, Plaintiffs moved for class certification and served six expert reports in support thereof. ECF Nos. 291; 280-285.

- On September 24, 26 and 27, 2021, Defendants filed expert reports (ECF Nos. 311-327), and, on September 27, 2021, filed oppositions to Plaintiffs' class certification motion. ECF No. 331, 332.

- On October 12, 2021, Plaintiffs filed their reply to Defendants' opposition to Plaintiffs' motion for class certification. ECF No. 355.

- On November 12, 2021, Plaintiffs filed motions to exclude the reports and testimony of thirteen defense expert witnesses (ECF Nos. 381-382; 385-386; 389-390; 393-394;

397-398; 401-402; 408-409; 414-415; 418-419; 422-423; 427-428; 438-439; 447-448 and to preclude cumulative expert testimony (ECF Nos. 443-444) and Defendants moved to exclude the reports and testimony of five Plaintiff expert witnesses. ECF Nos. 406-407; 411-412; 426; 432; 431; 434; 435-436; 437; 440.

- The Parties filed their respective oppositions and replies on February 3, 2022 and February 28, 2022. ECF Nos. 485-509; 542-568.

- On November 18, 2021, Defendants filed eight motions for summary judgment, seeking to dismiss the claims of various class representatives and putative class members as well as Plaintiffs' negligence claims and claims for non-economic damages. *Id.* Plaintiffs filed oppositions to Defendants' summary judgment motions on February 24, 2022. ECF Nos. 518, 523, 525, 527, 528, 531, 533, 536.

During the pendency of these motions, the parties engaged in extensive mediation sessions which had commenced previously. Thus, the Court has not issued rulings on Plaintiffs' motion for class certification, the motions to exclude various experts, or Defendants' motions for summary judgment.

### B.  Mediation and Settlement Negotiations

The parties mutually agreed to mediate and selected as mediator, the Honorable Judge Gerald J. Rosen, Retired Chief Judge of the Eastern District of Michigan, who was appointed by the Court on February 3, 2021. ECF No. 222. Thereafter, the Parties began mediation efforts, which included the exchange of extensive written mediation statements and proposals for resolution, as well as substantive discussions with Judge Rosen.

The parties engaged in good faith mediation efforts over the following nine months. On March 8, 2022, following a seventeen-hour mediation session with Judge Rosen in the Federal

Courthouse, the Parties reached a settlement in principle, subject to client approval, and placed this confidential agreement in principle on the record before the Court. Over the next several months the Parties negotiated the details of the settlement and drafted the written settlement agreement, requisite notices, and other settlement related documents. The written settlement agreement was fully executed by all parties on September 15, 2022.

## III.    THE SETTLEMENT AGREEMENT AND TERMS

The Settlement – the product of nearly five years of litigation and extensive negotiations – creates a Settlement Fund of $54 million that will provide direct payments to Settlement Class Members for claimed damages to properties for diminution of value, nuisance resulting in the inconvenience and loss of use and quiet enjoyment of Settlement Class Members' properties, and other relief. (Exhibit 1, Settlement Agreement ("SA") at § 1.xxx).[2] The Settlement provides relief to property owners in the NKSA related to the alleged PFAS contamination of their water supply and properties from Defendants' alleged wrongful conduct. Accordingly, subject to the terms of the SA, the largest payments will be allocated to those property owners whose residential drinking water wells tested positive for PFAS compounds regulated by the State of Michigan in excess of the levels provided for in Michigan Regulation 325.10604g ("Maximum Contaminant Levels" or "MCLs").[3] To be eligible for compensation, current or former owners of real property located

---

[2] All capitalized terms throughout not otherwise expressly defined herein incorporate the meaning as defined in the Settlement Agreement at Exhibit 1.

[3] "MCLs" shall mean the Drinking Water Maximum Contaminant Levels specified by Michigan Regulation 325.10604g. Michigan Regulation 325.10604g, as of July 1, 2022, shall govern the determination of whether the property is contaminated with a Regulated PFAS substance. Michigan Regulation 325.10604g provides the following MCLs:                    *(continued below)*

within the boundaries of the NKSA as of November 1, 2017, who were not supplied with drinking

water from a municipal water source as of November 1, 2017, must register and submit a claim.

The registration and claims process is described more fully herein.

## A.  The Proposed Settlement Class

To participate in the Settlement, individuals must be members of the Settlement Class,

defined as:

> All Persons who are or were owners of Real Property located within the North Kent
> Study Area, who owned that property as of November 1, 2017, and who were not
> supplied with drinking water from a municipal water source as of November 1,
> 2017; provided, however, that the "Settlement Class" shall not include Excluded
> Persons. The Settlement Class consists of three settlement subclasses: Settlement
> Subclass 1: Municipal Water Extension; Settlement Subclass 2: Filtration Systems;
> and Settlement Subclass 3: Other.

(Exhibit 1, SA at § 1.iii.)

The Class is divided into three Subclasses which are as follows:

**Settlement Subclass 1: Municipal Water Extension**
All Settlement Class Members who are or were owners of Real Property located
within the North Kent Study Area and who owned that property as of November 1,
2017, and were transitioned to municipal water, or are scheduled to transition to
municipal water, under the EGLE/Wolverine Consent Decree.

| Contaminant | Maximum Contaminant Level in ng/l |
|---|---|
| Hexafluoropropylene oxide dimer acid (HFPO-DA) | 370 |
| Perfluorobutane sulfonic acid (PFBS) | 420 |
| Perfluorohexane sulfonic acid (PFHxS) | 51 |
| Perfluorohexanoic acid (PFHxA) | 400,000 |
| Perfluorononanoic acid (PFNA) | 6 |
| Perfluorooctane sulfonic acid (PFOS) | 16 |
| Perfluorooctanoic acid (PFOA) | 8 |

"Regulated PFAS" shall mean the seven PFAS compounds regulated under Michigan Regulation
325.10604g. The 7 PFAS compounds are: PFOS, PFOA, PFBS, PFHxS, PFHxA, PFNA & HFPO-
DA.

**Settlement Subclass 2: Filtration Systems**
All Settlement Class Members who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017, and were offered or received a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree to treat their well-sourced water and who are not members of Settlement Subclass 1: Municipal Water Extension

**Settlement Subclass 3. Other**
All Settlement Class Members who are not in Settlement Subclass 1: Municipal Water Extension or Settlement Subclass 2: Filtration Systems and who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017.

(Exhibit 1, SA at §§ 1.nnn., 1.ppp., 1.rrr.)

Only one Settlement Class Member Payment shall be awarded per Eligible Property, irrespective of the number of property owners or the number of Claim Forms submitted for the Eligible Property. (*Id.*, SA at § 4).

The Settlement Class excludes:

1. Any Person who has timely and validly excluded herself, himself, or itself from the Settlement Class, in accordance with Section 13 of this Agreement;

2. Any Person (other than Plaintiffs) who has previously filed a claim against any Defendant alleging a PFAS-related injury or illness, including without limitation a spousal derivative claim, or seeking medical monitoring or property damages, related to the presence of PFAS in any environmental media or drinking water in the North Kent Study Area, on or at their property in the North Kent Study Area, and/or in their persons, including without limitation the claims filed in the consolidated litigation captioned *In re Nylaan Litigation*, No. 17-10176 CZ, in the Circuit Court for the County of Kent, Michigan, excluding any previous Plaintiffs to this Action who were dismissed without prejudice under Federal Rule of Civil Procedure 41;

3. Defendants, any entity or division in which any Defendant has a controlling interest, Defendants' respective legal representatives in this Action, and their respective officers, directors, assigns and successors;

4. The Judge to whom this Action is assigned, any member of the Judge's immediate family and the Judge's staff, or any other judicial officer or judicial staff member assigned to this case;

5.      Any Class Counsel, including their partners, members, and shareholders, and any immediate family members of Class Counsel;

6.      Any State, including without limitation the United States, or any of its agencies; and

7.      Plainfield Township, Algoma Township, or any other local governmental entity or agency or public or quasi-public entity.

(Exhibit 1, SA at § 1.x.)

Plaintiffs contend that the Settlement Class and Subclasses meet the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3). Defendants, solely for the purposes of settlement, do not oppose certification of the proposed Settlement Class and Subclasses.

## 2. The Settlement

### B.  The Relief and Settlement Consideration

Defendants have agreed to pay the sum of $54 million (fifty-four million dollars) into a Qualified Settlement Fund to resolve all claims of the Settlement Class. (Exhibit 1, SA at §§ 1.xxx., 2.e.i.) A Court-appointed General Administer will administer the claims process and allocation of the payments to eligible Settlement Class Members. (*Id.*, SA at §§ 1.ee., 2.a., 3.a.iv.) The Court-appointed Special Allocation Master, Ret. Judge Marina Corodemus, has proposed a Methodology and Plan for allocation of the Net Settlement Fund to be paid to Settlement Class Members, after the deduction of Court approved attorney fees, litigation expense reimbursements, incentive awards for Class Representatives, and administrative expenses associated with notice, claims administration, opt-outs, and objectors. (*Id.*, SA at §§ 1.gg., 1.www., 2.b.iv., 6.a-c.) Defendants will pay $1 million within ten (10) days of Preliminary Approval of this Settlement by the Court, into the Settlement Fund to pay for costs of administration. (*Id.*, SA at § 2.b.i.) After final approval,

no amount of money from the Settlement Fund will revert to Defendants under any circumstance. (*Id*., SA at § 2.d.)

### C. Allocation of Settlement Fund

Pursuant to the Methodology and Plan of Allocation drafted and overseen by the Court-appointed independent Special Master Ret. Judge Marina Corodemus (ECF No. 611), the individual Settlement payments will be determined on the basis of the following objective factors: the highest documented levels of Michigan Regulated PFAS compounds in excess of the MCLs found in a Settlement Class Members' drinking water well; whether the Settlement Class Member has been or will be connected to municipal water pursuant to the EGLE/Wolverine Consent Decree; whether the Settlement Class Member was offered or received a filtration system provided by Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree; the number of residents who resided at the Eligible Properties as of November 1, 2017; the length of ownership of the property; and whether the property is vacant. The Methodology and Plan of Allocation was prepared based on an estimate of 1,733 Class properties, but the actual number may vary based on other information and actual participation in the settlement. The Methodology and Plan of Allocation drafted and approved by Special Master Corodemus is attached as Ex. H to the SA.

Under the Special Master's Proposed Methodology and Plan of Allocation, individual allocations are dependent upon the level of PFAS on the property, the subclass to which the Settlement Class Member belongs, and certain enhancing factors as discussed above. The Methodology and Plan of Allocation further provides for an appeal process for Eligible Appeals.[4]

---

[4] Settlement Subclass 1 and Subclass 2 Class Members whose properties had total regulated PFAS levels above the maximum contaminant level (MCL) will be eligible to file an appeal of their allocation amount to the Special Master; and then, any such appeal may only be submitted under certain circumstances in which the Class Member alleges: (1) miscalculation of allocation amount

This Methodology and Plan created by an independent, experienced former judge provides a fair, reasonable, adequate, and equitable allocation of the Settlement Fund among all participating Settlement Class Members in accordance with Fed. R. Civ. P. 23(e). (Exhibit 1, SA at § 1.www.; Ex. H to the SA, at ¶ C.)

### D. Settlement Notice and Right to Opt Out

#### 1. Settlement Notice

Within 30 days of the Court granting preliminary approval of the Settlement, or by such time specified by the Court, the General Administrator shall transmit the "Short-Form Notice" – attached as Ex. E to the Settlement Agreement – via direct mail or electronic mail to all addresses for Real Properties in the North Kent Study Area which were not supplied with drinking water from a municipal water source as of November 1, 2017. (Exhibit 1, SA at §12.b.) The Settlement Administrator will also engage in a multimedia notice campaign to reach people who may no longer own the property or who may, for some unknown reason, not receive the mailing. (*See* Decl. of Settlement Administrator, Ex. G to the SA.)

The General Administrator will create and maintain a Settlement Website ("Website"). The Website shall contain the long form Notice and short form Notice (attached as Exs. D and E, respectively, to the Settlement Agreement), as well as information about the Settlement, through and including hyperlinked access to this Agreement, the Notice Form, the Proposed Third Amended Complaint, Plaintiffs' motion seeking preliminary approval, the Preliminary Approval Order, Plaintiffs' motion seeking a Final Approval Order, the Final Approval Order, and the Claim Form and such other documents as the Parties agree to post or the Court orders posted on the

---

based on relevant criteria; (2) documentation or evidence not considered in the allocation calculation; or (3) other information previously not considered. (Exhibit 1, SA at §5.a.)

Settlement Website.  These documents shall remain on the Settlement Website for at least six months after Final Approval. The Settlement Website will also provide the capability for Settlement Class Members to submit claims online onto the Settlement Website. (Exhibit 1, SA at §§ 1.vvv., 12.c.)

### 2.   Opt-Outs

Settlement Class Members may exclude themselves from the Settlement and the Settlement Class by submitting a timely and valid request to the General Administrator that complies with the Opt-Out procedure described in the Notice Form. (Exhibit 1, SA at 13.a.) The Opt-Out request must include: (i) the full name, current address, and telephone number of the requestor; (ii) a statement of the facts that make the requestor a Settlement Class Member; (iii) a statement requesting exclusion from the Settlement Class; and (iv) the signature of the requestor. (*Id.*) Any Settlement Class Member that submits a timely and valid Opt-Out request shall not: (i) be bound by any orders or judgments entered in the Action to implement and effectuate the Settlement and this Agreement; (ii) be entitled to any of the relief or other benefits provided under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to submit an Objection. (*Id.*, SA at § 13.b.) Under Paragraph 20 of the Settlement Agreement, Defendants reserve the right to terminate the agreement should a designated number of class members opt out of the settlement. Should the Court request it, the parties will submit that provision to the Court for *in camera* review. As soon as practicable and no later than fifteen (15) days after the Claim Deadline, the General Administrator shall furnish the Parties with a final list of all timely and valid Opt-Out requests that have been submitted. (*Id.*, SA at § 13.f.)

### E.  Process for Claims Submissions

The Claims process will be administered by a General Administrator and Settlement Class Members may participate in the Settlement by completing, signing, and submitting a Claim Form.

(*Id.*, SA at § 3.a.i.) The Claim Forms will be based on the criteria for each of the Settlement

Subclasses, assist in streamlining the process, and ensure consistency across Settlement Class

Members. (*Id.*, SA at §§ 3.a., 3.b.ii.-iv., 4; *see also* Ex. H to SA.) In addition to the Claim Form,

Settlement Class Members must provide proof of ownership of real property within the NKSA as

of November 1, 2017, and proof that the property did not obtain its drinking water from a municipal

water source as of November 1, 2017. Proof of ownership may include one of the following: (1) a

copy of the deed to the property; (2) a copy of a tax bill demonstrating ownership of the property

as of November 1, 2017; (3) a mortgage statement for the property; and/or (4) any other form of

proof deemed appropriate by the General Administrator. (Exhibit 1, SA at § 3.b.i.) If the Claimant

does not submit documentary proof of ownership or does not submit documentary proof sufficient

to show ownership as of November 1, 2017, the Claimant's eligibility may also be determined by

the General Administrator's reference to public property records. (*Id.*)

To demonstrate eligibility to receive payment as a Settlement Subclass 1: Municipal Water

Extension, in addition to the requirements discussed above, such Settlement Class Members must

represent on the applicable Claim Form that their property has transitioned, or is scheduled to

transition, to municipal water pursuant to the EGLE/Wolverine Consent Decree. (*Id.*, SA at §

3.b.i.) The General Administrator may verify such information by reference to data provided by

Defendants, public records, including the EGLE/Wolverine Consent Decree, or other information

developed during the litigation of the Action. (*Id.*) If the General Administrator cannot verify the

information provided by the Claimant, the General Administrator may ask for further proof from

the Claimant, which may consist of: (a) notice of transition to municipal water from Plainfield

Township; (b) a Plainfield Township water bill together with documentation of closure of a well;

and/or (c) any other proof deemed sufficient by the General Administrator. (*Id.*)

To demonstrate eligibility to receive payment as a Settlement Subclass 2: Filtration Systems Member, in addition to the requirements for receiving payments as a Settlement Class Member, such Settlement Class Members must indicate on the Claim Form that they were offered or received a filtration system to treat their drinking water from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree, and that the property has not been transitioned, and is not scheduled to transition, to municipal water under the EGLE/Wolverine Consent Decree. (*Id.*, SA at § 3.b.iii.) The General Administrator may verify such information by reference to data provided by Defendants, public records, including the EGLE/Wolverine Consent Decree, or other information developed during the litigation of the Action. (*Id.*) If the General Administrator cannot verify the information provided by the Claimant, the General Administrator may ask for further proof from the Claimant, which may consist of: (a) photographs of any such filtration system; (b) maintenance records, system testing data, other records of system operation or maintenance provided by Wolverine or Wolverine's contractors; and/or (c) any other form of proof deemed appropriate by the General Administrator. (*Id.*).

To demonstrate eligibility to receive payment as a Settlement Subclass 3: Other, such Settlement Class Members must indicate on the Claim Form that: 1) they own or owned real property within the NKSA as of November 1, 2017 that did not obtain its drinking water from a municipal water source as of November 1, 2017; 2) their drinking water is not scheduled to transition to municipal water under the EGLE/Wolverine Consent Decree; and 3) they were not offered and did not receive a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree. (*Id.*, SA at § 3.b.iv.)

The General Administrator shall review the Claim Forms and any supporting documentation and determine whether the Claimant is an eligible Settlement Class Member of the

Settlement Subclass in which she or he purports to belong. (*Id.*, SA at § 3a.i.) If the General Administrator determines that a Claimant has submitted insufficient proof of eligibility, the General Administrator will provide an opportunity for the Claimant to cure the submission to the extent practicable. (*Id.*, SA at § 3.a.iii.)

### F.  Class Counsel Fees, Expenses, and Plaintiffs' Service Awards

Class Counsel intend to file a motion for attorneys' fees and expenses prior to the Final Approval Hearing. The Parties have agreed that Class Counsel may seek reimbursement for costs not to exceed $1,500,000 (one million five-hundred thousand dollars).[5] (*Id.*, SA at § 6.a.) Class Counsel may apply to the Court for attorneys' fees for an amount not to exceed one-third of the gross Settlement Fund after costs. (*Id.*)

Further, the Parties have agreed that Defendants will not oppose Plaintiffs' request, made as part of the attorneys' fees and expenses application, approval of Class Representative Service Awards not to exceed $15,000 or $25,000, depending on their category, to each of the Class Representatives, as discussed in Section (V)(B)(4) herein.

## IV.   THE SETTLEMENT CLASS AND SUBCLASSES SHOULD BE PRELIMINARILY CERTIFIED

Plaintiffs' proposed Settlement Class and Subclasses should be preliminarily certified for settlement purposes. A proposed settlement class must satisfy the requirements of Rule 23. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). Class certification requires that plaintiffs satisfy each of Rule 23(a)'s four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv)

---

[5] However, in the event that additional costs are incurred in the administration of Claimants' claims for entitlement to Settlement Class Member Payments and allocation of such claims, Class Counsel shall petition the Court for payment of those costs from the Settlement Fund. (Exhibit 1, S.A. at § 6.a.) Such additional costs shall be subject to Court approval.

adequacy of representation. *See* Fed. R. Civ. P. 23(a). In addition, the proposed class must meet

one of the requirements of Rule 23(b). *See id*. That the parties have reached a settlement in this

matter is a relevant consideration in the class-certification analysis. *See Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 619 (1997). Indeed, "courts should give weight to the parties' consensual

decision to settle class action cases, because that law favors settlement in class action suits."

*Daoust v. Maru Rest., LLC*, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 2, 2019) (granting

preliminary approval of class action settlement); *see also Amchem*, 521 U.S. at 620 (when

"[c]onfronted with a request for settlement-only class certification, a district court need not inquire

whether the case, if tried, would present intractable management problems . . . for the proposal is

that there be no trial."). Thus, at this juncture, the Court need only decide that certification of the

proposed Settlement Class and Subclasses is "likely" in order to justify sending notice to

Settlement Class Members. Plaintiffs will later seek final approval of the Settlement Class for

purposes of the Settlement. *See Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *3 (E.D.

Mich. July 13, 2006), *aff'd sub nom. Int'l Union, United Auto., Aerospace, & Agr. Implement*

*Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007); *In re Cardizem CD Antitrust*

*Litig.*, 218 F.R.D. 508, 516-17 (E.D. Mich. 2003).

  Class certification is appropriate where, as here, "(1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class." *In re*

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013)

(quoting Fed. R. Civ. P. 23(a)). To certify a class under Rule 23(b)(3), the court must also find

"'that the questions of law or fact common to class members predominate over any questions

affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." *Id.* at 850-51 (quoting Fed. R. Civ. P. 23(b)(3)).

As demonstrated below, the Settlement Class and Subclasses described herein meet all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes. Accordingly, the Court will be able to certify the proposed Settlement Class and Subclasses.

## A. The Proposed Settlement Class and Subclasses Satisfy Rule 23(a)

### 1. The Class and Subclasses Meet the Numerosity Requirement

Rule 23(a)(1) requires that the class is so numerous that joinder of all class members is "impracticable." Numerosity does not require any specific number of members and "imposes no absolute limitations." *Crawford v. TRW Auto U.S. LLC*, 2007 WL 851627, at *2 (E.D. Mich. Mar. 21, 2007); *see also Senter v. General Motors Corp.*, 532 F.2d 511, 522-23 (6th Cir. 1976).

Courts throughout the country, including the Western District of Michigan, routinely recognize a class of "40 or more members" as "sufficient to satisfy the numerosity requirement." *Crawford*, 2007 WL 851627 at *3; *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003); 7A Fed. Prac. & Pro. §1762 (3d ed. 2005); *see also Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (35-member class).

The Settlement Class consists of all owners of property within the defined NKSA whose drinking water came from residential wells, and was not supplied through a municipal water system as of November 1, 2017. Information regarding these properties is readily available through public records on EGLE's website, from Wolverine, and its consultants, and from the EGLE/Wolverine Consent Decree. As of May 3, 2019, Wolverine's consultant, GZA

GeoEnvironmental, Inc., had sampled 1,587 parcels with residential wells within the NKSA.[6] Moreover, according to documents obtained during the settlement process, the Settlement Class includes approximately 1,733 parcels. *See Widdis v. Marathon Petroleum Co.*, 2014 WL 11444248, at *5 (E.D. Mich. Nov. 18, 2014) (numerosity satisfied where, "[e]ven though they do not have an exact figure, plaintiffs have adequately shown that the proposed class may include dozens if not hundreds of members").

Similarly, Settlement Subclasses 1, 2, and 3 each satisfy numerosity based on objective, readily available, identifiable information: Subclass 1 (Municipal Water): approximately 687 properties; Subclass 2 (Filters): approximately 64 properties; and Subclass 3 (Other): approximately 982 properties. *See* Ex. H to SA, Methodology and Plan of Allocation. The Settlement Class and Subclasses overwhelmingly satisfy numerosity.

### 2. The Litigation Presents Factual and Legal Questions Common to the Class

To satisfy the commonality requirement, the Sixth Circuit has held that "there need only be one question common to the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Moreover, the "interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 424 (6th Cir. 1998). Where a defendant engages in conduct that affects a group, one or more of the elements of the claim will generally be common to all affected persons. *Rodriquez by Rodriquez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1015 (W.D. Mich. 1987).

---

[6]   https://www.michigan.gov/pfasresponse/0,9038,7-365-86511_82704_83030---,00.html   (last accessed September 15, 2022).

Here, multiple factual and legal questions pertaining to Defendants' alleged conduct are common to the entire Settlement Class. Plaintiffs alleged that Defendants engaged in a common course of conduct—including concealment of the deleterious effects of PFAS—towards all Settlement Class Members, the Settlement Class and Subclasses, which readily satisfies commonality. Specifically, Settlement Class Members asserted claims for negligence and private and public nuisance based on 3M's and Wolverine's alleged knowing manufacture and release of toxic PFAS chemicals into the environment. Key common questions for Plaintiffs' case, which turn on Defendants' conduct alone, include: (1) whether Defendants' alleged discharge of toxic PFAS was an unreasonable and significant invasion of Settlement Class Members' interest in their private use and enjoyment of their land; (2) whether Defendants owed Settlement Class Members a duty to refrain from conduct alleged to be reasonably likely to cause contamination of their groundwater and private wells; (3) whether Defendants breached that duty; and (4) whether Defendants acted negligently, recklessly, or intentionally, in such ways that impaired the Settlement Class Members' property interests through alleged contamination of their wells, groundwater, and property.

Moreover, Defendants' alleged wrongful conduct is claimed to have injured all Settlement Class and Subclass Members in the same way—by allegedly contaminating their groundwater and properties with PFAS and by exposing them to risk of harm to their health. Thus, Plaintiffs' efforts to prove causation and injury would raise common questions, including whether Defendants' conduct proximately caused Settlement Class Members' groundwater and properties to become contaminated. *See, e.g.*, *Widdis*, 2014 WL 11444248, at *7; *Craton v. Birds Eye Foods, Inc.*, 2013 WL 12421822, at *2 (W.D. Mich. Dec. 20, 2013), citing *Lozar v. Birds Eye Foods, Inc.*, 678 F.

18

Supp. 2d 589, 599 (W.D. Mich. 2009); *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 720 (Mich. 1992).

Courts find these questions sufficient to satisfy the commonality requirement. *See, e.g.*, *Widdis*, 2014 WL 1144448, at *5 (common questions in an environmental mass tort regarding causation satisfied commonality); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (questions of whether the contamination "reached the soil and groundwater beneath the homes of the class members are common to all the class members"); *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2019 WL 8272995, at *4 (D. Vt. Aug. 23, 2019) (common issue of Defendants' liability for causing an increase in PFOA in the contamination zone, particularly where "[t]he claim of contamination is limited to parts of two towns in the same state" and was "concentrated in an area of a few square miles" which, like here, had been mapped by both parties and the state regulators in detail). Here, Plaintiffs readily satisfy commonality.

### 3.   Settlement Class Representatives' Claims Are Typical of the Claims of the Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *6 (E.D. Mich. Dec. 12, 2013) (quoting *Ford Motor Co.*, 2006 WL 1984363, at *19); *Date v. Sony Elecs., Inc.*, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013).

The Settlement Class Representatives' claims are typical of the Settlement Class and Subclasses they each seek to represent because their claims arise from the same course of conduct as the claims of the other members of the proposed Settlement Class, namely, Defendants' alleged misconduct which led to the contamination of their property with PFAS. *See Powers v. Hamilton*

*Cty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (finding typicality satisfied where class representatives' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members," and were "based on the same legal theor[ies]" as other class members' claims (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996))); *see also Barry v. Corrigan*, 79 F. Supp. 3d 712, 732 (E.D. Mich. 2015), *aff'd sub nom. Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) ("The Sixth Circuit has concluded a proposed class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.") (internal quotation marks and citation omitted). Accordingly, Plaintiffs satisfy the Rule 23(a)(3) typicality requirement.

### 4. Settlement Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) requires that class representatives fairly and adequately protect the interests of the class. "There are two criteria for determining whether the representation of the class will be adequate: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter*, 532 F.2d at 524-25).

The Proposed Class Representatives readily meet this requirement here. The Proposed Class Representatives and members of the Class and Subclasses they seek to represent share common interests: each proposed Class Representative is an owner of Real Property located within the boundaries of the NKSA as of November 1, 2017, who were not supplied drinking water from

a municipal source as of November 1, 2017.[7] Each seek to hold Defendants liable for the same alleged misconduct. *See Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (class representatives "shared common interests with the unnamed class members" where "they all shared a desire to obtain both monetary and injunctive relief from [defendants]"). They are committed to achieving a recovery that would benefit the entire Class. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.") (citation omitted).

Moreover, the Proposed Class Representatives – Therese Cooper, Michelle and Terry VanWuffen, Malia and Dennis Gregory, Michael and Megan Johns, Rosalyn Ingham, Paul Groenendal and Theodore and Nancy James – have demonstrated their significant commitment to this litigation, spending considerable time and emotional labor responding to multiple sets of written discovery requests, producing documents (including certain sensitive personal medical records), meeting with counsel, submitting to property inspections by Defendants' counsel and

---

[7] Therese Cooper, Michelle and Terry VanWuffen, Malia and Dennis Gregory, Michael and Megan Johns are qualified Subclass 1 Representatives as they are owners of Real Property located within the NKSA as of November 1, 2017, and who owned that property as of November 1, 2017, and were transitioned or are scheduled to transition to municipal water under the EGLE/Wolverine Consent Decree.

Rosalyn Ingham is a qualified Subclass 2 Representative as she is the owner of Real Property within the NKSA as of November 1, 2017 and was offered or received a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree to treat her well-sourced water and is not a member of Subclass 1.

Paul Groenendal and Theodore and Nancy James are similarly qualified Subclass 3 Representatives, meeting the requirements of the Settlement Class and have not transitioned and are not scheduled to transition to municipal water, and have not been offered and did not receive a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree and are therefore not members of Subclass 1 or 2.

their experts (including inspections of the interior of their personal residences during a global pandemic), and for Therese Cooper, Michelle and Terry VanWuffen, Malia and Dennis Gregory and Michael and Megan Johns, sitting for lengthy depositions, including submitting to questions regarding personal and medical matters. *See Mitcham v. Intrepid U.S.A., Inc.*, 2019 WL 2269918, at *4 (W.D. Ky. May 28, 2019) (to meet adequacy requirement, "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083)).

Class Counsel zealously represented the Class and Subclasses during the settlement process to ensure adequate representation of the Settlement Class. *See* Section (V)(C)(5) *infra* (explaining adequacy of Class Counsel).

### 5. Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes

In addition to satisfying Rule 23(a), Plaintiffs must show that the putative class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class satisfies Rule 23(b)(3), which authorizes class certification if "(1) questions common to the class predominate over questions affecting only individual members, and (2) class resolution is superior to alternative methods for adjudicating the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (citing Rule 23(b)(3)); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009) (same).

### a. Common Questions of Law and Fact Predominate

The predominance standard "is essentially a pragmatic one: '[w]hen common questions represent a significant aspect of the case they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather

than on an individual basis.'" *Widdis*, 2014 WL 11444248, at *7 (alteration in original) (citation omitted). Thus, "[c]ourts have frequently held that this merely requires a 'common nucleus of operative facts'. . . even though other important matters will have to be tried separately." *Id.* (alternation in original) (citation omitted).

The Sixth Circuit has made clear that common questions may predominate in cases arising out of an environmental disaster. In *Sterling v. Velsicol Chemical Corp.*, the Sixth Circuit explained that "where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." 855 F.2d 1188, 1197 (6th Cir. 1988). Indeed, in *Sterling*, a mass tort event presented exactly the sort of situation for which class action litigation served its fundamental purpose, as class treatment of the plaintiffs' claims "avoided duplication of judicial effort and prevented separate actions from reaching inconsistent results with similar, if not identical, facts." *Id.*

More recently, in *Widdis*, this Court certified a class of individuals forced to evacuate or remain in their homes as a consequence of an explosion and fire, and who additionally lost the use and enjoyment of their property for a period of time following the disaster, with subclasses for property owners in the affected area and a subclass for non-owner occupants. 2014 WL 11444248, at *1. In finding that plaintiffs had satisfied Rule 23(b)(3)'s predominance requirement for their negligence claim, this Court explained that although the negligence claim would "require individualized proofs" regarding certain damages, those considerations were outweighed by common questions. *Id.* at *8. Precisely the same is true here.

Common evidence could establish Defendants' alleged liability and Plaintiffs' claimed entitlement to damages against Defendants. The Sixth Circuit has long recognized that common

issues can predominate in contamination cases, where "a single course of conduct which is identical for each of the plaintiffs" is alleged. *Sterling*, 855 F.2d at 1197. This is because "the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next." *Id.*

As in like contamination cases where predominance was met, the central issues in Plaintiffs' theory of the case here are common to all Class Members, and there are substantial common facts supporting the Plaintiffs' claims. Put simply, Plaintiffs allege that Defendants produced, used, and released PFAS into the environment, and notwithstanding the knowledge they had of the hazardous nature of these substances, concealed and covered up that knowledge and information, such that the PFAS in the environment demonstrably contaminated the Class Members' property. For the Class's negligence claim, Plaintiffs would offer common evidence to establish that:

> (1) Defendants owed a duty of care, *Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*, 727 F.3d 633, 638-39 (6th Cir. 2013) (Party owes a "common law duty of care to all those whom the party knew or reasonably should have foreseen would be injured by the party's negligent acts or omissions."); and

> (2) Defendants breached that duty as to all Class Members. SAC, ¶¶ 227-232, PageID.6678-6679.

These are binary questions that can be proven with common evidence and "without resort to the testimony of individual class members." *Rikos v. Procter & Gamble Co.*, 2014 WL 11370455, at *11 (S.D. Ohio June 19, 2014) (citation omitted), *aff'd*, 799 F.3d 497 (6th Cir. 2015).

Here, Plaintiffs and Class Members "all reside in one relatively small geographic area," and allege that "the harm was allegedly caused by one [single course of conduct]." *Widdis*, 2014 WL 11444248, at *8-9 (common questions, such as "the cause of [the incident], its foreseeability,

and precautions defendant could have taken to prevent the [the incident]" significantly predominated over the limited individualized questions).

### b. A Class Settlement Is Superior to Other Methods for the Proposed Class and Subclasses.

The factors to be considered in determining the superiority of proceeding as a class action include: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). However, "when '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 911 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) (citing Fed. Rule Civ. Proc. 23(b)(3)(D)) (alteration in original); *See also Cardizem*, 218 F.R.D. at 517.

These factors favor certifying the Settlement Class here. Superiority is met when class resolution will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Moreover, proceeding with a class settlement ensures that the largest number of residents eligible to participate in the Settlement will receive notice and an opportunity to file a claim for damages.[8]

---

[8] Plaintiffs incorporate the arguments made in their Motion for Class Certification. ECF No. 291.

## V. THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

### A. The Court Should Grant Preliminary Approval of the Proposed Class Settlement, and of the Class and Subclasses

Rule 23(e) governs the settlement of class actions. Fed. R. Civ. P. 23(e); *see also Amchem*, 521 U.S. at 717. Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate." *UAW*, 497 F.3d at 631 (citing *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). The Sixth Circuit recognizes that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *UAW*, 497 F.3d at 632 ("[Courts] must consider—the federal policy favoring settlement of class actions" among other factors.).

Rule 23(e)(1)(B) directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. Fed. R. Civ. P. 23(e)(1)(B); *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020) (a court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would); 4 William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2020) ("[T]he court's primary objective at [the preliminary approval stage] is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing.").

Therefore, at the preliminary approval stage, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e) sets forth a list of factors for a

court to consider before approving a proposed settlement as "fair, reasonable, and adequate." The

factors are whether:

> (A) the class representatives and class counsel have adequately
> represented the class;
>
> (B) the proposal was negotiated at arm's-length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the
>> class, including the method of processing class-member claims, if
>> required;
>> (iii) the terms of any proposed award of attorney's fees, including timing of
>> payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Sixth Circuit utilize seven factors comparable to those in Rule 23(e)(2) in

evaluating class action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense,

and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the

likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6)

the reaction of absent class members; and (7) the public interest. *UAW*, 497 F.3d at 631; *see also*

*Williams*, 720 F.2d at 922-23. In considering these factors, courts apply a "strong presumption" in

favor of finding a settlement to be fair. *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985,

1008 (S.D. Ohio 2001) ("Being a preferred means of dispute resolution, there is a strong

presumption by courts in favor of settlement."); *see also Bautista v. Twin Lakes Farms, Inc.*, 2007

WL 329162, at *5 (W.D. Mich. Jan. 31, 2007).

The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 Advisory Committee Note (2018 Amendments). Accordingly, Plaintiffs will address the "fair, reasonable and adequate" factors under Rule 23(e)(2) and the Sixth Circuit's and this Court's prior preliminary approval decisions. Here, all factors support preliminary approval of the settlement.

### B.   Settlement Satisfies Rule 23(e)(2)'s "Fair, Reasonable and Adequate" Factors

#### 1.   The Relief Provided to the Class Is More than Adequate

The relief provided to the Settlement Class consists of a substantial cash payment by Defendants of $54 million. Class Counsel believe that this payment is significant and adequate relief for the Settlement Class.

The Court appointed Judge Marina Corodemus to serve as a Special Allocation Master and independent neutral to ensure all Net Settlement monies are distributed fairly amongst Settlement Class Members. Special Master Corodemus, served as the New Jersey Courts' first Mass Tort Judge, and was the sole Mass Tort Judge for ten years. She has served as Special Master for many complex class actions and mass tort litigations involving environmental contamination and natural resource damages. She is also an adjunct Professor at Rutgers Law School in Newark, New Jersey. Ex. 3, Special Master Corodemus CV.

Based on Special Master Corodemus's extensive experience in similar cases, her review of all relevant documentation and facts of this litigation, and preparation of a fair and detailed Methodology and Plan of Allocation, including allocation grids based on objective criteria by Subclass, Judge Corodemus deems that the relief provided to the Class and the respective Subclasses is more than adequate. (Ex. H to SA, Methodology and Plan of Allocation, at ¶ C.)

28

### 2.   The Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims, Is Effective and Based on Objective Factors

The claims process was designed to be clear and efficient and allows determination of awards based on a number of objective factors. The claims process will be overseen by the Claims Administrator Angeion Group, LLC ("Angeion" or "Claims Administrator"). (Exhibit 1, SA at § 1.ee.; *see also* Ex. G to SA; *cf. Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 901 (S.D. Ohio 2001) (approving settlement where Special Master determined awards based on a number of factors)). The claims process and method of distributing relief to the Settlement Class offers easy access for potential Settlement Class Members to provide the required information in support of their claims, and an appeals process to the Special Master to contest an award by the Claims Administrator. (Ex. 1 at. §§ 3, 5; *see also* Section III(B) and (C) *supra*. The proposed Claims Administrator, Angeion Group, LLC ("Angeion Group"), is experienced and well qualified to administer this process in conjunction with the oversight of the Special Master. Moreover, Angeion Group has reviewed the relevant settlement documents and—based on experience in similar cases—opines "that Notice Plan exceeds any requirement for notice under due process, and Fed. R. Civ. P. 23." (Ex. G to SA, Angeion Notice Decl., at ¶ 33.)

### 3.   Proposed Award of Attorneys' Fees, Including Timing of Payment

The Settlement provides that attorneys' fees shall be paid solely out of the Settlement Funds subject to court approval. (Exhibit 1, SA § 6.a.) The Court has the ultimate authority to determine what, if any, attorneys' fees should be awarded to Class Counsel. *See* Fed. R. Civ. P. 23(h). Pursuant to the schedule set forth in § 9.d. of the SA and in the Proposed Preliminary Approval Order attached hereto as Exhibit 2, Plaintiffs' Counsel will file a motion for attorneys'

fees and costs awards forty-five (45) days after the Claim Deadline[9] for the Court to consider in making that determination prior to final approval. (Exhibit 1, SA at § 9.d.) *Cf. In re Whirlpool*, 2016 WL 5338012, at *19 (N.D. Ohio Sept. 23, 2016) (addressing attorney fee motion in conjunction with final approval).

### 4.  The Settlement Treats Class Members Equitably in Relation to Each Other

The Settlement treats Class Members equitably because "apportionment of relief among class members takes appropriate account of differences among their claims." *Kis v. Covelli Enters., Inc.*, 2020 WL 2812405, at *5 (N.D. Ohio May 29, 2020) (quoting Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Note 2018 Amendments). The Plan of Allocation sets forth a detailed methodology that will be used to determine each Settlement Class Member Payment for Claimants who participate in the Settlement. (Ex. H to SA, Methodology and Plan of Allocation, at ¶ C.)

The Methodology and Plan of Allocation provide that the individual allocations are dependent upon the level of PFAS on the property, the subclass to which the Settlement Class Member belongs, and certain enhancing factors, Ex. H to SA. Only one Settlement Class Member Payment shall be awarded per Eligible Property, irrespective of the number of property owners or the number of Claim Forms submitted for the Eligible Property. (*Id.* ¶ 4.)

Accordingly, the Settlement Class Members will receive awards based on objective factors, which are as follows: (1) the documented levels of PFAS compounds regulated by the State of Michigan found in a Settlement Class Member's drinking water well from highest to lowest; (2) whether the Settlement Class Member has been or will be connected to municipal water pursuant to the EGLE/Wolverine Consent Decree; (3) whether the Settlement Class Member was offered,

---

[9] The Claim Deadline shall fall ninety (90) days after the Notice Date. (Exhibit 1, SA at § 9.d.)

or has, a filtration system provided by Wolverine or its agents under the EGLE/Wolverine Consent Decree to treat their drinking water; (4) the number of residents at each property; (5) the length of ownership of the property; and (6) whether the property is vacant land. The Settlement contemplates the apportionment of damages based on the level of contamination, remedial measures (i.e., municipal water connection or filtration systems in response to the damage), length of exposure, and the number of residents at each property impacted by the contamination. *See In re Oil Spill*, 910 F. Supp. 2d at 957 ("[T]here is nothing improper in the parties' negotiation of claims frameworks that compensate class members in light of the strength of their claims."); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 196 (E.D. Pa. 2014) (Maximum monetary awards ranging in value from $ 1.5-5 million were determined by six separate Qualifying Diagnoses.).

The Settlement Agreement provides that Class Counsel may seek a Service Award for Class Representatives in one of two tiers for her or his role as Class Representative. Class Counsel may seek up to $25,000 for Class Representatives in Tier One, which includes Plaintiffs defined in the Settlement Agreement (in § 1.ww.) who were Parties to this Action on the date of the filing of Plaintiffs' Motion for Class Certification on August 30, 2021 (ECF No. 291), who represented the Class, whose homes were inspected, who participated in discovery, who sat for depositions, and otherwise devoted significant time and effort to the case. Class Counsel may seek up to $15,000 for Class Representatives in Tier Two, which includes Plaintiffs defined in the Settlement Agreement (in § 1.ww.), who represented the Class, whose homes were inspected, who participated in discovery, but did not sit for depositions. The combined Service Awards shall not exceed $235,000.00 in the aggregate. (Exhibit 1, SA at § 6.b.) Such awards are justified as an incentive and reward for the efforts that lead plaintiffs take on behalf of the class. *Hadix v. Johnson*,

322 F.3d 895, 897 (6th Cir. 2003); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1000 (N.D. Ohio 2016) (noting "the Sixth Circuit has endorsed the use of incentive awards"), *appeal dismissed*, 2016 WL 6599570 (6th Cir. 2016). Plaintiffs will submit this request for Service Awards along with the fee application, prior to the deadline for objections from Class Members. Thus, any Service Award will be subject to Court approval.

### 5. Settlement Is Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205). *Accord Griffin*, 2013 WL 6511860, at *5; *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *12 (E.D. Mich. Dec. 13, 2011). Moreover, the public interest is best served in this case by providing relief to Class Members and residents of the NKSA as expeditiously as possible. *Cf. Garner Props. & Mgmt., LLC v. City of Inkster*, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (concluding settlement was in the public interest where "allowing settlement in this matter will promote the fair and expeditious resolution of the matter"). Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed Settlement. Thus, this factor also supports approval.

### C. Sixth Circuit's Factors Further Support Settlement Approval

#### 1. Complexity, Expense and Likely Duration of the Litigation Favor Approval

The Court should assess adequacy of relief to the class "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich.

2006)); *see also Garner*, 333 F.R.D. at 627; *Ford Motor Co.*, 2006 WL 1984363, at \*21; *Ford v. Fed.-Mogul Corp.*, 2015 WL 110340, at \*6 (E.D. Mich. Jan. 7, 2015). These risks must be weighed against the settlement consideration: here, the certainty of a cash settlement of $54 million.

The Settlement in this Action comes at an opportune time given that, if the litigation continues, there will be substantial additional expenses to the Parties associated with substantive motion practice, expert depositions, pre-trial preparations, and a lengthy trial. Presently, 20 Daubert motions and Motions in Limine are pending before this Court, as well as Plaintiffs' Motion for Class Certification and Defendants' Motions for Summary Judgment. ECF Nos. 381, 385, 389, 393, 397, 401, 406, 408, 411, 414, 418, 422, 426, 427, 431, 434, 437, 438, 444, 447; 291; 518, 523, 525, 527, 528, 531, 533, 536. Extensive time and resources of the Court and Parties will be required for oral argument and for the Court to issue written opinions on each motion. Only after the Court's rulings on all the legal issues pending as described herein, could the Parties engage in the time-intensive pre-trial requirements including drafting and arguing jury instructions, evidentiary disputes over voluminous exhibits, deposition designations, motions in limini, preparing and entering the final pre-trial order and a lengthy and complex final pre-trial conference, in addition to the very considerable costs associated with trial.

A trial in this action would be lengthy and complex given the relevant factual and legal issues involved. Even assuming Plaintiffs prevailed at trial, it could be years before any Settlement Class member would receive any benefit given the likelihood of post-trial motions and appeals to follow. Alternatively, the Settlement provides substantial relief to the Settlement Class in a prompt and efficient manner. "Whatever the relative merits of the parties' positions, there is no such thing as risk-free, expense-free litigation." *IUE-CWA*, 238 F.R.D. at 596.

### 2.   The Extensive Discovery Engaged in by the Parties Favors Approval

Plaintiffs have conducted substantial discovery and developed extensive knowledge about the facts of the case. Discovery included written discovery, voluminous document productions from Wolverine, 3M, governmental agencies and third-parties, development of expert reports in multiple disciplines, depositions and briefing related to experts, depositions of fact witnesses of 3M, WWW, EGLE, and others, and numerous property inspections. The evidence developed from this discovery, coupled with analysis of the applicable legal issues, informed Class Counsel's ability to effectively evaluate the strengths and weaknesses of the case.

### 3.   The Settlement Agreement Was Achieved as a Result of Arm's-Length and Good Faith Negotiations Without Fraud or Collusion.

The Parties have been represented by experienced counsel—including Plaintiffs' representation by Class Counsel with substantial experience litigating environmental contamination, and other class action cases. The Settlement Agreement was achieved only after prolonged, difficult, and extensive arm's-length and good faith negotiations between the Parties with mediator the Honorable Gerald Rosen. There is nothing that could remotely be construed as fraud or collusion. *In re Teletronics Pacing*, 137 F. Supp. 2d at 1018 (citing NEWBERG ON CLASS ACTIONS § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."). Class Counsel and the Class Representatives have adequately represented the proposed Settlement Class. Class Counsel have litigated this case for nearly five years, working diligently to litigate the proposed Class's claims while simultaneously seeking relief through settlement negotiations. Class Counsel brought to bear significant experience in class action litigation generally, and environmental matters specifically. In Class Counsel's view, this resulted in the development of a strong case in a highly complex area involving multiple scientific disciplines.

34

Class Counsel believe that they have aggressively pursued and developed evidence related to each defendant's liability, by investing significant time and financial resources in the advocacy of this case.

The Settlement was the product of hard fought, arm's-length negotiations over an almost two-year period with the assistance of an experienced and qualified neutral mediator, the Hon. Ret. Judge Gerald Rosen. "The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties," and therefore "weighs in favor of approving the settlement." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007); *see also Garner*, 333 F.R.D. at 627 (noting that the "negotiations of the Settlement Agreement were conducted at arms-length by adversarial parties and experienced counsel, with facilitative assistance from Judge Roberts").

Further, the Court's appointment of Special Master Corodemus, an independent neutral, helps ensure that the Settlement and the Plan of Allocation and Subclass Allocation Grids are fair and equitable to all Class Members. Special Master Corodemus' Methodology and Plan of Allocation is an important due process step that provides Settlement Class Members a meaningful evaluation of their settlement benefits.

Finally, the Settlement Class and Subclass Representatives "have common interests with unnamed members of the class," and have "vigorously prosecute[d] the interests of the class through qualified counsel." *Vassalle*, 708 F.3d at 757 (internal quotation marks and citation omitted); *see also infra* Sections IV(A)(3) and (4) (addressing typicality and adequacy of proposed class representatives).

### 4.   The Likelihood of Success on the Merits Favors Approval

When evaluating the reasonableness of a class action settlement, courts consider "the risks, expense, and delay Plaintiffs would face if they continued to prosecute the complex litigation

35

through trial and appeal and weighs those factors against the amount of recovery provided to the Class in the Proposed Settlement." *Cardizem*, 218 F.R.D. at 523. A settlement is generally viewed favorably because "it avoids the costs, delays, and multitude of other problems associated with them." *See In re Telectronics Pacing*, 137 F. Supp. 2d at 1013 (citation and internal quotation marks omitted).

Here, but for the Settlement, the litigation would continue to be contested, and counsel for all Parties were committed to litigate this case through the class certification decision, potential interlocutory appeals, dispositive motions, expert motions, trial, and beyond, if necessary. Accordingly, there are substantial risks and costs if this action were to proceed. While Class Counsel believe that the Plaintiffs and Putative Class would ultimately prevail at trial, Class Counsel recognize that there are risks of seeking class certification in a contested proceeding and proving both liability and recoverable damages and seeking to maintain any such findings through appeals, and, based on these considerations, have concluded that the settlement is unquestionably fair, adequate, and reasonable. *See, e.g.*, *In re Packaged Ice*, 2011 WL 6209188, at *11 (finding that while plaintiffs may "remain optimistic about their ultimate chance of success . . . there is always a risk that Defendants could prevail with respect to certain legal of factual issues," which weighs in favor of approval of settlement). As such, avoiding unnecessary expense of time and resources clearly benefits all parties and the Court. *See Ford Motor Co.*, 2006 WL 1984363, at *24 ("The costs and uncertainty of lengthy and complex litigation weigh in favor of settlement."). Plaintiffs also faced significant, complex challenges to proximate causation, statutes of limitations and unique products liability challenges under Michigan law.

### 5.   Experienced Class Counsel's Opinions Favor Approval

In considering approval of a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties."

*Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006). Class Counsel here have extensive experience in handling class action cases generally and environmental contamination cases specifically. (Exhibits 4 and 5, Almonrode and Berezofsky Decls., respectively.) Class Counsel have thoroughly investigated and analyzed the claims alleged in this action. Based on this analysis and information garnered through discovery, Class Counsel believe that the proposed Settlement is fair and reasonable, and their opinion supports both preliminary (and final) approval of the Settlement. *See, e.g.*, *Dick v. Sprint Commc'ns Co.*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate[.]" (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010))); *accord In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

Class Counsel believe that the Settlement is an excellent result, particularly when weighed against the time, risks, and costs of continued litigation. Plaintiffs are optimistic about the likelihood of ultimate success in this case, but success is not certain. Over the past five years, this case has proceeded through extensive discovery and lengthy motion practice. Defendants are represented by experienced counsel, and undoubtedly would continue to deny Plaintiffs' allegations, contest class certification, liability, and damages, and appeal any contrary result. Weighing the settlement's benefits against the risks and costs of continued litigation tilts the scale toward approval. *See Garner*, 333 F.R.D. at 627 (granting preliminary approval of settlement "as fair, reasonable, and adequate because it provide[d] reasonable and adequate benefits to the Class Members and reflect[ed] the parties' informed judgment as to the likely risks and benefits of litigation").

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem*, 218 F.R.D. at 523 (quoting *Williams*, 720 F.2d at 922 (6th Cir. 1983)). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are inherently complex. 4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2020) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."); *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding this factor counseled in favor of settlement in a case where trial "most likely would have been a lengthy proceeding involving complex scientific proof").

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (quoting *Rankin*, 2006 WL 1876538, at *3). Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight and supports the fairness of the class settlement.'" *In re Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date*, 2013 WL 3945981, at *9 (quoting *Williams*, 720 F.2d at 922-23). Class Counsel's extensive experience in handling class actions of this complex nature, and contention of the Settlement's adequacy, further counsels in favor of preliminary approval.

**6.   The Settlement Is Fair to Absent Class Members**

This factor evaluates whether the settlement "appears to be the result of arm's length negotiations between the parties and fairly resolves all claims which were, or could have been, asserted." *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) (internal citation omitted). As set forth above, the Settlement Agreement was reached only after multiple arm's-length mediation sessions and extensive settlement discussions over several years. The resulting Settlement Agreement provides fair terms to all Settlement Class Members. Moreover, the Release in this case is narrowly tailored and extends only to claims that were or could have been asserted in this case pertaining to:

> i) the subject matter of any allegations contained in the Complaints as well as any allegations otherwise asserted in the Action, or any discovery sought in connection with the Action, (ii) the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in Settlement Class Members' drinking water, groundwater, surface water, municipal water, private well water, soil, or air within the North Kent Study Area; (iii) the sale, purchase, use, handling, transportation, release, discharge, migration, emission, spillage, or disposal of PFAS (including PFOS, PFOA, and/or PFHxS) to, at, or from the Facilities, including any such PFAS (including PFOS, PFOA, and/or PFHxS) present as a result of disposal at or discharge by Defendants to, directly or indirectly, any landfill or disposal area, or any other location in, or from which migration has allegedly occurred into the North Kent Study Area, and/or resulting in any alleged contamination of any Eligible Property with PFAS (including PFOS, PFOA, and/or PFHxS); (iv) for any type of relief with respect to the acquisition, installation, maintenance, operation, or presence of, including the cost or purported inconvenience or loss of enjoyment of, property associated with whole-house filters, point-of-entry filters, point-of-use filters, municipal water, private well water, bottled water, alternative water supplies, or remediation; (v) for property damage or property-value diminution, including without limitation stigma, purportedly attributable to the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in the North Kent Study Area and/or (vi) PFAS (including PFOS, PFOA, and/or PFHxS) in the blood or tissue of any Settlement Class Member (the "**Released Claims**").

(Exhibit 1, SA at § 7.b.)[10]

---

[10] Released Claims exclude any individual claims of the Release Parties (a) for any damages (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries, (b) for any emotional distress claims asserted in the

The narrowly tailored and specific Release, in addition to the well-defined exclusions listed in footnote 10, prevents the risk of potential unfairness to absent class members.[11]

## VI.    THE FORM AND MANNER OF NOTICE ARE PROPER

The 2018 amendments to Federal Rule of Civil Procedure 23 provide that, "upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement.

Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or

---

future, but such emotional distress claims are reserved only if they (i) are distinct from the emotional distress claims alleged or that could have been alleged on Releasing Parties' behalf in the Action (*e.g.*, aggravation or continuation of past or existing emotional distress is not reserved, nor is emotional distress arising solely from Releasing Parties' exposure to PFAS in drinking water, but emotional distress arising solely from personal injuries that Releasing Parties may develop in the future as a result of their PFAS exposure are reserved) and (ii) allegedly arise from PFAS exposure claimed to be wholly or partially attributable to Wolverine or 3M and alleged contamination of their current property or drinking water that is subject of this matter; (c) for enforcement of Releasing Parties' rights (if any) under the EGLE/Wolverine Consent Decree; and (d) for enforcement of the terms of this Agreement or the Final Approval Order. For purposes of this Agreement, "manifested bodily injuries" do not include the presence of PFAS (including PFOS, PFOA, and/or PFHxS) in blood or other bodily tissue. (Exhibit 1, SA at § 7.b.)

[11] The seventh factor evaluated by the Sixth Circuit, whether the settlement supports public interest, is addressed in the 23(a)(2) factors above.

defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who validly requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). *See* Fed. R. Civ. P. 23(c)(2)(B).

### A.   The Proposed Notice and Dissemination Plan Fully Describes the Class Settlement and Is Designed to Reach as Many Potential Participants as Possible

The proposed long and short form Notices attached as Exs. D and E, respectively, to the Settlement Agreement (collectively "Notice"), meet the Rule 23(e)(1) requirements, satisfying the *UAW* factors noted above. The Notice clearly and concisely summarizes the Settlement, the available benefits, the actions that potential eligible participants must take to participate in the Settlement, and the relevant deadlines. (*See* Exs. D and E to SA.) It lays out the Settlement Class and Subclass definitions and explains that Settlement Class Members may request exclusion from the Settlement, or may enter an appearance through counsel. (*Id.*) Likewise, the Notice describes other procedural rights available to members of the proposed Settlement Class. (*Id.* (explaining registration and claims process)). The Notice also directs recipients to a Settlement Website dedicated specifically to the Settlement where they can access additional information. (*Id.*)

Angieon Group, an experienced claims administrator, will manage notice for the Settlement. The Notice Plan includes both individual mailed Notice and a local media plan in order to reach the broadest number of Settlement Class Members. (Ex. G to SA, Angieon Decl. ¶ 12.) Prior to mailing Notice, Angieon Group will confirm all known addresses to the best of its ability using the National Change of Address database to verify the accuracy of the addresses. (*Id.*, ¶ 14.) Notices returned as undeliverable will be re-mailed to any new address available through postal service information and notices returned by USPS without forwarding addresses will be subjected to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety

of data sources, including public records, real estate records, electronic directory assistances. (*Id.*, ¶¶ 15-16.) Notice will also be mailed to any person who requests one through a toll-free phone number or by mail and will be available on the Website. (*Id.*, ¶ 12.)

In addition, Angieon Group will spearhead a multiple platform outreach campaign designed to inform all potential Eligible Class Members about the Settlement, through targeted internet advertising, social media campaigns utilizing Facebook and Instagram, a paid Google search campaign to drive Settlement Class Members to the dedicated Settlement Website and publication notices in local newspapers to further disseminate notice. (*Id.*, ¶¶ 18-27.) The Notice and Notice Plan are calculated to inform as many potential Class Members as possible of their rights under the Settlement Agreement, and are therefore fair, reasonable, and adequate.

A proposed timeline for Notice and final approval is provided in the Proposed Preliminary Approval Order submitted alongside this motion and brief as Exhibit 2.

## VII. THE COURT SHOULD APPOINT CLASS COUNSEL

Proposed Class Counsel, who have served as Interim Co-Lead Class Counsel, are highly qualified, experienced, and able to prosecute the litigation. *Potter v. Blue Cross Blue Shield of Michigan*, 2011 WL 9378789, at *7 (E.D. Mich. July 14, 2018) (adequacy met by "experienced attorneys who have in the past successfully litigated the very same claims at issue here"). This Court recognized as much in appointing Interim Co-Lead Class Counsel, Ms. Berezofsky and Ms. Almonrode, and a Plaintiffs' Steering Committee. ECF No. 198, PageID.6689. Interim Co-Lead Counsel and the Plaintiffs' Steering Committee are highly experienced litigators who specialize in complex class action litigation and who have achieved large settlements for their clients. (ECF Nos. 167, 230.) Counsel have already expended thousands of hours of work in the prosecution of this case—and are prepared to efficiently and aggressively proceed with the case until its

conclusion. Proposed Co-Lead Class Counsel and the Proposed Plaintiffs' Steering Committee satisfy the Rule 23(g) factors. (Exhibits 4 and 5, Almonrode and Berezofsky Decls., respectively.)

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Grant preliminary approval of the proposed class action Settlement;

2. Preliminarily certify, for settlement purposes only, and pursuant to the terms of the Settlement Agreement, the proposed Settlement Class for the purposes of providing notice to the Members of the proposed Settlement Class, approving the form and content and directing the distribution of the proposed Class Notice, attached to the Settlement Agreement as Exhibits 1 and 2;

3. Authorize and direct the Parties to retain Angeion Group, LLC as the General Administrator;

4. Appoint Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Terry VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Rosalyn Ingham, Paul Groenendal, Nancy James, individually and as Trustee of the James Nancy I Trust, and Theodore James as Settlement Class Representatives and appointing the following as Settlement Subclass Representatives:

   a. Appoint Therese Cooper, Michelle VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust) and Terry VanWuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Malia and Dennis Gregory, Michael and Megan Johns as Settlement Subclass 1 Representatives.

    b.   Appoint Rosalyn Ingham as Settlement Subclass 2 Representative; and;

    c.   Appoint Paul Groenendal, Nancy James, individually and as Trustee of the James Nancy I Trust, and Theodore James as Settlement Subclass 3 Representatives.

6.   Appoint Esther Berezofsky of Motley Rice, LLC and Sharon Almonrode of the Miller Law Firm, P.C. as Co-Lead Class Counsel;

7.   Approve the proposed Methodology and Plan of Allocation attached as Ex. H to the SA.

8.   Schedule a date for the Final Approval Hearing not earlier than 195 days after Preliminary Approval is granted.


Dated: September 15, 2022

Respectfully submitted,

*/s/ Sharon S. Almonrode*
Sharon S. Almonrode (P33938)
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
Dennis A. Lienhardt (P81118)
William Kalas (P82113)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
ssa@millerlawpc.com
epm@millerlawpc.com
eeh@millerlawpc.com
dal@millerlawpc.com
wk@millerlawpc.com

*Interim Co-Lead Counsel*

Esther Berezofsky (P00148)
Sarah Hansel (P00152)
**MOTLEY RICE, LLC**
210 Lake Drive East, Ste. 101
Cherry Hill, NJ 08002
Telephone: (856) 667-0500
eberezofsky@motleyrice.com
shansel@motleyrice.com

Anne McGinness Kearse
T. David Hoyle
Fidelma L. Fitzpatrick
**MOTLEY RICE, LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9140

*Interim Co-Lead Counsel*

Dorothy P. Antullis
Mark J. Dearman

**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
dantullis@rgrdlaw.com
mdearman@rgrdlaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
**WEITZ & LUXENBERG, P.C.**
719 Griswold, Suite 620
Detroit, MI 48226
Telephone: 313/800-4170
pnovak@weitzlux.com
dgjonaj@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5642
rgreenwald@weitzlux.com

Kara A. Elgersma
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Dr., Ste. 5450
Chicago, IL 60606
Telephone: (312) 346-2222

Robert Palmer (P31704)
Megan A. Bonanni (P52079)
**PITT, MCGEHEE, PALMER & RIVERS, PC**
117 West 4th Street, Ste. 200
Royal Oak, MI 48067
Telephone: (248) 398-9800

Jason J. Thompson (P47184)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300

45

jthompson@sommerspc.com

Alistair J. M. Findeis
**NAPOLI, SHKOLNIK, LLC**
360 Lexington Ave., 10th Fl.
New York, NY 10019
Telephone: (212) 397-1000
afindeis@NapoliLaw.com

*Interim Plaintiffs' Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2022, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

<u>/s/ Sharon S. Almonrode</u>
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
ssa@millerlawpc.com
