# Exhibit 1

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BEVERLY ZIMMERMAN, et al., *on behalf
of themselves and all others similarly
situated*,

             Plaintiffs,

    v.

THE 3M COMPANY f/k/a Minnesota
Mining and Manufacturing Co., et al.,

             Defendants.

Case No. 1:17-cv-1062
HON. HALA Y. JARBOU

---

## CLASS SETTLEMENT AGREEMENT

This Class Settlement Agreement is entered into as of the 14th day of September, 2022, by, between and among Plaintiffs, on behalf of themselves and the Settlement Class Members, by and through Class Counsel, and Defendants, by and through their counsel of record in this Action.

## RECITALS

WHEREAS, Plaintiffs have asserted claims against Defendants in this Action on behalf of putative classes of owners and residents of real property in the North Kent Study Area (also known as the "NKSA") including, inter alia, a putative class of owners of real property as of November 1, 2017 that were not supplied with drinking water from a municipal water source as of November 1, 2017;

WHEREAS, Plaintiffs allege that Defendants are liable under several tort theories for various damages and other relief based on the presence of PFAS in private wells, drinking water, and/or on or at their properties;

WHEREAS, Plaintiffs allege that PFAS detected in private wells was released from Wolverine's operations and/or Wolverine's disposal of PFAS-containing wastes or materials in the vicinity of the North Kent Study Area, allegedly including, but not limited to, the House Street Disposal Site, the Wolverine Tannery, the North Kent Landfill, the Northeast Gravel/Boulder Creek landfill, and the Wellington Ridge/Wolven Jewell area;

WHEREAS, Plaintiffs allege that 3M manufactured certain PFAS-containing products supplied to Wolverine for use in Wolverine's operations;

1

WHEREAS, Defendants have denied and continue to deny Plaintiffs' allegations, any alleged wrongdoing in connection with any PFAS present in any environmental media in the North Kent Study Area, on or at Plaintiffs' properties, or in Plaintiffs' persons, and any liability in connection with Plaintiffs' claims; dispute the factual, legal, scientific, and other bases for Plaintiffs' claims and the appropriateness of certifying any putative class for litigation; and maintain that they have meritorious defenses to class certification and to the claims of liability, damages, and injunctive relief asserted by Plaintiffs; and

WHEREAS, after carefully considering the facts and applicable law and the risks, costs, delay, inconvenience, and uncertainty of continued and protracted litigation, and after engaging in extensive, arm's-length negotiations with the assistance of a mediator, the Parties desire to settle the Action and the related claims of Plaintiffs and the Settlement Class on the terms and conditions stated herein, which Plaintiffs and Class Counsel believe are fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class Members;

NOW THEREFORE, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23, the Parties hereby agree that, in consideration of the promises and mutual covenants set forth in this Agreement and upon occurrence of the Effective Date, the Action and the related claims of Plaintiffs and the Settlement Class shall be settled, compromised, dismissed on the merits and with prejudice, and released as to Defendants on the following terms and conditions:

1.    **Definitions**

In addition to the terms defined at various points within this Agreement, the following defined terms shall apply throughout this Agreement:

    a.    "**3M**" means The 3M Company.

    b.    "**Action**" means the putative consolidated class action lawsuit captioned *Zimmerman et al. v. The 3M Company et al.*, No. 1:17-cv-1062, currently pending in the Court, including without limitation Nos. 1:18-cv-1302 and 1:19-cv-0379.

    c.    "**Agreement**" or "**Settlement Agreement**" means this Class Settlement Agreement between and among Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants, including all exhibits and addenda thereto, and the supplemental agreement identified in Section 20 herein.

    d.    "**CAFA Notice**" means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b) and in accordance with Section 11 of this Agreement.

    e.    "**Claim Form**" means the form in substantially the same form as Exhibit A to this Agreement that must be completed by any Person seeking to receive payment as a Settlement Class Member.

    f.    "**Claimant**" means any Person who submits a Claim Form to the General Administrator.

g.      "**Claim Deadline**" means the deadline set by the Court to submit a Claim Form or, if the Court sets no such deadline, ninety (90) days after the Notice Date.

h.      "**Class Counsel**" means:

> Esther Berezofsky
> **MOTLEY RICE, LLC**
> 210 Lake Drive East, Suite 101
> Cherry Hill, NJ 08002
> Telephone: (856) 382-4667
> eberezofsky@motleyrice.com
>
> Sharon S. Almonrode
> **THE MILLER LAW FIRM, P.C.**
> 950 W. University Dr., Suite 300
> Rochester, MI 48307
> Telephone: (248) 841-2000
> ssa@millerlawpc.com

as counsel for Plaintiffs and in their capacity as Interim Co-Lead Class Counsel appointed by the Court pursuant to its June 4, 2020 order.

i.      "**Class Counsel Fee and Costs Amount**" means the amount of reasonable attorneys' fees and costs that the Court awards to Class Counsel in the Final Approval Order, which Defendants will pay to Class Counsel in cash thirty (30) days after Final Approval notwithstanding any Objections to or potential for appeal from the Final Approval Order.  The Class Counsel Fee and Costs Amount shall be deducted from Defendants' Total Settlement Payment.

j.      "**Class Counsel Fee and Costs Award**" means the Court's grant of reasonable attorneys' fees to Class Counsel in the Final Approval Order.

k.      "**Class Notice**" means the notice of the Settlement that will be provided to prospective Settlement Class Members in accordance with Section 12 of this Agreement.

l.      "**Class Representatives**" means Therese Cooper, Dennis Gregory, Malia Gregory, Paul Groenendal, Rosalyn Ingham, Nancy James (individually and as trustee of the Nancy I. James Trust), Theodore James, Megan Johns, Michael Johns, Michelle Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust), and Terry Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust).

m.      "**Complaints**" means the Second Amended Complaint (ECF No. 197) and the Proposed Third Amended Complaint (ECF No. 297-3).

n.     "**Court**" means the United States District Court for the Western District of Michigan, the Honorable Hala Y. Jarbou (or any judge who is subsequently assigned to the Action) presiding.

o.     "**Defendant**" means either one of Wolverine and 3M.

p.     "**Defendants**" means both of Wolverine and 3M.

q.     "**Effective Date**" means the date on which the last of the following has occurred: (i) thirty (30) days following the expiration of the deadline for appealing the Final Approval Order, if no timely appeal is filed; (ii) if an appeal of the Final Approval Order is taken, the date upon which all appeals (including any requests for rehearing or other appellate review), as well as all further appeals therefrom (including all petitions for certiorari), have been finally resolved without the Final Approval Order having been materially changed, reversed, vacated, or otherwise overturned in whole or in part, such that no future appeal is possible; or (iii) such date as the Parties otherwise agree in writing.

r.     "**EGLE**" means the Michigan Department of Environment, Great Lakes, and Energy.

s.     "**EGLE/Wolverine Consent Decree**" means the consent decree entered by the United States District Court for the Western District of Michigan in case number 1:18-cv-00039 on February 3, 2020.

t.     "**Eligible Property**" means Real Property located in the North Kent Study Area that is or was owned by a Claimant as of November 1, 2017, and did not obtain drinking water from a municipal water source as of November 1, 2017.

u.     "**Enrollment Period**" means the period within which potential Settlement Class Members must submit a Claim Form and any supporting documentation so that the General Administrator may determine whether they are eligible to receive payment as Settlement Class Members.  The Enrollment Period shall commence on the Notice Date and shall conclude on the Claim Deadline.  Claim Forms postmarked on the Claim Deadline shall be deemed timely filed.

v.     "**Escrow Account**" means the account established and administered by the Escrow Agent, into which the $1,000,000 Preliminary Settlement Fund Payment will be deposited.  After Defendants make the Final Settlement Fund Payment, the Escrow Account shall be referred to as the Settlement Fund.

w.     "**Escrow Agent**" means the General Administrator or a financial institution retained by the General Administrator to serve as an escrow agent for the Escrow Account and the Settlement Fund.

x.     "**Excluded Persons**" means (i) any Person who has timely and validly excluded himself, herself or itself from the Settlement Class, in accordance with Section 13 of this Agreement; (ii) any Person (other than Plaintiffs) who has previously filed

4

a claim against any Defendant alleging a PFAS-related injury or illness, including without limitation a spousal derivative claim, or seeking medical monitoring or property damages, related to the presence of PFAS in any environmental media or drinking water in the North Kent Study Area, on or at their property in the North Kent Study Area, and/or in their persons, including without limitation the claims filed in the consolidated litigation captioned *In re Nylaan Litigation*, No. 17-10176 CZ, in the Circuit Court for the County of Kent, Michigan, excluding any previous Plaintiffs to this Action who were dismissed without prejudice under Federal Rule of Civil Procedure 41; (iii) Defendants, any entity or division in which any Defendant has a controlling interest, Defendants' respective legal representatives in this Action, and their respective officers, directors, assigns and successors; (iv) the judge to whom this Action is assigned, any member of the judge's immediate family and the judge's staff, or any other judicial officer or judicial staff member assigned to this case; (v) any Class Counsel, including their partners, members, and shareholders, and any immediate family members of Class Counsel; (vi) any State, including without limitation the United States, or any of its agencies; and (vii) Plainfield Township, Algoma Township, or any other local governmental entity or agency or public or quasi-public entity.

y.      "**Execution Date**" means the date on which the last of Plaintiffs, Class Counsel, Wolverine, and 3M executes this Agreement.

z.      "**Facility**" shall have the same meaning as set forth in 42 U.S.C. § 9601(9) and/or the Natural Resources and Environmental Protection Act, Michigan Compiled Laws, Section 324.20101(1)(s), and shall include, but not be limited to, the House Street Disposal Area, located at 1855 House Street NE, Belmont, MI, 49306; the former Wolverine Tannery, located at 123 North Main Street, Rockford, MI 49341; the alleged former disposal site located in the Wolven/Jewell area north of 10 Mile Road in Algoma Township; the Northeast Gravel/Boulder Creek Landfill, the North Kent Landfill, and any other alleged disposal site.

aa.     "**Final Approval**" means the date that the Court enters the Final Approval Order.

bb.     "**Final Approval Hearing**" means the hearing at which the Court will consider whether to give final approval to the Settlement and make such other rulings as are contemplated in the Final Approval Order, including determining the amount of attorneys' fees and costs awarded to Class Counsel, any General Settlement Administration Costs, and the amount of any Service Awards to the Plaintiffs.

cc.     "**Final Approval Order**" means the Court's order (i) granting final approval to the Settlement; (ii) directing that the Agreement be implemented in accordance with its terms; (iii) dismissing the Action as against each of Defendants with prejudice, and without costs; (iv) directing entry of a final judgment as to Defendants; (v) ruling that each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims; (vi) barring each of the Releasing Parties from asserting any of the Released Claims against any of the Released Parties; (vii) barring claims by any

Person against the Released Parties for contribution or similar claims (however denominated, including without limitation if denominated as claims for indemnification) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise; (viii) releasing the Releasing Parties from all claims and causes of action arising out of the institution, prosecution or settlement of the Action; (ix) finding that each of Defendants has complied with and otherwise discharged its obligations under the Class Action Fairness Act, 28 U.S.C. § 1715(b); (x) awarding any attorneys' fees, costs, and expenses payable in connection with the Settlement or the Action; (xi) finding that the Class Notice complied with Federal Rule of Civil Procedure 23 and the U.S. Constitution; (xii) establishing and approving the Settlement Fund; and (xiii) reserving exclusive and continuing jurisdiction over the Settlement Fund and the interpretation, performance, implementation, administration, and enforcement of this Agreement and the Court's orders in the Action.  The Final Approval Order will be proposed in substantially the same form as agreed upon by the Parties and attached as an exhibit to Plaintiffs' motion for preliminary approval of the Settlement.

dd.  "**Final Settlement Fund Payment**" means the payment by Defendants after the Effective Date.  The amount of the Final Settlement Fund Payment will be the Total Settlement Payment less (i) the Preliminary Settlement Fund Payment and (ii) the Class Counsel Fee and Costs Amount.

ee.  "**General Administrator**" means Angeion Group, LLC ("Angeion"), the claims administrator for the Settlement Class.  The General Administrator will also be responsible for performing duties related to dissemination of Class Notice, administering the Escrow Account and Settlement Fund, and administering the Settlement in accordance with this Agreement.  Class Counsel and Defendants may, by agreement, substitute a different organization as General Administrator, subject to approval by the Court if the Court has previously entered the Preliminary Approval Order or Final Approval Order.  In the absence of agreement, either Class Counsel or any Defendant may move the Court to substitute a different organization as General Administrator, upon a showing that the responsibilities of the General Administrator have not been adequately executed by the incumbent.

ff.  "**General Settlement Administration Costs**" means the costs and fees of the General Administrator to effectuate the Notice Program and to administer the Settlement.

gg.  "**Net Settlement Fund**" means the portion of the Settlement Fund available for payment to the Settlement Class Members (in accordance with this Agreement) after the payment of any General Settlement Administration Costs, attorneys' fees, any tax-related expenses, any Court-approved Service Award to the Plaintiffs, and other costs and expenses payable from the Settlement Fund.

hh.  "**North Kent Study Area**" means the area which is depicted in the map attached as Exhibit B, including, but not limited to, all those properties listed in Exhibit C. This may alternatively be referred to as "NKSA".

ii.  "**Notice Date**" means the deadline set by the Court by which the General Administrator must send the Notice Form to Settlement Class Members or, if the Court sets no such deadline, thirty (30) calendar days after Preliminary Approval.

jj.  "**Notice Form**" or "**Notice Forms**" means either or both forms of notice as the case may be: the long Notice Form that shall be posted on the Settlement Website created by the General Administrator, and the short Notice Form to be provided by mail to the Settlement Class Members.  The Notice Forms are attached hereto as Exhibit D (long Notice Form) and Exhibit E (short Notice Form).

kk.  "**Notice Program**" means the methods provided for in Section 12 of this Agreement for giving notice to potential Settlement Class Members.

ll.  "**Objection**" means a challenge to the Settlement asserted by a Settlement Class Member pursuant to Section 14 of this Agreement.

mm.  "**Objection Deadline**" means the deadline to submit an Objection set by the Court or, if the Court sets no such deadline, forty-five (45) days after the Notice Date.

nn.  "**Opt Out**" means the choice of a Settlement Class Member to exclude himself, herself, or itself (in an individual or representative capacity, as appropriate) from the Settlement in accordance with Section 13 of this Agreement.

oo.  "**Opt Out Deadline**" means the deadline to Opt Out set by the Court or, if the Court sets no such deadline, forty-five (45) days after the Notice Date.

pp.  "**Parties**" means all of the Plaintiffs, on behalf of themselves and the Settlement Class Members, and both of Wolverine and 3M.

qq.  "**Party**" means any one of the Plaintiffs or any one of Wolverine and 3M.

rr.  "**Person**" means a natural person, guardian, corporation, professional corporation, association, limited liability company, limited company, partnership, limited partnership, joint venture, affiliate, joint-stock company, estate, legal representative, trust, trustee, proprietorship, any other type of private entity, states, counties, municipalities, any other public or quasi-public entity, or their respective spouses, heirs, predecessors, successors, executors, administrators, representatives, or assigns.

ss.  "**PFAS**" means, for purposes of this Agreement only, any fluorinated organic substance that contains one or more carbon atoms on which at least one of the hydrogen substituents has been replaced by a fluorine atom.  For purposes of this Agreement, the definition of "PFAS" is intended to be as broad and inclusive as possible and includes, without limitation, all per- and poly-fluoroalkyl substances and their chemical precursors and degradants, including PFOA, PFOS, and PFHxS and any other PFAS compound regulated by EGLE or the U.S. Environmental Protection Agency, as well as all products manufactured with or containing such substances, their precursors, or their degradants.

tt.  "**PFHxS**" means, for purposes of this Agreement only, perfluorohexanesulfonic acid and all its chemical precursors and degradants. For purposes of this Agreement, the definition of "PFHxS" is intended to be as broad and inclusive as possible and includes, without limitation, all PFHxS-containing substances and all products manufactured with or containing such substances, their precursors, and their degradants.

uu.  "**PFOA**" means, for purposes of this Agreement only, perfluorooctanoic acid and all its chemical precursors and degradants. For purposes of this Agreement, the definition of "PFOA" is intended to be as broad and inclusive as possible and includes, without limitation, all PFOA-containing substances and all products manufactured with or containing such substances, their precursors, and their degradants.

vv.  "**PFOS**" means, for purposes of this Agreement only, perfluorooctanesulfonic acid and all its chemical precursors and degradants. For purposes of this Agreement, the definition of "PFOS" is intended to be as broad and inclusive as possible and includes, without limitation, all PFOS-containing substances and all products manufactured with or containing such substances, their precursors, and their degradants.

ww.  "**Plaintiffs**" means any of Therese Cooper, Dennis Gregory, Malia Gregory, Paul Groenendal, Rosalyn Ingham, Nancy James (individually and as trustee of the Nancy I. James Trust), Theodore James, Megan Johns, Michael Johns, Michelle Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust), and Terry Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust).

xx.  "**Plan of Allocation Methodology**" means the procedure by which distribution of the Settlement Class Member Payments will be made, attached as Exhibit H. The following definitions shall also apply to the Plan of Allocation Methodology and the Settlement Agreement:

i.  "**MCLs**" shall mean the Drinking Water Maximum Contaminant Levels regulated by Michigan Regulation 325.10604g. Michigan Regulation 325.10604g, as of July 1, 2022, shall govern the determination of whether the property is contaminated with a regulated PFAS substance. Michigan Regulation 325.10604g provides the following MCLs:

| Contaminant | Maximum Contaminant Level in ng/l |
|---|---|
| Hexafluoropropylene oxide dimer acid (HFPO-DA) | 370 |
| Perfluorobutane sulfonic acid (PFBS) | 420 |
| Perfluorohexane sulfonic acid (PFHxS) | 51 |

| Perfluorohexanoic acid (PFHxA) | 400,000 |
|---|---|
| Perfluorononanoic acid (PFNA) | 6 |
| Perfluorooctane sulfonic acid (PFOS) | 16 |
| Perfluorooctanoic acid (PFOA) | 8 |

ii. "**Regulated PFAS**" shall mean the seven PFAS compounds regulated under Michigan Regulation 325.10604g.  The 7 PFAS compounds are: PFOS, PFOA, PFBS, PFHxS, PFHxA, PFNA & HFPO-DA.

iii. "**Above MCLs & Combined Regulated PFAS > 500 ppt**" shall mean Eligible Properties where the highest recorded level of Regulated PFAS in drinking water exceeds 500 parts per trillion ("ppt"), combined.

iv. "**Above MCLs & Combined Regulated PFAS < 500ppt**" shall mean Eligible Properties where the highest recorded level of Regulated PFAS in drinking water is below or equal to 500 ppt, combined.

v. "**Below MCLs**" shall mean Eligible Properties with detectable levels of PFAS in drinking water (i.e., above 0 ppt) but where no Regulated PFAS ever tested above the MCLs.

vi. "**ND**" or "**Non-Detect**" shall mean Eligible Properties where testing has shown no detectable levels of any PFAS compound.

vii. "**On Municipal Water**" shall mean Eligible Properties that have been, or are scheduled to be, connected to municipal water pursuant to the EGLE/Wolverine Consent Decree.

viii. "**Properties on Well Water with Long-Term Filters subject to Consent Decree**" shall mean Eligible Properties that were offered or received drinking water filtration systems from Wolverine pursuant to the EGLE/Wolverine Consent Decree.

ix. "**Properties on Well Water with No Long-Term Filters Maintained subject to Consent Decree**" shall mean Eligible Properties that were not offered and did not receive drinking water filtration systems from Wolverine pursuant to the EGLE/Wolverine Consent Decree.

x. "**Vacant Or Not Tested**" shall include Eligible Properties, including vacant land, that could not be tested due to (1) lack of a drinking water well; (2) double/adjoining lots without drinking water wells; (3) properties where home owners declined sampling requests; (4) properties where home owners failed to respond to sampling requests; (5) properties that could not be sampled due to an inactive well; and (6) properties that were not sampled because they were outside of the sampling area, but that are eligible for municipal water pursuant to the EGLE/Wolverine Consent Decree.

xi. "**Resident**" shall mean an individual whose primary domicile was the Eligible Property for more than six continuous months and who lived at the Eligible Property as of November 1, 2017.

xii. "**Appeal Procedure to Special Master for Certain Settlement Subclass 1 and Settlement Subclass 2 Class Members**" means the process by which claimants who claim to be members of Settlement Subclass 1: Municipal Water Extension or Settlement Subclass 2: Filtration Systems and whose properties had total regulated PFAS levels above the MCL can appeal their allocation amount to the Special Master as described in Section 5 below.

yy. "**Preliminary Administrative Expenses**" means any expenses necessary to obtaining final approval of the Settlement after the Preliminary Approval Order, including, but not limited to, expenses and costs associated with providing Class Notice, determining class member eligibility, processing requests to Opt Out and Objections, and establishing a qualified settlement fund within the meaning of 26 C.F.R. § 1.468B-1(a) and (c).

zz. "**Preliminary Approval**" means the date that the Court enters the Preliminary Approval Order.

aaa. "**Preliminary Approval Order**" means the Court's order (i) granting preliminary approval to the Settlement; (ii) approving the Notice Program and Notice Form; (iii) finding that it will be likely to certify the Settlement Class and Settlement Subclasses under Federal Rule of Civil Procedure 23; (iv) appointing Plaintiffs as class representatives; (v) appointing Class Counsel to represent the Settlement Class; and (vi) setting the Opt Out Deadline, the Objection Deadline, the date and time for the Final Approval Hearing, and other appropriate deadlines; which order will be proposed in substantially the same form as Exhibit F and as agreed upon by the Parties.

bbb. "**Preliminary Settlement Fund Payment**" means the payment for Preliminary Administrative Expenses by Defendants after Preliminary Approval. The amount of the Preliminary Settlement Fund Payment shall be deducted from Defendants' Total Settlement Payment. Any unused portion of this fund shall become part of the Settlement Fund upon final approval of the Settlement, or in the case of termination in accordance with Section 19, shall be returned to Defendants.

ccc. "**Proposed Third Amended Complaint**" means the Proposed Third Amended Consolidated Class Action Complaint filed in the Action (ECF No. 297-3) on September 2, 2021.

ddd. "**Real Property**" means private structures and real property zoned for residential, industrial or commercial purposes and shall include vacant land, but excludes properties utilized for industrial purposes.

eee. "**Released Claims**" shall have the meaning set forth in Section 7(b) of this Agreement.

10

fff.   "**Released Parties**" means Defendants and their current, former, and future direct and indirect parents, subsidiaries, divisions, affiliates, affiliated business entities, joint ventures, successors, and predecessors; and all of their current, former, and future agents, employees, officers, directors, partners, shareholders, owners, members, promoters, representatives, distributors, trustees, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity.

ggg.   "**Releasing Parties**" means the Plaintiffs and all other Settlement Class Members and any Person or entity with the right, capacity, or obligation to assert any claim by, on behalf of, for the benefit of, or derived from any alleged damage or injury to the Settlement Class Members, including without limitation any guardians, next friends, trusts, corporate parents, subsidiaries, divisions, affiliates, affiliated business entities, predecessors, successors, and all of their current or former agents, employees, officers, directors, partners, shareholders, owners, members, promoters, representatives, trustees, executors, heirs, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity who does not Opt Out.  Notwithstanding that the United States government is excluded from the Settlement Class, with respect to any Settlement Class Member that is a government entity, Releasing Parties includes any Settlement Class Member as to which the government entity has the legal right to release such claims.

hhh.   "**Service Award**" means any Court-approved payment to Plaintiffs for serving as class representatives, which is in addition to any Settlement Class Member Payment.

iii.   "**Settlement**" means the settlement and compromise reflected in this Agreement.

jjj.   "**Settlement Class**" means the putative class consisting of all Persons who are or were owners of Real Property located within the North Kent Study Area, who owned that property as of November 1, 2017, and who were not supplied with drinking water from a municipal water source as of November 1, 2017; provided, however, that the "Settlement Class" shall not include Excluded Persons.  The Settlement Class consists of three settlement subclasses: Settlement Subclass 1: Municipal Water Extension; Settlement Subclass 2: Filtration Systems; and Settlement Subclass 3: Other.

kkk.   "**Settlement Class Member**" means any member of the putative Settlement Class who has not timely and validly excluded himself, herself, itself or themself from the Settlement Class, in accordance with Section 13 of this Agreement.

lll.   "**Settlement Class Member Payment**" means the cash distribution that will be made from the Net Settlement Fund to each Settlement Class Member pursuant to the allocation terms of the Settlement.

mmm. "**Settlement Fund**" means the common fund or account established pursuant to and approved by an order of the Court to resolve and satisfy the Released Claims as a qualified settlement fund within the meaning of 26 C.F.R. § 1.468B-1(a) and (c), to receive the Total Settlement Payment, including any unused portion of the Preliminary Settlement Fund Payment, and to make payments authorized by this Agreement.

nnn. "**Settlement Subclass 1: Municipal Water Extension**" means the putative subclass of the Settlement Class consisting of all Settlement Class Members who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017, and were transitioned to municipal water, or are scheduled to transition to municipal water, under the EGLE/Wolverine Consent Decree.

ooo. "**Settlement Subclass 1: Municipal Water Extension Member**" means any member of Settlement Subclass 1: Municipal Water Extension who has not timely and validly excluded himself, herself, itself, or themself from Settlement Subclass 1: Municipal Water Extension, in accordance with Section 13 of this Agreement.

ppp. "**Settlement Subclass 2: Filtration Systems**" means the putative subclass of the Settlement Class consisting of all Settlement Class Members who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017, and were offered or received a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree to treat their well-sourced water and who are not members of Settlement Subclass 1: Municipal Water Extension.

qqq. "**Settlement Subclass 2: Filtration Systems Member**" means any member of Settlement Subclass 2: Filtration Systems who has not timely and validly excluded himself, herself, itself, or themself from Settlement Subclass 2: Filtration Systems, in accordance with Section 13 of this Agreement.

rrr. "**Settlement Subclass 3: Other**" means the putative subclass of the Settlement Class consisting of all Settlement Class Members who are not in Settlement Subclass 1: Municipal Water Extension or Settlement Subclass 2: Filtration Systems and who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017.

sss. "**Settlement Subclass 3: Other Member**" means any member of Settlement Subclass 3: Other who has not timely and validly excluded himself, herself, itself, or themself from Settlement Subclass 3: Other, in accordance with Section 13 of this Agreement.

ttt. "**Settlement Subclass**" means any of Settlement Subclass 1: Municipal Water Extension; Settlement Subclass 2: Filtration Systems; and Settlement Subclass 3: Other.

uuu. "**Settlement Subclasses**" means all of Settlement Subclass 1: Municipal Water Extension; Settlement Subclass 2: Filtration Systems; and Settlement Subclass 3: Other.

vvv. "**Settlement Website**" means the website that the General Administrator will establish as a means for Settlement Class Members to obtain the long Notice Form and short Notice Form and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice Form, the Proposed Third Amended Complaint, Plaintiffs' motion seeking preliminary approval, the Preliminary Approval Order, Plaintiffs' motion seeking a Final Approval Order, the Final Approval Order, and the Claim Form and such other documents as the Parties agree to post or the Court orders posted on the Settlement Website. These documents shall remain on the Settlement Website for at least six months after Final Approval. The Settlement Website's URL will be established by the General Administrator.

www. "**Special Master**" means the Honorable Marina Corodemus (retired) who was appointed by the Court to serve as Special Master. *See* Order Appointing Special Master, ECF No. 603. She shall perform such duties as outlined in the Order Appointing Special Master, including but not limited to creating a plan of allocation for the Settlement Fund and fully allocating the Settlement Fund fairly and equitably among all Settlement Class Members in accordance with this Class Settlement Agreement and the Plan of Allocation Methodology.

xxx. "**Total Settlement Payment**" means the $54,000,000 (fifty-four million dollars) total cash payment that Defendants collectively are obligated to make under the terms of this Settlement in accordance with Section 2(b) of this Agreement. The Total Settlement Payment includes the Preliminary Settlement Fund Payment, the Class Counsel Fee and Costs Amount, and the Final Settlement Fund Payment.

yyy. "**Wolverine**" means Wolverine World Wide, Inc.

2. **Settlement Payment and Settlement Fund**

a. <u>Settlement Administration</u>. In connection with the motion for preliminary approval of the Settlement, Class Counsel has selected and shall propose Angeion (whose qualifications are set forth in Exhibit G) to serve as an independent, third-party General Administrator, to administer the Settlement Fund. Defendants do not object to Class Counsel's proposed General Administrator.

b. <u>Settlement Consideration</u>.

i. Within ten (10) days of Preliminary Approval, Defendants shall pay $1,000,000.00 (one million dollars) in cash (the Preliminary Settlement Fund Payment) into the Escrow Account for the benefit of the Settlement Class Members to pay Preliminary Administrative Expenses.

ii.    As noted in Section 6(a), within 30 days after Final Approval, Defendants shall pay the Class Counsel Fee and Costs Award, subject to the provisions of Section 19 below.

iii.   Within thirty (30) days after the Effective Date, Defendants shall pay the Final Settlement Fund Payment in cash into the Escrow Account to create the Settlement Fund for the benefit of the Settlement Class Members.  The Settlement Fund shall be used to pay Settlement Class Member Payments, to pay any Service Award to Plaintiffs, and to pay all General Settlement Administration Costs.  All funds held by the Escrow Agent shall remain subject to the jurisdiction of the Court until distributed pursuant to this Agreement.

iv.    All costs of the Notice Program and of other General Settlement Administration Costs shall be paid from the Settlement Fund.  Any General Settlement Administration Costs must be approved by Class Counsel before they are incurred.

c.    <u>No Liability for Distribution of Settlement Fund</u>.   Once the Total Settlement Payment is paid to the Escrow Account or Settlement Fund, Defendants shall have no liability arising from the allocation or distribution of the Settlement Fund to Settlement Class Members or anyone else.  In no event shall Defendants or their counsel have any liability for the administration of the Settlement Fund or for acts or omissions of the General Administrator.  Payment of the Total Settlement Payment shall constitute Defendants' sole monetary obligation under the Settlement. Other than the costs of Defendants' obligation to provide notice pursuant to the Class Action Fairness Act, in no circumstances shall Defendants be required to pay anything more than the Total Settlement Payment in relation to this Agreement.

d.    <u>No Reversion of Settlement Fund to Defendants</u>.  Defendants shall not be entitled to repayment of any portion of the Total Settlement Payment used to pay General Settlement Administration Costs prior to Final Approval.  If this Agreement is not terminated prior to the Effective Date, Defendants shall not be entitled to the repayment of any portion of the payments made into the Escrow Account or Settlement Fund.  Any funds in the Settlement Fund that remain after reasonable attempts by the General Administrator to make Settlement Class Member Payments, to pay any Service Award to Plaintiffs, and to pay all General Settlement Administration Costs will be distributed pursuant to Class Counsel's recommendation, subject to Court approval.

e.    <u>Nature of the Settlement Payment and Settlement Fund</u>.

i.    The Settlement Fund at all times is intended to be a "qualified settlement fund" within the meaning of United States Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1 and shall be established pursuant to an order of the Court and will be subject to the continuing jurisdiction of the Court for the

life of the Settlement Fund. Neither the Parties nor the Escrow Agent shall take a position in any filing or before any tax authority that is inconsistent with such treatment. Each Defendant is a "transferor" within the meaning of United States Treasury Regulation § 1.468B-1(d)(1) to the Settlement Fund. The Escrow Agent shall be the "administrator" of the Settlement Fund within the meaning of United States Treasury Regulation § 1.468B-2(k)(3) and, as the administrator, the Escrow Agent shall: (a) timely make or join in any and all filings or elections necessary to make the Settlement Fund a qualified settlement fund at the earliest possible date (including, if requested by any Defendant, a relation-back election within the meaning of United States Treasury Regulation § 1.468B-1(j)); (b) timely file all necessary or advisable tax returns, reports, or other documentation required to be filed by or with respect to the Settlement Fund; (c) timely pay any taxes (including any estimated taxes, and any interest or penalties) required to be paid by or with respect to the Settlement Fund; and (d) comply with any applicable information reporting or tax withholding requirements imposed by applicable law, in accordance with United States Treasury Regulation § 1.468B-2(l). Any such taxes, as well as all other costs incurred by the Escrow Agent in performing the obligations created by this subsection, shall be paid out of the Settlement Fund. Defendants shall have no responsibility or liability for paying such taxes and no responsibility to file tax returns with respect to the Settlement Fund or to comply with information-reporting or tax-withholding requirements with respect thereto. Defendants shall provide the Escrow Agent with the combined statement described in United States Treasury Regulation § 1.468B-3(e)(2)(ii).

ii.     Neither Defendants, nor Class Counsel, make any representations to Settlement Class Members concerning any tax consequences or treatment of any allocation or distribution of funds to Settlement Class Members pursuant to this Agreement.

3.     **Class Enrollment and Eligibility**

a.     <u>Submission of Claim Form and Review</u>.

i.     To become eligible to receive Settlement Class Member Payments pursuant to this Agreement, Claimants must submit a Claim Form and, if necessary, supporting documents, to the General Administrator during the Enrollment Period. The Claimant shall identify on the Claim Form the Settlement Subclass to which he, she, they, or it, or in their capacity as a representative, purports to belong. The General Administrator shall review the Claim Form and any supporting documentation and determine whether the Claimant is an eligible Settlement Class Member of the Settlement Subclass in which he, she, they, or it , or in their capacity as a representative, purports to belong. Unless otherwise permitted by the Court, a Claim Form submitted after the Enrollment Period concludes will be rejected by the General Administrator as untimely, and the Claimant submitting such Claim Form cannot qualify

to receive payment and/or otherwise qualify for Settlement benefits pursuant to this Agreement.

ii.   The Claim Form shall be in substantially the same form as Exhibit A attached hereto. The Claim Form shall be available on the Settlement Website. To become eligible to receive Settlement Class Member Payments pursuant to this Agreement, Claimants may be required to submit certain qualifying documentary support, as set forth below. The General Administrator shall be entitled to verify the identity of any Claimant and determine and verify any information required by the Claim Form.

iii.   If the General Administrator determines that a Claimant has submitted insufficient proof of eligibility, the General Administrator will provide an opportunity for the Claimant to cure the submission to the extent practicable.

iv.   Payments to Settlement Class Members who demonstrate eligibility as determined by the General Administrator and this Agreement shall be paid from the Settlement Fund as set forth in Section 4. The General Administrator shall use reasonable efforts to complete payment then due in accordance with Section 4 within 90 days of the Effective Date.

b.   Eligibility Determination.

i.   Settlement Class. To demonstrate eligibility to receive payment as a Settlement Class Member, a Claimant must complete the Claim Form and provide proof of ownership as of November 1, 2017 of Real Property in the North Kent Study Area that did not obtain its drinking water from a municipal water source as of November 1, 2017. Proof of ownership may include one of the following: (1) a copy of the deed to the property; (2) a copy of a tax bill demonstrating ownership of the property as of November 1, 2017; (3) a mortgage statement for the property; and/or (4) any other form of proof deemed appropriate by the General Administrator. If the Claimant does not submit documentary proof of ownership or does not submit documentary proof sufficient to show ownership as of November 1, 2017, the Claimant's eligibility may also be determined by the General Administrator's reference to public property records and/or to exhibits to this Settlement Agreement.

ii.   Settlement Subclass 1: Municipal Water Extension. To demonstrate eligibility to receive payment as a Settlement Subclass 1: Municipal Water Extension Member, a Claimant must represent on the applicable Claim Form that the Eligible Property has transitioned, or is scheduled to transition, to municipal water pursuant to the EGLE/Wolverine Consent Decree, in addition to satisfying the requirements set forth in Section 3(b)(i) for receiving payments as a Settlement Class Member. The General Administrator may verify such information by reference to data provided by Defendants, public records, including the EGLE/Wolverine Consent

16

Decree, or other information developed during the litigation of the Action. If the General Administrator cannot verify the information provided by the Claimant, the General Administrator may ask for further proof from the Claimant, which may consist of: (a) notice of transition to municipal water from Plainfield Township; (b) a Plainfield Township water bill together with documentation of closure of a well; and/or (c) any other proof deemed sufficient by the General Administrator.

iii. <u>Settlement Subclass 2: Filtration Systems</u>. To demonstrate eligibility to receive payment as a Settlement Subclass 2: Filtration Systems Member, a Claimant must indicate on a Claim Form that the Eligible Property was offered or received a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree to treat its well-sourced water, and that the Eligible Property has not been and is not scheduled to transition to municipal water under the EGLE/Wolverine Consent Decree, in addition to the requirements set forth in Section 3(b)(i) for receiving payments as a Settlement Class Member. The General Administrator may verify such information by reference to data provided by Defendants, public records, including the EGLE/Wolverine Consent Decree, or other information developed during the litigation of the Action. If the General Administrator cannot verify the information provided by the Claimant, the General Administrator may ask for further proof from the Claimant, which may consist of: (a) photographs of any such filtration system; (b) maintenance records, system testing data, or other records of system operation or maintenance provided by Wolverine or Wolverine's contractors; and/or (c) any other form of proof deemed appropriate by the General Administrator.

iv. <u>Settlement Subclass 3: Other</u>. To demonstrate eligibility to receive payment as a Settlement Subclass 3: Other Member, a Claimant must fulfill the requirements set forth in Section 3(b)(i) above for receiving payments as a Settlement Class Member and must not be a Settlement Subclass 1: Municipal Water Extension Member or a Settlement Subclass 2: Filtration Systems Member.

4. **Calculation of Settlement Class Member Payments.** Settlement Class Member Payments will be calculated in accordance with the Plan of Allocation Methodology attached as Exhibit H. Only one Settlement Class Member Payment shall be awarded per Eligible Property, irrespective of the number of property owners or the number of Claim Forms submitted for the Eligible Property.

5. **Appeals to the Special Master of Class Member Payments for Settlement Subclass 1 and Settlement Subclass 2 Whose Properties Had Total Regulated PFAS Levels Above the MCL.**

a. Eligible Appeals to the Special Master. Only those Settlement Subclass 1 and Subclass 2 Class Members whose properties had total regulated PFAS levels above the maximum contaminant level (MCL) will be eligible to file an appeal of their

allocation amount to the  Special Master; and then, any such appeal may only be submitted under certain circumstances in which the Class Member alleges:  (1) miscalculation of allocation amount based on relevant criteria; (2) documentation or evidence not considered in the allocation calculation; or (3) other information previously not considered.

b.     Appeals Procedure to Special Master for Eligible Settlement Class Members. Appropriate appeals must be received by Class Counsel within ten days from the date on which Class Counsel advises them of their initial allocation.  In support of any appeal, the Settlement Class Member must prepare a written submission for the Special Master identifying the specific basis for their appeal.  The Settlement Class Member must provide the submission directly to Class Counsel, who will then forward it to the Special Master for consideration and ruling.  Any such appeal will be fully and finally considered and determined by the Special Master within 21 days after receipt of the appeal by the Special Master absent exigent circumstances.

6.     **Attorneys' Fees, Costs, and Expenses**

a.     Class Counsel Fees and Costs.  Class Counsel shall apply for an award of attorneys' fees and payment of reasonable litigation costs and expenses, to be approved by the Court.  Class Counsel's award of attorneys' fees shall not exceed one-third of the gross Settlement Fund after expenses.  Class Counsel shall seek an award of costs not to exceed $1,500,000.00.  However, in the event that additional costs are incurred in the administration of Claimants' claims for entitlement to Settlement Class Member Payments and allocation of such claims, Class Counsel shall petition the Court for payment of those costs from the Settlement Fund.  Within thirty (30) days after Final Approval, Defendants shall pay to Class Counsel in cash the Class Counsel Fee and Costs Amount; provided, however, that if the Class Counsel Fee and Costs Award is reversed, vacated, or otherwise overturned in whole or in part, Class Counsel will return the portion of the Class Counsel Fee and Costs Amount that is reversed, vacated, or otherwise overturned to the Settlement Fund in cash within thirty (30) days after such event.  Defendants shall not be responsible for any attorneys' fees, expenses, or costs in this Action beyond the amounts allocated and specified for these purposes in this paragraph.

b.     Service Awards.   Subject to Court approval, each Plaintiff shall be entitled to receive a Service Award in one of two tiers for his or her role as class representative. Tier One shall be comprised of Plaintiffs defined in Section 1.ww. who were Parties to this Action on the date of the filing of Plaintiffs' Motion for Class Certification on August 30, 2021 (ECF No. 291), who represented the Class, whose homes were inspected, who participated in discovery and sat for depositions.  Plaintiffs in Tier One shall each be entitled to receive a Service Award of up to $25,000.00 (twenty-five thousand dollars) for his or her role as a Class Representative.  Tier Two shall be comprised of Plaintiffs defined in Section 1.ww. who were identified in Plaintiffs' Motion for Leave to File Amended Complaint on September 2, 2021 (ECF No. 297), who represented the Class, whose homes were inspected, who participated in discovery, but did not sit for depositions.  Plaintiffs in Tier Two shall

each be entitled to receive a Service Award of up to $15,000.00 for his or her role as a Class Representative. The Service Awards shall not exceed $235,000.00 (two-hundred and thirty-five thousand dollars) in the aggregate and shall be paid from the Settlement Fund no later than forty-five (45) days after the Effective Date.

c.   <u>Administrative Fees and Costs</u>. The General Settlement Administration Costs shall be paid from the Preliminary Settlement Fund Payment and, after Final Approval, the Settlement Fund, within ten (10) days after invoicing to and written approval by Plaintiffs.  Any delays in payment of General Settlement Administration Costs by the Escrow Agent shall have no impact on the validity of the Settlement. Absent exceptional circumstances, total General Settlement Administration Costs shall not exceed $500,000.00.

d.   <u>Total Settlement Payment</u>.  When combined with the Settlement Class Member Payment amounts set forth in Section 4, as well as any tax-related expenses and any other costs and expenses payable from the Settlement Fund, the sum of amounts set forth in Sections 6(a)-(c) shall not exceed the Total Settlement Payment amount set forth in Section 1(xxx).

7.   **Dismissal, Release of Claims, and Related Provisions**

a.   <u>Dismissal</u>.  In the motion for final approval of the Settlement, Plaintiffs, on behalf of themselves and the Settlement Class, shall request that the Final Approval Order dismiss the Action with prejudice as to Defendants and enter a final judgment as to them.

b.   <u>Release of the Released Parties.</u> Upon the Effective Date, the Releasing Parties shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, relinquished, waived, compromised, settled, and discharged the Released Parties from each and every past, present, and future claim and cause of action, whether known or unknown, whether direct or indirect, individual or class, in constitutional, federal, state, local, statutory, civil, or common law or in equity, or on any other law, rule, regulation, ordinance, directive, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, or for compensatory damages, consequential damages, incidental damages, statutory damages, punitive, special, multiple, treble, or exemplary damages, nominal damages, disgorgement, restitution, indemnity, contribution, penalties, injunctive relief, declaratory relief, attorneys' fees, court costs, or expenses that were or could have been asserted by the Releasing Parties in the Action or any other forum, arising out of or related to, either directly or indirectly or in whole or in part: (i) the subject matter of any allegations contained in the Complaints as well as any allegations otherwise asserted in the Action, or any discovery sought in connection with the Action, (ii) the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in Settlement Class Members' drinking water, groundwater, surface water, municipal water, private well water, soil, or air within the North Kent Study Area; (iii) the sale, purchase, use, handling,

transportation, release, discharge, migration, emission, spillage, or disposal of PFAS (including PFOS, PFOA, and/or PFHxS) to, at, or from the Facilities, including any such PFAS (including PFOS, PFOA, and/or PFHxS) present as a result of disposal at or discharge by Defendants to, directly or indirectly, any landfill or disposal area, or any other location in, or from which migration has allegedly occurred into  the North Kent Study Area, and/or resulting in any alleged contamination of any Eligible Property with PFAS (including PFOS, PFOA, and/or PFHxS); (iv) for any type of relief with respect to the acquisition, installation, maintenance, operation, or presence of, including the cost or purported inconvenience or loss of enjoyment of, property associated with whole-house filters, point-of-entry filters, point-of-use filters, municipal water, private well water, bottled water, alternative water supplies, or remediation; (v) for property damage or property-value diminution, including without limitation stigma, purportedly attributable to the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in the North Kent Study Area and/or (vi) PFAS (including PFOS, PFOA, and/or PFHxS) in the blood or tissue of any Settlement Class Member (the "**Released Claims**").  For the purposes of this Agreement, "Released Claims" do not include any individual claims of the Releasing Parties (a) for any damages (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries, (b) for any emotional distress claims asserted in the future, but such emotional distress claims are reserved only if they (i) are distinct from the emotional distress claims alleged or that could have been alleged on Releasing Parties' behalf in the Action (*e.g.*, aggravation or continuation of past or existing emotional distress is not reserved, nor is emotional distress arising solely from Releasing Parties' exposure to PFAS in drinking water, but emotional distress arising solely from personal injuries that Releasing Parties may develop in the future as a result of their PFAS exposure are reserved) and (ii) allegedly arise from PFAS exposure claimed to be wholly or partially attributable to Wolverine or 3M and alleged contamination of their current property or drinking water that is subject of this matter; (c) for enforcement of Releasing Parties' rights (if any) under the EGLE/Wolverine Consent Decree; and (d) for enforcement of the terms of this Agreement or the Final Approval Order. For purposes of this Agreement, "manifested bodily injuries" do not include the presence of PFAS (including PFOS, PFOA, and/or PFHxS) in blood or other bodily tissue.

c.   Release of the Releasing Parties.  Upon the Effective Date, the Released Parties shall release all Releasing Parties from all claims and causes of action related to the institution, prosecution or settlement of the Action or the Released Claims, other than claims to enforce this Settlement.

d.   No Waiver of Defenses.  Defendants do not waive or forfeit any claims, defenses or arguments that they could assert, including as to any claims or causes of action that are outside the definition of "Released Claims."

e.   Exclusive Remedy.  The relief provided for in this Agreement shall be the sole and exclusive remedy for all Releasing Parties with respect to any Released Claims, and

the Released Parties shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in this Agreement.

f.   <u>Covenant Not To Sue</u>.  Each of the Releasing Parties shall forever refrain from instituting, maintaining, prosecuting, or continuing any suit, action, arbitration, or proceeding against any of the Released Parties with respect to the Released Claims, and/or with respect to any other claims for property damage, emotional distress, or medical monitoring arising from or related to the presence of PFAS on the Releasing Party's Eligible Property.

g.   <u>Waiver of Statutory Rights</u>. To the extent the provisions apply, the Releasing Parties expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

To the extent the provisions apply, the Releasing Parties likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7-11 of the South Dakota Codified Laws, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

To the extent the laws apply, the Releasing Parties expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, Section 1542 of the California Civil Code, Section 20-7-11 of the South Dakota Codified Laws, and all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Releasing Parties acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe to exist with respect to the Released Claims, but that it is their intention to accept and assume that risk and fully, finally, and forever release, waive, compromise, settle, and discharge all of the Released Claims against Released Parties.  The release thus shall remain in effect notwithstanding the discovery or existence of any additional or different claims or facts.

h.   <u>Full and Complete Defense</u>. To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, arbitration, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement, or that asserts any Released Claims against any of the Released Parties.

8. **No Admission of Wrongdoing or Liability**

a. Defendants do not admit or concede any liability, fault, omission, or wrongdoing, acknowledge any validity to the allegations or claims asserted in the Action, acknowledge that certification of any litigation class is appropriate as to any claim, or acknowledge any weakness in the defenses asserted in the Action, and nothing in this Agreement, the Preliminary Approval Order, or the Final Approval Order shall be interpreted to suggest anything to contrary.

b. Nothing in this Agreement, any negotiations, statements, communications, proceedings, filings, or orders relating thereto, or the fact that the Parties entered the Agreement and settled the Action shall be construed, deemed, or offered as an admission or concession by any of the Parties, Settlement Class Members, or Defendants or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including this Action) before any civil or criminal court, administrative agency, arbitral body, or other tribunal, except (i) as required or permitted to comply with or enforce the terms of this Agreement, the Preliminary Approval Order, or the Final Approval Order, or (ii) in connection with a defense based on *res judicata*, claim preclusion, collateral estoppel, issue preclusion, release, or other similar theory asserted by any of the Released Parties. The limitations described in this paragraph shall apply whether or not the Court enters the Preliminary Approval Order or the Final Approval Order, and whether or not any such order is affirmed, reversed, vacated, or overturned by an appellate court.

9. **Preliminary Approval**

a. Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the Court for a Preliminary Approval Order. The proposed Preliminary Approval Order shall be attached to the motion, or otherwise filed with the Court, and shall be in a form attached hereto as Exhibit F.

b. The motion for preliminary approval shall, among other things, request that the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) find that it will be likely to certify the Settlement Class and Settlement Subclasses for settlement purposes only, appoint the Plaintiffs as representatives of the Settlement Class and appropriate Settlement Subclasses, and appoint Class Counsel as counsel for the Settlement Class; (3) approve the Notice Program set forth herein and approve the form and content of the Notice Form; (4) approve the procedures set forth herein in Sections 13 and 14 for Settlement Class Members to Opt Out or object to the Settlement; (5) stay further proceedings against Defendants pending a Final Approval Order; and (6) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and counsel for Defendants, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsels' application for attorneys' fees and costs and for a Service Award to Plaintiffs.

c.    In Plaintiffs' motion seeking preliminary approval, Plaintiffs shall request that the Court approve the Notice Forms attached as Exhibits D and E and approve the Notice Program. The Court will ultimately determine and approve the content and form of the Notice Form to be distributed to the Settlement Class Members.

d.    The Parties further agree that in Plaintiffs' motion seeking preliminary approval, Plaintiffs will request that the Court enter the following schedule governing the Settlement: (1) deadline for sending Class Notice (the Notice Date): thirty (30) days after Preliminary Approval; (2) Opt Out Deadline: forty-five (45) days after the Notice Date; (3) Objection Deadline: forty-five (45) days after the Notice Date; (4) Claim Deadline: ninety (90) days after the Notice Date; (5) deadline for filing motions for a Final Approval Order and approval of Plaintiffs' Service Awards and attorneys' fees and costs awards: forty-five (45) days after the Claim Deadline; (5) Final Approval Hearing: thirty (30) days after the filing of the motion for a Final Approval Order, or as soon thereafter as is mutually convenient.

10.    **Class Certification for Settlement Purposes**

a.    In the motion for preliminary approval of the Settlement, Plaintiffs shall propose certification of the Settlement Class and Settlement Subclasses, solely for purposes of the Settlement, pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(e), with Plaintiffs as the proposed class representatives, which Defendants will not oppose.

b.    If this Agreement is terminated or the Court (or an appellate court) declines to approve the Settlement as proposed by the Plaintiffs, Defendants shall retain all of the rights to oppose class certification (and assert all other arguments and defenses) that they had prior to execution of this Agreement and the Plaintiffs shall retain all of the rights to pursue class certification and all claims they had prior to the execution of this Agreement.

c.    Nothing in this Agreement, the Settlement, or the orders, filings, proceedings, or negotiations related to this Agreement or the Settlement (i) may be used as evidence or argument concerning whether the Action or any other lawsuit may be certified as a class action for purposes of litigation; or (ii) shall prejudice Defendants' rights to oppose class certification or any claims, or Plaintiffs' rights to advocate for class certification or any claims for purposes of litigation, in the Action or any other lawsuit. This section does not prevent this Agreement and the related orders, filings and proceedings from being used as evidence or argument concerning whether the Action may be certified for solely settlement purposes.

11.    **CAFA Notice**

a.    Within ten (10) days after Plaintiffs file the motion for preliminary approval of the Settlement, Defendants shall provide CAFA Notice to the appropriate officials of the United States, the State of Michigan, the other forty-nine states, and U.S. territories. Defendants shall bear the costs of such notice.

b.    When Defendants provide CAFA Notice in accordance with Section 11(a) of this Agreement, they shall provide copies of the CAFA Notice to Plaintiffs.

12. **Class Notice**

a.    <u>Provision of Information to the General Administrator</u>. Within twenty (20) days after the General Administrator's execution of a written assurance of compliance with the Stipulated Protective Order of Confidentiality in this Action (ECF No. 217), Defendants will provide the General Administrator with (i) confidential private well testing data, including property addresses, from testing performed on properties within the North Kent Study Area since April 2017, and (ii) records identifying those Real Properties being provided municipal water under the EGLE/Wolverine Consent Decree. The General Administrator shall use this information solely for the purposes of providing Class Notice and administering the Settlement, including making eligibility determinations, as described in Section 3.

b.    Within thirty (30) days after Preliminary Approval, or by the time specified by the Court, the General Administrator shall commence the Notice Program, including by mailing the Notice Form in such form as is approved by the Court. The General Administrator shall transmit the short Notice Form via direct mail or electronic mail to all owners of Real Properties in the North Kent Study Area who were not supplied with drinking water from a municipal water source as of November 1, 2017. The long Notice Form will be posted on the Settlement Website. The Notice Program shall consist of direct mail; internet, digital media impressions; a national press release; and a community outreach effort.

c.    The General Administrator shall maintain a Settlement Website containing the Proposed Third Amended Complaint, this Agreement, the Notice Form, Plaintiffs' motion seeking preliminary approval, the Preliminary Approval Order, Plaintiffs' motion seeking a Final Approval Order, the Final Approval Order, the Claim Form, and such other documents as the Parties agree to post or that the Court orders posted. The Settlement Website will also provide the capability for Settlement Class Members to submit claims online from the website. These documents shall remain on the Settlement Website for at least six months after the Effective Date. The Settlement Website's URL will be established by the General Administrator.

d.    The General Administrator shall mail or e-mail the long Notice Form and Claim Form to any potential Settlement Class Member who requests a copy. It will be conclusively presumed that the intended recipients received the Notice Form and Claim Form if the Notice Form and/or Claim Form have not been returned to the General Administrator as undeliverable within fifteen (15) calendar days of mailing. Follow up confirmation will be done by the General Administrator.

e.    The Parties may by mutual written consent make non-substantive changes to the Notice Forms (including inserting relevant dates and deadlines) without Court approval after the Court's approval of the Notice Form.

13. **Opt Outs**

    a.    A Settlement Class Member may Opt Out by submitting to the General Administrator a timely and valid request that complies with the Opt Out procedure described in the Notice Form. To be timely and valid, an Opt Out request must have been submitted on or before the Opt Out Deadline with the submission date verified by postmark or email receipt and must include: (i) the full name, current address, and telephone number of the requestor; (ii) a statement of the facts that make the requestor a Settlement Class Member; (iii) a statement requesting exclusion from the Settlement Class; and (iv) the signature of the requestor.

    b.    Any Settlement Class Member that submits a timely and valid Opt Out request shall not: (i) be bound by any orders or judgments entered in the Action to implement and effectuate the Settlement and this Agreement; (ii) be entitled to any of the relief or other benefits provided under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to submit an Objection.

    c.    Any Settlement Class Member that does not submit a timely and valid Opt Out request submits to the jurisdiction of the Court and shall be bound by the terms of this Agreement and by all orders and judgments in the Action to implement and effectuate the Settlement and this Agreement, regardless of whether or not such Settlement Class Member submits a Claim Form.

    d.    No "mass" or "class" Opt Out requests shall be valid, and no Settlement Class Member may submit an Opt Out request on behalf of any other Settlement Class Member; provided, however, that a Settlement Class Member who is the legal guardian, trustee, or power of attorney of another Settlement Class Member may submit an Opt Out request on behalf of such other Settlement Class Member.

    e.    Any Settlement Class Member that submits an Opt Out request may revoke the request by submitting to the General Administrator a statement of revocation with a verified submission date no later than thirty (30) days after the Opt Out Deadline; provided, however, that Class Counsel shall have discretion to extend this deadline on a case-by-case basis.

    f.    As soon as practicable and no later than fifteen (15) days after the Claim Deadline, the General Administrator shall furnish the Parties with a final list of all timely and valid Opt Out requests that have been submitted.

14. **Objections**

    a.    A Settlement Class Member may make an Objection by serving on the Parties and the Court a timely and valid statement of Objection that complies with the Objection procedure described in the Notice Form. Class Counsel shall file all such Objections with the Court at least thirty (30) days prior to the Final Approval Hearing.

b.      To be timely and valid, a statement of Objection must be postmarked or received on or before the Objection Deadline and must include: (i) the full name, current address, and telephone number of the objector; (ii) a statement of the facts that make the objector a Settlement Class Member; (iii) a statement describing all of the objector's challenges to this Agreement or the Settlement and the reasons for those challenges; (iv) all of the papers and evidence the objector intends to submit in support of those challenges; (v) a statement of whether the objector intends to appear at the Final Approval Hearing; (vi) the signature of the objector; (vii) a statement that the objector is willing to be deposed, upon request, on a mutually acceptable date at least ten (10) days before the Final Approval Hearing; (viii) the caption of each case in which the objector or counsel representing the objector have objected to a class action settlement within the preceding five years and a copy of all orders related to or ruling upon those objections; and (ix) all agreements that relate to the Objection, whether written or verbal, between or among the objector, counsel for the objector, and/or any other Person.

c.      No "mass" or "class" Objections shall be valid, and no Settlement Class Member may submit a statement of Objection on behalf of any other Settlement Class Member; provided, however, that a Settlement Class Member who is the legal guardian, trustee, or power of attorney of another Settlement Class Member may submit an Opt Out request on behalf of such other Settlement Class Member.

d.      Unless the Court orders otherwise, only those Settlement Class Members whose statements of Objection express an intention to appear at the Final Approval Hearing shall have the right to present their Objections orally at the Final Approval Hearing.

e.      Plaintiffs and Defendants shall have the right, but not the obligation, to respond to any timely-filed Objection no later than seven (7) days prior to the Final Approval Hearing.  Any Party who wishes to respond shall file a copy of the written response with the Court, and shall serve a copy, by hand or overnight delivery, to the objecting Settlement Class Member (or counsel for the objecting Settlement Class Member) and by email to counsel for Plaintiffs and/or Defendants.

f.      A Settlement Class Member that does not submit a timely and valid Objection shall have waived, and shall be foreclosed from making, any challenge to this Agreement or the Settlement in the Action or any other proceeding.

15.     **Final Approval and Entry of Final Judgment**

a.      The Plaintiffs shall seek a Final Approval Order and entry of final judgment from the Court that:

i.      Approves the Agreement in its entirety pursuant to Federal Rule of Civil Procedure 23(e) as fair, reasonable, and adequate;

ii.     Certifies the Settlement Class and Settlement Subclasses, for settlement purposes only;

iii.    Confirms appointment of the General Administrator;

iv.    Confirms the appointment of Class Counsel;

v.    Finds that the Class Notice has satisfied the requirements set forth in Federal Rule of Civil Procedure 23(c)(2)(B) and due process;

vi.    Bars and enjoins each of the Releasing Parties from commencing, asserting, and/or prosecuting any and all Released Claims against any of the Released Parties;

vii.    Bars and enjoins each of the Released Parties from asserting any claims or causes of action against any of the Releasing Parties related to the institution, prosecution or settlement of the Action or the Released Claims;

viii.    Dismisses with prejudice all claims in the Complaints, without further costs, including claims for interest, penalties, costs, and attorneys' fees;

ix.    Enters final judgment as to Defendants and the claims against them in the Action;

x.    Confirms that each of Defendants has complied with and otherwise discharged its obligations under the Class Action Fairness Act, 28 U.S.C. § 1715(b);

xi.    Confirms that it retains continuing jurisdiction over the Settlement Fund; and

xii.    Expressly incorporates the terms of this Agreement and provides that the Court retains continuing and exclusive jurisdiction over the Parties, the Settlement Class Members, and this Agreement, to interpret, implement, administer and enforce the Agreement in accordance with its terms and award attorneys' fees and expenses to Class Counsel and make awards to the Plaintiffs in connection with their representation of the Settlement Class and Settlement Subclasses.

b.    The motion for a Final Approval Order shall include a request that the Court enter the Final Approval Order and, if the Court grants final approval of the Settlement and incorporates the Agreement into the final judgment, that the Court shall dismiss Defendants from this Action with prejudice, and enter final judgment as to them, subject to the Court's continuing jurisdiction to enforce the Agreement.

16.    **Representations and Warranties**

a.    Plaintiffs represent and warrant to Defendants as follows:

i.    Each of the Plaintiffs is a Settlement Class Member.

    ii.    Each of the Plaintiffs has received legal advice from Class Counsel regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

    iii.    No portion of any of the Released Claims possessed by any of the Plaintiffs and no portion of any relief under this Agreement to which any of the Plaintiffs may be entitled has been assigned, transferred, or conveyed by or for any of the Plaintiffs to any other Person, except pursuant to any contingency fee agreement with Class Counsel.

    iv.    None of the Plaintiffs is relying on any statement, representation, omission, inducement, or promise by any of Defendants, their agents, or their representatives, except those expressly stated or referenced in this Agreement.

    v.    Each of the Plaintiffs, through Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement.

    vi.    Each of the Plaintiffs has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with Class Counsel or other attorneys.

    vii.    Each of the Plaintiffs has all necessary competence and authority to enter into this Agreement on his or her own behalf, or on behalf of any trust for which they claim to be a trustee, and are seeking appointment to act on behalf of the Settlement Class and respective Settlement Subclasses they represent.

    viii.    None of the Plaintiffs will Opt Out or file an Objection.

b.    Class Counsel represents and warrants to Defendants as follows:

    i.    Class Counsel believes that the Settlement is fair, reasonable, adequate, and beneficial to each Settlement Class Member and that participation in the Settlement would be in the best interests of each Settlement Class Member.

    ii.    Because Class Counsel believes that the Settlement is in the best interests of each Settlement Class Member, Class Counsel will not solicit, or assist others in soliciting, Settlement Class Members to Opt Out, file an Objection, or otherwise challenge the Settlement or this Agreement.

    iii.    Class Counsel has all necessary authority to enter into and execute this Agreement on behalf of Plaintiffs and the Settlement Class subject to the Court's Preliminary Approval Order.

    iv.    Each of the Plaintiffs has approved and agreed to be bound by this Agreement.

       v.       The representations in Section 16(a) of this Agreement are true and correct to the best of Class Counsel's knowledge.

c.      The Defendants represent and warrant to Plaintiffs as follows:

       i.       Each of Defendants has received legal advice from its attorneys regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

       ii.       None of Defendants is relying on any statement, representation, omission, inducement, or promise by Plaintiffs, Settlement Class Members, or Class Counsel, except those expressly stated or referenced in this Agreement.

       iii.       Each of Defendants, with the assistance of its attorneys, has investigated the law and facts pertaining to the Released Claims and the Settlement.

       iv.       Each of Defendants has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with its attorneys.

       v.       Each of Defendants has all necessary authority to enter into this Agreement, has authorized the execution and performance of this Agreement, and has authorized the Person signing this Agreement on its behalf to do so.

## 17.   **Liens and Medicare Obligations**

a.      Any liens or subrogation interests as to any Real Property or other property of a Settlement Class Member shall be the responsibility of that Settlement Class Member.

b.      Any liens or subrogation interests as to any costs, expenses, or fees incurred by a Settlement Class Member in connection with any alleged exposure to PFAS (including PFOA and PFOS) shall be the responsibility of that Settlement Class Member.

c.      Nothing in this Agreement is intended to imply the existence of, create, or give rise to any liens or subrogation claims not otherwise provided by law or contract.

d.      Due to the nature of the claims at issue in the Action and the Released Claims, the Parties agree that the Settlement does not give rise to any reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007; and, therefore, that no Party will make any such report.

e.      The Parties have sought to draft this Settlement to avoid any impacts to the rights of any federal or state public or private program (e.g., Medicare) or to Settlement Class Members' rights thereunder. However, by choosing not to Opt Out, Settlement Class Members acknowledge that (i) the Settlement could impact, limit, or preclude their rights to receive certain future Medicare benefits arising out of the

allegations in this lawsuit; and (ii) they want to proceed with the Settlement and voluntarily waive any and all claims against Defendants for denial of Medicare benefits related to the Settlement. It is understood that the intent of this Agreement is that the Releasing Parties will protect, defend, and hold the Released Parties harmless from any future or further payments or exposure with regard to claims for reimbursement of public or private medical insurance benefits paid on behalf of the Releasing Parties. The Releasing Parties voluntarily waive any and all claims of any nature against Defendants related to any effort by Medicare or a Medicare Advantage Organization to demand payment of covered medical expenses that are asserted to be related to this Settlement, including but not limited to a private cause of action under 42 U.S.C. § 1395y(b)(3)(A) or any private cause of action under any applicable state law.

f.     The Parties have considered Medicare's interest in any potential Medicare-covered medical expenses occurring before or after the Effective Date. The Parties are satisfied that no allocation for expenses to protect Medicare's interest now or in the future is necessary and will not allocate any amount of the proceeds of this Settlement for past or future medical expenses, but reserve the right to do so in the future if necessary and appropriate in the sole discretion of the General Administrator.

## 18.     Amendment of Agreement

a.     The Parties may agree to amend this Agreement for any reason at any time.

b.     Prior to entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties.

c.     After entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties and approved by the Court.

## 19.     Termination Rights and Effect of Termination

a.     Any of the Parties may terminate this Agreement if any of the following events happen: (i) the Court declines to approve any part of the Settlement; (ii) the Court declines to approve or changes a material term of the requested Preliminary Approval Order or the requested Final Approval Order; (iii) an appellate court reverses, vacates, or otherwise overturns the Final Approval Order in whole or in part; (iv) another of the Parties materially breaches this Agreement before the Effective Date and fails to promptly cure the breach after receiving written notice of the breach; or (v) the Effective Date otherwise does not come to pass; provided, however, that none of the Parties may terminate this Agreement because the Court or any appellate court awards less than the requested amount of attorneys' fees, costs, and expenses.

b.     After receipt of the final Opt Out list provided by the General Administrator pursuant to Section 13 of this Agreement, Defendants may terminate this Agreement based on the number of Settlement Class Members who Opt Out

pursuant to the Supplemental Agreement Regarding Settlement Termination Rights discussed in Section 20.

c.    In order to exercise a right to terminate this Agreement, a Party must deliver written notice of termination to counsel for all other Parties within ten (10) days after the later of the event creating the right to terminate or the Party learning of the event creating the right to terminate, unless that deadline is extended by written consent of counsel for all Parties.

d.    If a Party exercises a right to terminate this Agreement, (i) the Parties shall have thirty (30) days to resume settlement negotiations and determine if the Parties can reach an amended agreement, including without limitation with the assistance of a mediator; (ii) all deadlines under this Agreement shall be stayed for the duration of the negotiations; (iii) the Parties shall jointly request a stay of all Court deadlines for the duration of the negotiations; and (iv) the Parties shall jointly advise the Court of the status of this Agreement or any amendment to this Agreement within seven (7) days after the conclusion of the thirty-day negotiation period.

e.    Unless the Parties agree otherwise in writing, thirty (30) days after a Party exercises a right to terminate this Agreement:

    i.    The Agreement (except for this Section 19(e) and Sections 22(a), (b), and (j)) shall become null and void and of no further force and effect.

    ii.    The full amount of (a) the Preliminary Settlement Fund Payment, less any fees and costs incurred by the General Administrator and (b) the Class Counsel Fee and Costs Award (if paid by Defendants prior to termination) shall be returned to Defendants.

    iii.    The Action shall resume as if the Parties never entered into the Agreement.

    iv.    The Parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective legal claims and defenses preserved as they existed on that date.

    v.    The Parties shall jointly move to vacate any orders entered in connection with the Settlement.

    vi.    The Parties shall jointly move for the entry of a scheduling order establishing procedures and deadlines for the resumption of litigation.

    vii.    The Agreement (except for this Section 19(e) and Sections 22(a), (b), and (j)), any negotiations, statements, term sheets, communications, or proceedings relating thereto, the Preliminary Approval Order, and the fact that the Parties agreed to the Agreement shall not be offered as an admission or concession by any of the Parties or Settlement Class Members or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including this Action) before

any civil or criminal court, administrative agency, arbitral body, or other tribunal. No Party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including but not limited to, claims or objections to class certification, or claims or defenses on the merits. Each Party reserves the right to prosecute or defend this Action in the event that this Agreement does not become final and binding.

f. If a Party breaches the Agreement after the Effective Date, none of the Parties may terminate the Agreement and any aggrieved Parties may seek relief only from the breaching Party. In no event shall any non-breaching Party have any liability arising out of or related to a breach of the Agreement by any other Party.

20. **Supplemental Agreement.** In addition to the provisions contained in Section 19, Defendants shall have the right, but not the obligation, in their sole discretion, to terminate this Agreement pursuant to the Supplemental Agreement Regarding Settlement Termination Rights to be executed by the Parties contemporaneously with the execution of this Agreement. The Supplemental Agreement Regarding Settlement Termination Rights shall not be submitted to the Court except in the event of a dispute thereunder, in which case the Parties shall seek to file it only under seal. The Supplemental Agreement Regarding Settlement Termination Rights is expressly incorporated into this Agreement.

21. **Publicity and Confidentiality**

a. The Parties, Class Counsel, counsel for Defendants, and the General Administrator shall keep strictly confidential and not disclose to any third party any non-public information received during litigation of the Action or negotiation or implementation of the Settlement. All agreements made and orders entered during the course of the Action relating to the confidentiality of information will survive this Agreement.

b. Within one hundred eighty (180) days after the latest of (i) the Effective Date, (ii) any final judgment in the Action, or (iii) expiration or exhaustion of opportunities for appellate review of any final judgment without the final judgment having been reversed, vacated, or otherwise overturned in whole or in part, Class Counsel, on behalf of Plaintiffs and the Settlement Class, and the General Administrator shall return or destroy (and certify in writing that they have destroyed upon a request to so certify) Defendants' confidential documents produced in connection with the Action, settlement discussions, or the negotiation or performance of this Agreement. Upon the conclusion of any litigation related to insurance coverage for the Action or within one hundred eighty (180) days after the latest of (i), (ii), or (iii) in the preceding sentence, whichever is later, Defendants will return or destroy (and certify in writing that they have destroyed upon a request to so certify) all confidential documents related to Plaintiffs. Defendants will provide notice to Class Counsel if any confidential documents related to Plaintiffs are to be filed in any litigation related to insurance coverage for the Action.

c.     In any publicity, press release or other public statement regarding the Settlement or the Complaints, including during any public meetings, Plaintiffs and Class Counsel shall not make statements or representations, directly or indirectly, in writing, orally, or otherwise, that disparage the Released Parties.  Similarly, Defendants shall not make statements or representations, directly or indirectly, in writing, orally or otherwise, that disparage the Releasing Parties.

22.    **Miscellaneous**

a.    <u>Jurisdiction and Venue</u>.  The United States District Court for the Western District of Michigan shall retain jurisdiction over the Parties and Settlement Class Members to interpret, implement, administer, and enforce the terms of this Agreement and resolve any dispute regarding this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order.  All proceedings related to this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order shall be initiated and maintained in the United States District Court for the Western District of Michigan.

b.    <u>Governing Law</u>. The Agreement shall be governed by and construed in accordance with the law of the State of Michigan without regard for choice-of-law or conflict-of-laws principles.

c.    <u>All Reasonable Efforts</u>.  The Parties agree to cooperate with one another and use all reasonable efforts to support, promote, and obtain court approval and finality, and to exercise reasonable efforts to accomplish the terms and conditions of this Agreement.

d.    <u>Voluntary Settlement</u>.  The Parties and their counsel agree that, in consideration of all the circumstances, and after significant, adversarial arm's-length settlement negotiations among counsel and with the assistance of a mediator, the proposed Settlement embodied in this Agreement is fair, reasonable, and adequate, and was reached voluntarily after consultation with competent legal counsel.

e.    <u>Binding Nature</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties, the Settlement Class Members, and their respective agents, employees, representatives, heirs, executors, administrators, successors, and assigns.

f.    <u>Failure of Plaintiff to be Appointed Class Representative</u>.  In the event that one or more Plaintiffs fails to secure Court approval to act as a class representative, Class Counsel may seek leave to tender a substitute class representative and the validity of this Agreement as to the remaining Class Representatives and the Settlement Class and Settlement Subclasses shall be unaffected.

g.    <u>Mistake</u>.  Each of the Parties to the Agreement has investigated the facts pertaining to it to the extent each Party deems necessary.  In entering into this Agreement, each Party assumes the risk of mistake with respect to such facts.  This Agreement is intended to be final and binding upon the Parties regardless of any claim of mistake.

h. <u>Finality</u>. This Agreement is intended to be final and binding among the Parties, and is further intended to be a full and final accord and satisfaction between and among each of them. Each Defendant and Plaintiff rely on the finality of this Agreement as a material factor inducing that Party's execution of this Agreement.

i. <u>Authorization to Settle</u>. Each of the Parties has all necessary authority to enter into this Agreement, has authorized the execution and performance of this Agreement, and has authorized the Person signing this Agreement on its behalf to do so.

j. <u>Construction</u>. This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any of the Parties based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by one of the Parties. The Parties agree that the language in all parts of this Agreement shall be construed as a whole, according to its fair meaning. Any captions, titles, headings, or subheadings in this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

k. <u>Execution</u>. This Agreement may be executed in counterparts, including via electronic signature, and shall be binding once all Parties have executed the Agreement. The Parties further agree that signatures provided by portable document format (PDF) or other electronic transmission shall have the same force and effect as original signatures.

l. <u>No Liability</u>. No Person shall have any claim against any Plaintiffs, Settlement Class Members, Class Counsel, Released Parties, counsel for Defendants, or the General Administrator based on actions that any Plaintiffs, Settlement Class Members, Class Counsel, Released Parties, counsel for Defendants, or the General Administrator were required or permitted to take under this Agreement, the Preliminary Approval Order, or the Final Approval Order. No Person shall have any claim against any Released Parties or counsel for Defendants related to administration of the Settlement. No Person shall have any claim against Plaintiffs, Class Counsel, or the General Administrator related to the administration of the Settlement (including making payments to Settlement Class Members), except for in the presence of proven willful misconduct. No Person shall have any claim against Class Counsel, the General Administrator, the Released Parties, or counsel for Defendants related to sworn representations made by a guardian pursuant to Section 16(a) or on the Claim Form regarding a Settlement Class Member, including without limitation purported inaccuracies or misstatements regarding the guardian's legal relationship to and authority relative to the Settlement Class Member.

m. <u>Entire Agreement</u>. This Agreement, together with the Supplemental Agreement Regarding Settlement Termination Rights identified in Section 20 above, constitute the entire agreement of the Parties with respect to the subject matter thereof, and it supersedes all prior and contemporaneous oral and written agreements and

discussions among them on that subject matter.  The Settlement is not subject to any condition, representation, warranty, or inducement not expressly provided for herein, and, except as identified in Section 20, there exist no collateral or oral agreements, promises, conditions, representations, warranties, or inducements among any of the Parties, Class Counsel, Defendants, or counsel for Defendants relating to the subject matter of the Agreement or the Supplemental Agreement Regarding Settlement Termination Rights that supersede or supplement the Agreement or the Supplemental Agreement Regarding Settlement Termination Rights.

n.  <u>Deadlines</u>.  If the last date for the performance of any action required or permitted by this Agreement falls on a Saturday, Sunday, or Court or public holiday, that action may be performed on the next business day as if it had been performed within the time period provided for performance of the action.

o.  <u>Reasonable Extensions</u>.  Unless the Court orders otherwise, the Parties may agree in writing to any reasonable extensions of time to carry out any of the provisions of this Agreement.

p.  <u>Notices</u>.  Any notice, demand, or other communication under this Agreement (other than the Class Notice) shall be in writing and shall be deemed duly given if it is addressed to the intended recipient as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed email, or delivered by reputable express overnight courier:

<u>To Plaintiffs or Settlement Class Members</u>:

Esther Berezofsky
Motley Rice LLC
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Telephone: (856) 382-4667
eberezofsky@motleyrice.com

Sharon S. Almonrode
The Miller Law Firm, P.C.
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
ssa@millerlawpc.com

<u>To Wolverine</u>:

Bradley Lorden
Associate General Counsel
Wolverine World Wide, Inc.
9341 Courtland Drive NE

Rockford, MI 49351
bradley.lorden@wwwinc.com

Michael D. Daneker
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
michael.daneker@arnoldporter.com

R. Michael Azzi
Warner Norcross + Judd LLP
1500 Warner Building
150 Ottawa Ave., NW
Grand Rapids, MI 49503
mazzi@wnj.com

To 3M:

Laura Hammargren
3M Legal Affairs
3M Center, 220-9E-02
St. Paul, MN 55144-1000
lhammargren@mmm.com

Daniel L. Ring
Michael A. Olsen
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
dring@mayerbrown.com
molsen@mayerbrown.com

Any notice required to be sent to the General Administrator shall be delivered to his, her, or its official business address.

q.    Waiver.   The provisions of this Agreement may be waived only by written agreement signed by the waiving party.  The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach of this Agreement.

r.    Materiality of Appendices and Exhibits.  All of the Appendices and Exhibits to the Agreement are material and integral parts hereof.

s.    Severability.   The provisions of this Agreement are not severable, except as provided in the Agreement.

t.   <u>Third-Party Beneficiaries</u>.   This Agreement does not create any third-party beneficiaries, except Settlement Class Members and the Released Parties other than Defendants, who are intended third-party beneficiaries.

u.   <u>Force Majeure</u>. The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by Acts of God, fires, accidents, pandemics, other natural disasters, interruptions or delays in communications or transportation, labor disputes or shortages, shortages of material or supplies, governmental laws, rules or regulations of other governmental bodies or tribunals, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

<div align="center">[SIGNATURES ON NEXT PAGE]</div>

**APPROVED AND AGREED TO:**

**Plaintiff Therese Cooper**

_____
Date:

**Plaintiff Dennis Gregory**

_____
Date:

**Plaintiff Malia Gregory**

_____
Date:

**Plaintiff Paul Groenendal**

_____
Date:

**Plaintiff Rosalyn Ingham**

_____
Date:

**Plaintiff Nancy James, individually and as trustee of the Nancy I. James Trust**

_____
Date:

**Plaintiff Theodore James**

_____
Date:

**Plaintiff Megan Johns**

_____
Date:

**Plaintiff Michael Johns**

_____
Date:

**Plaintiff Michelle Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

_____
Date:

**Plaintiff Terry Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

_____
Date:

**Class Counsel**                                    **Defendant Wolverine Worldwide Inc.**


_____                 _____
By: Esther Berezofsky                                By:
Position: Co-Lead Interim Class Counsel              Position:
Date:                                                Date:


**Class Counsel**                                    **Defendant The 3M Company**


_____                 _____
By: Sharon S. Almonrode                              By:
Position: Co-Lead Interim Class Counsel              Position:
Date:                                                Date:

**Class Counsel**

_____
By: Esther Berezofsky
Position: Co-Lead Interim Class Counsel
Date:

**Class Counsel**

_____
By: Sharon S. Almonrode
Position: Co-Lead Interim Class Counsel
Date: 9-14-2022

**Defendant Wolverine Worldwide Inc.**

_____
By:
Position:
Date:

**Defendant The 3M Company**

_____
By:
Position:
Date:

39

**Class Counsel**

By: Esther Berezofsky
Position: Co-Lead Interim Class Counsel
Date:

**Defendant Wolverine Worldwide Inc.**

By: _____
Position:
Date:

**Class Counsel**

By: Sharon S. Almonrode
Position: Co-Lead Interim Class Counsel
Date:

**Defendant The 3M Company**

By: _____
Position:
Date:

**APPROVED AND AGREED TO:**

**Plaintiff Therese Cooper**

Date: 9/14/22

**Plaintiff Dennis Gregory**

Date: _____

**Plaintiff Malia Gregory**

Date: _____

**Plaintiff Paul Groenendal**

Date: _____

**Plaintiff Rosalyn Ingham**

Date: _____

**Plaintiff Nancy James, individually and as trustee of the Nancy I. James Trust**

Date: _____

**Plaintiff Theodore James**

Date: _____

**Plaintiff Megan Johns**

Date: _____

**Plaintiff Michael Johns**

Date: _____

**Plaintiff Michelle Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

Date: _____

**Plaintiff Terry Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

Date: _____

38

**APPROVED AND AGREED TO:**

**Plaintiff Therese Cooper**                    **Plaintiff Theodore James**

_____                         _____
Date:                                           Date:

**Plaintiff Dennis Gregory**                    **Plaintiff Megan Johns**

_____                         _____
Date:                                           Date:

**Plaintiff Malia Gregory**                     **Plaintiff Michael Johns**

_____                         _____
Date:                                           Date:

**Plaintiff Paul Groenendal**                   **Plaintiff Michelle Van Wuffen,**
                                                **individually and as trustee of the Terry**
_Paul Groenendal_ 9-14-22                       **Alan VanWuffen and Michelle Lisa Van**
Date:                                           **Wuffen Trust**

                                                _____
**Plaintiff Rosalyn Ingham**                    Date:

_____                         **Plaintiff Terry Van Wuffen, individually**
Date:                                           **and as trustee of the Terry Alan**
                                                **VanWuffen and Michelle Lisa Van**
**Plaintiff Nancy James, individually and**     **Wuffen Trust**
**as trustee of the Nancy I. James Trust**

                                                _____
_____                         Date:
Date:

38

**APPROVED AND AGREED TO:**

**Plaintiff Therese Cooper**                    **Plaintiff Theodore James**

_____            _____
Date:                                          Date:

**Plaintiff Dennis Gregory**                    **Plaintiff Megan Johns**

_____            _____
Date:                                          Date:

**Plaintiff Malia Gregory**                     **Plaintiff Michael Johns**

_____            _____
Date:                                          Date:

**Plaintiff Paul Groenendal**                   **Plaintiff Michelle Van Wuffen,
                                               individually and as trustee of the Terry
                                               Alan VanWuffen and Michelle Lisa Van
                                               Wuffen Trust**

_____
Date:

                                               _____
                                               Date:

**Plaintiff Rosalyn Ingham**
_Rosalyn Ingham_
_9 - 14 - 22_
_____            **Plaintiff Terry Van Wuffen, individually
Date:                                          and as trustee of the Terry Alan
                                               VanWuffen and Michelle Lisa Van
**Plaintiff Nancy James, individually and       Wuffen Trust**
as trustee of the Nancy I. James Trust**

_____            _____
Date:                                          Date:

38

APPROVED AND AGREED TO:

Plaintiff Therese Cooper

Date: _____

Plaintiff Dennis Gregory

Date: _____

Plaintiff Malla Gregory

Date: _____

Plaintiff Paul Groenendal

Date: _____

Plaintiff Rosalyn Ingham

Date: _____

Plaintiff Nancy James, individually and
as trustee of the Nancy I. James Trust

Date: _Nancy James_ 9-14-22

Plaintiff Theodore James

Date: _____ 9-14-22

Plaintiff Megan Johns

Date: _____

Plaintiff Michael Johns

Date: _____

Plaintiff Michelle Van Wuffen,
individually and as trustee of the Terry
Alan VanWuffen and Michelle Lisa Van
Wuffen Trust

Date: _____

Plaintiff Terry Van Wuffen, individually
and as trustee of the Terry Alan
VanWuffen and Michelle Lisa Van
Wuffen Trust

Date: _____

38

**APPROVED AND AGREED TO:**

**Plaintiff Therese Cooper**                              **Plaintiff Theodore James**


_____                    _____
Date:                                                              Date:


**Plaintiff Dennis Gregory**                              **Plaintiff Megan Johns**


_____                    _____
Date:                                                              Date:


**Plaintiff Malia Gregory**                               **Plaintiff Michael Johns**


_____                    _____
Date:                                                              Date:


**Plaintiff Paul Groenendal**                           **Plaintiff Michelle Van Wuffen,
                                                                    individually and as trustee of the Terry
                                                                    Alan VanWuffen and Michelle Lisa Van
                                                                    Wuffen Trust**

_____
Date:                                                              _Michelle Lisa VanWuffen_
                                                                    Date: _Sept. 14, 2022_

**Plaintiff Rosalyn Ingham**                             **Plaintiff Terry Van Wuffen, individually
                                                                    and as trustee of the Terry Alan
                                                                    VanWuffen and Michelle Lisa Van
                                                                    Wuffen Trust**

_____
Date:                                                              _____
                                                                    Date: _9-14-2022_
**Plaintiff Nancy James, individually and
as trustee of the Nancy I. James Trust**


_____
Date:

38

**APPROVED AND AGREED TO:**

**Plaintiff Therese Cooper**

_____
Date:

**Plaintiff Dennis Gregory**

_____
Date: 9/14/2022

**Plaintiff Malia Gregory**

_____
Date: 9/14/2022

**Plaintiff Paul Groenendal**

_____
Date:

**Plaintiff Rosalyn Ingham**

_____
Date:

**Plaintiff Nancy James, individually and as trustee of the Nancy I. James Trust**

_____
Date:

**Plaintiff Theodore James**

_____
Date:

**Plaintiff Megan Johns**

_____
Date:

**Plaintiff Michael Johns**

_____
Date:

**Plaintiff Michelle Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

_____
Date:

**Plaintiff Terry Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

_____
Date:

**APPROVED AND AGREED TO:**

**Plaintiff Therese Cooper**

 

_____

Date:

**Plaintiff Dennis Gregory**

 

_____

Date:

**Plaintiff Malia Gregory**

 

_____

Date:

**Plaintiff Paul Groenendal**

 

_____

Date:

**Plaintiff Rosalyn Ingham**

 

_____

Date:

**Plaintiff Nancy James, individually and as trustee of the Nancy I. James Trust**

 

_____

Date:

**Plaintiff Theodore James**

 

_____

Date:

**Plaintiff Megan Johns**

_____

Date: 9/14/22

**Plaintiff Michael Johns**

_____

Date: 9/14/22

**Plaintiff Michelle Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

 

_____

Date:

**Plaintiff Terry Van Wuffen, individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust**

 

_____

Date:

38

**Class Counsel**

_____
By: Esther Berezofsky
Position: Co-Lead Interim Class Counsel
Date:

**Class Counsel**

_____
By: Sharon S. Almonrode
Position: Co-Lead Interim Class Counsel
Date:

**Defendant Wolverine Worldwide Inc.**

_____
By:
Position:
Date:

**Defendant The 3M Company**

*s/Laura Hammargren*
_____
By: Laura Hammargren
Position: Director/Asst. Gen. Counsel Litigation
Date: 9/14/2022

**Class Counsel**

_____
By: Esther Berezofsky
Position: Co-Lead Interim Class Counsel
Date:

**Class Counsel**

_____
By: Sharon S. Almonrode
Position: Co-Lead Interim Class Counsel
Date:

**Defendant Wolverine Worldwide Inc.**

By: Bradley Lorden
Position: Associate General Counsel
Date: 9-14-2022

**Defendant The 3M Company**

_____
By:
Position:
Date:

## **EXHIBITS TO CLASS SETTLEMENT AGREEMENT**

Exhibit A:   Claim Form

Exhibit B:   Map of North Kent Study Area

Exhibit C:   NKSA Parcel List

Exhibit D:   Long-Form Class Action Settlement Notice

Exhibit E:   Short-Form Class Action Settlement Notice

Exhibit F:   Proposed Preliminary Approval Order

Exhibit G:   Proposed General Administrator Angeion's Notice Declaration

Exhibit H:   Methodology and Plan of Allocation

# Exhibit A

# To Class Settlement Agreement

# SETTLEMENT CLAIM FORM AND RELEASE

## *Zimmerman, et al. v. The 3M Co., et al.*, United States District Court for the Western District of Michigan, Southern Division, Case No. 1:17-cv-1062

## INSTRUCTIONS FOR SUBMITTING A SETTLEMENT CLAIM FORM

There has been a settlement of the above-referenced Action between and among Plaintiffs and Defendants The 3M Company and Wolverine World Wide, Inc.  If you are a Settlement Class Member (defined below) or the legal representative of a Settlement Class Member, you (or the Settlement Class Member you represent) may be eligible for a payment from the Settlement Fund if you comply with the instructions in this Settlement Claim Form and Release ("Claim Form") and submit it in a timely manner.  Payments from the Settlement Fund will be made only to eligible Claimants and in accordance with and pursuant to a plan of distribution approved by the Court.

It is important that you act promptly to complete your Claim Form on time.  If you do nothing, you will not receive any money but will still be deemed part of the Class Action and will be releasing all claims you may have related to the allegations in the case.

Please review the following instructions before proceeding:

**YOUR COMPLETED CLAIM FORM <u>AND SUPPORTING DOCUMENTATION</u> MUST BE SUBMITTED ELECTRONICALLY AND/OR POSTMARKED BEFORE _____, 2022 [90 DAYS AFTER ENTRY OF PRELIMINARY APPROVAL ORDER].**

**<u>ELIGIBILITY REQUIREMENTS</u>:**

You are eligible to submit this Claim Form **only if** you (or a deceased or incompetent person you represent):

1. Owned Real Property within the North Kent Study Area as of November 1, 2017; and

2. Were not supplied with drinking water from a municipal water source as of November 1, 2017.[1]

---

[1] Certain Excluded Persons are not eligible to receive a benefit in this Settlement, including any person who has previously filed a claim against The 3M Company and/or Wolverine World Wide, Inc. alleging a PFAS-related injury or illness, or seeking medical monitoring or property damages, related to the presence of PFAS in any environmental media or drinking water in the North Kent Study Area, on or at their property in the North Kent Study Area, and/or in their persons, including without limitation the claims filed in the consolidated litigation captioned *In re Nylaan Litigation*, No. 17-10176 CZ, in the Circuit Court for the County of Kent, Michigan.

You cannot submit a Claim Form on behalf of another person unless you are a legal representative of a deceased or incompetent person who is a Settlement Class Member.  In such case, you would submit a Claim Form for yourself (if you are eligible) and a **separate** Claim Form for the deceased or incompetent person (if he or she is eligible).  If you (or a deceased or incompetent person you represent) own(ed) more than one property that meets the eligibility requirements for submitting a Claim Form, you would submit a **separate** Claim Form for each property.

Only one Settlement Class Member Payment shall be awarded per Eligible Property, irrespective of the number of property owners or the number of Claim Forms submitted for the Eligible Property.

**SUPPORTING DOCUMENTATION:**

To demonstrate eligibility to receive payment as a Settlement Class Member, you must submit with this Claim Form proof of ownership as of November 1, 2017 of Real Property in the North Kent Study Area that did not obtain its drinking water from a municipal water source as of November 1, 2017.  Proof of ownership may include one of the following: (1) a copy of the deed to the property; (2) a copy of a tax bill demonstrating ownership of the property as of November 1, 2017; or (3) a mortgage statement for the property.  (Note: If you do not have a document showing your ownership, you may still submit a Claim Form.  The General Administrator may still be able to verify your ownership and/or may contact you for additional information.)

**SETTLEMENT SUBCLASS MEMBERSHIP:**

If you meet the Eligibility Requirements stated above, the amount of any payment that you receive from the Settlement Fund will be based in part on your membership in one of three Settlement Subclasses, defined below:

1. **Settlement Subclass 1: Municipal Water Extension.**  Those Settlement Class Members who are or were owners of Real Property within the North Kent Study Area and who owned that property as of November 1, 2017, and were transitioned to municipal water, or are scheduled to transition to municipal water under the EGLE/Wolverine Consent Decree.

2. **Settlement Subclass 2: Filtration Systems.**  Those Settlement Class Members who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017, and were offered or received a filtration system from Wolverine or its agents under the EGLE/Wolverine Consent Decree to treat their well-sourced water and who are not members of Settlement Subclass 1: Municipal Water Extension.

3. **Settlement Subclass 3: Other.**  Those Settlement Class Members who are not in Settlement Subclass 1 or Settlement Subclass 2 and who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017.

2

**ADDITIONAL INFORMATION:**

1. You may obtain additional information about your submission of a Claim Form or about this Settlement at [URL] or by calling _____.

2. You must review, sign and date Section V below.

3. Your completed Claim Form and supporting documentation must be submitted electronically and/or postmarked before _____, 2022 **[90 DAYS AFTER PRELIMINARY APPROVAL]**.  You may submit your Claim Form and supporting documentation, as indicated below:

   a. Electronically at: [URL]. You are encouraged to submit your claim online for easy verification and processing.

   b. By mail to:

      [General Administrator]
      [Address]
      [City, State, Zip Code]

   c. By email to: [General Administrator's email address].

4. For any payment to be processed, you must complete a W-9 tax form.  There is a link on the website for this form.

5. Capitalized terms not defined in this Claim Form have the same meaning as set forth in the Class Settlement Agreement, a copy of which is available at [URL].

3

# SECTION I: Information on Claimant

Please provide the following information about the Claimant (i.e., the person completing this Claim Form):

Last Name (or Entity Name)          First Name                          Middle Initial

_____    _____    _____

Current Address (Number/Street/P.O. Box No.)

_____

City                                                    State                    Zip Code

_____    _____    _____

Telephone Number                          Email Address

_____    _____

Are you filing this Claim Form on your own behalf? (Yes/No) _____

If <u>No</u>, provide the following information about the person on whose behalf you are completing this Form:

Last Name                                    First Name                          Middle Initial

_____    _____    _____

Current Address (if person is living) (Number/Street/P.O. Box No.)

_____

City                                                    State                    Zip Code

_____    _____    _____

4

Telephone Number                              Email Address

_____          _____

Is this person:  Deceased / Incompetent?  _____

What is the nature of your legal representation of this person?
(Estate Representative/Guardian/Conservator)

_____

Court that appointed you legal representative and date of appointment:

_____

**Submit with this Claim Form a copy of documentation from the court reflecting your appointment.**

# SECTION II: Information On Class Member and Claims

1.  To the best of your knowledge and belief, to which Settlement Subclass do you belong?
    *Please refer to the Instructions on pages 1–2 of this Claim Form for a description of the Settlement Subclasses.*

    ☐   Settlement Subclass 1: Municipal Water Extension

    ☐   Settlement Subclass 2: Filtration Systems

    ☐   Settlement Subclass 3: Other

2.  Address of the property for which you are seeking benefits as a Settlement Class Member, as defined on pages 1–2 of the Claim Form (Number/Street/City/Zip Code):

    _____

3.  How long have you owned, or did own this property?  Please provide dates of ownership.

    _____

4.  If you (or the person you represent) co-owned this property with one or more other individual(s) or entity(ies) as of November 1, 2017, please state their name(s), present address(es), if known, and relation(s) to you:

    _____

5.  Did this property transition to municipal water, or is it scheduled to transition to municipal water, under the EGLE/Wolverine Consent Decree?

    ☐   Yes          ☐   No          ☐   Unsure

6.  Does this property have residential well-sourced water that is treated through a point of entry filtration system or point of use filtration system installed by Wolverine or its contractors?

    ☐   Yes          ☐   No          ☐   Unsure

6

If a point of entry filtration system was installed on your property, how many tanks were installed?

_____

If point of use filtration system(s) were installed, how many units were installed and where?

_____

7.  During the time you've had the point of entry or point of use filtration system, did it require regular service and/or maintenance by Wolverine's contractors: if yes, how frequently?

☐   Weekly      ☐   Monthly      ☐   Other

8.  Does Wolverine or its agents currently operate and maintain your point of entry or point of use filtration system?

☐ Yes          ☐   No      ☐ Unsure

9.  After February 19, 2020, did Wolverine offer to operate and maintain a PFAS drinking water filtration system in your home?

☐   Yes          ☐   No

If Yes, did you accept?

☐   Yes          ☐   No

10. Did your water filtration system need to be serviced and/or replaced?

If Yes, how frequently and how many times overall?

_____

11. Did Wolverine, EGLE or any other entity ever offer to test your drinking water for PFAS?

☐   Yes          ☐   No

If yes, did you accept?

☐   Yes      ☐   No

7

If your drinking water has been tested for PFAS by either a public agency or private entity, do you have a copy of the results?  If you have a laboratory report(s), from a public or private entity, a letter from EGLE or Wolverine, or other documentation showing those PFAS levels in your well, please attach it**.**

_____

**12.** Please list all of the people who resided on the Property as of November 1, 2017 and provide the information below for each.

| Name of Resident on Property | Dates that Person Resided on Property | Relationship to You | Current Age |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

8

# SECTION III: Attach Documentation

Please remember to attach proof of ownership as of November 1, 2017 of Real Property in the North Kent Study Area that did not obtain its drinking water from a municipal water source as of November 1, 2017.  Proof of ownership may include one of the following:  (1) a copy of the deed to the property; (2) a copy of a tax bill demonstrating ownership of the property as of November 1, 2017; or (3) a mortgage statement for the property.  **(Note: If you do not have a document showing your ownership, you may still submit a Claim Form. The General Administrator may still be able to verify your ownership and/or may contact you for additional information.)**

# SECTION IV: Release and Warranties

The Claimant (or Claimant's representative) hereby acknowledges that he, she, they, or it has read and agrees to be bound by the terms of the Release (set forth below), the definition of Released Claims, the Exclusive Remedy, Covenant Not to Sue, Waiver of Statutory Rights, and all other provisions of the Settlement Agreement, including in Section 7 (Dismissal, Release of Claims, and Related Provisions).

The Claimant (or Claimant's representative) hereby warrants and represents that he, she, they, or it is, to the best of their belief, a Settlement Class Member (or a legal representative appointed to represent (i) the Estate of a deceased Class Member, or (ii) an incompetent Class Member) as defined in the Settlement Agreement and Notices, and that the Claimant believes that he, she, they, or it is eligible to receive a payment from the Settlement Fund under the terms and conditions of the Settlement Agreement.

The Claimant (or Claimant's representative) agrees to the release and covenant not to sue in conformity with the Settlement Agreement in order to, in an individual or representative capacity, receive the Claimant's payment from the Settlement Fund.

The Claimant (or Claimant's representative) agrees that the submission of this Claim Form constitutes a full release of and covenant not to sue on the Released Claims against the Released Parties as set forth in the Settlement Agreement (and below).

**The release shall be of no force and effect unless and until the Court grants Final Approval of the Settlement and the Settlement becomes effective on the Effective Date.**

The Claimant (or Claimant's representative) hereby warrants and represents that he, she, they or it has not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any right of action or claim released pursuant to this release or any other part or portion thereof.

9

**Release of the Released Parties.**   Upon the Effective Date, the Releasing Parties shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, relinquished, waived, compromised, settled, and discharged the Released Parties from each and every past, present, and future claim and cause of action, whether known or unknown, whether direct or indirect, individual or class, in constitutional, federal, state, local, statutory, civil, or common law or in equity, or on any other law, rule, regulation, ordinance, directive, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, or for compensatory damages, consequential damages, incidental damages, statutory damages, punitive, special, multiple, treble, or exemplary damages, nominal damages, disgorgement, restitution, indemnity, contribution, penalties, injunctive relief, declaratory relief, attorneys' fees, court costs, or expenses that were or could have been asserted by the Releasing Parties in the Action or any other forum, arising out of or related to, either directly or indirectly or in whole or in part: (i) the subject matter of any allegations contained in the Complaints as well as any allegations otherwise asserted in the Action, or any discovery sought in connection with the Action, (ii) the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in Settlement Class Members' drinking water, groundwater, surface water, municipal water, private well water, soil, or air within the North Kent Study Area; (iii) the sale, purchase, use, handling, transportation, release, discharge, migration, emission, spillage, or disposal of PFAS (including PFOS, PFOA, and/or PFHxS) to, at, or from the Facilities, including any such PFAS (including PFOS, PFOA, and/or PFHxS) present as a result of disposal at or discharge by Defendants to, directly or indirectly, any landfill or disposal area, or any other location in, or from which migration has allegedly occurred into  the North Kent Study Area, and/or resulting in any alleged contamination of any Eligible Property with PFAS (including PFOS, PFOA, and/or PFHxS); (iv) for any type of relief with respect to the acquisition, installation, maintenance, operation, or presence of, including the cost or purported inconvenience or loss of enjoyment of, property associated with whole-house filters, point-of-entry filters, point-of-use filters, municipal water, private well water, bottled water, alternative water supplies, or remediation; (v) for property damage or property-value diminution, including without limitation stigma, purportedly attributable to the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in the North Kent Study Area and/or (vi) PFAS (including PFOS, PFOA, and/or PFHxS) in the blood or tissue of any Settlement Class Member (the "**Released Claims**").  For the purposes of this Agreement, "Released Claims" do not include any individual claims of the Releasing Parties (a) for any damages (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries, (b) for any emotional distress claims asserted in the future, but such emotional distress claims are reserved only if they (i) are distinct from the emotional distress claims alleged or that could have been alleged on Releasing Parties' behalf in the Action (*e.g.*, aggravation or continuation of past or existing emotional distress is not reserved, nor is emotional distress arising solely from Releasing Parties' exposure to PFAS in drinking water, but emotional distress arising solely from personal injuries that Releasing Parties may develop in the future as a result of their PFAS exposure are reserved) and (ii) allegedly arise from PFAS exposure claimed to be wholly or partially attributable to Wolverine or 3M and alleged

10

contamination of their current property or drinking water that is subject of this matter;  (c) for enforcement of Releasing Parties' rights (if any) under the EGLE/Wolverine Consent Decree; and (d) for enforcement of  the terms of this Agreement or the Final Approval Order. For purposes of this Agreement, "manifested bodily injuries" do not include the presence of PFAS (including PFOS, PFOA, and/or PFHxS) in blood or other bodily tissue.

# SECTION V: Claimant Signature

I declare that the information provided in this Claim Form is true and accurate to the best of my knowledge. I understand that the General Administrator may need to verify some of the information that I submitted.

_____                    _____
Signature                                                                         Date

_For additional information or assistance in completing this Claim Form, please contact the General Administrator at _____._

12

# Exhibit B

# To Class Settlement Agreement



UNLESS SPECIFICALLY STATED BY WRITTEN AGREEMENT, THIS DRAWING IS THE SOLE PROPERTY OF GZA GEOENVIRONMENTAL, INC. (GZA). THE INFORMATION SHOWN ON THE DRAWING IS SOLELY FOR USE BY GZA'S CLIENT OR THE CLIENT'S DESIGNATED REPRESENTATIVE FOR THE SPECIFIC PROJECT AND LOCATION IDENTIFIED ON THE DRAWING. THE DRAWING SHALL NOT BE TRANSFERRED, REUSED, COPIED, OR ALTERED IN ANY MANNER FOR USE AT ANY OTHER LOCATION OR FOR ANY OTHER PURPOSE WITHOUT THE PRIOR WRITTEN CONSENT OF GZA. ANY TRANSFER, REUSE, OR MODIFICATION TO THE DRAWING BY THE CLIENT OR OTHERS, WITHOUT THE PRIOR WRITTEN EXPRESS CONSENT OF GZA, WILL BE AT THE USER'S SOLE RISK AND WITHOUT ANY RISK OR LIABILITY TO GZA.

Rose & Westra, a Division of GZA
601 Fifth Street NW, Suite 102
Grand Rapids, Michigan 49504

**CLASS SETTLEMENT AREA**

GZA GeoEnvironmental, Inc.
Engineers and Scientists
www.gza.com

PREPARED FOR:
WN&J/WWW

| PROJ MGR: MAW | REVIEWED BY: MAW | CHECKED BY: MAW | FIGURE |
|---|---|---|---|
| DESIGNED BY: JMG | DRAWN BY: JMG | SCALE: 1 inch = 3,500 feet | 1 |
| DATE: 5/23/2022 | PROJECT NO. 16.0062335.60 | REVISION NO. | |

© 2022 - GZA GeoEnvironmental, Inc. J:\WWW\NKSA_PPN.mxd, 5/23/2022 9:20:31 AM, julie.groenleer

# Exhibit C

# To Class Settlement Agreement

| PPN | Address |
|---|---|
| 411005126043 | 1008 10 MILE RD NE |
| 411005126044 | 1022 10 MILE RD NE |
| 410632300011 | 1031 10 MILE RD NE |
| 410632300010 | 1033 10 MILE RD NE |
| 411005126006 | 1038 10 MILE RD NE |
| 410632300009 | 1045 10 MILE RD NE |
| 411005126007 | 1052 10 MILE RD NE |
| 411005126008 | 1068 10 MILE RD NE |
| 411005126009 | 1084 10 MILE RD NE |
| 410632300006 | 1095 10 MILE RD NE |
| 411005126047 | 1126 10 MILE RD NE |
| 411005126026 | 1140 10 MILE RD NE |
| 410632300012 | 1155 10 MILE RD NE |
| 411005126062 | 1172 10 MILE RD NE |
| 411005200021 | 1250 10 MILE RD NE |
| 411005400043 | 1265 HOUSE ST NE |
| 411005400042 | 1271 HOUSE ST NE |
| 411008200040 | 1300 HOUSE ST NE |
| 410632400075 | 1307 10 MILE RD NE |
| 411005200041 | 1310 10 MILE RD NE |
| 411008200045 | 1310 HOUSE ST NE |
| 411008200035 | 1330 HOUSE ST NE |
| 411005200001 | 1332 10 MILE RD NE |
| 411005400037 | 1339 HOUSE ST NE |
| 411005200002 | 1344 10 MILE RD NE |
| 411005200036 | 1350 10 MILE RD NE |
| 411005400038 | 1359 HOUSE ST NE |
| 411005200017 | 1360 10 MILE RD NE |
| 411008200036 | 1360 HOUSE ST NE |
| 411005400034 | 1379 HOUSE ST NE |
| 411005200027 | 1380 10 MILE RD NE |
| 411008200037 | 1390 HOUSE ST NE |
| 411008200049 | 1430 HOUSE ST NE |
| 411008200019 | 1440 HOUSE ST NE |
| 411005400044 | 1443 HOUSE ST NE |
| 411005400045 | 1447 HOUSE ST NE |
| 411005200028 | 1456 10 MILE RD NE |
| 411005200029 | 1460 10 MILE RD NE |
| 411008200011 | 1460 HOUSE ST NE |
| 411005400018 | 1475 HOUSE ST NE |
| 411008200012 | 1480 HOUSE ST NE |
| 411005400019 | 1495 HOUSE ST NE |
| 411005400024 | 1499 HOUSE ST NE |
| 411008200015 | 1500 HOUSE ST NE |
| 411008200050 | 1510 HOUSE ST NE |

| | |
|---|---|
| 411005200034 | 1530 10 MILE RD NE |
| 411005200033 | 1532 10 MILE RD NE |
| 411005200024 | 1538 10 MILE RD NE |
| 411005200025 | 1542 10 MILE RD NE |
| 411005200026 | 1546 10 MILE RD NE |
| 411005200038 | 1550 10 MILE RD NE |
| 411009100047 | 1572 HOUSE ST NE |
| 411009100041 | 1580 HOUSE ST NE |
| 411005200022 | 1582 10 MILE RD NE |
| 411009100042 | 1584 HOUSE ST NE |
| 411005200039 | 1590 10 MILE RD NE |
| 411005400025 | 1597 HOUSE ST NE |
| 411009100043 | 1600 HOUSE ST NE |
| 411005400008 | 1601 HOUSE ST NE |
| 411005200032 | 1602 10 MILE RD NE |
| 411005400030 | 1617 HOUSE ST NE |
| 411004300045 | 1620 HOUSE ST NE |
| 411005200042 | 1622 10 MILE RD NE |
| 411005400031 | 1625 HOUSE ST NE |
| 411004300047 | 1650 HOUSE ST NE |
| 411004300060 | 1654 HOUSE ST NE |
| 411005400011 | 1655 HOUSE ST NE |
| 411005200043 | 1656 10 MILE RD NE |
| 411004300049 | 1664 HOUSE ST NE |
| 411004300048 | 1665 HOUSE ST NE |
| 411004101002 | 1672 10 MILE RD NE |
| 411005400009 | 1675 HOUSE ST NE |
| 411004300050 | 1676 HOUSE ST NE |
| 411004300061 | 1680 HOUSE ST NE |
| 411004300051 | 1682 HOUSE ST NE |
| 411004300052 | 1698 HOUSE ST NE |
| 411004101003 | 1700 10 MILE RD NE |
| 411004300022 | 1711 HOUSE ST NE |
| 411004151002 | 1734 10 MILE RD NE |
| 411004104002 | 1736 10 MILE RD NE |
| 411004105002 | 1740 10 MILE RD NE |
| 411004102001 | 1744 10 MILE RD NE |
| 411004300006 | 1758 HOUSE ST NE |
| 411004300023 | 1767 HOUSE ST NE |
| 411004300057 | 1778 HOUSE ST NE |
| 411004300010 | 1781 HOUSE ST NE |
| 411004300054 | 1786 HOUSE ST NE |
| 411004103002 | 1820 10 MILE RD NE |
| 411004103003 | 1840 10 MILE RD NE |
| 411004300036 | 1850 HOUSE ST NE |
| 411004300003 | 1855 HOUSE ST NE |
| 411004126005 | 1866 10 MILE RD NE |

| | |
|---|---|
| 411004126006 | 1870 10 MILE RD NE |
| 411004126007 | 1884 10 MILE RD NE |
| 410633100082 | 1899 OFFROAD DR NE |
| 411004126002 | 1918 10 MILE RD NE |
| 411004126003 | 1940 10 MILE RD NE |
| 410633100083 | 1969 OFFROAD DR NE |
| 410633300007 | 1981 10 MILE RD NE |
| 410628300011 | 1981 11 MILE RD NE |
| 410633100081 | 1990 OFFROAD DR NE |
| 411009401016 | 1996 MEEK DR NE |
| 411009401007 | 2001 MEEK DR NE |
| 410633402001 | 2010 GREEN TIMBERS DR NE |
| 411009401019 | 2010 MEEK DR NE |
| 410628451002 | 2011 11 MILE RD NE |
| 411009251019 | 2020 KORBEN WOODS CT NE |
| 411004127010 | 2020 SQUIREWOOD CT NE |
| 411004127013 | 2021 SQUIREWOOD CT NE |
| 411009401006 | 2023 MEEK DR NE |
| 411009401010 | 2024 MEEK DR NE |
| 410628451003 | 2029 11 MILE RD NE |
| 410633451004 | 2031 10 MILE RD NE |
| 411004128001 | 2034 10 MILE RD NE |
| 411009401014 | 2036 MEEK DR NE |
| 411009251018 | 2039 KORBEN WOODS CT NE |
| 411009401005 | 2039 MEEK DR NE |
| 411009251020 | 2042 KORBEN WOODS CT NE |
| 411004127012 | 2045 SQUIREWOOD CT NE |
| 410633201002 | 2050 11 MILE RD NE |
| 410633402002 | 2050 GREEN TIMBERS DR NE |
| 411004127011 | 2050 SQUIREWOOD CT NE |
| 411009401001 | 2051 MEEK DR NE |
| 411009251017 | 2055 KORBEN WOODS CT NE |
| 411004200011 | 2060 10 MILE RD NE |
| 411009401018 | 2060 MEEK DR NE |
| 411009401017 | 2064 MEEK DR NE |
| 411009251022 | 2066 MEEK DR NE |
| 410633402009 | 2069 GREEN TIMBERS DR NE |
| 411004200012 | 2070 10 MILE RD NE |
| 411009251023 | 2072 MEEK DR NE |
| 411009251021 | 2075 KORBEN WOODS CT NE |
| 411009251016 | 2077 KORBEN WOODS CT NE |
| 411004200031 | 2080 10 MILE RD NE |
| 411009251024 | 2086 MEEK DR NE |
| 410633402003 | 2088 GREEN TIMBERS DR NE |
| 410633402008 | 2091 GREEN TIMBERS DR NE |
| 411004200058 | 2100 BRENT DR NE |
| 411009251025 | 2100 MEEK DR NE |

| | |
|---|---|
| 410633451005 | 2101 10 MILE RD NE |
| 411004200032 | 2109 BRITTANY DR NE |
| 410633201003 | 2110 11 MILE RD NE |
| 410633402004 | 2110 GREEN TIMBERS DR NE |
| 411004401001 | 2115 HOUSE ST NE |
| 410633402007 | 2119 GREEN TIMBERS DR NE |
| 411009251026 | 2138 MEEK DR NE |
| 411009251003 | 2141 MEEK DR NE |
| 410633402005 | 2144 GREEN TIMBERS DR NE |
| 411004200033 | 2145 BRITTANY DR NE |
| 410633402006 | 2145 GREEN TIMBERS DR NE |
| 411009251004 | 2147 MEEK DR NE |
| 411004200059 | 2150 BRENT DR NE |
| 410633451008 | 2151 10 MILE RD NE |
| 411009251005 | 2153 MEEK DR NE |
| 411009251027 | 2154 MEEK DR NE |
| 411004200034 | 2179 BRITTANY DR NE |
| 411004200015 | 2186 10 MILE RD NE |
| 410633201004 | 2190 11 MILE RD NE |
| 411004200056 | 2200 BRENT DR NE |
| 410633226001 | 2202 11 MILE RD NE |
| 410633451009 | 2203 10 MILE RD NE |
| 410628478003 | 2211 11 MILE RD NE |
| 410633277007 | 2211 CLEAR WATER CT NE |
| 410628478001 | 2213 11 MILE RD NE |
| 410628478004 | 2215 11 MILE RD NE |
| 410633226002 | 2222 11 MILE RD NE |
| 410633476013 | 2229 10 MILE RD NE |
| 411009428001 | 2241 SPRUCEWOOD CT NE |
| 410633426021 | 2243 HIDDEN TIMBERS TRL NE |
| 410633277006 | 2245 CLEAR WATER CT NE |
| 410633426017 | 2250 HIDDEN TIMBERS TRL NE |
| 411009428002 | 2250 SPRUCEWOOD CT NE |
| 410628478002 | 2251 11 MILE RD NE |
| 410633226003 | 2260 11 MILE RD NE |
| 411009428003 | 2260 SPRUCEWOOD CT NE |
| 411009428004 | 2265 SPRUCEWOOD CT NE |
| 410633426022 | 2269 HIDDEN TIMBERS TRL NE |
| 410633277005 | 2279 CLEAR WATER CT NE |
| 410633426012 | 2280 ALGOMA WOODS DR NE |
| 410633426009 | 2281 ALGOMA WOODS DR NE |
| 410633226004 | 2286 11 MILE RD NE |
| 410633426005 | 2290 HIDDEN TIMBERS TRL NE |
| 411016276020 | 2295 POST DR NE |
| 411004200038 | 2300 10 MILE RD NE |
| 410633426013 | 2300 ALGOMA WOODS DR NE |
| 411021226037 | 2300 ROGUE RIVER RD NE |

| | |
|---|---|
| 410633277004 | 2301 CLEAR WATER CT NE |
| 411016276019 | 2309 POST DR NE |
| 410633226019 | 2316 11 MILE RD NE |
| 411016476021 | 2317 ROGUE RIVER RD NE |
| 410633426010 | 2323 ALGOMA WOODS DR NE |
| 410633277003 | 2323 CLEAR WATER CT NE |
| 410633426014 | 2324 ALGOMA WOODS DR NE |
| 411016429002 | 2325 BELMONT CENTER DR NE |
| 410633426006 | 2330 HIDDEN TIMBERS TRL NE |
| 411021226030 | 2330 ROGUE RIVER RD NE |
| 411021226034 | 2332 ROGUE RIVER RD NE |
| 410633426023 | 2333 HIDDEN TIMBERS TRL NE |
| 410633476011 | 2335 10 MILE RD NE |
| 411021226035 | 2340 ROGUE RIVER RD NE |
| 411016276004 | 2345 POST DR NE |
| 411016476041 | 2345 ROGUE RIVER RD NE |
| 410633426015 | 2346 ALGOMA WOODS DR NE |
| 411016278004 | 2350 SAVOY ST NE |
| 410633277002 | 2355 CLEAR WATER CT NE |
| 410633277008 | 2364 CLEAR WATER CT NE |
| 411021226032 | 2364 ROGUE RIVER RD NE |
| 411016476052 | 2367 ROGUE RIVER RD NE |
| 410633426007 | 2370 HIDDEN TIMBERS TRL NE |
| 411016279003 | 2374 POST DR NE |
| 411016429009 | 2375 BELMONT CENTER DR NE |
| 411016476026 | 2377 ROGUE RIVER RD NE |
| 410633426003 | 2385 HIDDEN TIMBERS TRL NE |
| 410633277001 | 2387 CLEAR WATER CT NE |
| 411010351001 | 2416 FROND ST NE |
| 410634152014 | 2434 WINDING RIDGE TRL NE |
| 411010351002 | 2440 FROND ST NE |
| 410634152001 | 2441 WINDING RIDGE TRL NE |
| 410634152013 | 2456 WINDING RIDGE TRL NE |
| 411015351044 | 2461 ROGUE RIVER RD NE |
| 411010351003 | 2466 FROND ST NE |
| 411022101033 | 2466 ROGUE RIVER RD NE |
| 410634152002 | 2469 WINDING RIDGE TRL NE |
| 410634152012 | 2478 WINDING RIDGE TRL NE |
| 411022101024 | 2480 ROGUE RIVER RD NE |
| 410634152011 | 2500 WINDING RIDGE TRL NE |
| 410634152003 | 2511 WINDING RIDGE TRL NE |
| 411015352045 | 2512 LYNHURST ST NE |
| 411015352040 | 2538 LYNHURST ST NE |
| 410634152010 | 2540 WINDING RIDGE TRL NE |
| 410634152004 | 2543 WINDING RIDGE TRL NE |
| 410634101004 | 2550 11 MILE RD NE |
| 411015302009 | 2551 LYNHURST ST NE |

| | |
|---|---|
| 411010303007 | 2555 VAN DAM DR NE |
| 411010303002 | 2559 VAN DAM DR NE |
| 411022101039 | 2560 ROGUE RIVER RD NE |
| 410634152005 | 2561 WINDING RIDGE TRL NE |
| 410634152009 | 2564 WINDING RIDGE TRL NE |
| 411010353002 | 2566 VAN DAM DR NE |
| 410634152008 | 2580 WINDING RIDGE TRL NE |
| 410634152006 | 2585 WINDING RIDGE TRL NE |
| 411015302012 | 2595 LYNHURST ST NE |
| 410634152007 | 2600 WINDING RIDGE TRL NE |
| 411010326002 | 2615 VAN DAM DR NE |
| 411022126036 | 2626 ROGUE RIVER RD NE |
| 411010376003 | 2630 VAN DAM DR NE |
| 411010326003 | 2635 VAN DAM DR NE |
| 411010326014 | 2661 VAN DAM DR NE |
| 411010326015 | 2671 VAN DAM DR NE |
| 411022126005 | 2674 ROGUE RIVER RD NE |
| 411015376026 | 2691 ROGUE RIVER RD NE |
| 411010376009 | 2700 VAN DAM DR NE |
| 411010376011 | 2720 VAN DAM DR NE |
| 411010326035 | 2727 VAN DAM DR NE |
| 411010376012 | 2730 VAN DAM DR NE |
| 411010326036 | 2734 VAN DAM DR NE |
| 411015376069 | 2739 ROGUE RIVER RD NE |
| 411010326034 | 2741 VAN DAM DR NE |
| 411022127060 | 2742 ROGUE RIVER RD NE |
| 411010376025 | 2750 VAN DAM DR NE |
| 411010326024 | 2755 VAN DAM DR NE |
| 411022127069 | 2760 ROGUE RIVER RD NE |
| 411010401006 | 2760 VAN DAM DR NE |
| 411010326018 | 2775 VAN DAM DR NE |
| 411015376066 | 2785 ROGUE RIVER RD NE |
| 411015376067 | 2787 ROGUE RIVER RD NE |
| 411015376045 | 2789 ROGUE RIVER RD NE |
| 411015376044 | 2791 ROGUE RIVER RD NE |
| 411015376031 | 2797 ROGUE RIVER RD NE |
| 411015376049 | 2799 ROGUE RIVER RD NE |
| 411010376015 | 2800 VAN DAM DR NE |
| 411015376054 | 2801 ROGUE RIVER RD NE |
| 411010376014 | 2802 VAN DAM DR NE |
| 411015376047 | 2803 ROGUE RIVER RD NE |
| 411015376032 | 2805 ROGUE RIVER RD NE |
| 411015376050 | 2807 ROGUE RIVER RD NE |
| 411015376051 | 2809 ROGUE RIVER RD NE |
| 411015376029 | 2811 ROGUE RIVER RD NE |
| 410634400052 | 2879 10 MILE RD NE |
| 411010327001 | 2920 VAN DAM DR NE |

| | |
|---|---|
| 411015230025 | 2955 ROGUE BAYOU CT NE |
| 410634227064 | 2960 ROYAL HANNAH DR NE |
| 410634227063 | 2963 ROYAL HANNAH DR NE |
| 410634227065 | 2972 ROYAL HANNAH DR NE |
| 410634227062 | 2975 ROYAL HANNAH DR NE |
| 410634227033 | 2982 SIR CHARLES DR NE |
| 410634227034 | 2983 SIR CHARLES DR NE |
| 410634227066 | 2988 ROYAL HANNAH DR NE |
| 410634227032 | 2988 SIR CHARLES DR NE |
| 410634227061 | 2989 ROYAL HANNAH DR NE |
| 410634227035 | 2989 SIR CHARLES DR NE |
| 410634227031 | 2990 SIR CHARLES DR NE |
| 410634400005 | 2993 10 MILE RD NE |
| 410634227036 | 2997 SIR CHARLES DR NE |
| 410634227067 | 3000 ROYAL HANNAH DR NE |
| 410634227030 | 3000 SIR CHARLES DR NE |
| 410634227060 | 3003 ROYAL HANNAH DR NE |
| 410634227029 | 3012 SIR CHARLES DR NE |
| 410634227068 | 3016 ROYAL HANNAH DR NE |
| 410634227059 | 3019 ROYAL HANNAH DR NE |
| 410634227028 | 3024 SIR CHARLES DR NE |
| 411010476009 | 3027 ROGUE HILL CT NE |
| 411010476026 | 3030 ROGUE HILL CT NE |
| 410634227069 | 3030 ROYAL HANNAH DR NE |
| 410634227058 | 3035 ROYAL HANNAH DR NE |
| 411010476020 | 3036 ROGUE HOLLOW CT NE |
| 410634227027 | 3038 SIR CHARLES DR NE |
| 410634227070 | 3042 ROYAL HANNAH DR NE |
| 411010476025 | 3043 ROGUE HILL CT NE |
| 411010476027 | 3046 ROGUE HILL CT NE |
| 411010476024 | 3046 ROGUE HOLLOW CT NE |
| 411010476028 | 3047 ROGUE HOLLOW CT NE |
| 410634227057 | 3047 ROYAL HANNAH DR NE |
| 410634227026 | 3050 SIR CHARLES DR NE |
| 410634227071 | 3056 ROYAL HANNAH DR NE |
| 411010476007 | 3057 ROGUE HILL CT NE |
| 411010476029 | 3057 ROGUE HOLLOW CT NE |
| 410634226002 | 3060 11 MILE RD NE |
| 410634227025 | 3062 SIR CHARLES DR NE |
| 411010476012 | 3066 ROGUE HILL CT NE |
| 410634227056 | 3069 ROYAL HANNAH DR NE |
| 410634227072 | 3070 ROYAL HANNAH DR NE |
| 411010476002 | 3071 ROGUE HOLLOW CT NE |
| 411010476006 | 3073 ROGUE HILL CT NE |
| 410634227055 | 3081 ROYAL HANNAH DR NE |
| 411010476013 | 3086 ROGUE HILL CT NE |
| 411015428028 | 3093 ROGUE RIVER RD NE |

| | |
|---|---|
| 410634227054 | 3099 ROYAL HANNAH DR NE |
| 410634226003 | 3100 11 MILE RD NE |
| 410634400029 | 3105 10 MILE RD NE |
| 410634227053 | 3115 ROYAL HANNAH DR NE |
| 410634227052 | 3127 ROYAL HANNAH DR NE |
| 410627400046 | 3155 11 MILE RD NE |
| 411015429009 | 3191 ROGUE RIVER RD NE |
| 411002100008 | 3210 10 MILE RD NE |
| 410635351007 | 3221 STONERIDGE DR NE |
| 410635301015 | 3232 BENT TREE RIDGE DR NE |
| 410635351008 | 3232 STONERIDGE DR NE |
| 410635351006 | 3233 STONERIDGE DR NE |
| 410635301006 | 3235 BENT TREE RIDGE DR NE |
| 410635100020 | 3246 11 MILE RD NE |
| 410635120009 | 3254 HOPEWELL CT NE |
| 410635351009 | 3256 STONERIDGE DR NE |
| 410635120010 | 3257 HOPEWELL CT NE |
| 410635301016 | 3260 BENT TREE RIDGE DR NE |
| 410635351005 | 3261 STONERIDGE DR NE |
| 411014301009 | 3265 ANCLIFF ST NE |
| 410635120008 | 3266 HOPEWELL CT NE |
| 410635120011 | 3269 HOPEWELL CT NE |
| 410635301007 | 3275 BENT TREE RIDGE DR NE |
| 411014301010 | 3283 ANCLIFF ST NE |
| 410635351010 | 3284 STONERIDGE DR NE |
| 410635351004 | 3287 STONERIDGE DR NE |
| 410635301011 | 3290 BENT TREE RIDGE DR NE |
| 410635100007 | 3310 11 MILE RD NE |
| 410635351011 | 3310 STONERIDGE DR NE |
| 410635351003 | 3313 STONERIDGE DR NE |
| 410635301008 | 3325 BENT TREE RIDGE DR NE |
| 410635301012 | 3330 BENT TREE RIDGE DR NE |
| 410635351012 | 3340 STONERIDGE DR NE |
| 410635351002 | 3343 STONERIDGE DR NE |
| 410635120019 | 3349 THORNTONS CT NE |
| 410635120022 | 3352 THORNTONS CT NE |
| 410635120021 | 3364 THORNTONS CT NE |
| 410635120020 | 3367 THORNTONS CT NE |
| 410635301013 | 3370 BENT TREE RIDGE DR NE |
| 410635351013 | 3380 STONERIDGE DR NE |
| 410635351001 | 3383 STONERIDGE DR NE |
| 410626300027 | 3385 11 MILE RD NE |
| 410635100041 | 3426 11 MILE RD NE |
| 410635326016 | 3455 PRESTONWOOD DR NE |
| 410635326017 | 3470 PRESTONWOOD DR NE |
| 411023100007 | 3558 ROGUE RIVER RD NE |
| 411002200033 | 3716 10 MILE RD NE |

| | |
|---|---|
| 411002200030 | 3730 10 MILE RD NE |
| 411002200031 | 3740 10 MILE RD NE |
| 411002200034 | 3838 10 MILE RD NE |
| 411002200025 | 3910 10 MILE RD NE |
| 411002200058 | 3980 10 MILE RD NE |
| 411022126042 | 5645 ETHELWIN AVE NE |
| 411022276006 | 5646 VERTA DR NE |
| 411022276005 | 5666 VERTA DR NE |
| 411022251029 | 5681 VERTA DR NE |
| 411022127019 | 5684 ETHELWIN AVE NE |
| 411022251036 | 5709 VERTA DR NE |
| 411022126019 | 5735 ETHELWIN AVE NE |
| 411022127065 | 5764 ETHELWIN AVE NE |
| 411022201014 | 5766 VERTA DR NE |
| 411021276018 | 5767 WEST RIVER DR NE |
| 411022126037 | 5795 ETHELWIN AVE NE |
| 411023100039 | 5801 NORTHLAND DR NE |
| 411022201023 | 5812 VERTA DR NE |
| 411021226039 | 5815 BELMONT AVE NE |
| 411022127054 | 5816 ETHELWIN AVE NE |
| 411022201011 | 5820 VERTA DR NE |
| 411022151022 | 5828 BELMONT AVE NE |
| 411022151024 | 5860 BELMONT AVE NE |
| 411022127038 | 5864 ETHELWIN AVE NE |
| 411022127037 | 5874 ETHELWIN AVE NE |
| 411022251001 | 5875 VERTA DR NE |
| 411021226041 | 5891 BELMONT AVE NE |
| 411022127008 | 5894 ETHELWIN AVE NE |
| 411022126033 | 5895 ETHELWIN AVE NE |
| 411021226044 | 5905 BELMONT AVE NE |
| 411022101020 | 5920 BELMONT AVE NE |
| 411022127007 | 5924 ETHELWIN AVE NE |
| 411022201026 | 5960 VERTA DR NE |
| 411016476047 | 6055 BELMONT AVE NE |
| 411015376017 | 6072 BELSHIRE AVE NE |
| 411015351036 | 6107 IDAHO AVE NE |
| 411022301019 | 6112 WEST RIVER DR NE |
| 411022151045 | 6117 WEST RIVER DR NE |
| 411015351035 | 6121 IDAHO AVE NE |
| 411015352042 | 6126 IDAHO AVE NE |
| 411022301012 | 6130 WEST RIVER DR NE |
| 411015451025 | 6132 ROGUE LN NE |
| 411015451024 | 6148 ROGUE LN NE |
| 411015351032 | 6156 BELMONT AVE NE |
| 411015451005 | 6170 ROGUE LN NE |
| 411015352017 | 6175 BELSHIRE AVE NE |
| 411015451030 | 6194 ROGUE LN NE |

| | |
|---|---|
| 411015426034 | 6205 PACKER DR NE |
| 411022126024 | 6211 WEST RIVER DR NE |
| 411022126039 | 6221 WEST RIVER DR NE |
| 411015376034 | 6230 BELSHIRE AVE NE |
| 411015302016 | 6240 BELMONT AVE NE |
| 411022126043 | 6245 WEST RIVER DR NE |
| 411022127062 | 6267 WEST RIVER DR NE |
| 411015302015 | 6272 BELSHIRE AVE NE |
| 411022401004 | 6334 WEST RIVER DR NE |
| 411022251018 | 6367 WEST RIVER DR NE |
| 411022251019 | 6387 WEST RIVER DR NE |
| 411016301028 | 6390 SAMRICK AVE NE |
| 411022401006 | 6392 WEST RIVER DR NE |
| 411022276009 | 6419 WEST RIVER DR NE |
| 411014190009 | 6423 KUTTSHILL DR NE |
| 411016279011 | 6433 SULLIVAN AVE NE |
| 411015152001 | 6480 BELMONT AVE NE |
| 411014152004 | 6486 PACKER DR NE |
| 411014153010 | 6502 NUGGET AVE NE |
| 411015151018 | 6510 BELMONT AVE NE |
| 411014152008 | 6515 NUGGET AVE NE |
| 411016276009 | 6517 BELMONT AVE NE |
| 411015151017 | 6530 BELMONT AVE NE |
| 411016276022 | 6531 BELMONT AVE NE |
| 411014152007 | 6531 NUGGET AVE NE |
| 411015151024 | 6550 BELMONT AVE NE |
| 411016276011 | 6561 BELMONT AVE NE |
| 411015151023 | 6562 BELMONT AVE NE |
| 411015151012 | 6566 BELMONT AVE NE |
| 411023100040 | 6573 WEST RIVER DR NE |
| 411023100027 | 6579 WEST RIVER DR NE |
| 411023100028 | 6581 WEST RIVER DR NE |
| 411023100015 | 6591 WEST RIVER DR NE |
| 411015151019 | 6594 BELMONT AVE NE |
| 411014151013 | 6600 PACKER DR NE |
| 411023100029 | 6601 WEST RIVER DR NE |
| 411015201026 | 6605 PACKER DR NE |
| 411015120002 | 6612 BELMONT AVE NE |
| 411023100035 | 6617 WEST RIVER DR NE |
| 411023100036 | 6621 WEST RIVER DR NE |
| 411023100032 | 6655 WEST RIVER DR NE |
| 411015201024 | 6688 WILDWOOD CREEK DR NE |
| 411015120001 | 6694 BELMONT AVE NE |
| 411015201025 | 6695 PACKER DR NE |
| 411015201023 | 6724 WILDWOOD CREEK DR NE |
| 411015101002 | 6725 BELMONT AVE NE |
| 411015102004 | 6751 PIXLEY AVE NE |

| | |
|---|---|
| 411015201011 | 6760 PACKER DR NE |
| 411015201013 | 6767 PACKER DR NE |
| 411015201014 | 6769 PACKER DR NE |
| 411015201012 | 6773 PACKER DR NE |
| 411015201003 | 6779 PACKER DR NE |
| 411015201010 | 6780 PACKER DR NE |
| 411015126006 | 6780 PIXLEY AVE NE |
| 411015201009 | 6781 PACKER DR NE |
| 411015102003 | 6790 BELMONT AVE NE |
| 411015201017 | 6790 WILDWOOD CREEK DR NE |
| 411015101001 | 6795 BELMONT AVE NE |
| 411010376019 | 6800 WILDWOOD CREEK DR NE |
| 411016226002 | 6801 BELMONT AVE NE |
| 411010479001 | 6802 PACKER DR NE |
| 411010476014 | 6803 PACKER DR NE |
| 411009476001 | 6813 BELMONT AVE NE |
| 411010376024 | 6814 WILDWOOD CREEK DR NE |
| 411010376021 | 6815 WILDWOOD CREEK DR NE |
| 411010352010 | 6817 PIXLEY AVE NE |
| 411010352013 | 6818 BELMONT AVE NE |
| 411010353014 | 6818 PIXLEY AVE NE |
| 411010352009 | 6821 PIXLEY AVE NE |
| 411010352012 | 6824 BELMONT AVE NE |
| 411010376022 | 6826 WILDWOOD CREEK DR NE |
| 411010352007 | 6830 BELMONT AVE NE |
| 411010353013 | 6832 PIXLEY AVE NE |
| 411010377005 | 6833 WILDWOOD CREEK DR NE |
| 411010351010 | 6835 BELMONT AVE NE |
| 411015201008 | 6839 PACKER DR NE |
| 411010377004 | 6840 WILDWOOD CREEK DR NE |
| 411015201004 | 6841 PACKER DR NE |
| 411015201005 | 6843 PACKER DR NE |
| 411015201006 | 6845 PACKER DR NE |
| 411015201019 | 6847 PACKER DR NE |
| 411010353018 | 6848 PIXLEY AVE NE |
| 411015201020 | 6849 PACKER DR NE |
| 411010352006 | 6858 BELMONT AVE NE |
| 411010353017 | 6858 PIXLEY AVE NE |
| 411010351009 | 6859 BELMONT AVE NE |
| 411010377006 | 6859 WILDWOOD CREEK DR NE |
| 411010352005 | 6868 BELMONT AVE NE |
| 411010377003 | 6868 WILDWOOD CREEK DR NE |
| 411010353016 | 6872 PIXLEY AVE NE |
| 411010476005 | 6875 PACKER DR NE |
| 411010352014 | 6881 PIXLEY AVE NE |
| 411010377002 | 6884 WILDWOOD CREEK DR NE |
| 411010351008 | 6885 BELMONT AVE NE |

| | |
|---|---|
| 411010353015 | 6890 PIXLEY AVE NE |
| 411010476004 | 6891 PACKER DR NE |
| 411010377001 | 6900 WILDWOOD CREEK DR NE |
| 411010476022 | 6907 PACKER DR NE |
| 411010351007 | 6911 BELMONT AVE NE |
| 411010353004 | 6918 PIXLEY AVE NE |
| 411010353003 | 6932 PIXLEY AVE NE |
| 411010351006 | 6935 BELMONT AVE NE |
| 411010477001 | 6950 PACKER DR NE |
| 411010353020 | 6950 PIXLEY AVE NE |
| 411010352001 | 6955 BELMONT AVE NE |
| 411010351005 | 6959 BELMONT AVE NE |
| 411010351004 | 6975 HERRINGTON AVE NE |
| 411010301017 | 6990 HERRINGTON AVE NE |
| 411010353019 | 6990 PIXLEY AVE NE |
| 411010301022 | 6997 HERRINGTON AVE NE |
| 411010426012 | 7000 PACKER DR NE |
| 411010302013 | 7008 PINE HILL DR NE |
| 411010301028 | 7019 HERRINGTON AVE NE |
| 411009429006 | 7029 HERRINGTON AVE NE |
| 411010301026 | 7034 HERRINGTON AVE NE |
| 411010426019 | 7035 PACKER DR NE |
| 411009340001 | 7042 CHANDLER DR NE |
| 411010301015 | 7045 PINE HILL DR NE |
| 411009429003 | 7049 HERRINGTON AVE NE |
| 411010303006 | 7050 BELMONT AVE NE |
| 411010302012 | 7060 PINE HILL DR NE |
| 411010301014 | 7061 PINE HILL DR NE |
| 411010303003 | 7064 BELMONT AVE NE |
| 411009301008 | 7071 CHANDLER DR NE |
| 411010302011 | 7076 PINE HILL DR NE |
| 411009301013 | 7077 CHANDLER DR NE |
| 411010326038 | 7077 EMERALD FOREST DR NE |
| 411009429002 | 7079 HERRINGTON AVE NE |
| 411010326021 | 7080 EMERALD FOREST DR NE |
| 411009301002 | 7081 CHANDLER DR NE |
| 411009326010 | 7100 CHANDLER DR NE |
| 411010301012 | 7105 PINE HILL DR NE |
| 411010303008 | 7124 BELMONT AVE NE |
| 411010301011 | 7125 PINE HILL DR NE |
| 411010302010 | 7126 PINE HILL DR NE |
| 411009301003 | 7129 CHANDLER DR NE |
| 411010302009 | 7143 BELMONT AVE NE |
| 411010301027 | 7143 PINE HILL DR NE |
| 411010326031 | 7144 BELMONT AVE NE |
| 411010302002 | 7144 PINE HILL DR NE |
| 411010426018 | 7145 PACKER DR NE |

| | |
|---|---|
| 411010451025 | 7147 PACKER DR NE |
| 411010451011 | 7149 PACKER DR NE |
| 411010426017 | 7150 ROGUEWOOD DR NE |
| 411010451013 | 7153 PACKER DR NE |
| 411009429001 | 7157 HERRINGTON AVE NE |
| 411010451014 | 7157 PACKER WOODS DR NE |
| 411010451015 | 7161 PACKER DR NE |
| 411010451016 | 7165 PACKER DR NE |
| 411009301001 | 7169 CHANDLER DR NE |
| 411010326016 | 7170 BELMONT AVE NE |
| 411010376023 | 7171 PACKER WOODS DR NE |
| 411010451017 | 7173 PACKER DR NE |
| 411010451029 | 7177 PACKER DR NE |
| 411010451010 | 7181 PACKER DR NE |
| 411009326009 | 7184 CHANDLER DR NE |
| 411010326027 | 7190 BELMONT AVE NE |
| 411009426001 | 7193 HERRINGTON AVE NE |
| 411009100010 | 7200 CHANDLER DR NE |
| 411009427001 | 7200 HERRINGTON AVE NE |
| 411010426020 | 7205 PACKER DR NE |
| 411010426011 | 7208 PACKER DR NE |
| 411010426021 | 7209 PACKER DR NE |
| 411009200047 | 7210 HERRINGTON AVE NE |
| 411010426010 | 7210 PACKER DR NE |
| 411009200013 | 7211 HERRINGTON AVE NE |
| 411010151025 | 7211 PINE HILL DR NE |
| 411010426005 | 7215 PACKER DR NE |
| 411010176021 | 7220 BELMONT AVE NE |
| 411009100020 | 7220 CHANDLER DR NE |
| 411009200046 | 7220 HERRINGTON AVE NE |
| 411010302001 | 7220 PINE HILL DR NE |
| 411010451028 | 7223 PACKER DR NE |
| 411010451027 | 7225 PACKER DR NE |
| 411010426013 | 7228 PACKER DR NE |
| 411010451023 | 7229 PACKER DR NE |
| 411010151021 | 7235 PINE HILL DR NE |
| 411010200024 | 7244 PACKER DR NE |
| 411010401005 | 7245 PACKER DR NE |
| 411009100005 | 7249 CHANDLER DR NE |
| 411010200010 | 7250 PACKER DR NE |
| 411010200035 | 7256 PACKER DR NE |
| 411010401004 | 7259 PACKER DR NE |
| 411009251015 | 7299 TERRIE LYNN DR NE |
| 411009100035 | 7300 CHANDLER DR NE |
| 411009251006 | 7318 TERRIE LYNN DR NE |
| 411009200007 | 7320 HERRINGTON AVE NE |
| 411009200010 | 7322 HERRINGTON AVE NE |

| | |
|---|---|
| 411009251014 | 7325 TERRIE LYNN DR NE |
| 411009251007 | 7336 TERRIE LYNN DR NE |
| 411009251013 | 7339 TERRIE LYNN DR NE |
| 411009100039 | 7343 CHANDLER DR NE |
| 411009251012 | 7347 TERRIE LYNN DR NE |
| 411009251008 | 7354 TERRIE LYNN DR NE |
| 411009251028 | 7355 HERRINGTON AVE NE |
| 411009251011 | 7355 TERRIE LYNN DR NE |
| 411009100038 | 7367 CHANDLER DR NE |
| 411009100044 | 7370 CHANDLER DR NE |
| 411009251010 | 7371 TERRIE LYNN DR NE |
| 411009251009 | 7372 TERRIE LYNN DR NE |
| 411009251029 | 7373 HERRINGTON AVE NE |
| 411011252001 | 7378 CHILDSDALE AVE NE |
| 411009200036 | 7400 HERRINGTON AVE NE |
| 411009100011 | 7401 CHANDLER DR NE |
| 411009100045 | 7410 CHANDLER DR NE |
| 411009100015 | 7415 CHANDLER DR NE |
| 411009200040 | 7415 HERRINGTON AVE NE |
| 411009100026 | 7419 CHANDLER DR NE |
| 411009100046 | 7422 CHANDLER DR NE |
| 411009100027 | 7425 CHANDLER DR NE |
| 411009200029 | 7426 HERRINGTON AVE NE |
| 411009100030 | 7428 CHANDLER DR NE |
| 411009200039 | 7435 HERRINGTON AVE NE |
| 411009200042 | 7444 HERRINGTON AVE NE |
| 411008200029 | 7450 PINE ISLAND DR NE |
| 411009200041 | 7460 HERRINGTON AVE NE |
| 411009100021 | 7471 CHANDLER DR NE |
| 411009100036 | 7480 CHANDLER DR NE |
| 411009100013 | 7485 CHANDLER DR NE |
| 411009200032 | 7500 HERRINGTON AVE NE |
| 411009200025 | 7501 CHANDLER DR NE |
| 411009200018 | 7509 HERRINGTON AVE NE |
| 411012101005 | 7515 JERICHO AVE NE |
| 411009200014 | 7531 HERRINGTON AVE NE |
| 411008200047 | 7546 PINE ISLAND DR NE |
| 411009200027 | 7550 HERRINGTON AVE NE |
| 411009200022 | 7555 CHANDLER DR NE |
| 411009200037 | 7557 CHANDLER DR NE |
| 411009200038 | 7561 CHANDLER DR NE |
| 411009200023 | 7565 CHANDLER DR NE |
| 411012101004 | 7575 JERICHO AVE NE |
| 411009200045 | 7580 HERRINGTON AVE NE |
| 411009200002 | 7585 HERRINGTON AVE NE |
| 411009200044 | 7600 HERRINGTON AVE NE |
| 411009200024 | 7601 HERRINGTON AVE NE |

| | |
|---|---|
| 411009200043 | 7608 HERRINGTON AVE NE |
| 411001300022 | 7626 JERICHO AVE NE |
| 411004477002 | 7630 HERRINGTON AVE NE |
| 411004451008 | 7641 HERRINGTON AVE NE |
| 411004451006 | 7649 HERRINGTON AVE NE |
| 411004451007 | 7651 HERRINGTON AVE NE |
| 411004451005 | 7661 HERRINGTON AVE NE |
| 411004451004 | 7667 HERRINGTON AVE NE |
| 411004476004 | 7680 HERRINGTON AVE NE |
| 411004476003 | 7712 HERRINGTON AVE NE |
| 411004476002 | 7720 HERRINGTON AVE NE |
| 411009200019 | 7733 HERRINGTON AVE NE |
| 411004451003 | 7737 HERRINGTON AVE NE |
| 411004451010 | 7747 HERRINGTON AVE NE |
| 411005300031 | 7754 PINE ISLAND CT NE |
| 411004451011 | 7757 HERRINGTON AVE NE |
| 411005300041 | 7758 PINE ISLAND CT NE |
| 411004451012 | 7777 HERRINGTON AVE NE |
| 411005300043 | 7800 PINE ISLAND CT NE |
| 411004451009 | 7801 HERRINGTON AVE NE |
| 411004426003 | 7830 HERRINGTON AVE NE |
| 411005300044 | 7850 PINE ISLAND CT NE |
| 411004300042 | 7853 IMPERIAL PINE DR NE |
| 411004451001 | 7863 HERRINGTON AVE NE |
| 411004426002 | 7864 HERRINGTON AVE NE |
| 411004300041 | 7879 IMPERIAL PINE DR NE |
| 411004300063 | 7885 IMPERIAL PINE DR NE |
| 411004300072 | 7900 IMPERIAL PINE DR NE |
| 411004300071 | 7909 IMPERIAL PINE DR NE |
| 411004300069 | 7921 IMPERIAL PINE DR NE |
| 411004300070 | 7940 IMPERIAL PINE DR NE |
| 411004200048 | 8004 HERRINGTON AVE NE |
| 411004200051 | 8025 HERRINGTON AVE NE |
| 411001152002 | 8035 JERICHO AVE NE |
| 411003151009 | 8057 GRAPHIC DR NE |
| 411003151001 | 8069 BELMONT AVE NE |
| 411004200035 | 8081 HERRINGTON AVE NE |
| 411004200047 | 8082 HERRINGTON AVE NE |
| 411004200046 | 8092 HERRINGTON AVE NE |
| 411003151005 | 8093 GRAPHIC DR NE |
| 411004200045 | 8100 HERRINGTON AVE NE |
| 411002200071 | 8111 CHILDSDALE AVE NE |
| 411002200070 | 8123 CHILDSDALE AVE NE |
| 411002200069 | 8135 CHILDSDALE AVE NE |
| 411004200021 | 8138 HERRINGTON AVE NE |
| 411003152004 | 8139 BELMONT AVE NE |
| 411004200049 | 8151 HERRINGTON AVE NE |

| | |
|---|---|
| 411002200067 | 8169 CHILDSDALE AVE NE |
| 411005126053 | 8170 FRESKA LAKE DR NE |
| 411002200068 | 8175 CHILDSDALE AVE NE |
| 411005126058 | 8180 FRESKA LAKE DR NE |
| 411004200044 | 8180 HERRINGTON AVE NE |
| 411004200030 | 8183 HERRINGTON AVE NE |
| 411005126057 | 8193 FRESKA LAKE DR NE |
| 411005126051 | 8200 FRESKA LAKE DR NE |
| 411003152002 | 8200 GRAPHIC DR NE |
| 411004127008 | 8200 SQUIREWOOD DR NE |
| 411004127007 | 8215 SQUIREWOOD DR NE |
| 411002200045 | 8220 ROGUE RIDGE NE |
| 411003102010 | 8221 GRAPHIC DR NE |
| 411002200041 | 8221 ROGUE RIDGE NE |
| 411002200049 | 8230 ROGUE RIDGE NE |
| 411005126056 | 8239 FRESKA LAKE DR NE |
| 411004127006 | 8239 SQUIREWOOD DR NE |
| 411005126050 | 8244 FRESKA LAKE DR NE |
| 411004127009 | 8250 SQUIREWOOD DR NE |
| 411004127005 | 8255 SQUIREWOOD DR NE |
| 411004200029 | 8265 HERRINGTON AVE NE |
| 411004200025 | 8273 HERRINGTON AVE NE |
| 411004200028 | 8281 HERRINGTON AVE NE |
| 411004127004 | 8281 SQUIREWOOD DR NE |
| 411002200048 | 8287 ROGUE RIDGE NE |
| 411002200039 | 8293 CHILDSDALE AVE NE |
| 411005126049 | 8300 FRESKA LAKE DR NE |
| 411005126015 | 8300 WATEREDGE DR NE |
| 411004200040 | 8301 HERRINGTON AVE NE |
| 411004127003 | 8303 SQUIREWOOD DR NE |
| 411005126014 | 8305 WATEREDGE DR NE |
| 411005126038 | 8306 WATEREDGE DR NE |
| 411002200013 | 8313 CHILDSDALE AVE NE |
| 411004200053 | 8315 HERRINGTON AVE NE |
| 411005126048 | 8321 FRESKA LAKE DR NE |
| 411004200052 | 8327 HERRINGTON AVE NE |
| 411005126018 | 8330 WATEREDGE DR NE |
| 411002200061 | 8331 ROGUE RIDGE NE |
| 411005126063 | 8331 WATEREDGE DR NE |
| 411004200020 | 8333 HERRINGTON AVE NE |
| 411002200057 | 8339 CHILDSDALE AVE NE |
| 411002200053 | 8341 CHILDSDALE AVE NE |
| 411002200064 | 8343 CHILDSDALE AVE NE |
| 411005126059 | 8344 WATEREDGE DR NE |
| 411002200065 | 8345 CHILDSDALE AVE NE |
| 411003102009 | 8347 BELMONT AVE NE |
| 411002200055 | 8349 CHILDSDALE AVE NE |

| | |
|---|---|
| 411004127002 | 8359 SQUIREWOOD DR NE |
| 411002200060 | 8365 ROGUE RIDGE NE |
| 411002200035 | 8371 CHILDSDALE AVE NE |
| 411004127001 | 8375 SQUIREWOOD DR NE |
| 411004200017 | 8377 HERRINGTON AVE NE |
| 411005126064 | 8377 WATEREDGE DR NE |
| 411005126061 | 8384 WATEREDGE DR NE |
| 411004200037 | 8386 HERRINGTON AVE NE |
| 411002200059 | 8395 CHILDSDALE AVE NE |
| 411005126045 | 8396 WATEREDGE DR NE |
| 410635353009 | 8414 WINDSTONE DR NE |
| 410635353001 | 8415 WINDSTONE DR NE |
| 410635376010 | 8420 WOLVEN AVE NE |
| 411004200019 | 8431 HERRINGTON AVE NE |
| 410633300019 | 8431 JEWELL AVE NE |
| 410635354004 | 8435 WOLVEN AVE NE |
| 410635353008 | 8440 WINDSTONE DR NE |
| 410635353002 | 8443 WINDSTONE DR NE |
| 410632400074 | 8445 AMMERMAN DR NE |
| 410634300009 | 8450 ALGOMA AVE NE |
| 410635376009 | 8450 WOLVEN AVE NE |
| 410635354003 | 8465 WOLVEN AVE NE |
| 410633451003 | 8470 JEWELL AVE NE |
| 410635353007 | 8470 WINDSTONE DR NE |
| 410633476014 | 8471 ALGOMA AVE NE |
| 410635353003 | 8475 WINDSTONE DR NE |
| 410633476009 | 8485 ALGOMA AVE NE |
| 410635353010 | 8496 WINDSTONE DR NE |
| 410635353004 | 8497 WINDSTONE DR NE |
| 410634300016 | 8500 ALGOMA AVE NE |
| 410633451007 | 8500 JEWELL AVE NE |
| 410635353005 | 8500 WINDSTONE DR NE |
| 410635376004 | 8500 WOLVEN AVE NE |
| 410633476008 | 8501 ALGOMA AVE NE |
| 410635354006 | 8515 WOLVEN AVE NE |
| 410635376002 | 8520 WOLVEN AVE NE |
| 410633476005 | 8531 ALGOMA AVE NE |
| 410635354001 | 8535 WOLVEN AVE NE |
| 410633451006 | 8540 JEWELL AVE NE |
| 410635376003 | 8540 WOLVEN AVE NE |
| 410633476004 | 8555 ALGOMA AVE NE |
| 410635376001 | 8560 WOLVEN AVE NE |
| 410633476002 | 8565 ALGOMA AVE NE |
| 410633451001 | 8570 JEWELL AVE NE |
| 410633476003 | 8585 ALGOMA AVE NE |
| 410633403002 | 8594 JEWELL AVE NE |
| 410635326015 | 8600 WOLVEN AVE NE |

| | |
|---|---|
| 410634300034 | 8620 ALGOMA AVE NE |
| 410635326014 | 8620 WOLVEN AVE NE |
| 410634300032 | 8630 ALGOMA AVE NE |
| 410633426020 | 8637 ALGOMA AVE NE |
| 410633426019 | 8641 ALGOMA AVE NE |
| 410634300033 | 8650 ALGOMA AVE NE |
| 410635301009 | 8655 WOLVEN AVE NE |
| 410633426011 | 8665 ALGOMA AVE NE |
| 410634300027 | 8668 ALGOMA AVE NE |
| 410634300031 | 8670 ALGOMA AVE NE |
| 410635326009 | 8670 WOLVEN AVE NE |
| 410634300030 | 8674 ALGOMA AVE NE |
| 410635301003 | 8685 WOLVEN AVE NE |
| 410634300024 | 8686 ALGOMA AVE NE |
| 410635326008 | 8686 WOLVEN AVE NE |
| 410635301002 | 8697 WOLVEN AVE NE |
| 410634300036 | 8700 ALGOMA AVE NE |
| 410633426018 | 8701 ALGOMA AVE NE |
| 410634300035 | 8708 ALGOMA AVE NE |
| 410633403001 | 8708 JEWELL AVE NE |
| 410634300021 | 8714 ALGOMA AVE NE |
| 410634300029 | 8720 ALGOMA AVE NE |
| 410634300028 | 8726 ALGOMA AVE NE |
| 410635326018 | 8730 WOLVEN AVE NE |
| 410635301017 | 8767 WOLVEN AVE NE |
| 410633401001 | 8770 JEWELL AVE NE |
| 410634300014 | 8774 ALGOMA AVE NE |
| 410635100045 | 8779 WOLVEN AVE NE |
| 410634300015 | 8780 ALGOMA AVE NE |
| 410633426001 | 8787 ALGOMA AVE NE |
| 410634153001 | 8824 ALGOMA AVE NE |
| 410633278005 | 8825 ALGOMA AVE NE |
| 410633100079 | 8825 JEWELL AVE NE |
| 410633100080 | 8827 JEWELL AVE NE |
| 410633278004 | 8839 ALGOMA AVE NE |
| 410633251002 | 8844 JEWELL AVE NE |
| 410635100038 | 8850 ELSTNER AVE NE |
| 410633278002 | 8851 ALGOMA AVE NE |
| 410635100029 | 8870 ELSTNER AVE NE |
| 410633100016 | 8875 JEWELL AVE NE |
| 410635120002 | 8877 HOPEWELL DR NE |
| 410635100028 | 8894 ELSTNER AVE NE |
| 410635100043 | 8895 HOPEWELL DR NE |
| 410634227042 | 8900 LADY LAUREN DR NE |
| 410633251005 | 8902 JEWELL AVE NE |
| 410634227043 | 8903 LADY LAUREN DR NE |
| 410633278001 | 8905 ALGOMA AVE NE |

| | |
|---|---|
| 410635120025 | 8910 HOPEWELL DR NE |
| 410635120001 | 8911 HOPEWELL DR NE |
| 410634227044 | 8911 LADY LAUREN DR NE |
| 410634227041 | 8914 LADY LAUREN DR NE |
| 410633100029 | 8915 JEWELL AVE NE |
| 410634227045 | 8919 LADY LAUREN DR NE |
| 410635100027 | 8922 ELSTNER AVE NE |
| 410635120024 | 8922 HOPEWELL DR NE |
| 410634227040 | 8922 LADY LAUREN DR NE |
| 410634227046 | 8927 LADY LAUREN DR NE |
| 410633251004 | 8928 JEWELL AVE NE |
| 410635120003 | 8929 HOPEWELL DR NE |
| 410634227039 | 8930 LADY LAUREN DR NE |
| 410635140020 | 8932 NORTH WOLVEN RIDGE CT NE |
| 410635120023 | 8934 HOPEWELL DR NE |
| 410634227047 | 8935 LADY LAUREN DR NE |
| 410635120004 | 8937 HOPEWELL DR NE |
| 410635140040 | 8939 NORTH WOLVEN RIDGE CT NE |
| 410633251007 | 8940 JEWELL AVE NE |
| 410634227048 | 8941 LADY LAUREN DR NE |
| 410634227038 | 8942 LADY LAUREN DR NE |
| 410635100015 | 8944 WOLVEN AVE NE |
| 410634227049 | 8947 LADY LAUREN DR NE |
| 410635100026 | 8948 ELSTNER AVE NE |
| 410635140021 | 8948 NORTH WOLVEN RIDGE CT NE |
| 410635120005 | 8951 HOPEWELL DR NE |
| 410634227037 | 8954 LADY LAUREN DR NE |
| 410633100035 | 8955 JEWELL AVE NE |
| 410634227050 | 8955 LADY LAUREN DR NE |
| 410634227051 | 8961 LADY LAUREN DR NE |
| 410635140022 | 8964 NORTH WOLVEN RIDGE CT NE |
| 410635100025 | 8966 ELSTNER AVE NE |
| 410635120006 | 8973 HOPEWELL DR NE |
| 410635140039 | 8977 NORTH WOLVEN RIDGE CT NE |
| 410633251006 | 8980 JEWELL AVE NE |
| 410635140023 | 8980 NORTH WOLVEN RIDGE CT NE |
| 410635100036 | 8988 ELSTNER AVE NE |
| 410633276002 | 8989 ALGOMA AVE NE |
| 410635140024 | 8996 NORTH WOLVEN RIDGE CT NE |
| 410635120007 | 8999 HOPEWELL DR NE |
| 410634151001 | 9000 ALGOMA AVE NE |
| 410633201008 | 9000 JEWELL AVE NE |
| 410633276001 | 9001 ALGOMA AVE NE |
| 410635100046 | 9008 WOLVEN AVE NE |
| 410633201007 | 9010 JEWELL AVE NE |
| 410633100076 | 9011 JEWELL AVE NE |
| 410635140038 | 9011 NORTH WOLVEN RIDGE CT NE |

| | |
|---|---|
| 410635140025 | 9012 NORTH WOLVEN RIDGE CT NE |
| 410633226018 | 9013 ALGOMA AVE NE |
| 410635100035 | 9014 ELSTNER AVE NE |
| 410634101005 | 9024 11 MILE RD NE |
| 410634228005 | 9025 ELSTNER AVE NE |
| 410635140026 | 9028 NORTH WOLVEN RIDGE CT NE |
| 410635140037 | 9029 NORTH WOLVEN RIDGE CT NE |
| 410635100034 | 9030 ELSTNER AVE NE |
| 410633226017 | 9035 ALGOMA AVE NE |
| 410633226016 | 9039 ALGOMA AVE NE |
| 410633226010 | 9041 ALGOMA AVE NE |
| 410633100022 | 9043 JEWELL AVE NE |
| 410635140027 | 9044 NORTH WOLVEN RIDGE CT NE |
| 410633226009 | 9045 ALGOMA AVE NE |
| 410635120012 | 9045 HOPEWELL DR NE |
| 410635140036 | 9045 NORTH WOLVEN RIDGE CT NE |
| 410633226015 | 9047 ALGOMA AVE NE |
| 410634228004 | 9047 ELSTNER AVE NE |
| 410633226008 | 9049 ALGOMA AVE NE |
| 410635120018 | 9050 HOPEWELL DR NE |
| 410633226012 | 9051 ALGOMA AVE NE |
| 410633226013 | 9053 ALGOMA AVE NE |
| 410633226006 | 9057 ALGOMA AVE NE |
| 410635140035 | 9057 NORTH WOLVEN RIDGE CT NE |
| 410633226007 | 9059 ALGOMA AVE NE |
| 410634101002 | 9060 ALGOMA AVE NE |
| 410635140028 | 9060 NORTH WOLVEN RIDGE CT NE |
| 410635100033 | 9062 ELSTNER AVE NE |
| 410633226014 | 9063 ALGOMA AVE NE |
| 410633226011 | 9065 ALGOMA AVE NE |
| 410635120017 | 9066 HOPEWELL DR NE |
| 410635120013 | 9069 HOPEWELL DR NE |
| 410634227024 | 9069 LADY LAUREN DR NE |
| 410635140034 | 9069 NORTH WOLVEN RIDGE CT NE |
| 410633201006 | 9070 JEWELL AVE NE |
| 410634227001 | 9070 LADY LAUREN DR NE |
| 410634227023 | 9075 LADY LAUREN DR NE |
| 410634227002 | 9078 LADY LAUREN DR NE |
| 410635120016 | 9080 HOPEWELL DR NE |
| 410635140029 | 9086 NORTH WOLVEN RIDGE CT NE |
| 410634228003 | 9089 ELSTNER AVE NE |
| 410635100032 | 9090 ELSTNER AVE NE |
| 410633201005 | 9090 JEWELL AVE NE |
| 410634227003 | 9090 LADY LAUREN DR NE |
| 410635120015 | 9094 HOPEWELL DR NE |
| 410635140033 | 9097 NORTH WOLVEN RIDGE CT NE |
| 410635120014 | 9099 HOPEWELL DR NE |

| | |
|---|---|
| 410633100011 | 9101 JEWELL AVE NE |
| 410634227004 | 9102 LADY LAUREN DR NE |
| 410634227022 | 9107 LADY LAUREN DR NE |
| 410634227005 | 9108 LADY LAUREN DR NE |
| 410635140032 | 9109 NORTH WOLVEN RIDGE CT NE |
| 410635140030 | 9110 NORTH WOLVEN RIDGE CT NE |
| 410634227006 | 9114 LADY LAUREN DR NE |
| 410635140031 | 9116 NORTH WOLVEN RIDGE CT NE |
| 410633226020 | 9119 ALGOMA AVE NE |
| 410634227007 | 9120 LADY LAUREN DR NE |
| 410635100031 | 9122 ELSTNER AVE NE |
| 410634227008 | 9128 LADY LAUREN DR NE |
| 410634227009 | 9140 LADY LAUREN DR NE |
| 410634228002 | 9145 ELSTNER AVE NE |
| 410632300019 | 915 10 MILE RD NE |
| 410633201001 | 9150 JEWELL AVE NE |
| 410633100021 | 9151 JEWELL AVE NE |
| 410634227010 | 9152 LADY LAUREN DR NE |
| 410634227021 | 9155 LADY LAUREN DR NE |
| 410634227011 | 9164 LADY LAUREN DR NE |
| 410634228001 | 9165 ELSTNER AVE NE |
| 410633100033 | 9165 JEWELL AVE NE |
| 410634227020 | 9169 LADY LAUREN DR NE |
| 410633100032 | 9171 JEWELL AVE NE |
| 410634227019 | 9175 LADY LAUREN DR NE |
| 410634227012 | 9178 LADY LAUREN DR NE |
| 410634227018 | 9187 LADY LAUREN DR NE |
| 410634227013 | 9190 LADY LAUREN DR NE |
| 410634227017 | 9193 LADY LAUREN DR NE |
| 410634227016 | 9195 LADY LAUREN DR NE |
| 410634227015 | 9200 LADY LAUREN DR NE |
| 410634227014 | 9202 LADY LAUREN DR NE |
| 410628452001 | 9207 BOOTH BAY CT NE |
| 410628452029 | 9210 SAG HARBOR CT NE |
| 410628476022 | 9215 ALGOMA AVE NE |
| 410628452002 | 9215 BOOTH BAY CT NE |
| 410628452028 | 9218 SAG HARBOR CT NE |
| 410628476004 | 9220 GARDEN GATE DR NE |
| 410628476020 | 9223 GARDEN GATE DR NE |
| 410628452027 | 9226 SAG HARBOR CT NE |
| 410628452003 | 9227 BOOTH BAY CT NE |
| 410628452026 | 9234 SAG HARBOR CT NE |
| 410628476021 | 9235 ALGOMA AVE NE |
| 410628452004 | 9239 BOOTH BAY CT NE |
| 410628452025 | 9242 SAG HARBOR CT NE |
| 410628477004 | 9247 ALGOMA AVE NE |
| 410628476019 | 9249 GARDEN GATE DR NE |

| | |
|---|---|
| 410628476005 | 9250 GARDEN GATE DR NE |
| 410628452005 | 9253 NANTUCKET CT NE |
| 410628452006 | 9261 NANTUCKET CT NE |
| 410628452024 | 9262 NAGSHEAD CT NE |
| 410628452007 | 9269 NANTUCKET CT NE |
| 410628452023 | 9270 NAGSHEAD CT NE |
| 410628452008 | 9277 NANTUCKET CT NE |
| 410628476006 | 9278 GARDEN GATE DR NE |
| 410628452022 | 9278 NAGSHEAD CT NE |
| 410628476018 | 9285 GARDEN GATE DR NE |
| 410628452009 | 9285 NANTUCKET CT NE |
| 410628452021 | 9286 NAGSHEAD CT NE |
| 410628452020 | 9294 NAGSHEAD CT NE |
| 410628452010 | 9299 BAY HARBOR CT NE |
| 410628476007 | 9300 GARDEN GATE CT NE |
| 410628476017 | 9305 GARDEN GATE DR NE |
| 410628452011 | 9311 BAY HARBOR CT NE |
| 410627400045 | 9311 ELSTNER AVE NE |
| 410628452019 | 9314 OLD HARBOR CT NE |
| 410628476016 | 9321 GARDEN GATE DR NE |
| 410628452018 | 9322 OLD HARBOR CT NE |
| 410628452012 | 9323 BAY HARBOR CT NE |
| 410628476008 | 9330 GARDEN GATE CT NE |
| 410628452013 | 9331 BAY HARBOR CT NE |
| 410628476012 | 9332 GARDEN GATE DR NE |
| 410628476011 | 9333 GARDEN GATE CT NE |
| 410628452030 | 9338 OLD HARBOR CT NE |
| 410628452014 | 9339 BAY HARBOR CT NE |
| 410628476015 | 9343 GARDEN GATE DR NE |
| 410628452015 | 9344 OLD HARBOR CT NE |
| 410628476009 | 9352 GARDEN GATE CT NE |
| 410628476010 | 9355 GARDEN GATE CT NE |
| 410628476014 | 9369 GARDEN GATE DR NE |
| 410628476013 | 9370 GARDEN GATE DR NE |
| 411005126002 | 978 10 MILE RD NE |
| 411005126003 | 992 10 MILE RD NE |
| 410632300018 | 993 10 MILE RD NE |
| 411017276002 | 1471 PARK FOREST CT NE |
| 411017276003 | 1499 PARK FOREST CT NE |
| 411017276007 | 1500 PARK FOREST CT NE |
| 411017276006 | 1506 PARK FOREST CT NE |
| 411017276005 | 1508 PARK FOREST CT NE |
| 411017276004 | 1510 PARK FOREST CT NE |
| 411009351005 | 1604 POST DR NE |
| 411021101035 | 1614 SCOTT CREEK CT NE |
| 411009353004 | 1615 POST DR NE |
| 411016103001 | 1625 CORNERSTONE CT NE |

| | |
|---|---|
| 411016103008 | 1628 CORNERSTONE CT NE |
| 411016103002 | 1633 CORNERSTONE CT NE |
| 411016101002 | 1646 POST DR NE |
| 411016103007 | 1650 CORNERSTONE CT NE |
| 411016103003 | 1651 CORNERSTONE CT NE |
| 411016103006 | 1662 CORNERSTONE CT NE |
| 411016103004 | 1665 CORNERSTONE CT NE |
| 411009100007 | 1668 HOUSE ST NE |
| 411016103005 | 1678 CORNERSTONE CT NE |
| 411016101012 | 1690 POST DR NE |
| 411016101013 | 1730 POST DR NE |
| 411016101009 | 1772 POST DR NE |
| 410633100019 | 1790 11 MILE RD NE |
| 411016102007 | 1790 POST DR NE |
| 411016365022 | 1799 ROGUE RIVER RD NE |
| 411016126021 | 1815 POST DR NE |
| 411016126002 | 1825 POST DR NE |
| 410633100069 | 1826 11 MILE RD NE |
| 410633100057 | 1835 11 MILE RD NE |
| 411016126010 | 1845 POST DR NE |
| 410633100077 | 1850 11 MILE RD NE |
| 410628300041 | 1860 FONGER ST NE |
| 411016126013 | 1861 POST DR NE |
| 411016376009 | 1867 ROGUE RIVER RD NE |
| 410633100078 | 1874 11 MILE RD NE |
| 410633100047 | 1875 11 MILE RD NE |
| 411016376016 | 1879 ROGUE RIVER RD NE |
| 410628300042 | 1880 FONGER ST NE |
| 411016126007 | 1881 POST DR NE |
| 410633100075 | 1900 11 MILE RD NE |
| 411016126025 | 1901 POST DR NE |
| 411016376010 | 1901 ROGUE RIVER RD NE |
| 411016126026 | 1939 POST DR NE |
| 410628300043 | 1944 FONGER ST NE |
| 410628300044 | 1970 FONGER ST NE |
| 411016176012 | 1970 POST DR NE |
| 411016126018 | 1977 POST DR NE |
| 411016176013 | 1978 POST DR NE |
| 411016176024 | 1990 POST DR NE |
| 411016201002 | 2001 POST DR NE |
| 410628401001 | 2020 FONGER ST NE |
| 411016251008 | 2030 POST DR NE |
| 411016201009 | 2035 POST DR NE |
| 411016451093 | 2050 REINIER CT NE |
| 411016251007 | 2062 POST DR NE |
| 411016201015 | 2069 POST DR NE |
| 411016251005 | 2086 POST DR NE |

| | |
|---|---|
| 411016251003 | 2088 POST DR NE |
| 411016201011 | 2101 POST DR NE |
| 410628401004 | 2130 FONGER ST NE |
| 411016201007 | 2141 POST DR NE |
| 411016201017 | 2153 POST DR NE |
| 410628401005 | 2188 FONGER ST NE |
| 411016251002 | 2200 POST DR NE |
| 410628426001 | 2220 FONGER ST NE |
| 411004427001 | 2242 STRAWBERRY FARMS ST NE |
| 411016276001 | 2249 POST DR NE |
| 411010101032 | 2250 ROLLING MEADOW DR NE |
| 411010101001 | 2255 ROLLING MEADOW DR NE |
| 410628426002 | 2260 FONGER ST NE |
| 410628427002 | 2263 KIKI RUN NE |
| 411004427023 | 2263 STRAWBERRY FARMS ST NE |
| 410628426003 | 2270 FONGER ST NE |
| 411004427002 | 2270 STRAWBERRY FARMS ST NE |
| 411010101031 | 2280 ROLLING MEADOW DR NE |
| 411010101002 | 2285 ROLLING MEADOW DR NE |
| 411004200007 | 2298 10 MILE RD NE |
| 411004427003 | 2300 STRAWBERRY FARMS ST NE |
| 410628427003 | 2301 KIKI RUN NE |
| 411010101003 | 2313 ROLLING MEADOW DR NE |
| 410628426004 | 2320 FONGER ST NE |
| 411010101030 | 2320 ROLLING MEADOW DR NE |
| 411004427022 | 2323 STRAWBERRY FARMS ST NE |
| 411004427004 | 2330 STRAWBERRY FARMS ST NE |
| 411010101004 | 2355 ROLLING MEADOW DR NE |
| 411004427005 | 2360 STRAWBERRY FARMS ST NE |
| 411004427006 | 2390 STRAWBERRY FARMS ST NE |
| 411003352005 | 2400 STRAWBERRY FARMS ST NE |
| 411003352001 | 2405 STRAWBERRY FARMS ST NE |
| 411010101025 | 2430 PERSIMMON PL NE |
| 411003352006 | 2430 STRAWBERRY FARMS ST NE |
| 411010101005 | 2435 ROLLING MEADOW DR NE |
| 411022302001 | 2440 KONKLE DR NE |
| 410627300006 | 2445 11 MILE RD NE |
| 411022302002 | 2450 KONKLE DR NE |
| 411003352007 | 2450 STRAWBERRY FARMS ST NE |
| 411010101016 | 2455 PERSIMMON PL NE |
| 411010101024 | 2460 PERSIMMON PL NE |
| 411010101006 | 2465 ROLLING MEADOW DR NE |
| 411003352002 | 2469 STRAWBERRY FARMS ST NE |
| 411003352008 | 2470 STRAWBERRY FARMS ST NE |
| 411010101013 | 2480 ROLLING MEADOW DR NE |
| 411022302031 | 2490 KONKLE DR NE |
| 411010101023 | 2490 PERSIMMON PL NE |

| | |
|---|---|
| 411010101007 | 2495 ROLLING MEADOW DR NE |
| 411003352003 | 2495 STRAWBERRY FARMS ST NE |
| 411003352009 | 2500 STRAWBERRY FARMS ST NE |
| 411022302009 | 2508 KONKLE DR NE |
| 411022302010 | 2512 KONKLE DR NE |
| 411022302028 | 2518 KONKLE DR NE |
| 411010101008 | 2525 ROLLING MEADOW DR NE |
| 411010101022 | 2530 PERSIMMON PL NE |
| 411003352010 | 2530 STRAWBERRY FARMS ST NE |
| 411022302013 | 2534 KONKLE DR NE |
| 411022302014 | 2540 KONKLE DR NE |
| 410627300026 | 2545 WHITE TAIL DR NE |
| 411022302015 | 2550 KONKLE DR NE |
| 411022302016 | 2554 KONKLE DR NE |
| 411003352004 | 2555 STRAWBERRY FARMS ST NE |
| 411003352011 | 2560 STRAWBERRY FARMS ST NE |
| 411010101021 | 2570 PERSIMMON PL NE |
| 411022302029 | 2574 KONKLE DR NE |
| 411022302019 | 2580 KONKLE DR NE |
| 411022302030 | 2584 KONKLE DR NE |
| 411022101028 | 2588 ROGUE RIVER RD NE |
| 411022302022 | 2594 KONKLE DR NE |
| 410627300030 | 2619 11 MILE RD NE |
| 410634126001 | 2626 11 MILE RD NE |
| 410627300031 | 2659 11 MILE RD NE |
| 410634126002 | 2680 11 MILE RD NE |
| 410627300032 | 2703 11 MILE RD NE |
| 410627300033 | 2727 11 MILE RD NE |
| 410627300036 | 2751 11 MILE RD NE |
| 410627300037 | 2779 11 MILE RD NE |
| 410634126003 | 2780 11 MILE RD NE |
| 411015376057 | 2783 ROGUE RIVER RD NE |
| 411001151009 | 279 OAK ST NE |
| 410634199001 | 2795 10 MILE RD NE |
| 410634126004 | 2800 11 MILE RD NE |
| 411022451007 | 2800 KONKLE DR NE |
| 411010376026 | 2804 VAN DAM DR NE |
| 411022451002 | 2806 KONKLE DR NE |
| 410627400053 | 2809 11 MILE RD NE |
| 410634201001 | 2810 11 MILE RD NE |
| 410634201002 | 2820 11 MILE RD NE |
| 411022451005 | 2830 KONKLE DR NE |
| 410634201004 | 2836 11 MILE RD NE |
| 410634201005 | 2850 11 MILE RD NE |
| 411027201001 | 2854 KONKLE DR NE |
| 410627400041 | 2900 DIMICK CT NE |
| 410627400035 | 2901 11 MILE RD NE |

| | |
|---|---|
| 410627400038 | 2901 DIMICK CT NE |
| 410627400039 | 2909 DIMICK CT NE |
| 410627400040 | 2915 DIMICK CT NE |
| 410627400037 | 2929 11 MILE RD NE |
| 410627400042 | 2929 DIMICK CT NE |
| 410627400044 | 2949 11 MILE RD NE |
| 411015230005 | 2952 GOLD DUST ST NE |
| 411027201003 | 2972 KONKLE DR NE |
| 410627400006 | 2989 11 MILE RD NE |
| 411027201007 | 2996 KONKLE DR NE |
| 411015427002 | 3031 RAPIDFALL CT NE |
| 411015427011 | 3036 RAPIDFALL CT NE |
| 411015427003 | 3041 RAPIDFALL CT NE |
| 411010478002 | 3048 RIVERWOODS DR NE |
| 410634226001 | 3050 11 MILE RD NE |
| 411015427010 | 3050 RAPIDFALL CT NE |
| 411015427004 | 3055 RAPIDFALL CT NE |
| 411015427005 | 3065 RAPIDFALL CT NE |
| 411015427009 | 3066 RAPIDFALL CT NE |
| 411015427008 | 3080 RAPIDFALL CT NE |
| 411015427006 | 3083 RAPIDFALL CT NE |
| 411015427007 | 3086 RAPIDFALL CT NE |
| 411022426002 | 3104 INDIAN DR NE |
| 411022426017 | 3128 INDIAN DR NE |
| 411003400029 | 3130 ROGUEWOOD DR NE |
| 411003400014 | 3131 ROGUEWOOD DR NE |
| 411022426018 | 3132 INDIAN DR NE |
| 411022426006 | 3136 INDIAN DR NE |
| 411022426020 | 3140 INDIAN DR NE |
| 411002300020 | 3141 ROGUEWOOD DR NE |
| 411022278008 | 3149 RIPLEY ST NE |
| 411022426009 | 3150 INDIAN DR NE |
| 411022279001 | 3150 RIPLEY ST NE |
| 411003400031 | 3150 ROGUEWOOD DR NE |
| 411022426010 | 3158 RIVER POINT DR NE |
| 411022279003 | 3160 RIPLEY ST NE |
| 411003400030 | 3160 ROGUEWOOD DR NE |
| 411022426011 | 3162 RIVER POINT DR NE |
| 411022426012 | 3168 RIVER POINT DR NE |
| 411022426013 | 3172 RIVER POINT DR NE |
| 411022278006 | 3179 RIPLEY ST NE |
| 411022279004 | 3180 RIPLEY ST NE |
| 411022426014 | 3180 RIVER POINT DR NE |
| 411014151028 | 3180 RIVERWOODS DR NE |
| 411022426015 | 3184 RIVER POINT DR NE |
| 411022278005 | 3189 RIPLEY ST NE |
| 411022278003 | 3190 RAND ST NE |

| | |
|---|---|
| 411022426016 | 3192 RIVER POINT DR NE |
| 411023303001 | 3198 RIVER POINT DR NE |
| 411001145014 | 320 OAK ST NE |
| 411023303015 | 3204 RIVER POINT DR NE |
| 411023303014 | 3208 RIVER POINT DR NE |
| 411023303010 | 3212 RIVER POINT DR NE |
| 411023303011 | 3216 RIVER POINT DR NE |
| 411001145015 | 322 OAK ST NE |
| 411023303005 | 3222 RIVER POINT DR NE |
| 411023303006 | 3228 RIVER POINT DR NE |
| 411023302001 | 3240 INDIAN DR NE |
| 411023303013 | 3246 INDIAN DR NE |
| 411023303009 | 3252 INDIAN DR NE |
| 411002300021 | 3253 RIO ROGUE LN NE |
| 411011301004 | 3260 SUNSET BLUFF NE |
| 411023301001 | 3277 INDIAN DR NE |
| 411011301003 | 3295 SUNSET BLUFF NE |
| 411002300035 | 3300 HOUSE ST NE |
| 411011301009 | 3301 SUNSET BLUFF NE |
| 411011301008 | 3303 SUNSET BLUFF NE |
| 411002300049 | 3304 HOUSE ST NE |
| 411002300033 | 3310 HOUSE ST NE |
| 411011301002 | 3311 SUNSET BLUFF NE |
| 411002300015 | 3323 HOUSE ST NE |
| 411002300016 | 3335 HOUSE ST NE |
| 411002300053 | 3344 HOUSE ST NE |
| 411002300046 | 3350 HOUSE ST NE |
| 411011101001 | 3355 RIO ROGUE LN NE |
| 411011101007 | 3356 RIO ROGUE LN NE |
| 411011101008 | 3357 RIO ROGUE LN NE |
| 411011151002 | 3359 RIO ROGUE LN NE |
| 411011151001 | 3361 RIO ROGUE LN NE |
| 411002300052 | 3380 HOUSE ST NE |
| 411002300051 | 3392 HOUSE ST NE |
| 411011301011 | 3404 SUNSET BLUFF NE |
| 411011301010 | 3408 SUNSET BLUFF NE |
| 410626300011 | 3409 11 MILE RD NE |
| 411002300054 | 3411 HOUSE ST NE |
| 411002300003 | 3431 HOUSE ST NE |
| 411002300043 | 3433 HOUSE ST NE |
| 410635376006 | 3439 10 MILE RD NE |
| 411002300047 | 3441 HOUSE ST NE |
| 411011126019 | 3477 WARWICK GLEN DR NE |
| 411002300027 | 3485 HOUSE ST NE |
| 411011126009 | 3495 WARWICK GLEN DR NE |
| 411011126020 | 3497 WARWICK GLEN DR NE |
| 410635100023 | 3500 11 MILE RD NE |

| | |
|---|---|
| 411011126010 | 3500 WARWICK GLEN DR NE |
| 410635376007 | 3501 10 MILE RD NE |
| 411011326004 | 3502 SUNSET BLUFF NE |
| 411011126017 | 3509 WARWICK GLEN DR NE |
| 411002300028 | 3515 HOUSE ST NE |
| 411011126011 | 3528 WARWICK GLEN DR NE |
| 410635100005 | 3530 11 MILE RD NE |
| 411011126007 | 3531 WARWICK GLEN DR NE |
| 410626300021 | 3535 11 MILE RD NE |
| 411002300029 | 3535 HOUSE ST NE |
| 411011126006 | 3543 WARWICK GLEN DR NE |
| 411002377004 | 3549 RIVER EDGE VIEW CT NE |
| 411011126012 | 3550 WARWICK GLEN DR NE |
| 411011126005 | 3551 WARWICK GLEN DR NE |
| 411011126004 | 3557 WARWICK GLEN DR NE |
| 411011126013 | 3568 WARWICK GLEN DR NE |
| 411002300040 | 3569 HOUSE ST NE |
| 411011126003 | 3569 WARWICK GLEN DR NE |
| 411011126002 | 3577 WARWICK GLEN DR NE |
| 411011126014 | 3580 WARWICK GLEN DR NE |
| 411011126015 | 3596 WARWICK GLEN DR NE |
| 410626300022 | 3599 11 MILE RD NE |
| 411011126001 | 3599 WARWICK GLEN DR NE |
| 411002300006 | 3600 HOUSE ST NE |
| 410635201012 | 3616 11 MILE RD NE |
| 410626400005 | 3617 11 MILE RD NE |
| 411011401030 | 3620 KROES ST NE |
| 410626200009 | 3640 VERSCHEL DR NE |
| 410626400004 | 3651 11 MILE RD NE |
| 411011202019 | 3652 RIVER ISLE CT NE |
| 410635376008 | 3667 10 MILE RD NE |
| 410626200011 | 3725 VERSCHEL DR NE |
| 411011202011 | 3739 RIVER ISLE CT NE |
| 410626400009 | 3749 11 MILE RD NE |
| 410626200012 | 3800 VERSCHEL DR NE |
| 410635226001 | 3820 11 MILE RD NE |
| 410625301040 | 3823 WHIRLWIND DR NE |
| 410625301039 | 3826 WHIRLWIND DR NE |
| 410625301038 | 3830 WHIRLWIND DR NE |
| 410625301037 | 3848 WHIRLWIND DR NE |
| 410625301041 | 3855 WHIRLWIND DR NE |
| 410625301036 | 3862 WHIRLWIND DR NE |
| 410625301042 | 3869 WHIRLWIND DR NE |
| 410625301035 | 3870 WHIRLWIND DR NE |
| 410625301034 | 3882 WHIRLWIND DR NE |
| 410626400010 | 3883 11 MILE RD NE |
| 410625301043 | 3885 WHIRLWIND DR NE |

| | |
|---|---|
| 410635227001 | 3900 11 MILE RD NE |
| 410625301033 | 3900 WHIRLWIND DR NE |
| 410625301044 | 3909 WHIRLWIND DR NE |
| 410625301045 | 3913 WHIRLWIND DR NE |
| 410625301032 | 3914 WHIRLWIND DR NE |
| 410625301046 | 3921 WHIRLWIND DR NE |
| 410625301031 | 3926 WHIRLWIND DR NE |
| 410625301030 | 3938 WHIRLWIND DR NE |
| 410625301047 | 3945 WHIRLWIND DR NE |
| 410625301029 | 3950 WHIRLWIND DR NE |
| 410625301048 | 3963 WHIRLWIND DR NE |
| 410625301028 | 3966 WHIRLWIND DR NE |
| 410625301049 | 3975 WHIRLWIND DR NE |
| 410625301027 | 3980 WHIRLWIND DR NE |
| 410625301050 | 3983 WHIRLWIND DR NE |
| 410625301051 | 3989 WHIRLWIND DR NE |
| 410635227003 | 3990 11 MILE RD NE |
| 410625301052 | 3991 WHIRLWIND DR NE |
| 410636101008 | 3994 11 MILE RD NE |
| 410625301026 | 3998 WHIRLWIND DR NE |
| 410636101010 | 4010 11 MILE RD NE |
| 410625301053 | 4011 WHIRLWIND DR NE |
| 410625100038 | 4020 12 MILE RD NE |
| 410625301025 | 4020 WHIRLWIND DR NE |
| 410625301054 | 4029 WHIRLWIND DR NE |
| 410625301024 | 4036 WHIRLWIND DR NE |
| 410625100061 | 4050 12 MILE RD NE |
| 410625301023 | 4050 WHIRLWIND DR NE |
| 410625301022 | 4064 WHIRLWIND DR NE |
| 410625301055 | 4065 WHIRLWIND DR NE |
| 410625301021 | 4078 WHIRLWIND DR NE |
| 410625301056 | 4079 WHIRLWIND DR NE |
| 410636101011 | 4080 11 MILE RD NE |
| 410625301007 | 4090 TRADEWIND DR NE |
| 410625301057 | 4095 WHIRLWIND DR NE |
| 410625301020 | 4096 WHIRLWIND DR NE |
| 410625351002 | 4099 11 MILE RD NE |
| 410625100060 | 4100 12 MILE RD NE |
| 410625100053 | 4100 WRENS WAY CT NE |
| 410625100049 | 4101 WRENS WAY CT NE |
| 410625301019 | 4112 WHIRLWIND DR NE |
| 410625301058 | 4117 WHIRLWIND DR NE |
| 410625100050 | 4117 WRENS WAY CT NE |
| 410625301018 | 4124 WHIRLWIND DR NE |
| 410625301059 | 4125 WHIRLWIND DR NE |
| 410625100051 | 4133 WRENS WAY CT NE |
| 410625301060 | 4139 WHIRLWIND DR NE |

| | |
|---|---|
| 410625301017 | 4140 WHIRLWIND DR NE |
| 410625301008 | 4144 TRADEWIND DR NE |
| 410625351003 | 4145 11 MILE RD NE |
| 410625100022 | 4150 12 MILE RD NE |
| 410625301016 | 4154 WHIRLWIND DR NE |
| 410625301006 | 4155 TRADEWIND DR NE |
| 410625301061 | 4155 WHIRLWIND DR NE |
| 410625301009 | 4158 TRADEWIND DR NE |
| 410625100052 | 4159 WRENS WAY CT NE |
| 410625301010 | 4164 TRADEWIND DR NE |
| 410625301005 | 4167 TRADEWIND DR NE |
| 410625301011 | 4168 TRADEWIND DR NE |
| 410625301015 | 4168 WHIRLWIND DR NE |
| 410636101007 | 4170 11 MILE RD NE |
| 410625301012 | 4172 TRADEWIND DR NE |
| 410625301004 | 4175 TRADEWIND DR NE |
| 410625301013 | 4176 TRADEWIND DR NE |
| 410625301003 | 4183 TRADEWIND DR NE |
| 410625301014 | 4184 TRADEWIND DR NE |
| 410625301002 | 4189 TRADEWIND DR NE |
| 411001351049 | 4194 PETER CREEK DR NE |
| 410625301001 | 4195 TRADEWIND DR NE |
| 410625100028 | 4320 RIVERWATCH RD NE |
| 410625100026 | 4325 RIVERWATCH RD NE |
| 410625100029 | 4350 RIVERWATCH RD NE |
| 410625100027 | 4355 RIVERWATCH RD NE |
| 411001251018 | 4442 SEDONA VALLEY DR NE |
| 411001251019 | 4444 SEDONA VALLEY DR NE |
| 411001251012 | 4500 SEDONA VLY DR NE |
| 411001251020 | 4540 SEDONA VALLEY DR NE |
| 411001427001 | 4611 WINDCLIFF DR NE |
| 411002503007 | 503 CHILDSDALE AVE NE |
| 411022277004 | 5653 MALL AVE NE |
| 411022277003 | 5659 MALL AVE NE |
| 411022277002 | 5663 MALL AVE NE |
| 411022279005 | 5748 MALL AVE NE |
| 411022278007 | 5750 MALL AVE NE |
| 411022279006 | 5754 AUSTERLITZ AVE NE |
| 411022280014 | 5762 MALL AVE NE |
| 411022280015 | 5764 AUSTERLITZ AVE NE |
| 411016376044 | 6057 MAKSIMOWSKI AVE NE |
| 411016376043 | 6075 MAKSIMOWSKI AVE NE |
| 411016451030 | 6088 MAKSIMOWSKI AVE NE |
| 411016451035 | 6100 MAKSIMOWSKI AVE NE |
| 411016376005 | 6111 MAKSIMOWSKI AVE NE |
| 411016451052 | 6114 MAKSIMOWSKI AVE NE |
| 411016451094 | 6118 MAKSIMOWSKI AVE NE |

| | |
|---|---|
| 411016376045 | 6129 MAKSIMOWSKI AVE NE |
| 411016376015 | 6145 MAKSIMOWSKI AVE NE |
| 411015429008 | 6146 WOODWATER DR NE |
| 411016365045 | 6152 GEORGE ANN CT NE |
| 411015429007 | 6160 WOODWATER DR NE |
| 411015428015 | 6163 WOODWATER DR NE |
| 411016376022 | 6175 MAKSIMOWSKI AVE NE |
| 411015429006 | 6176 WOODWATER DR NE |
| 411015428014 | 6177 WOODWATER DR NE |
| 411016376035 | 6191 MAKSIMOWSKI AVE NE |
| 411015429005 | 6192 WOODWATER DR NE |
| 411015428013 | 6195 WOODWATER DR NE |
| 411016376034 | 6201 MAKSIMOWSKI AVE NE |
| 411016451082 | 6206 MAKSIMOWSKI AVE NE |
| 411015429004 | 6208 WOODWATER DR NE |
| 411016451006 | 6210 MAKSIMOWSKI AVE NE |
| 411016503003 | 6211 BELMONT AVE NE |
| 411015428012 | 6211 WOODWATER DR NE |
| 411016326002 | 6215 MAKSIMOWSKI AVE NE |
| 411015429003 | 6226 WOODWATER DR NE |
| 411015428011 | 6229 WOODWATER DR NE |
| 411016451085 | 6240 MAKSIMOWSKI AVE NE |
| 411015429002 | 6240 WOODWATER DR NE |
| 411015428010 | 6241 WOODWATER DR NE |
| 411016326003 | 6243 MAKSIMOWSKI AVE NE |
| 411015427018 | 6250 RAPIDFALL DR NE |
| 411015427017 | 6254 RAPIDFALL DR NE |
| 411015429001 | 6258 WOODWATER DR NE |
| 411015428009 | 6259 RAPIDFALL DR NE |
| 411016451084 | 6260 MAKSIMOWSKI AVE NE |
| 411015427016 | 6262 RAPIDFALL DR NE |
| 411015426030 | 6266 WOODWATER DR NE |
| 411015428008 | 6267 RAPIDFALL DR NE |
| 411015503005 | 6270 BELMONT AVE NE |
| 411015427015 | 6270 RAPIDFALL DR NE |
| 411015427034 | 6273 WOODWATER DR NE |
| 411016301020 | 6274 SAMRICK AVE NE |
| 411015426029 | 6274 WOODWATER DR NE |
| 411015428007 | 6275 RAPIDFALL DR NE |
| 411015427014 | 6280 RAPIDFALL DR NE |
| 411015426028 | 6282 WOODWATER DR NE |
| 411015428006 | 6283 RAPIDFALL DR NE |
| 411015427033 | 6285 WOODWATER DR NE |
| 411015428001 | 6287 RAPIDFALL DR NE |
| 411015428026 | 6289 RAPIDFALL DR NE |
| 411015176002 | 6290 PACKER DR NE |
| 411015426027 | 6290 WOODWATER DR NE |

| | |
|---|---|
| 411015428005 | 6291 RAPIDFALL DR NE |
| 411015427032 | 6293 WOODWATER DR NE |
| 411022326009 | 6294 WEST RIVER DR NE |
| 411015427013 | 6298 RAPIDFALL DR NE |
| 411015426026 | 6298 WOODWATER DR NE |
| 411015428004 | 6299 RAPIDFALL DR NE |
| 411015176001 | 6300 PACKER DR NE |
| 411015427031 | 6301 WOODWATER DR NE |
| 411015426025 | 6306 WOODWATER DR NE |
| 411015427030 | 6311 WOODWATER DR NE |
| 411015427012 | 6312 RAPIDFALL DR NE |
| 411015426024 | 6314 WOODWATER DR NE |
| 411015428003 | 6315 RAPIDFALL DR NE |
| 411015426023 | 6322 WOODWATER DR NE |
| 411015427029 | 6325 WOODWATER DR NE |
| 411015428002 | 6327 RAPIDFALL DR NE |
| 411015426022 | 6330 WOODWATER DR NE |
| 411015427001 | 6332 RAPIDFALL DR NE |
| 411015428025 | 6335 RAPIDFALL DR NE |
| 411017426003 | 6335 SAMRICK AVE NE |
| 411015426021 | 6338 WOODWATER DR NE |
| 411015427028 | 6341 WOODWATER DR NE |
| 411016301027 | 6346 SAMRICK AVE NE |
| 411015426020 | 6346 WOODWATER DR NE |
| 411015427021 | 6350 RAPIDFALL DR NE |
| 411015428024 | 6351 RAPIDFALL DR NE |
| 411015427027 | 6351 WOODWATER DR NE |
| 411015301009 | 6352 BELMONT AVE NE |
| 411015426019 | 6354 WOODWATER DR NE |
| 411017426002 | 6355 SAMRICK AVE NE |
| 411015427026 | 6359 WOODWATER DR NE |
| 411015426018 | 6362 WOODWATER DR NE |
| 411015428023 | 6363 RAPIDFALL DR NE |
| 411015427025 | 6367 WOODWATER DR NE |
| 411015427020 | 6368 RAPIDFALL DR NE |
| 411015426017 | 6370 WOODWATER DR NE |
| 411015428022 | 6375 RAPIDFALL DR NE |
| 411015427024 | 6375 WOODWATER DR NE |
| 411016301029 | 6378 SAMRICK AVE NE |
| 411015426016 | 6378 WOODWATER DR NE |
| 411015427023 | 6383 WOODWATER DR NE |
| 411015426015 | 6386 WOODWATER DR NE |
| 411015428021 | 6391 RAPIDFALL DR NE |
| 411015427022 | 6391 WOODWATER DR NE |
| 411017426008 | 6393 SAMRICK AVE NE |
| 411015426014 | 6394 WOODWATER DR NE |
| 411015427019 | 6399 WOODWATER DR NE |

| | |
|---|---|
| 411016176009 | 6400 BOTANY BLUFF DR NE |
| 411015426013 | 6402 WOODWATER DR NE |
| 411015428020 | 6405 RAPIDFALL DR NE |
| 411016176031 | 6411 BOTANY BLUFF DR NE |
| 411015428019 | 6415 RAPIDFALL DR NE |
| 411015152009 | 6418 BELMONT AVE NE |
| 411015290001 | 6420 PACKER DR NE |
| 411017277010 | 6421 SAMRICK AVE NE |
| 411016176015 | 6440 BOTANY BLUFF DR NE |
| 411022280006 | 6443 WEST RIVER DR NE |
| 411022426001 | 6450 WEST RIVER DR NE |
| 411016176032 | 6455 BOTANY BLUFF DR NE |
| 411022280016 | 6461 WEST RIVER DR NE |
| 411017277001 | 6464 SAMRICK AVE NE |
| 411022280008 | 6479 WEST RIVER DR NE |
| 411016176008 | 6480 BOTANY BLUFF DR NE |
| 411022280013 | 6485 WEST RIVER DR NE |
| 411016151002 | 6490 SAMRICK AVE NE |
| 411016176029 | 6499 BOTANY BLUFF DR NE |
| 411015151020 | 6500 BELMONT AVE NE |
| 411015201001 | 6501 PACKER DR NE |
| 411016151008 | 6512 SAMRICK AVE NE |
| 411016176023 | 6520 BOTANY BLUFF DR NE |
| 411017277002 | 6531 SAMRICK AVE NE |
| 411016151007 | 6534 SAMRICK AVE NE |
| 411016176028 | 6547 BOTANY BLUFF DR NE |
| 411016176011 | 6560 BOTANY BLUFF DR NE |
| 411016151006 | 6580 SAMRICK AVE NE |
| 411015151014 | 6590 BELMONT AVE NE |
| 411016176019 | 6600 BOTANY BLUFF DR NE |
| 411016176027 | 6601 BOTANY BLUFF DR NE |
| 411016176021 | 6605 BOTANY BLUFF DR  NE |
| 411017226002 | 6611 SAMRICK AVE NE |
| 411023326006 | 6618 WEST RIVER DR NE |
| 411015279012 | 6620 ROGUEVIEW CT NE |
| 411023326001 | 6622 WEST RIVER DR NE |
| 411016176026 | 6623 BOTANY BLUFF DR NE |
| 411015126003 | 6624 BELMONT AVE NE |
| 411016176017 | 6630 BOTANY BLUFF DR NE |
| 411016176025 | 6635 BOTANY BLUFF DR NE |
| 411017226008 | 6635 SAMRICK AVE NE |
| 411023326005 | 6644 WEST RIVER DR NE |
| 411016201025 | 6648 REDTAIL RIDGE DR NE |
| 411023326002 | 6656 WEST RIVER DR NE |
| 411017226007 | 6659 SAMRICK AVE NE |
| 411023326003 | 6668 WEST RIVER DR NE |
| 411023326004 | 6680 WEST RIVER DR NE |

| | |
|---|---|
| 411017226006 | 6695 SAMRICK AVE NE |
| 411016201023 | 6700 REDTAIL RIDGE DR NE |
| 411016126017 | 6701 BLUE RIDGE DR NE |
| 411016201022 | 6722 REDTAIL RIDGE DR NE |
| 411016102001 | 6726 SAMRICK AVE NE |
| 411017226005 | 6729 SAMRICK AVE NE |
| 411016126024 | 6739 BLUE RIDGE DR NE |
| 411016201021 | 6744 REDTAIL RIDGE DR NE |
| 411017226004 | 6759 SAMRICK AVE NE |
| 411017226003 | 6761 SAMRICK AVE NE |
| 411016201020 | 6766 REDTAIL RIDGE DR NE |
| 411016126022 | 6777 BLUE RIDGE DR NE |
| 411016126023 | 6779 BLUE RIDGE DR NE |
| 411016102009 | 6780 SAMRICK AVE NE |
| 411016201019 | 6788 REDTAIL RIDGE DR NE |
| 411016126020 | 6790 CHANDLER DR NE |
| 411016201018 | 6799 REDTAIL RIDGE DR NE |
| 411009376011 | 6801 BLUE RIDGE DR NE |
| 411009376012 | 6803 BLUE RIDGE DR NE |
| 411010476023 | 6807 PACKER DR NE |
| 411009451009 | 6810 BLUE RIDGE DR NE |
| 411009376010 | 6812 CHANDLER DR NE |
| 411009451008 | 6830 BLUE RIDGE DR NE |
| 411015201016 | 6831 PACKER DR NE |
| 411009376006 | 6835 BLUE RIDGE DR NE |
| 411009376009 | 6840 CHANDLER DR NE |
| 411009451007 | 6850 BLUE RIDGE DR NE |
| 411009451001 | 6855 BLUE RIDGE DR NE |
| 411009451002 | 6865 BLUE RIDGE DR NE |
| 411009451003 | 6875 BLUE RIDGE DR NE |
| 411009451017 | 6879 BLUE RIDGE DR NE |
| 411009451010 | 6880 BLUE RIDGE DR NE |
| 411009376013 | 6880 CHANDLER DR NE |
| 411009451018 | 6885 BLUE RIDGE DR NE |
| 411009451005 | 6887 BLUE RIDGE DR NE |
| 411009451006 | 6895 BLUE RIDGE DR NE |
| 411009451011 | 6900 BLUE RIDGE DR NE |
| 411009376005 | 6916 CHANDLER DR NE |
| 411011375001 | 6955 CHILDSDALE AVE NE |
| 411009376001 | 6976 CHANDLER DR NE |
| 411009376002 | 6986 CHANDLER DR NE |
| 411009376003 | 6990 CHANDLER DR NE |
| 411009376004 | 6996 CHANDLER DR NE |
| 411011151003 | 7079 CHILDSDALE AVE NE |
| 411011326002 | 7099 CHILDSDALE AVE NE |
| 411008400011 | 7131 CHANDLER DR NE |
| 411011326001 | 7137 CHILDSDALE AVE NE |

| | |
|---|---|
| 411011401031 | 7144 CHILDSDALE AVE NE |
| 411010451024 | 7179 PACKER DR NE |
| 411011251006 | 7200 CHILDSDALE AVE NE |
| 411010200027 | 7200 ROGUEWOOD DR NE |
| 411010426002 | 7212 PACKER DR NE |
| 411010151019 | 7213 PINE HILL DR NE |
| 411010200022 | 7220 ROGUEWOOD DR NE |
| 411010176022 | 7230 BELMONT AVE NE |
| 411010503004 | 7240 PACKER DR NE |
| 411011251005 | 7242 CHILDSDALE AVE NE |
| 411010176020 | 7250 BELMONT AVE NE |
| 411011251004 | 7260 CHILDSDALE AVE NE |
| 411010200034 | 7262 PACKER DR NE |
| 411010176018 | 7265 PACKER DR NE |
| 411010151009 | 7275 BELMONT AVE NE |
| 411010176008 | 7280 BELMONT AVE NE |
| 411010200028 | 7280 PACKER DR NE |
| 411011251003 | 7284 CHILDSDALE AVE NE |
| 411010151015 | 7295 HICKORY TRL NE |
| 411010176019 | 7295 PACKER DR NE |
| 411010151018 | 7296 HICKORY TRL NE |
| 411010200007 | 7300 PACKER DR NE |
| 411010176006 | 7301 PACKER DR NE |
| 411010151022 | 7303 HICKORY TRL NE |
| 411010151017 | 7304 HICKORY TRL NE |
| 411010151006 | 7305 HICKORY TRL NE |
| 411010151004 | 7307 HICKORY TRL NE |
| 411010151023 | 7309 HICKORY TRL NE |
| 411010151024 | 7311 HICKORY TRL NE |
| 411010176016 | 7315 PACKER DR NE |
| 411010151007 | 7319 BELMONT AVE NE |
| 411010151012 | 7335 BELMONT AVE NE |
| 411011176002 | 7335 CHILDSDALE AVE NE |
| 411010176015 | 7349 PACKER DR NE |
| 411010176001 | 7350 BELMONT AVE NE |
| 411010151011 | 7363 BELMONT AVE NE |
| 411011176004 | 7365 CHILDSDALE AVE NE |
| 411011176003 | 7373 CHILDSDALE AVE NE |
| 411011176001 | 7377 CHILDSDALE AVE NE |
| 411010151003 | 7385 BELMONT AVE NE |
| 411011253005 | 7390 BROOKS LN NE |
| 411010200003 | 7390 PACKER DR NE |
| 411010200031 | 7400 PACKER DR NE |
| 411010200030 | 7402 PACKER DR NE |
| 411011201015 | 7425 BROOKS LN NE |
| 411010176011 | 7429 PACKER DR NE |
| 411011201007 | 7430 BROOKS LN NE |

| | |
|---|---|
| 411011201006 | 7436 BROOKS LN NE |
| 411011201005 | 7442 BROOKS LN NE |
| 411010101026 | 7447 CLOUDBERRY LN NE |
| 411010200019 | 7450 ROGUEWOOD DR NE |
| 411011201003 | 7454 CHILDSDALE AVE NE |
| 411010176010 | 7455 PACKER DR NE |
| 411011201004 | 7460 CHILDSDALE AVE NE |
| 411010101012 | 7460 STEEPLEBUSH LN NE |
| 411010176012 | 7461 PACKER DR NE |
| 411010101020 | 7465 STEEPLEBUSH LN NE |
| 411011201002 | 7470 CHILDSDALE AVE NE |
| 411010176002 | 7475 PACKER DR NE |
| 411011503004 | 7485 CHILDSDALE AVE NE |
| 411010101027 | 7485 CLOUDBERRY LN NE |
| 411010101011 | 7490 STEEPLEBUSH LN NE |
| 411010101019 | 7495 STEEPLEBUSH LN NE |
| 411010101015 | 7500 CLOUDBERRY LN NE |
| 411010200033 | 7500 RIO ROGUE TRL NE |
| 411010200018 | 7500 ROGUEWOOD DR NE |
| 411011103002 | 7512 RIO ROGUE TRL NE |
| 411010101010 | 7520 STEEPLEBUSH LN NE |
| 411010101028 | 7525 CLOUDBERRY LN NE |
| 411010101018 | 7525 STEEPLEBUSH LN NE |
| 411010101014 | 7530 CLOUDBERRY LN NE |
| 411011103001 | 7530 RIO ROGUE TRL NE |
| 411010200032 | 7533 RIO ROGUE TRL NE |
| 411010101017 | 7545 STEEPLEBUSH LN NE |
| 411010200017 | 7550 ROGUEWOOD DR NE |
| 411010101009 | 7550 STEEPLEBUSH LN NE |
| 411010101029 | 7555 CLOUDBERRY LN NE |
| 411010200016 | 7590 ROGUEWOOD DR NE |
| 411001300023 | 7606 JERICHO AVE NE |
| 411003351004 | 7619 BELMONT AVE NE |
| 411001351034 | 7647 LUCA VISTA DR NE |
| 411001351040 | 7664 LUCA VISTA DR NE |
| 411003351006 | 7675 BELMONT AVE NE |
| 411003351005 | 7685 BELMONT AVE NE |
| 411002376001 | 7701 CHILDSDALE AVE NE |
| 411004476005 | 7722 HERRINGTON AVE NE |
| 411002400007 | 7733 CHILDSDALE AVE NE |
| 411002400015 | 7740 CHILDSDALE AVE NE |
| 411002400006 | 7755 CHILDSDALE AVE NE |
| 411003353002 | 7757 BELMONT AVE NE |
| 411002400027 | 7777 CHILDSDALE AVE NE |
| 411004427021 | 7777 STRAWBERRY LN NE |
| 411004427007 | 7778 STRAWBERRY LN NE |
| 411003353001 | 7781 BELMONT AVE NE |

| | |
|---|---|
| 411001351056 | 7800 ELLA TERRACE DR NE |
| 411001300021 | 7800 JERICHO AVE NE |
| 411004427008 | 7800 STRAWBERRY LN NE |
| 411002400021 | 7802 CHILDSDALE AVE NE |
| 411004427020 | 7803 STRAWBERRY LN NE |
| 411003301004 | 7815 BELMONT AVE NE |
| 411001351054 | 7815 ELLA TERRACE DR NE |
| 411004427019 | 7817 STRAWBERRY LN NE |
| 411004427009 | 7834 STRAWBERRY LN NE |
| 411004427018 | 7835 STRAWBERRY LN NE |
| 411004426001 | 7844 HERRINGTON AVE NE |
| 411002400025 | 7855 CHILDSDALE AVE NE |
| 411004427017 | 7857 STRAWBERRY LN NE |
| 411001300020 | 7860 JERICHO AVE NE |
| 411001351061 | 7874 ELLA TERRACE DR NE |
| 411001401003 | 7875 NORTHLAND DR NE |
| 411004427010 | 7876 STRAWBERRY LN NE |
| 411003301003 | 7877 BELMONT AVE NE |
| 411001300015 | 7880 JERICHO AVE NE |
| 411001300002 | 7887 JERICHO AVE NE |
| 411004427011 | 7900 STRAWBERRY LN NE |
| 411002400023 | 7905 CHILDSDALE AVE NE |
| 411004427016 | 7909 STRAWBERRY LN NE |
| 411004427015 | 7917 STRAWBERRY LN NE |
| 411002400003 | 7920 CHILDSDALE AVE NE |
| 411003301002 | 7923 BELMONT AVE NE |
| 411004427014 | 7925 STRAWBERRY LN NE |
| 411004427013 | 7933 STRAWBERRY LN NE |
| 411004427012 | 7936 STRAWBERRY LN NE |
| 411001401002 | 7957 NORTHLAND DR NE |
| 411003301001 | 7965 BELMONT AVE NE |
| 411002300039 | 7965 CHILDSDALE AVE NE |
| 411004427024 | 7969 STRAWBERRY LN NE |
| 411004427028 | 7970 STRAWBERRY LN NE |
| 411001300012 | 7980 JERICHO AVE NE |
| 411004427025 | 7985 STRAWBERRY LN NE |
| 411004427027 | 7988 STRAWBERRY LN NE |
| 411001300018 | 7992 JERICHO AVE NE |
| 411001300019 | 7994 JERICHO AVE NE |
| 411004427026 | 8000 STRAWBERRY LN NE |
| 411002200066 | 8005 CHILDSDALE AVE NE |
| 411001251015 | 8005 NORTHLAND DR NE |
| 411001300017 | 8008 JERICHO AVE NE |
| 411001351013 | 8015 ELLA TERRACE CT NE |
| 411001152003 | 8015 JERICHO AVE NE |
| 411001351011 | 8033 ELLA TERRACE CT NE |
| 411001351010 | 8045 ELLA TERRACE CT NE |

| | |
|---|---|
| 411003151002 | 8060 GRAPHIC DR NE |
| 411003151007 | 8080 GRAPHIC DR NE |
| 411001276003 | 8080 NORTHLAND DR NE |
| 411001175002 | 8099 JERICHO AVE NE |
| 411003151008 | 8110 GRAPHIC DR NE |
| 411001276002 | 8144 NORTHLAND DR NE |
| 411001251010 | 8149 NORTHLAND DR NE |
| 411001251006 | 8159 NORTHLAND DR NE |
| 411003152001 | 8166 GRAPHIC DR NE |
| 411003102006 | 8175 GRAPHIC DR NE |
| 411001276013 | 8184 NORTHLAND DR NE |
| 411001125022 | 8190 CHILDSDALE AVE NE |
| 411001251009 | 8191 NORTHLAND DR NE |
| 411001276011 | 8194 NORTHLAND DR NE |
| 411003102007 | 8195 GRAPHIC DR NE |
| 411001251008 | 8197 NORTHLAND DR NE |
| 411001503002 | 8200 CHILDSDALE AVE NE |
| 411001251003 | 8215 NORTHLAND DR NE |
| 411003101001 | 8330 HERRINGTON AVE NE |
| 410632400039 | 8515 AMMERMAN DR NE |
| 410634300017 | 8590 ALGOMA AVE NE |
| 410632400063 | 8685 AMMERMAN DR NE |
| 410634300002 | 8790 ALGOMA AVE NE |
| 410634225001 | 9051 ELSTNER AVE NE |
| 410633100027 | 9060 GRANGE AVE NE |
| 410633100026 | 9080 GRANGE AVE NE |
| 410636101013 | 9105 SUMMIT AVE NE |
| 410633100031 | 9108 GRANGE AVE NE |
| 410636101014 | 9111 SUMMIT AVE NE |
| 410633100085 | 9112 GRANGE AVE NE |
| 410636101012 | 9115 SUMMIT AVE NE |
| 410636101003 | 9145 SUMMIT AVE NE |
| 410633100084 | 9150 GRANGE AVE NE |
| 410636101002 | 9185 SUMMIT AVE NE |
| 410625376004 | 9200 SUMMIT AVE NE |
| 410625451001 | 9220 SUMMIT AVE NE |
| 410628300010 | 9240 GRANGE AVE NE |
| 410626300031 | 9244 WOLVEN AVE NE |
| 410626300020 | 9269 WINZER CT NE |
| 410628300033 | 9270 GRANGE AVE NE |
| 410626300016 | 9280 WOLVEN AVE NE |
| 410627400026 | 9283 EDGERTON AVE NE |
| 410627400054 | 9299 DIMICK DR NE |
| 410628300032 | 9300 GRANGE AVE NE |
| 410625376003 | 9300 SUMMIT AVE NE |
| 410626300019 | 9300 WINZER CT NE |
| 410626300009 | 9300 WOLVEN AVE NE |

| | |
|---|---|
| 410627400016 | 9301 DIMICK DR NE |
| 410627400025 | 9303 EDGERTON AVE NE |
| 410627400014 | 9309 DIMICK DR NE |
| 410626300025 | 9313 WINZER CT NE |
| 410628477003 | 9319 ALGOMA AVE NE |
| 410625376002 | 9320 SUMMIT AVE NE |
| 410627400007 | 9321 DIMICK DR NE |
| 410626300026 | 9322 WINZER CT NE |
| 410627300028 | 9326 ALGOMA AVE NE |
| 410626300023 | 9345 WINZER CT NE |
| 410627300027 | 9350 ALGOMA AVE NE |
| 410628300021 | 9350 GRANGE AVE NE |
| 410625376001 | 9350 SUMMIT AVE NE |
| 410626300024 | 9350 WINZER CT NE |
| 410626300008 | 9350 WOLVEN AVE NE |
| 410626400011 | 9351 ALSHIRE FARMS DR NE |
| 410627400023 | 9355 EDGERTON AVE NE |
| 410627300025 | 9380 ALGOMA AVE NE |
| 410628300037 | 9380 GRANGE AVE NE |
| 410625326008 | 9380 SUMMIT AVE NE |
| 410628477001 | 9385 ALGOMA AVE NE |
| 410625351001 | 9391 SUMMIT AVE NE |
| 410628300036 | 9400 GRANGE AVE NE |
| 410625401001 | 9400 SUMMIT AVE NE |
| 410626300028 | 9400 WOLVEN AVE NE |
| 410626300001 | 9410 ELSTNER AVE NE |
| 410628300035 | 9410 GRANGE AVE NE |
| 410625326007 | 9410 SUMMIT AVE NE |
| 410628427004 | 9417 ALGOMA AVE NE |
| 410628427001 | 9419 ALGOMA AVE NE |
| 410627300017 | 9420 ROGUE WOOD AVE NE |
| 410627300022 | 9422 ROGUE WOOD AVE NE |
| 410627300016 | 9430 ROGUE WOOD AVE NE |
| 410628300047 | 9434 GRANGE AVE NE |
| 410625326006 | 9450 SUMMIT AVE NE |
| 410627300015 | 9476 ROGUE WOOD AVE NE |
| 410625315003 | 9489 SUMMIT AVE NE |
| 410628300046 | 9490 GRANGE AVE NE |
| 410625326005 | 9490 SUMMIT AVE NE |
| 410628300045 | 9516 GRANGE AVE NE |
| 410626300014 | 9524 WOLVEN AVE NE |
| 410627300003 | 9530 ALGOMA AVE NE |
| 410625326004 | 9530 SUMMIT AVE NE |
| 410625315002 | 9545 SUMMIT AVE NE |
| 410626300015 | 9550 WOLVEN AVE NE |
| 410625326003 | 9552 SUMMIT AVE NE |
| 410625315001 | 9555 SUMMIT AVE NE |

| | |
|---|---|
| 410625326002 | 9558 SUMMIT AVE NE |
| 410625326001 | 9564 SUMMIT AVE NE |
| 410628300040 | 9568 GRANGE AVE NE |
| 410628426005 | 9569 ALGOMA AVE NE |
| 410626300003 | 9590 WOLVEN AVE NE |
| 410625100074 | 9605 SUMMIT AVE NE |
| 410625100044 | 9610 SUMMIT AVE NE |
| 410626100014 | 9612 WOLVEN AVE NE |
| 410625100073 | 9617 SUMMIT AVE NE |
| 410625100045 | 9620 SUMMIT AVE NE |
| 410626100016 | 9620 WOLVEN AVE NE |
| 410625100048 | 9630 SUMMIT AVE NE |
| 410626100043 | 9680 WOLVEN AVE NE |
| 410626100033 | 9684 WOLVEN AVE NE |
| 410626200010 | 9688 WOLVEN AVE NE |
| 410626100058 | 9691 WOLVEN AVE NE |
| 410626100059 | 9693 WOLVEN AVE NE |
| 410626100048 | 9715 WOLVEN AVE NE |
| 410625100032 | 9737 SUMMIT AVE NE |
| 410625100025 | 9740 SUMMIT AVE NE |
| 410626100051 | 9740 WOLVEN AVE NE |
| 410626100049 | 9754 WOLVEN AVE NE |
| 410626100034 | 9766 WOLVEN AVE NE |
| 410626100032 | 9776 WOLVEN AVE NE |
| 410626200037 | 9787 DEER TRL NE |
| 410626100029 | 9789 WOLVEN AVE NE |
| 410626200026 | 9790 DEER TRL NE |
| 410625100036 | 9796 SUMMIT AVE NE |
| 410626200024 | 9798 DEER TRL NE |
| 410626200030 | 9799 DEER TRL NE |
| 410625100072 | 9800 SUMMIT AVE NE |
| 410626200035 | 9820 DEER TRL NE |
| 410626200034 | 9831 DEER TRL NE |
| 410626200036 | 9859 DEER TRL NE |
| 410625100031 | 9881 SUMMIT AVE NE |
| 410625100057 | 9887 SUMMIT AVE NE |
| 410625100068 | 9900 SUMMIT AVE NE |
| 410625100056 | 9905 SUMMIT AVE NE |
| 410625100058 | 9907 SUMMIT AVE NE |
| 410625100071 | 9908 SUMMIT AVE NE |
| 410625100067 | 9910 SUMMIT AVE NE |
| 410625100020 | 9911 SUMMIT AVE NE |
| 410625100042 | 9915 BRADLEY DR NE |
| 410625100069 | 9916 SUMMIT AVE NE |
| 410625100043 | 9920 BRADLEY DR NE |
| 410625100064 | 9920 SUMMIT AVE NE |
| 410625100065 | 9924 SUMMIT AVE NE |

| | |
|---|---|
| 410625100023 | 9933 SUMMIT AVE NE |
| 410625100063 | 9940 SUMMIT AVE NE |
| 410625100062 | 9958 SUMMIT AVE NE |
| 411005300013 | 1125 9 MILE RD NE |
| 410632400066 | 1357 10 MILE RD NE |
| 410632400003 | 1395 10 MILE RD NE |
| 410632400060 | 1485 10 MILE RD NE |
| 410632400025 | 1525 10 MILE RD NE |
| 410632400049 | 1531 10 MILE RD NE |
| 410632400007 | 1535 10 MILE RD NE |
| 410632400015 | 1545 10 MILE RD NE |
| 410632400008 | 1553 10 MILE RD NE |
| 410633300013 | 1601 10 MILE RD NE |
| 410633300014 | 1617 10 MILE RD NE |
| 410633300008 | 1661 10 MILE RD NE |
| 410633300018 | 1681 10 MILE RD NE |
| 410633300017 | 1709 10 MILE RD NE |
| 410631476039 | 729 10 MILE RD NE |
| 411008100030 | 7501 PINE ISLAND DR NE |
| 411008100028 | 7545 PINE ISLAND DR NE |
| 411005300019 | 7745 PINE ISLAND DR NE |
| 411005300040 | 7770 PINE ISLAND CT NE |
| 411005300034 | 7780 PINE ISLAND CT NE |
| 411005300018 | 7781 PINE ISLAND DR NE |
| 411006200034 | 780 10 MILE RD NE |
| 411005300039 | 7820 PINE ISLAND CT NE |
| 411005300045 | 7887 PINE ISLAND DR NE |
| 411005300016 | 7890 PINE ISLAND CT NE |
| 411005300038 | 7914 PINE ISLAND CT NE |
| 411005300009 | 7924 PINE ISLAND CT NE |
| 411005300002 | 7945 PINE ISLAND DR NE |
| 411005300008 | 7959 PINE ISLAND DR NE |
| 411005300001 | 7979 PINE ISLAND DR NE |
| 411005151008 | 8031 PINE ISLAND DR NE |
| 411005151012 | 8063 PINE ISLAND DR NE |
| 411005151006 | 8090 PINE ISLAND DR NE |
| 411005151010 | 8109 PINE ISLAND DR NE |
| 411005151016 | 8133 PINE ISLAND DR NE |
| 410632300021 | 815 10 MILE RD NE |
| 411005151015 | 8155 PINE ISLAND DR NE |
| 411005151014 | 8195 PINE ISLAND DR NE |
| 411005176001 | 8200 PINE ISLAND DR NE |
| 411006200045 | 8255 PINE ISLAND DR NE |
| 411006200061 | 8330 PINE ISLAND DR NE |
| 411006200052 | 8340 PINE ISLAND DR NE |
| 411006200017 | 8352 PINE ISLAND DR NE |
| 411006200036 | 8355 PINE ISLAND DR NE |

| | |
|---|---|
| 411006200060 | 8364 PINE ISLAND DR NE |
| 411006200035 | 8375 PINE ISLAND DR NE |
| 411006200039 | 838 10 MILE RD NE |
| 411006200011 | 854 10 MILE RD NE |
| 411006200012 | 868 10 MILE RD NE |
| 410632300022 | 877 10 MILE RD NE |
| 411003126010 | 2775 MONTANA TRL NE |
| 411003176004 | 8108 BELMONT AVE NE |
| 411003176014 | 8124 BELMONT AVE NE |
| 411003176018 | 8126 BELMONT AVE NE |
| 411003376001 | 2626 HOUSE ST NE |
| 411003326009 | 2689 HOUSE ST NE |
| 411003326017 | 2701 HOUSE ST NE |
| 411003326011 | 2765 HOUSE ST NE |
| 411003126014 | 2770 10 MILE RD NE |
| 411003376008 | 2770 HOUSE ST NE |
| 411003376006 | 2790 HOUSE ST NE |
| 411003126022 | 2800 10 MILE RD NE |
| 411003400001 | 2815 HOUSE ST NE |
| 411003126020 | 2820 10 MILE RD NE |
| 411003400035 | 2820 HOUSE ST NE |
| 411003200009 | 2908 10 MILE RD NE |
| 411003400036 | 2910 HOUSE ST NE |
| 411003400034 | 2990 HOUSE ST NE |
| 411003400037 | 3099 ROGUEWOOD DR NE |
| 411003400010 | 3100 ROGUEWOOD DR NE |
| 411002100012 | 3155 HOUSE ST NE |
| 411003400004 | 3155 HOUSE ST NE |
| 411002100009 | 3232 10 MILE RD NE |
| 411002100013 | 3300 10 MILE RD NE |
| 411002100014 | 3450 10 MILE RD NE |
| 411010126009 | 7414 PACKER DR NE |
| 411010126008 | 7442 PACKER DR NE |
| 411010126004 | 7450 BELMONT AVE NE |
| 411010126007 | 7466 PACKER DR NE |
| 411010126006 | 7478 PACKER DR NE |
| 411010126003 | 7500 BELMONT AVE NE |
| 411010126005 | 7540 BELMONT AVE NE |
| 411003377002 | 7576 BELMONT AVE NE |
| 411003377003 | 7602 BELMONT AVE NE |
| 411003377004 | 7620 BELMONT AVE NE |
| 411003400008 | 7700 HOUSE CT NE |
| 411003400007 | 7720 HOUSE CT NE |
| 411003400006 | 7740 HOUSE CT NE |
| 411003376007 | 7750 BELMONT AVE NE |
| 411003400038 | 7780 HOUSE CT NE |
| 411003400025 | 7810 CRESTVIEW DR NE |

| | |
|---|---|
| 411003400024 | 7825 CRESTVIEW DR NE |
| 411003400026 | 7850 CRESTVIEW DR NE |
| 411003400023 | 7855 CRESTVIEW DR NE |
| 411003326016 | 7866 BELMONT AVE NE |
| 411003326006 | 7888 BELMONT AVE NE |
| 411003326004 | 7892 BELMONT AVE NE |
| 411003400018 | 7900 CRESTVIEW DR NE |
| 411003326005 | 7910 BELMONT AVE NE |
| 411003326015 | 7912 BELMONT AVE NE |
| 411003326013 | 7916 BELMONT AVE NE |
| 411003326002 | 7920 BELMONT AVE NE |
| 411003400040 | 7930 CRESTVIEW DR NE |
| 411003400022 | 7935 CRESTVIEW DR NE |
| 411003400039 | 7940 CRESTVIEW DR NE |
| 411003326001 | 7980 BELMONT AVE NE |
| 411003326014 | 8010 BELMONT AVE NE |
| 411003176008 | 8040 BELMONT AVE NE |
| 411003176005 | 8104 BELMONT AVE NE |
| 411003176012 | 8120 BELMONT AVE NE |
| 411003176015 | 8122 BELMONT AVE NE |
| 411003176023 | 8172 BELMONT AVE NE |
| 411003176021 | 8180 BELMONT AVE NE |
| 411003176019 | 8246 BELMONT AVE NE |
| 411003126004 | 8300 BELMONT AVE NE |
| 411003126011 | 8302 BELMONT AVE NE |
| 411003126023 | 8320 BELMONT AVE NE |
| 411003126021 | 8390 BELMONT AVE NE |

# Exhibit D

# To Class Settlement Agreement

## CLASS ACTION SETTLEMENT NOTICE

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

**If you owned real property in the area identified as the North Kent Study Area in and around Plainfield and Algoma Townships, Kent County, Michigan as of November 1, 2017, and were not supplied with drinking water from a municipal water source as of November 1, 2017, you could get benefits from a class action settlement.**

*A federal court authorized this Notice.  It is not a solicitation from a lawyer.*

A Settlement has been reached with The 3M Company and Wolverine Worldwide, Inc. (the "Defendants") in a class action lawsuit about the contamination of properties with per- and poly-fluoroalkyl substances ("PFAS") in the North Kent Study Area, an area shown on the map below.



The Settlement provides:

- **Money for property damages** to people who: are currently or were owners of property located within the North Kent Study Area (pictured above) who owned that property as of November 1, 2017, and who were not supplied with drinking water from a municipal water source as of November 1, 2017 ("Settlement Class Members").

QUESTIONS?  CALL 1-XXX-XXXX TOLL-FREE OR VISIT WWW.XXXXX

Your legal rights are affected regardless of whether you act or don't act.  Read this notice carefully.

| Your Legal Rights and Options In This Settlement | |
|---|---|
| Submit a Claim Form | You must submit a claim form in order to get a payment from this Settlement. |
| Exclude Yourself From the Settlement | If you exclude yourself, you do not get a payment from the Settlement.  This is the only option that allows you to be part of any **other** lawsuit against the Released Parties, including the Defendants, for the claims made in this lawsuit and released by the Settlement. |
| Object to the Settlement | You can write to the Court with the reasons why you do not agree with the Settlement. |
| Go to the Final Approval Hearing | You may ask the Court for permission for you or your attorney to speak about your objection at the Final Approval Hearing. |
| Do Nothing | You will not get a payment from the Settlement, and you will give up certain legal rights. |

These rights and options – and the deadlines to exercise them – are explained in this Notice.

The Court overseeing this case must still decide whether to approve the Settlement.

## **Basic Information**

| 1.  Why is this Notice being provided? |
|---|

The Court directed that this Notice be provided because you have a right to know about a proposed settlement that has been reached in this class action lawsuit and about all of your options before the Court decides whether to grant final approval to the Settlement.  This Notice explains the lawsuit, the Settlement, your legal rights, what payments are available, who is eligible for them, and how to get them.

The Court in charge of this case is the United States District Court for the Western District of Michigan.  This case is known as *Zimmerman v. The 3M Company*, No. 1:17-cv-1062 ("the Action").  U.S. District Judge Hala Y. Jarbou is presiding over the Action.  The people who filed the lawsuit are called Plaintiffs.  The companies they sued, Wolverine Worldwide Inc. and The 3M Company, are called Defendants.  This Settlement is between Plaintiffs and Defendants.

| 2.  What is this lawsuit about? |
|---|

Plaintiffs claim that for several decades Wolverine used PFAS sourced from 3M to manufacture shoes and other products in Rockford, Michigan.  Plaintiffs alleged that the PFAS from Wolverine's manufacturing and disposal operations contaminated groundwater within the North Kent Study Area with PFAS.  Plaintiffs alleged that the presence of PFAS in the groundwater has resulted in the presence of PFAS in drinking water in private wells, has negatively impacted people's ability to use and enjoy their properties, has caused residents to fear for the safety of their water supply, caused garden variety emotional distress, and has negatively impacted property

QUESTIONS?  CALL 1-800-XXX-XXXX_\ TOLL-FREE OR VISIT WWW.XXXXX

values.  Plaintiffs further alleged that Defendants failed to warn of the dangers and risks associated with PFAS or PFAS-containing products.

The Defendants deny all of the claims made in the Action and dispute all allegations of wrongdoing or liability against them.

PFAS are man-made chemicals historically used to manufacture products that were resistant to water, stains, and grease.

| 3.  What is a class action and who is involved? |
| --- |

In a class action, one or more people called "Class Representatives" sue on behalf of people who have similar claims.  (In this case the Class Representatives are: Therese Cooper, Dennis Gregory, Malia Gregory, Paul Groenendal, Rosalyn Ingham, Nancy James (individually and as trustee of the Nancy I. James Trust), Theodore James, Megan Johns, Michael Johns, Michelle Van Wuffen (individually and as trustee of the Terry Alan Van Wuffen and Michelle Lisa Van Wuffen Trust), and Terry Van Wuffen (individually and as trustee of the Terry Alan Van Wuffen and Michelle Lisa Van Wuffen Trust)).

All other unnamed people who are represented in the lawsuit (possibly including you) are members of the "Class" or "Class Members."

Together, all of the Class Representatives, and the Class Members they represent are called "Settlement Class Members."  If approved by the Court, one settlement resolves the Action for all Settlement Class Members, except those who exclude themselves from the Settlement Class.

| 4.  Why is there a Settlement? |
| --- |

The Court did not decide in favor of the Plaintiffs or the Defendants.  Instead, the Plaintiffs and the Defendants agreed to a settlement.  This avoids the cost and burden of a trial and eligible Settlement Class Members can get payments more quickly.  The Class Representatives and their attorneys ("Class Counsel") believe the Settlement is best for all Settlement Class Members.

## **Who Is Included in the Settlement?**

| 5.  How do I know if I am a part of the Settlement? |
| --- |

You are a part of the Settlement as a Settlement Class Member if you fit in the Settlement Class definition (unless you fall into one of the exclusions described in Section 6).  The Settlement Class definition is:

> All Persons who are or were owners of Real Property located within the North Kent Study Area, who owned that property as of November 1, 2017, and who were not supplied with drinking water from a municipal water source as of November 1, 2017.

Please see the map above for a picture of the North Kent Study Area.

QUESTIONS?  CALL 1-800-XXX-XXXX_\ TOLL-FREE OR VISIT WWW.XXXXX

There are three "subclasses" within the Settlement Class.  These subclasses consist of:

1.      Settlement Subclass 1:  Municipal Water Extension – Those Settlement Class Members who are or were owners of Real Property within the North Kent Study Area and who owned that property as of November 1, 2017, and were transitioned to municipal water, or are scheduled to transition to municipal water, under the EGLE/Wolverine Consent Decree.

2.      Settlement Subclass 2:  Filtration Systems – Those Settlement Class Members who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017, and were offered or received a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree to treat their well-sourced water and who are not members of Settlement Subclass 1.

3.      Settlement Subclass 3:  Other – Those Settlement Class Members who are not in Settlement Subclass 1 or Settlement Subclass 2 and who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017.

What this means is that you may be a Settlement Class Member if pursuant to the EGLE/Wolverine Consent Decree, Wolverine offered or provided a home filtration system or point of use filtration system in your home to treat the PFAS from your private well water or your private well was replaced with municipal water.  And you may be a Settlement Class Member even if you did not receive a home filtration system and your private well was not replaced with municipal water.

| 6.   Are there exceptions to being included in the Settlement? |
|---|

Yes.  The Settlement does **not** include (i) any Person who has timely and validly excluded himself, herself, themselves, or itself from the Settlement Class, in accordance with Section 12 of the Settlement Agreement; (ii) any Person (other than Plaintiffs) who has previously filed a claim against any Defendant alleging a PFAS-related injury or illness, including without limitation a spousal derivative claim, or seeking medical monitoring or property damages, related to the presence of PFAS in any environmental media or drinking water in the North Kent Study Area, on or at their property in the North Kent Study Area, and/or in their persons, including without limitation the claims filed in the consolidated litigation captioned *In re Nylaan Litigation*, No. 17-10176 CZ, in the Circuit Court for the County of Kent, Michigan, excluding any previous Plaintiffs to this Action who were dismissed without prejudice under Federal Rule of Civil Procedure 41; (iii) Defendants, any entity or division in which any Defendant has a controlling interest, Defendants' respective legal representatives in this Action, and their respective officers, directors, assigns and successors; (iv) the judge to whom this Action is assigned, any member of the judge's immediate family and the judge's staff, or any other judicial officer or judicial staff member assigned to this case; (v) any Class Counsel, including their partners, members, and shareholders, and any immediate family members of Class Counsel; (vi) any State, including without limitation

the United States, or any of its agencies; and (vii) Plainfield Township, Algoma Township, or any other local governmental entity or agency or public or quasi-public entity.

| 7.  I am still not sure if I am included. |
|---|

If you are still not sure whether you are included, you can call 1-XXX-XXX-XXXX or visit www. YYYYYY for more information.

## **The Settlement Benefits – What You Get if You Qualify**

| 8.  What does the Settlement provide? |
|---|

The Defendants have agreed to pay fifty-four million dollars ($54,000,000) into a Settlement Fund. After deducting attorneys' fees and costs, the Class Representatives' service awards, and the costs of notice and administration, the balance of the fund will be paid to the Settlement Class Members.

| 9.  How much will payments to Settlement Class Members be? |
|---|

Settlement Funds will be distributed to Settlement Class Members in accordance with a formula that takes into account (a) the levels of Michigan regulated PFAS compounds measured in a Settlement Class Member's well;  (b) whether the Settlement Class Member's property has been or will be hooked up to a municipal water source after November 1, 2017 pursuant to the EGLE/Wolverine Consent Decree; (c) whether the Settlement Class Members' property will remain on and require the use of a home filtration system maintained by Wolverine pursuant to the EGLE/Wolverine Consent Decree; (d) the number of household members living at the Settlement Class Member's property as of November 1, 2017; (e) whether the property is vacant; and (f) how long the Settlement Class Member has owned the Eligible Property.

The allocation methodology is attached to this form as Exhibit "A".  Settlement Class Member Payments will be calculated in accordance with the Plan of Allocation Methodology attached as Exhibit A.  Only one Settlement Class Member Payment shall be awarded per Eligible Property, irrespective of the number of property owners or the number of Claim Forms submitted for the Eligible Property.

The purpose of this methodology is to ensure that Settlement Funds are distributed fairly, in a manner that treats similarly situated Settlement Class Members equally, and that reflects the nature and extent of alleged property damages and inconveniences experienced by Settlement Class Members.

Any final award is dependent in part on the number of Settlement Class Members who submit claims at the preliminary approval stage, and thus, the exact amount of Settlement Class Members' claims can only be estimated at this time.

## **How to Get a Settlement Payment – Submitting a Claim Form**

| 10.  How do I get a settlement payment? |
|---|

QUESTIONS?  CALL 1-800-XXX-XXXX_\ TOLL-FREE OR VISIT WWW.XXXXX

**To qualify for a settlement payment, you must complete and submit a Claim Form by MONTH __, 2022.**  You may use the Claim Form enclosed with this notice and return it in the pre-paid postage envelope, or complete and submit a Claim Form online at www. YYYYY, or email a completed Claim Form to _____.  Claim Forms are also available by calling 1-XXX-XXX-XXXX, or by writing to *Zimmerman v. The 3M Company* Settlement Administrator, P.O. Box _____, City, ST _____.

| 11.   When will I get my payment? |
|---|

The Court will hold a Final Approval Hearing at _ on Month __, 2022 to decide whether to approve the Settlement.  If the Court approves the Settlement, there may be appeals.  It is always uncertain whether any appeals will be filed and, if so, how long it will take to resolve them.  Settlement payments will be distributed as soon as possible, if and when the Court grants final approval to the Settlement and after any appeals are resolved.

| 12.   What am I giving up by staying in the Settlement and getting a payment? |
|---|

Unless you exclude yourself, you are part of the Settlement if you are a Settlement Class Member. If the Settlement is approved and becomes final, all of the Court's orders in this Class Action will apply to you and legally bind you.  You will not be able to sue or be part of any other lawsuit against the Defendants and the Released Parties (see next question) that involves the issues resolved by this Settlement.  The rights you are giving up are called Released Claims.

| 13.   What are Released Claims? |
|---|

If the Settlement is approved by the Court and becomes final, Settlement Class Members will have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, relinquished, waived, compromised, settled, and discharged the Released Parties from each and every past, present, and future claim and cause of action, whether known or unknown, whether direct or indirect, individual or class, in constitutional, federal, state, local, statutory, civil, or common law or in equity, or on any other law, rule, regulation, ordinance, directive, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, or for compensatory damages, consequential damages, incidental damages, statutory damages, punitive, special, multiple, treble, or exemplary damages, nominal damages, disgorgement, restitution, indemnity, contribution, penalties, injunctive relief, declaratory relief, attorneys' fees, court costs, or expenses that were or could have been asserted by the Releasing Parties in the Action or any other forum, arising out of or related to, either directly or indirectly or in whole or in part: (i) the subject matter of any allegations contained in the Complaints as well as any allegations otherwise asserted in the Action, or any discovery sought in connection with the Action, (ii) the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in Settlement Class Members' drinking water, groundwater, surface water, municipal water, private well water, soil, or air within the North Kent Study Area; (iii) the sale, purchase, use, handling, transportation, release, discharge, migration, emission, spillage, or disposal of PFAS (including PFOS, PFOA, and/or PFHxS) to, at, or from the  Facilities, including any such PFAS (including PFOS, PFOA, and/or PFHxS) present as a

result of disposal at or discharge by Defendants to, directly or indirectly, any landfill or disposal area, or any other location in, or from which migration has allegedly occurred into the North Kent Study Area, and/or resulting in any alleged contamination of any Eligible Property with PFAS (including PFOS, PFOA, and/or PFHxS); (iv) for any type of relief with respect to the acquisition, installation, maintenance, operation, or presence of, including the cost or purported inconvenience or loss of enjoyment of, property associated with whole-house filters, point-of-entry filters, point-of-use filters, municipal water, private well water, bottled water, alternative water supplies, or remediation; (v) for property damage or property-value diminution, including without limitation stigma, purportedly attributable to the alleged presence of PFAS (including PFOS, PFOA, and/or PFHxS) in the North Kent Study Area; and/or (vi) PFAS (including PFOS, PFOA, and/or PFHxS) in the blood or tissue of any Settlement Class Member.

The claims set forth in the Paragraph above are known as the "**Released Claims**".

Under the Settlement, however, "Released Claims" do **not** include any individual claims of the Releasing Parties (a) for any damages (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries, (b) for any emotional distress claims asserted in the future, but such emotional distress claims are reserved only if they (i) are distinct from the emotional distress claims alleged or that could have been alleged on Releasing Parties' behalf in the Action (*e.g.*, aggravation or continuation of past or existing emotional distress is not reserved, nor is emotional distress arising solely from Releasing Parties' exposure to PFAS in drinking water, but emotional distress arising solely from personal injuries that Releasing Parties may develop in the future as a result of their PFAS exposure are reserved) and (ii) allegedly arise from PFAS exposure claimed to be wholly or partially attributable to Wolverine or 3M and alleged contamination of their current property or drinking water that is subject of this matter; (c) for enforcement of Releasing Parties' rights (if any) under the EGLE/Wolverine Consent Decree; and (d) for enforcement of the terms of this Agreement or the Final Approval Order.  For purposes of this Agreement, "manifested bodily injuries" do not include the presence of PFAS (including PFOS, PFOA, and/or PFHxS) in blood or other bodily tissue.

| 14.  Who are the "Released Parties?" |
|---|

The Released Parties are Defendants and their current, former, and future direct and indirect parents, subsidiaries, divisions, affiliates, affiliated business entities, joint ventures, successors, and predecessors; and all of their current, former, and future agents, employees, officers, directors, partners, shareholders, owners, members, promoters, representatives, distributors, trustees, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity.

## The Lawyers Representing You

| 15.  Do I have a lawyer in this case? |
|---|

Yes.  The Court appointed Esther Berezofsky of Motley Rice, LLC and Sharon S. Almonrode of The Miller Law Firm, P.C. as "Class Counsel" to represent you and other Settlement Class

QUESTIONS?  CALL 1-800-XXX-XXXX_\ TOLL-FREE OR VISIT WWW.XXXXX

Members.  These lawyers and their firms are experienced in handling similar cases.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 16.  How will Class Counsel be paid? |
|---|

Class Counsel will ask the Court for an award of attorneys' fees of up to one-third of the Settlement Fund after expenses, plus reimbursement of reasonable litigation costs.  They will also ask the Court to approve $25,000 service awards to be paid to each of the Class Representative Plaintiffs who were plaintiffs prior to August 30, 2021, and $15,000 for each of the Class Representatives who were also named as Class Representative Plaintiffs as of September 2, 2021 (a total payment of $235,000).  If approved, the fees, costs, and awards will be paid from the Settlement Fund before making payments to Settlement Class Members.

## **Excluding Yourself From the Settlement**

| 17.  How do I get out of the Settlement? |
|---|

To exclude yourself from the Settlement, you must send a letter by mail stating (1) you want to be excluded from *Zimmerman v. The 3M Company*, No. 1:17-cv-1062 (W.D. Mich.), (2) your full name, current address, and telephone number, (3) facts that prove you are a Settlement Class Member, and (4) your signature.  You must mail your exclusion request postmarked no later than **Month __, 2022** to:

<div align="center">

*Zimmerman v. The 3M Company*
General Administrator
P.O. Box _____
City, St. ____-____

</div>

The Defendants have the right to terminate the settlement if a certain number of class members choose to exclude themselves from the Settlement.  If this occurs, the Settlement will be terminated, and no Class Members will receive any payments.

| 18.  If I exclude myself, can I still get a payment from the Settlement? |
|---|

No.  If you exclude yourself, you are telling the Court that you don't want to be part of the Settlement.  You can only get a payment if you stay in the Settlement and submit a valid Claim Form approved by the General Administrator.

| 19.  If I do not exclude myself, can I sue the Defendants for the same thing later? |
|---|

No.  If you stay in the Settlement (i.e., do nothing or do not exclude yourself), you give up any right to separately sue any of the Released Parties, including the Defendants, for the claims made in this lawsuit and released by the Class Settlement Agreement.  If you are a Settlement Class Member and you submit a timely and valid exclusion request for a property that you own jointly

QUESTIONS?  CALL 1-800-XXX-XXXX_\ TOLL-FREE OR VISIT WWW.XXXXX

with one or more other Settlement Class Members, all Settlement Class Members owning the property will be considered to have submitted a timely and valid exclusion request.

## **Objecting to the Settlement**

| 20.  How do I tell the Court that I do not agree with the Settlement? |
|---|

If you are a Settlement Class Member, you can object to the Settlement if you do not agree with it or a portion of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  Your objection must include: (1) your full name, current address, and telephone number; (2) a statement of facts that indicate you are a Settlement Class Member; (3) a statement of your objections and the reasons for them; (4) copies of any papers or evidence you intend to submit to support your objection; (5) a statement indicating whether you plan to appear at the Final Approval Hearing; (6) a statement indicating that you are willing to have your deposition taken, upon request, on a mutually acceptable date at least 10 days before the Final Approval Hearing; (7) a list containing the case name, court, and docket number of any other class action settlements in which you or your counsel have filed an objection in the past five years and a copy of all orders relating to or ruling on those objections; (8) all written and verbal agreements between you, your counsel, or any other person related to your objection; and (9) your signature. This objection must be filed with the court or mailed to the Court at 113 Federal Building, 315 West Allegan Street, Lansing, MI 48933, and it must include the case name and number.

Your objection must also be mailed to Class Counsel <u>and</u> Defense Counsel, so it is postmarked no later than **Month __, 2022**.

| Class Counsel | Defense Counsel |
|---|---|
| Esther Berezofsky<br>Motley Rice, LLC<br>210 Lake Drive East, Suite 101<br>Cherry Hill, NJ 08002<br><br>Sharon S. Almonrode<br>The Miller Law Firm, P.C.<br>950 W. University Dr., Suite 300<br>Rochester, MI 48307<br>1-800-208-0032<br>wolverineclassaction@miller.law | Michael D. Daneker<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Ave. NW<br>Washington, DC 20001<br><br>Daniel L. Ring<br>Michael A. Olsen<br>Mayer Brown LLP<br>71 South Wacker Drive<br>Chicago, IL 60606 |

| 21.  May I come to Court to speak about my objection? |
|---|

Yes.  You or your attorney may request to speak at the Final Approval Hearing about your objection.  To do so, you must include a statement in your objection indicating that you or your attorney intend to appear at the Final Approval Hearing.

QUESTIONS?  CALL 1-800-XXX-XXXX_\ TOLL-FREE OR VISIT WWW.XXXXX

**22.  What is the difference between objecting to the Settlement and asking to be excluded from it?**

Objecting is simply telling the Court that you don't like something about the Settlement.  You can object **only** if you remain in the Settlement Class (that is, do not exclude yourself).  Excluding yourself is telling the Court that you don't want to be a part of the Settlement.  If you exclude yourself, you cannot object because the Settlement no longer affects you.

## The Court's Final Approval Hearing

The Court will hold a hearing to decide whether to approve the settlement.  You may attend but are not required to.

**23.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing at __: __ _m on **Month __, 202_,** at the United States District Court for the Western District of Michigan, 113 Federal Building, 315 West Allegan Street, Lansing, Michigan 48933.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  It will also consider whether to approve Class Counsel's request for an award of attorneys' fees and costs, as well as the Class Representative Plaintiffs' service awards.  If there are objections, the Court will consider them.  The Court may listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.

**24.  Do I have to come to the hearing?**

No.  Class Counsel will answer any questions the Court may have.  However, you are welcome to come to the hearing at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you timely mailed your written objection the Court will consider it.  You may also pay your own lawyer to attend, but it is not required that you do so.

**25.  May I speak at the hearing?**

Yes.  You may ask the Court for permission to speak at the Final Approval Hearing.  (See question 21 above).

## If You Do Nothing

**26.  What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will give up the rights explained in Question 13, including your right to start a lawsuit or be part of any other lawsuit against the Released Parties, including the Defendants, about the issues resolved by this Settlement.  In addition, you will **not** receive a payment from the Settlement.

QUESTIONS?  CALL 1-800-XXX-XXXX_\ TOLL-FREE OR VISIT WWW.XXXXX

## <u>GETTING ADDITIONAL INFORMATION</u>

This Notice summarizes the proposed Settlement. The complete details are provided in the Class Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXX. You may obtain additional information by contacting XXX-XXX-XXX. Publicly filed documents can also be obtained from the Clerk of the Court of the Western District of Michigan, either in person or on the Court's online docket.

# Exhibit E

# To Class Settlement Agreement

## CLASS ACTION SETTLEMENT NOTICE

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

**If you owned property in the area identified as the North Kent Study Area in and around Plainfield and Algoma Townships, Kent County, Michigan as of November 1, 2017, and were not supplied with drinking water from a municipal water source as of November 1, 2017, you could get benefits from a class action settlement.**

A Settlement has been reached with The 3M Company and Wolverine Worldwide, Inc. ("Defendants") in a class action lawsuit about the contamination of properties by per- and poly-fluoroalkyl substances ("PFAS") in the North Kent Study Area, an area depicted on the map below.



## Who Is Included in the Settlement?

| 1.  How do I know if I am a part of the Settlement? |
| --- |

**Who is included:** The Settlement provides money for property damages to individuals who are currently, or were, owners of real property located within the North Kent Study Area (pictured on the map above) as of November 1, 2017, and who did not get their drinking water from a municipal water source as of November 1, 2017 ("Settlement Class Members").

QUESTIONS?  CALL 1-XXX-XXX TOLL-FREE OR VISIT WWW.XXXXX

## The Settlement Benefits – What You Get if You Qualify

| 2.  What does the Settlement provide? |
|---|

**What does the Settlement provide?**  The Defendants have agreed to pay fifty-four million dollars ($54,000,000) into a Settlement Fund.  After deducting attorneys' fees and costs, the class representatives' service awards, and the costs of notice and administration, the balance of the fund will be paid to the Settlement Class Members.

| 3.  How much will payments to Settlement Class Members be? |
|---|

**How do you get a Settlement Payment?**  You must submit a Claim Form by **Month __, 2022.** Claim Forms may be submitted online, emailed to _____, or printed from www._____ and mailed to _____.  Claim Forms are also available by calling 1-___-___-____ or by writing to the General Administrator at _____.

| 4.  Your Legal Rights and Options in This Settlement |
|---|

**If you are a Settlement Class Member, your legal rights are affected regardless of whether you act or don't act.  Read this notice carefully.**

**Your other options.**  If you are included in the Settlement Class and do nothing, your rights will nevertheless be affected, and you won't get any Settlement payments.  In order to get Settlement payments, you must submit a Claim Form by the deadline.  If you do not want to be legally bound by the Settlement, you must affirmatively act to exclude yourself by **Month __, 2022** by filing an Opt Out.  Unless you exclude yourself, you won't be able to sue any of the Defendants or released parties for any claim made in this lawsuit or released by the Settlement Agreement.  If you do not exclude yourself by opting out and stay in the Settlement, you may object to the Settlement or ask the court for permission to have you, or your own lawyer, appear and speak at a hearing to be scheduled by the Court.  This would be at your own cost.  Objections and requests to appear must be submitted by **Month __, 2022.**  More information about your options is available at www._____.

## The Court's Final Approval Hearing

**The Court's Fairness Hearing**.  The United States District Court for the Western District of Michigan will hold a hearing in this case on **Month __, 2022** to consider whether to approve the Settlement, as well as a request of up to $XXX in attorneys' fees plus costs; and $XX service award payments for each class representative Plaintiff (totaling $xxx).

## GETTING ADDITIONAL INFORMATION

**For additional information,** call 1-___-___-____; visit www._____; or write to *Zimmerman v. The 3M Company* General Administrator, P.O. Box___, City, ST _____.

QUESTIONS?  CALL 1-XXX-XXX TOLL-FREE OR VISIT WWW.XXXXX

# Exhibit F

# To Class Settlement Agreement

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BEVERLY ZIMMERMAN, et al., on behalf
of themselves and all others similarly
situated,

Plaintiffs,

v.

THE 3M COMPANY f/k/a Minnesota
Mining and Manufacturing Co., et al.,

Defendants.

Case No. 1:17-cv-1062

Hon. Hala Y. Jarbou

## [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Therese Cooper, Dennis Gregory, Malia Gregory, Paul Groenendal, Rosalyn Ingham, Nancy James (individually and as trustee of the Nancy I. James Trust), Theodore James, Megan Johns, Michael Johns, Michelle Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust), and Terry Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust) (collectively "Plaintiffs") and Defendants Wolverine Worldwide, Inc. ("Wolverine") and The 3M Company ("3M") (collectively, "Defendants" and with Plaintiffs, collectively, the "Parties"), by and through their undersigned attorneys, herby submit this proposed Stipulated Order for Preliminary Approval of Class Action Settlement:

WHEREAS, the Court reviewed and considered the Motion for Preliminary approval and supporting materials filed by Class Counsel;

1

WHEREAS, the Court held a hearing for the Motion for Preliminary Approval on _____; and

WHEREAS, this Court has fully considered the record and requirements of law; and good cause appearing;

IT IS THIS _____ day of _____, 2022 ORDERED that the Settlement is hereby PRELIMINARILY APPROVED.   The Court further ORDERS as follows:

1.      The Court has subject matter jurisdiction under 28 USC § 1332(d), and venue is proper in this District.

2.      The Court has personal jurisdiction over the Plaintiffs, Settlement Class Members and the Defendants.

3.      To the extent not otherwise defined herein, all defined terms in this Order shall have the meaning assigned in the Settlement Agreement.

4.      The Settlement was the result of the Parties' good-faith negotiations. The Settlement was entered into by experienced counsel and only after extensive arm's length negotiations over a lengthy period of time. This Settlement is not the result of collusion.

5.      The proceedings and extensive discovery that occurred before the Parties reached the Settlement gave counsel the opportunity to adequately assess this case's strengths and weaknesses and accordingly structure the Settlement in a way that adequately accounts for those strengths and weaknesses.

6.      The Court has carefully reviewed the Settlement Agreement and finds that the Settlement is fair, reasonable, adequate and meets the standards for preliminary approval under Fed. R. Civ. P. 23(e)(2). Accordingly, the Court preliminarily approves all terms of the Settlement and its accompanying Exhibits.

2

7.     Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court conditionally certifies, for settlement purposes only, the following Settlement Class:

> **Settlement Class**:  All Persons who are or were owners of Real Property located within the North Kent Study Area, who owned that property as of November 1, 2017, and who were not supplied with drinking water from a municipal water source as of November 1, 2017; provided, however, that the "Settlement Class" shall not include Excluded Persons.   The Settlement Class consists of three settlement subclasses:  Settlement Subclass 1:  Municipal Water Extension; Settlement Subclass 2: Filtration Systems; and Settlement Subclass 3: Other.

Pursuant to Fed. R. Civ. P. 23(c), the Court further conditionally certifies, for settlement purposes only, the following Settlement Subclasses:

> **Settlement Subclass 1: Municipal Water Extension:**   All Settlement Class Members who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017, and were transitioned to municipal water, or are scheduled to transition to municipal water, under the EGLE/Wolverine Consent Decree.

> **Settlement Subclass 2: Filtration Systems**:  All Settlement Class Members who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017, and were offered or received a filtration system from Wolverine or its agents pursuant to the EGLE/Wolverine Consent Decree to treat their well-sourced water and who are not members of Settlement Subclass 1: Municipal Water Extension

> **Settlement Subclass 3: Other:**   All Settlement Class Members who are not in Settlement Subclass 1: Municipal Water Extension or Settlement Subclass 2: Filtration Systems and who are or were owners of Real Property located within the North Kent Study Area and who owned that property as of November 1, 2017.

Excluded from the Settlement Class and Subclasses are Excluded Persons, defined as:

(i) any Person who has timely and validly excluded himself, herself or itself from the Settlement Class, in accordance with Section 13 of this Agreement; (ii) any Person (other than Plaintiffs) who has previously filed a claim against any Defendant alleging a PFAS-related injury or illness, including without limitation a spousal derivative claim, or seeking medical monitoring or property damages, related to the presence of PFAS in any environmental media or drinking water in the North Kent Study Area, on or at their property in the North Kent Study Area, and/or in their persons, including without limitation the claims filed in the consolidated litigation captioned *In re Nylaan Litigation*, No. 17-10176 CZ,  in the

3

Circuit Court for the County of Kent, Michigan, excluding any previous Plaintiffs to this Action who were dismissed without prejudice under Federal Rule of Civil Procedure 41; (iii) Defendants, any entity or division in which any Defendant has a controlling interest, Defendants' respective legal representatives in this Action, and their respective officers, directors, assigns and successors; (iv) the judge to whom this Action is assigned, any member of the judge's immediate family and the judge's staff, or any other judicial officer or judicial staff member assigned to this case; (v) any Class Counsel, including their partners, members, and shareholders, and any immediate family members of Class Counsel; (vi) any State, including without limitation the United States, or any of its agencies; and (vii) Plainfield Township, Algoma Township, or any other local governmental entity or agency or public or quasi-public entity.

8.     The Court hereby conditionally appoints the following Plaintiffs as Class Representatives for the Settlement Class and Subclasses:

**Settlement Class Representatives**: Therese Cooper, Dennis Gregory, Malia Gregory, Paul Groenendal, Rosalyn Ingham, Nancy James (individually and as trustee of the Nancy I. James Trust), Theodore James, Megan Johns, Michael Johns, Michelle Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust), and Terry Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust)

**Settlement Subclass 1 Representatives: Municipal Water Extension:**

Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust), and Terry Van Wuffen (individually and as trustee of the Terry Alan VanWuffen and Michelle Lisa Van Wuffen Trust).

**Settlement Subclass 2 Representative: Filtration Systems**

Rosalyn Ingham

**Settlement Subclass 3 Representatives: Other**

Paul Groenendal, Nancy James (individually and as trustee of the Nancy I. James Trust), and Theodore James.

9.     The Court finds that the Class and Subclass Representatives will fairly and adequately protect and represent the interests of all members of the Settlement Class and Subclasses, and the interests of the Class and Subclass Representatives are not antagonistic to those

of the Settlement Class or Subclasses. The Class and Subclass Representatives are represented by counsel who are experienced and competent in the prosecution of complex class action litigation.

10.     The Court has reviewed and finds that the content of the proposed Notice Forms attached as Exhibits D and E to the Settlement Agreement, which are to be displayed, along with the Settlement Agreement and its Exhibits, on the Settlement Website, satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1), and Due Process and accordingly approves the Notice Forms and Claim Form.

11.     As set forth in more detail below and in addition to any other deadlines set forth in this Order, the Court orders the following deadlines:

| Event | Deadline |
|---|---|
| Notice Date | 30 days after Preliminary Approval |
| Opt Out Deadline & Objection Deadline | 45 days after Notice Date (i.e., 75 days after Preliminary Approval) |
| Claim Deadline | 90 days after Notice Date (i.e., 120 days after Preliminary Approval) |
| Deadline for filing motions for Final Approval Order and approval of Plaintiffs' Service Awards and Class Counsel attorneys' fees and costs awards | 45 days after Claim Deadline (i.e., 165 days after Preliminary Approval) |
| Final Approval Hearing | No earlier than 30 days after the filing of the motion for a Final Approval Order (i.e., no earlier than 195 days after Preliminary Approval) |

12.     The Court further approves the proposed methods for giving notice of the Settlement to members of the Settlement Class and Subclasses, as reflected in the Settlement Agreement.  The Court has reviewed the plan for distributing Notice to the Settlement Class and finds that the Settlement Class Members will receive the best notice practicable under the circumstances.  The Court specifically approves the Parties' proposal that within thirty (30) days after Preliminary Approval, or by the time specified by the Court, the General Administrator shall

commence the Notice Program, including by mailing the Notice Form in such form as is approved by the Court. The General Administrator shall transmit the short Notice Form, substantially in the form attached to the Settlement Agreement as Exhibit E, via direct mail or electronic mail to all addresses of Real Properties in the North Kent Study Area who were not supplied with drinking water from a municipal water source as of November 1, 2017. The long Notice Form will be posted on the Settlement Website. The Notice Program shall consist of direct mail; internet; digital media impressions; a national press release; and a community outreach effort. The General Administrator shall maintain a Settlement Website containing the Proposed Third Amended Complaint, this Agreement, the long Notice Form, Plaintiffs' motion seeking preliminary approval, the Preliminary Approval Order, Plaintiffs' motion seeking a Final Approval Order, the Final Approval Order, the Claim Form, and such other documents as the Parties agree to post or that the Court orders posted. The Settlement Website will also provide the capability for Settlement Class Members to submit claims online from the website. These documents shall remain on the Settlement Website for at least six months after the Effective Date. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy the requirements of Fed. R. Civ. P. 23(c)(2) and Fed. R. Civ. P. 23(e)(1) and Due Process.

13.     The Court appoints Angeion Group, LLC as the General Administrator. The Parties are hereby authorized to retain the General Administrator to supervise and administer the Notice procedure as well as the processing of Claims.

14.     The Court preliminarily finds that the following counsel fairly and adequately represent the interests of the Settlement Class and Subclasses and hereby conditionally appoints

Sharon Almonrode of the Miller Law Firm, P.C. and Esther Berezofsky of Motley Rice LLC as Co-Lead Class Counsel.

15.     To become eligible to receive Settlement Class Member Payments pursuant to the Settlement Agreement, Claimants must submit a Claim Form and, if necessary, supporting documents, to the General Administrator during the Enrollment Period.  The Enrollment Period shall commence on the Notice Date and shall conclude on the Claim Deadline (90 days after the Notice Date).  Claim Forms postmarked on the Claim Deadline shall be deemed timely filed.

16.     A Settlement Class Member may make an Objection by serving on the Parties and the Court a timely and valid statement of Objection that complies with the Objection procedure described in the Notice Form.  Class Counsel shall file all such Objections with the Court at least thirty (30) days prior to the Final Approval Hearing.

    a.   To be timely and valid, a statement of Objection must be postmarked or received on or before the Objection Deadline and must include: (i) the full name, current address, and telephone number of the objector; (ii) a statement of the facts that make the objector a Settlement Class Member; (iii) a statement describing all of the objector's challenges to this Agreement or the Settlement and the reasons for those challenges; (iv) all of the papers and evidence the objector intends to submit in support of those challenges; (v) a statement of whether the objector intends to appear at the Final Approval Hearing; (vi) the signature of the objector; (vii) a statement that the objector is willing to be deposed, upon request, on a mutually acceptable date at least ten (10) days before the Final Approval Hearing; (viii) the caption of each case in which the objector or counsel representing the objector have objected to a class action settlement within the preceding five years and a copy of all orders related to or ruling upon those objections; and (ix) all agreements that relate to the Objection, whether written or verbal, between or among the objector, counsel for the objector, and/or any other Person.

    b.   To object, a member of the Settlement Class, individually or through counsel, must file a written objection with the court, and must also serve a copy thereof upon the following, postmarked or received no later than 45 days after the Notice Date (the Objection Deadline):

**Class Counsel**:

Esther Berezofsky
Motley Rice, LLC

210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002

Sharon S. Almonrode
The Miller Law Firm, P.C.
950 W. University Dr., Suite 300
Rochester, MI 48307

and

**<u>Defense Counsel</u>**

Michael D. Daneker
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001

Daniel L. Ring
Michael A. Olsen
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

Unless the Court orders otherwise, only those Settlement Class Members whose statements of Objection express an intention to appear at the Final Approval Hearing shall have the right to present their Objections orally at the Final Approval Hearing.

c.   A Settlement Class Member that does not submit a timely and valid Objection shall have waived, and shall be foreclosed from making, any challenge to the Settlement Agreement in the Action or any other proceeding.

17.    Plaintiffs and Defendants shall have the right, but not the obligation, to respond to any timely-filed Objection no later than seven (7) days prior to the Final Approval Hearing.  Any Party who wishes to respond shall file a copy of the written response with the Court, and shall serve a copy, by hand or overnight delivery, to the objecting Settlement Class Member (or counsel for the objecting Settlement Class Member) and by email to counsel for Plaintiffs and/or Defendants.

18.     A Settlement Class Member may Opt Out by submitting to the General Administrator a timely and valid request that complies with the Opt Out procedure described in the Notice Form.  The Opt Out period shall run for forty-five (45) days from the Notice Date.

a.  To be timely and valid, an Opt Out request must have been submitted on or before the Opt Out Deadline with the submission date verified by postmark or email receipt and must include: (i) the full name, current address, and telephone number of the requestor; (ii) a statement of the facts that make the requestor a Settlement Class Member; (iii) a statement requesting exclusion from the Settlement Class; and (iv) the signature of the requestor.

b.  Any Settlement Class Member that submits a timely and valid Opt Out request shall not: (i) be bound by any orders or judgments entered in the Action to implement and effectuate the Settlement Agreement; (ii) be entitled to any of the relief or other benefits provided under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to submit an Objection.

c.  Any Settlement Class Member that does not submit a timely and valid Opt Out request submits to the jurisdiction of the Court and shall be bound by the terms of this Agreement and by all orders and judgments in the Action to implement and effectuate the Settlement Agreement, regardless of whether or not such Settlement Class Member submits a Claim Form.

d.  No "mass" or "class" Opt Out requests shall be valid, and no Settlement Class Member may submit an Opt Out request on behalf of any other Settlement Class Member; provided, however, that a Settlement Class Member who is the legal guardian, trustee, or power of attorney of another Settlement Class Member may submit an Opt Out request on behalf of such other Settlement Class Member.

e.  Any Settlement Class Member that submits an Opt Out request may revoke the request by submitting to the General Administrator a statement of revocation with a verified submission date no later than thirty (30) days after the Opt Out Deadline; provided, however, that Class Counsel shall have discretion to extend this deadline on a case-by-case basis.

f.  As soon as practicable and no later than fifteen (15) days after the Claim Deadline, the General Administrator shall furnish the Parties with a final list of all timely and valid Opt Out requests that have been submitted.

g.  Any Class Member who submits a timely Opt Out request may not file an Objection to the Settlement and shall be deemed to have waived any rights or benefits under the Settlement Agreement.

19.     Any member of the Settlement Class failing to properly and timely submit a written Opt Out request shall be automatically included in the Settlement Class and shall be bound by all of the terms and provisions of the Settlement Agreement, including but not limited to the release, and the Final Order and Judgment.

20.     Any motions for a Final Approval Order and approval of Plaintiffs' Service Awards and attorneys' fees and costs awards shall be filed within forty-five (45) days after the Claim Deadline.

21.     The Court directs that pursuant to Fed. R. Civ. P. 23(e)(2), a hearing will be held on _____[at least 195 days after entry of the Preliminary Approval Order], to consider final approval of the Settlement (the "Fairness Hearing" or "Final Approval Hearing") including, but not limited to, the following issues: (1) to determine whether to grant final approval to (a) the certification of the Settlement Class, (b) the designation of Plaintiffs as representative of the Settlement Class, (c) the designation of Class Counsel for the Settlement Class, and (d) the Settlement; (2) to rule on Class Counsel's request for an award of attorneys' fees and reimbursement of costs, and for Service Awards to Class Representatives; and (3) to consider whether to enter the Final Approval Order. The Fairness Hearing may be adjourned by the Court and the Court may address matters set out above, including final approval of the Settlement, without further notice to the Settlement Class other than notice that may be posted at the Court and on the Court's and General Administrator's websites.

22.     Upon Final Approval of the Settlement, all Settlement Class Members who do not timely and properly Opt Out of the Settlement shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully and completely released, acquitted and discharged the

Released Parties from all Released Claims as set forth in the Settlement Agreement, and the Action will be deemed dismissed with prejudice.

23.     In the event that the Settlement Agreement is not finally approved, this Preliminary Approval Order shall be rendered null and void and shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.  If the Settlement Agreement is not finally approved, no Party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including but not limited to, claims or objections to class certification, or claims or defenses on the merits.  Each Party reserves the right to prosecute or defend this Action in the event that this Agreement does not become final and binding. This Action shall thereupon revert immediately to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement.

24.     The Court shall retain continuing and exclusive jurisdiction over the Parties, the Settlement Class Members, and this Agreement, to interpret, implement, administer and enforce the Agreement in accordance with its terms, and, as appropriate, to award attorneys' fees and expenses to Class Counsel and make awards to the Plaintiffs in connection with their representation of the Settlement Class and Settlement Subclasses.

25.     Pending final determination of the Settlement Agreement, all proceedings in this Action other than the settlement approval proceedings shall be stayed.

IT IS SO ORDERED.


Dated:                           _____

                                 HON. HALA JARBOU
                                 UNITED STATES DISTRICT JUDGE

# Exhibit G

# To Class Settlement Agreement

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEVERLY ZIMMERMAN, et al.,                    Case No. 1:17-cv-01062
*on behalf of themselves and all others*
*similarly situated*,

      Plaintiffs,

v.

THE 3M COMPANY, et al.,

      Defendants.

_____/

**DECLARATION OF THE SETTLEMENT ADMINISTRATOR**

I, Steven Weisbrot, Esq., declare under penalty of perjury as follows:

1.      I am the President and Chief Executive Officer at the class action notice and claims administration firm Angeion Group, LLC ("Angeion"). Angeion specializes in designing, developing, analyzing, and implementing large-scale, unbiased, legal notification plans.

2.      I have personal knowledge of the matters stated herein. In forming my opinions regarding notice in this action, I have drawn from my extensive class action experience, as described below.

3.      I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs, including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

4.      I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23* and the soon to be published George Washington Law School *Best Practices Guide to Class Action Litigation*.

5.      I have given public comment and written guidance to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media, and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and offered an educational curriculum for the judiciary concerning notice procedures.

6.      Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

7.      My notice work comprises a wide range of class actions that include data breach, mass disasters, product defect, false advertising, employment discrimination, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases.

8.      I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. Courts have repeatedly recognized my work in the design of class action notice programs. A comprehensive summary of judicial recognition Angeion has received is attached hereto as **Exhibit A**.

9.      By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $15 billion to Settlement Class Members. The executive profiles as well as the company overview are available at https://www.angeiongroup.com/our_team.php.

10.     As a class action administrator, Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims processing services.

11.     This declaration will describe the Notice Plan that, if approved by the Court, Angeion will implement in this matter, including the considerations that informed the development of the plan and why we believe it will provide due process to the Settlement Class.

## SUMMARY OF THE NOTICE PROGRAM

12.     In my professional opinion, the proposed Notice Plan is the best notice that is practicable under the circumstances and fully comports with due process and Fed. R. Civ. P. 23. The Notice Plan provides for individual direct notice to the Settlement Class Member accounts via mail, and the implementation of a robust, targeted media plan, including print publication. In addition, the Notice Plan provides for the creation of a dedicated website and toll-free telephone support to further inform Settlement Class Members of their rights and options in the Settlement.

## DIRECT NOTICE

**Mailed Notice**

13.     As part of the Notice Plan, Angeion will send notice, via first class U.S. Mail, postage pre-paid, to all Settlement Class Members whose mailing addresses are provided to Angeion.

14.     In administering the Notice Plan in this action, Angeion will employ the following best practices to increase the deliverability rate of the mailed Notices. Angeion will cause the mailing address information for members of the Class to be updated utilizing the National Change of Address ("NCOA") database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS.

15.     Notices returned to Angeion by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS and the class member database will be updated accordingly.

16.     Notices returned to Angeion by the USPS without forwarding addresses will be subjected

to an address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc., to locate updated addresses.

17.    For any Settlement Class Members where a new address is identified through the skip trace process, the class member database will be updated with the new address information and a Notice will be re-mailed to that address.

## **MEDIA NOTICE**

**Programmatic Display Advertising**

18.    Angeion will utilize a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States. Programmatic Display Advertising is a trusted method specifically utilized to reach defined target audiences. It has been reported that U.S. advertisers spent nearly $105.99 billion on programmatic display advertising in 2021, and it is estimated that approximately $123.22 billion will be spent on programmatic display advertising 2022.[1]

19.    In laymen's terms, programmatic advertising is a method of advertising where an algorithm identifies and examines demographic profiles and uses advanced technology to place advertisements on the websites where members of the audience are most likely to visit (these websites are accessible on computers, mobile phones and tablets).

20.    Specifically, the programmatic display advertising will be targeted to "Grand Rapids-Kalamazoo-Battle Creek, MI Designated Market Area" AND "Own their Home."

21.    To combat the possibility of non-human viewership of the digital advertisements and to verify effective unique placements, Angeion employs Oracle's BlueKai, Adobe's Audience Manger and/or Lotame, which are demand management platforms ("DMP"). DMPs allow Angeion to learn more about the online audiences that are being reached. Further, online ad verification and security providers such as Comscore Content Activation, DoubleVerify,

---

[1] https://www.emarketer.com/content/us-programmatic-digital-display-ad-spending-2022.

Grapeshot, Peer39 and Moat will be deployed to provide a higher quality of service to ad performance.

**Social Media Notice**

22.     The Notice Plan also includes a social media campaign utilizing Facebook and Instagram, which are two of the leading social media platforms in North America. The social media campaign uses an interest-based approach which focuses on the interests that users exhibit while on the social media platforms.

23.     The social media campaign will engage with the audience via a mix of news feed and story units to optimize performance, *i.e.*, via the Facebook desktop site, mobile site and mobile app. Facebook image ads will appear natively in desktop newsfeeds (on Facebook.com) and mobile app newsfeeds (via the Facebook app or Facebook.com mobile site), and on desktops via right-column ads.

24.      Additionally, specific tactics will be implemented to further qualify and deliver impressions to the Settlement Class. *Content Targeting* will be utilized to target ads to relevant sites within the technology vertical. *Audience Targeting* allows the use of demographic and behavioral data to serve ads. Based on these characteristics, we can build different consumer profile segments to ensure the notice plan messaging is delivered to the proper audience. The social media ads will further geo-targeted to Kent County, Michigan.

**Search Engine Marketing**

25.     The Notice Plan also includes a paid search campaign on Google to help drive Class Members who are actively searching for information about the Settlement to the dedicated Settlement Website. Paid search ads will complement the programmatic and social media campaigns, as search engines are frequently used to locate a specific website, rather than a person typing in the URL. Search terms would relate to not only the Settlement itself but also the subject-matter of the litigation. In other words, the paid search ads are driven by the individual user's search activity, such that if that individual searches for (or has recently searched for) the Settlement, litigation or other terms related to the Settlement, that individual could be served with

an advertisement directing them to the Settlement Website.

26.     The comprehensive state-of-the-art media notice outlined above is designed to deliver an estimated 760,000 impressions.

## PUBLICATION NOTICE

27.     The Notice Plan also includes publication in local newspapers to further disseminate notice to the Class. Specifically, notice of the settlement will be printed four (4) times in each of the following publications:

| Publication | Circulation | Ad Unit | Frequency |
|---|---|---|---|
| Grand Rapids Press | Sunday: 47,500 | 1/2-page B&W | Run 4x (Sundays) |
| Grand Rapids Times | Friday: 6,000 | 1/2-page B&W | Run 4x (Fridays) |

## RESPONSE MECHANISMS

28.     The Notice Plan will also implement the creation of a case-specific website, where Settlement Class Members can easily view general information about the litigation, review relevant Court documents, and view important dates and deadlines pertinent to the class action. The website will be designed to be user-friendly and make it easy for Settlement Class Members to find information about the Settlement. The website will also have a "Contact Us" page whereby Settlement Class Members can send an email with any additional questions to a dedicated email address.   Likewise, Settlement Class Members will also be able to submit claim forms online via the website.

29.     A toll-free hotline devoted to this case will be implemented to further apprise Settlement Class Members of the rights and options pursuant to the terms of the Settlements.  The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the litigation. This hotline will be accessible 24 hours a day, 7 days a week. The toll-free hotline will allow Settlement Class Members to request that a notice or claim form be mailed to them.

## PLAIN LANGUAGE NOTICE DESIGN

30.    The proposed Notice forms used in this matter are designed to be "noticed," reviewed, and by presenting the information in plain language, understood by members of the Settlement Class. The design of the notices follows the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The notice forms contain plain-language summaries of key information about the rights and options of members of the Settlement Class pursuant to the Settlement. Consistent with normal practice, prior to being delivered and published, all notice documents will undergo a final edit for accuracy.

31.    Angeion Group maintains a strong commitment to adhering to this requirement, drawing on its experience and expertise to craft notices that effectively convey the necessary information to members of the Settlement Class in plain language.

## CONCLUSION

32.    The Notice Plan outlined above includes direct notice to all reasonably identifiable Settlement Class Members, a robust media campaign, print publication, and the implementation of a dedicated website and toll-free hotline to further inform Settlement Class Members of their rights and options pursuant to the Settlement.

33.    In my opinion, the Notice Plan will provide full and proper notice to Settlement Class Members before any applicable deadlines.  Moreover, it is my opinion that Notice Plan exceeds any requirement for notice under due process, and Fed. R. Civ. P. 23. After the Notice Plan has concluded, Angeion will provide a final report verifying its effective implementation.


Dated:  August 16, 2022

STEVEN WEISBROT

# Exhibit A

# INNOVATION
## IT'S PART OF OUR DNA

class action | mass tort | legal noticing | litigation support



## Judicial Recognition

©  Angeion Group, LLC



### IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION
**Case No. 5:18-md-02827**

The Honorable Edward J. Davila, United States District Court, Northern District of California (March 17, 2021): Angeion undertook a comprehensive notice campaign...The notice program was well executed, far-reaching, and exceeded both Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement to provide the "best notice that is practicable under the circumstances" and Rule 23(e)(1)(B)'s requirement to provide "direct notice in a reasonable manner."

### IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION
**Case No. 1:20-cv-04699**

The Honorable John Z. Lee, United States District Court, Northern District of Illinois (October 1, 2021): The Court approves, as to form and content, the proposed Class Notices submitted to the Court. The Court finds that the Settlement Class Notice Program outlined in the Declaration of Steven Weisbrot on Settlement Notices and Notice Plan (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and (iv) meets all requirements of applicable law, Federal Rule of Civil Procedure 23, and due process.

### IN RE: GOOGLE PLUS PROFILE LITIGATION
**Case No. 5:18-cv-06164**

The Honorable Edward J. Davila, United States District Court, Northern District of California (January 25, 2021): The Court further finds that the program for disseminating notice to Settlement Class Members provided for in the Settlement, and previously approved and directed by the Court (hereinafter, the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and such Notice Program, including the approved forms of notice, is reasonable and appropriate and satisfies all applicable due process and other requirements, and constitutes best notice reasonably calculated under the circumstances to apprise Settlement Class Members...

### IN RE: FACEBOOK INTERNET TRACKING LITIGATION
**Case No. 5:12-md-02314**

The Honorable Edward J. Davila, United States District Court, Northern District of California (March 31, 2022): The Court approves the Notice Plan, Notice of Proposed Class Action Settlement, Claim Form, and Opt-Out Form, which are attached to the Settlement Agreement as Exhibits B-E, and finds that their dissemination substantially in the manner and form set forth in the Settlement Agreement meets the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Actions, the effect of the proposed Settlement (including the releases contained therein), the anticipated Motion for a Fee and Expense Award and for Service Awards, and their rights to participate in, opt out of, or object to any aspect of the proposed Settlement.

# JUDICIAL RECOGNITION



### CITY OF LONG BEACH v. MONSANTO COMPANY
**Case No. 2:16-cv-03493**

The Honorable Fernando M. Olguin, United States District Court, Central District of California (March 14, 2022): The court approves the form, substance, and requirements of the class Notice, (Dkt.278-2, Settlement Agreement, Exh. I). The proposed manner of notice of the settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

### STEWART v. LEXISNEXIS RISK DATA RETRIEVAL SERVICES, LLC
**Case No. 3:20-cv-00903**

The Honorable John A. Gibney Jr., United States District Court, Eastern District of Virginia (February 25, 2022): The proposed forms and methods for notifying the proposed Settlement Class Members of the Settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled to notice...Based on the foregoing, the Court hereby approves the notice plans developed by the Parties and the Settlement Administrator and directs that they be implemented according to the Agreement and the notice plans attached as exhibits.

### WILLIAMS v. APPLE INC.
**Case No. 3:19-cv-0400**

The Honorable Laurel Beeler, United States District Court, Northern District of California (February 24, 2022): The Court finds the Email Notice and Website Notice (attached to the Agreement as Exhibits 1 and 4, respectively), and their manner of transmission, implemented pursuant to the Agreement (a) are the best practicable notice, (b) are reasonably calculated, under the circumstances, to apprise the Subscriber Class of the pendency of the Action and of their right to object to or to exclude themselves from the proposed settlement, (c) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and (d) meet all requirements of applicable law.

### CLEVELAND v. WHIRLPOOL CORPORATION
**Case No. 0:20-cv-01906**

The Honorable Wilhelmina M. Wright, United States District Court, District of Minnesota (December 16, 2021): It appears to the Court that the proposed Notice Plan described herein, and detailed in the Settlement Agreement, comports with due process, Rule 23, and all other applicable law. Class Notice consists of email notice and postcard notice when email addresses are unavailable, which is the best practicable notice under the circumstances...The proposed Notice Plan complies with the requirements of Rule 23, Fed. R. Civ. P., and due process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above.

*RASMUSSEN v. TESLA, INC. d/b/a TESLA MOTORS, INC.*
**Case No. 5:19-cv-04596**

The Honorable Beth Labson Freeman, United States District Court, Northern District of California (December 10, 2021): The Court has carefully considered the forms and methods of notice to the Settlement Class set forth in the Settlement Agreement ("Notice Plan"). The Court finds that the Notice Plan constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and the requirements of any other applicable law, such that the terms of the Settlement Agreement, the releases provided for therein, and this Court's final judgment will be binding on all Settlement Class Members.

*CAMERON v. APPLE INC.*
**Case No. 4:19-cv-03074**

The Honorable Yvonne Gonzalez Rogers, United States District Court, Northern District of California (November 16, 2021): The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law.

*RISTO v. SCREEN ACTORS GUILD-AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS*
**Case No. 2:18-cv-07241**

The Honorable Christina A. Snyder, United States District Court, Central District of California (November 12, 2021):  The Court approves the publication notice plan presented to this Court as it will provide notice to potential class members through a combination of traditional and digital media that will consist of publication of notice via press release, programmatic display digital advertising, and targeted social media, all of which will direct Class Members to the Settlement website...The notice plan satisfies any due process concerns as this Court certified the class under Federal Rule of Civil Procedure 23(b)(1)...

*JENKINS v. NATIONAL GRID USA SERVICE COMPANY, INC.*
**Case No. 2:15-cv-01219**

The Honorable Joanna Seybert, United States District Court, Eastern District of New York (November 8, 2021):  Pursuant to Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), the Court approves the proposed Notice Plan and procedures set forth at Section 8 of the Settlement, including the form and content of the proposed forms of notice to the Settlement Class attached as Exhibits C-G to the Settlement and the proposed procedures for Settlement Class Members to exclude themselves from the Settlement Class or object. The Court finds that the proposed Notice Plan meets the requirements of due process under the United States Constitution and Rule 23, and that such Notice Plan—which includes direct notice to Settlement Class Members sent via first class U.S. Mail and email; the establishment of a Settlement Website (at the URL, www.nationalgridtcpasettlement.com) where Settlement Class Members can view the full settlement agreement, the detailed long-form notice (in English and Spanish),

and other key case documents; publication notice in forms attached as Exhibits E and F to the Settlement sent via social media (Facebook and Instagram) and streaming radio (e.g., Pandora and iHeart Radio). The Notice Plan shall also include a paid search campaign on search engine(s) chosen by Angeion (e.g., Google) in the form attached as Exhibits G and the establishment of a toll-free telephone number where Settlement Class Members can get additional information—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

### *NELLIS v. VIVID SEATS, LLC*
**Case No. 1:20-cv-02486**

The Honorable Robert M. Dow, Jr., United States District Court, Northern District of Illinois (November 1, 2021):  The Notice Program, together with all included and ancillary documents thereto, (a) constituted reasonable notice; (b) constituted notice that was reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Litigation...(c) constituted reasonable, due, adequate and sufficient notice to all Persons entitled to receive notice; and (d) met all applicable requirements of due process and any other applicable law. The Court finds that Settlement Class Members have been provided the best notice practicable of the Settlement and that such notice fully satisfies all requirements of law as well as all requirements of due process.

### *PELLETIER v. ENDO INTERNATIONAL PLC*
**Case No. 2:17-cv-05114**

The Honorable Michael M. Baylson, United States District Court, Eastern District of Pennsylvania (October 25, 2021): The Court approves, as to form and content, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and the Summary Notice, annexed hereto as Exhibits A-1, A-2, and A-3, respectively, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice, substantially in the manner and form set forth in ¶¶7-10 of this Order, meet the requirements of Rule 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

### *BIEGEL v. BLUE DIAMOND GROWERS*
**Case No. 7:20-cv-03032**

The Honorable Cathy Seibel, United States District Court, Southern District of New York (October 25, 2021):  The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action...and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

*QUINTERO v. SAN DIEGO ASSOCIATION OF GOVERNMENTS*
**Case No. 37-2019-00017834-CU-NP-CTL**

The Honorable Eddie C. Sturgeon, Superior Court of the State of California, County of San Diego (September 27, 2021):  The Court has reviewed the class notices for the Settlement Class and the methods for providing notice and has determined that the parties will employ forms and methods of notice that constitute the best notice practicable under the circumstances; are reasonably calculated to apprise class members of the terms of the Settlement and of their right to participate in it, object, or opt-out; are reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and meet all constitutional and statutory requirements, including all due process requirements and the California Rules of Court.

*HOLVE v. MCCORMICK & COMPANY, INC.*
**Case No. 6:16-cv-06702**

The Honorable Mark W. Pedersen, United States District Court for the Western District of New York (September 23, 2021):  The Court finds that the form, content and method of giving notice to the Class as described in the Settlement Agreement and the Declaration of the Settlement Administrator: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action…(c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.

*CULBERTSON T AL. v. DELOITTE CONSULTING LLP*
**Case No. 1:20-cv-03962**

The Honorable Lewis J. Liman, United States District Court, Southern District of New York (August 27, 2021):  The notice procedures described in the Notice Plan are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

*PULMONARY ASSOCIATES OF CHARLESTON PLLC v. GREENWAY HEALTH, LLC*
**Case No. 3:19-cv-00167**

The Honorable Timothy C. Batten, Sr., United States District Court, Northern District of Georgia (August 24, 2021):  Under Rule 23(c)(2), the Court finds that the content, format, and method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot filed on July 2, 2021, and the Settlement Agreement and Release, including notice by First Class U.S. Mail and email to all known Class Members, is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and due process.

### IN RE: BROILER CHICKEN GROWER ANTITRUST LITIGATION (NO II)
### Case No. 6:20-md-02977

The Honorable Robert J. Shelby, United States District Court, Eastern District of Oklahoma (August 23, 2021): The Court approves the method of notice to be provided to the Settlement Class as set forth in Plaintiffs' Motion and Memorandum of Law in Support of Motion for Approval of the Form and Manner of Class Notice and Appointment of Settlement Administrator and Request for Expedited Treatment and the Declaration of Steven Weisbrot on Angeion Group Qualifications and Proposed Notice Plan…The Court finds and concludes that such notice: (a) is the best notice that is practicable under the circumstances, and is reasonably calculated to reach the members of the Settlement Class and to apprise them of the Action, the terms and conditions of the Settlement, their right to opt out and be excluded from the Settlement Class, and to object to the Settlement; and (b) meets the requirements of Federal Rule of Civil Procedure 23 and due process.

### ROBERT ET AL. v. AT&T MOBILITY, LLC
### Case No. 3:15-cv-03418

The Honorable Edward M. Chen, United States District Court, Northern District of California (August 20, 2021): The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort, as well as supplemental notice via a social media notice campaign and reminder email and SMS notices; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of this Action …(d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, Due Process under the U.S. Constitution, and any other applicable law.

### PYGIN v. BOMBAS, LLC
### Case No. 4:20-cv-04412

The Honorable Jeffrey S. White, United States District Court, Northern District of California (July 12, 2021): The Court also concludes that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the Scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court approves the Class Notice and Notice Program and the Claim Form.

### WILLIAMS ET AL. v. RECKITT BENCKISER LLC ET AL.
### Case No. 1:20-cv-23564

The Honorable Jonathan Goodman, United States District Court, Southern District of Florida (April 23, 2021): The Court approves, as to form and content, the Class Notice and Internet Notice submitted by the parties (Exhibits B and D to the Settlement Agreement or Notices

substantially similar thereto) and finds that the procedures described therein meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and provide the best notice practicable under the circumstances. The proposed Class Notice Plan -- consisting of (i) internet and social media notice; and (ii) notice via an established a Settlement Website -- is reasonably calculated to reach no less than 80% of the Settlement Class Members.

### NELSON ET AL. v. IDAHO CENTRAL CREDIT UNION
### Case No. CV03-20-00831, CV03-20-03221
The Honorable Robert C. Naftz, Sixth Judicial District, State of Idaho, Bannock County (January 19, 2021):  The Court finds that the Proposed Notice here is tailored to this Class and designed to ensure broad and effective reach to it...The Parties represent that the operative notice plan is the best notice practicable and is reasonably designed to reach the settlement class members. The Court agrees.

### IN RE: HANNA ANDERSSON AND SALESFORCE.COM DATA BREACH LITIGATION
### Case No. 3:20-cv-00812
The Honorable Edward M. Chen, United States District Court, Northern District of California (December 29, 2020):  The Court finds that the Class Notice and Notice Program satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances.

### IN RE: PEANUT FARMERS ANTITRUST LITIGATION
### Case No. 2:19-cv-00463
The Honorable Raymond A. Jackson, United States District Court, Eastern District of Virginia (December 23, 2020):  The Court finds that the Notice Program...constitutes the best notice that is practicable under the circumstances and is valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of Rule 23(c)(2) and the due process requirements of the Constitution of the United States.

### BENTLEY ET AL. v. LG ELECTRONICS U.S.A., INC.
### Case No. 2:19-cv-13554
The Honorable Madeline Cox Arleo, United States District Court, District of New Jersey (December 18, 2020):  The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Litigation, the Settlement, and the Settlement Class Members' rights to object to the Settlement or opt out of the Settlement Class, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

### IN RE: ALLURA FIBER CEMENT SIDING PRODUCTS LIABILITY LITIGATION
### Case No. 2:19-mn-02886
The Honorable David C. Norton, United States District Court, District of South Carolina (December 18, 2020):  The proposed Notice provides the best notice practicable under the

circumstances. It allows Settlement Class Members a full and fair opportunity to consider the proposed settlement. The proposed plan for distributing the Notice likewise is a reasonable method calculated to reach all members of the Settlement Class who would be bound by the settlement. There is no additional method of distribution that would be reasonably likely to notify Settlement Class Members who may not receive notice pursuant to the proposed distribution plan.

### ADKINS ET AL. v. FACEBOOK, INC.
### Case No. 3:18-cv-05982

The Honorable William Alsup, United States District Court, Northern District of California (November 15, 2020):  Notice to the class is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co., 399 U.S. 306, 314 (1650).*

### IN RE: 21ST CENTURY ONCOLOGY CUSTOMER DATA SECURITY BREACH LITIGATION
### Case No. 8:16-md-02737

The Honorable Mary S. Scriven, United States District Court, Middle District of Florida (November 2, 2020):  The Court finds and determines that mailing the Summary Notice  and publication of the Settlement Agreement, Long Form Notice, Summary Notice, and Claim Form on the Settlement Website, all pursuant to this Order, constitute the best notice practicable under the circumstances, constitute due and sufficient notice of the matters set forth in the notices to all persons entitled to receive such notices, and fully satisfies the of due process, Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and all other applicable laws and rules. The Court further finds that all of the notices are written in plain language and are readily understandable by Class Members.

### MARINO ET AL. v. COACH INC.
### Case No. 1:16-cv-01122

The Honorable Valerie Caproni, United States District Court, Southern District of New York (August 24, 2020):  The Court finds that the form, content, and method of giving notice to the Settlement Class as described in paragraph 8 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution.  The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

# JUDICIAL RECOGNITION



### BROWN v. DIRECTV, LLC

**Case No. 2:13-cv-01170**

The Honorable Dolly M. Gee, United States District Court, Central District of California (July 23, 2020):  Given the nature and size of the class, the fact that the class has no geographical limitations, and the sheer number of calls at issue, the Court determines that these methods constitute the best and most reasonable form of notice under the circumstances.

### IN RE: SSA BONDS ANTITRUST LITIGATION

**Case No. 1:16-cv-03711**

The Honorable Edgardo Ramos, United States District Court, Southern District of New York (July 15, 2020):  The Court finds that the mailing and distribution of the Notice and the publication of the Summary Notice substantially in the manner set forth below meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled to notice.

### KJESSLER ET AL. v. ZAAPPAAZ, INC. ET AL.

**Case No. 4:18-cv-00430**

The Honorable Nancy F. Atlas, United States District Court, Southern District of Texas (July 14, 2020):  The Court also preliminarily approves the proposed manner of communicating the Notice and Summary Notice to the putative Settlement Class, as set out below, and finds it is the best notice practicable under the circumstances, constitutes due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfies the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23.

### HESTER ET AL. v. WALMART, INC.

**Case No. 5:18-cv-05225**

The Honorable Timothy L. Brooks, United States District Court, Western District of Arkansas (July 9, 2020):  The Court finds that the Notice and Notice Plan substantially in the manner and form set forth in this Order and the Agreement meet the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto.

### CLAY ET AL. v. CYTOSPORT INC.

**Case No. 3:15-cv-00165**

The Honorable M. James Lorenz, United States District Court, Southern District of California (June 17, 2020):  The Court approves the proposed Notice Plan for giving notice to the Settlement Class through publication, both print and digital, and through the establishment of a Settlement Website, as more fully described in the Agreement and the Claims Administrator's affidavits (docs. no. 222-9, 224, 224-1, and 232-3 through 232-6). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

### GROGAN v. AARON'S INC.
### Case No. 1:18-cv-02821

The Honorable J.P. Boulee, United States District Court, Northern District of Georgia (May 1, 2020):  The Court finds that the Notice Plan as set forth in the Settlement Agreement meets the requirements of Fed. R. Civ. P. 23 and constitutes the best notice practicable under the circumstances, including direct individual notice by mail and email to Settlement Class Members where feasible and a nationwide publication website-based notice program, as well as establishing a Settlement Website at the web address of www.AaronsTCPASettlement.com, and satisfies fully the requirements the Federal Rules of Civil Procedure, the U.S. Constitution, and any other applicable law, such that the Settlement Agreement and Final Order and Judgment will be binding on all Settlement Class Members.

### CUMMINGS v. BOARD OF REGENTS OF THE UNIVERSITY OF NEW MEXICO, ET AL.
### Case No. D-202-CV-2001-00579

The Honorable Carl Butkus, Second Judicial District Court, County of Bernalillo, State of New Mexico (March 30, 2020): The Court has reviewed the Class Notice, the Plan of Allocation and Distribution and Claim Form, each of which it approves in form and substance. The Court finds that the form and methods of notice set forth in the Agreement: (i) are reasonable and the best practicable notice under the circumstances; (ii) are reasonably calculated to apprise Settlement Class Members of the pendency of the Lawsuit, of their rights to object to or opt-out of the Settlement, and of the Final Approval Hearing; (iii) constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet the requirements of the New Mexico Rules of Civil Procedure, the requirements of due process under the New Mexico and United States Constitutions, and the requirements of any other applicable rules or laws.

### SCHNEIDER, ET AL. v. CHIPOTLE MEXICAN GRILL, INC.
### Case No. 4:16-cv-02200

The Honorable Haywood S. Gilliam, Jr., United States District Court, Northern District of California (January 31, 2020):  Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign and provide for publication notice in People magazine, a nationwide publication, and the East Bay Times. SA § IV.A, C; Dkt. No. 205-12 at ¶¶ 13–23. The publication notices will run for four consecutive weeks. Dkt. No. 205 at ¶ 23. The digital media campaign includes an internet banner notice implemented using a 60-day desktop and mobile campaign. Dkt. No. 205-12 at ¶ 18. It will rely on "Programmatic Display Advertising" to reach the "Target Audience," Dkt. No. 216-1 at ¶ 6, which is estimated to include 30,100,000 people and identified using the target definition of "Fast Food & Drive-In Restaurants Total Restaurants Last 6 Months [Chipotle Mexican Grill]," Dkt. No. 205-12 at ¶ 13. Programmatic display advertising utilizes "search targeting," "category contextual targeting," "keyword contextual targeting," and "site targeting," to place ads. Dkt. No. 216-1 at ¶¶ 9–12. And through "learning" technology, it continues placing ads on websites where the ad is performing well. Id. ¶ 7. Put simply, prospective Class Members will see a banner ad notifying them of the settlement when they search for terms or websites that are similar to or related to Chipotle, when they browse websites that are categorically relevant to Chipotle (for example, a website related to fast casual dining or Mexican food), and when they browse websites that include a relevant keyword (for example, a fitness

website with ads comparing fast casual choices). Id. ¶¶ 9–12. By using this technology, the banner notice is "designed to result in serving approximately 59,598,000 impressions." Dkt. No. 205-12 at ¶ 18.

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." Roes, 944 F.3d at 1045 (citation omitted).

## *HANLEY v. TAMPA BAY SPORTS AND ENTERTAINMENT LLC*
## Case No. 8:19-cv-00550

The Honorable Charlene Edwards Honeywell, United States District Court, Middle District of Florida (January 7, 2020):  The Court approves the form and content of the Class notices and claim forms substantially in the forms attached as Exhibits A-D to the Settlement. The Court further finds that the Class Notice program described in the Settlement is the best practicable under the circumstances. The Class Notice program is reasonably calculated under the circumstances to inform the Settlement Class of the pendency of the Action, certification of a Settlement Class, the terms of the Settlement, Class Counsel's attorney's fees application and the request for a service award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. The Class notices and Class Notice program constitute sufficient notice to all persons entitled to notice. The Class notices and Class Notice program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of Due Process.

## *CORCORAN, ET AL. v. CVS HEALTH, ET AL.*
## Case No. 4:15-cv-03504

The Honorable Yvonne Gonzalez Rogers, United States District Court, Northern District of California (November 22, 2019):   Having reviewed the parties' briefings, plaintiffs' declarations regarding the selection process for a notice provider in this matter and regarding Angeion Group LLC's experience and qualifications, and in light of defendants' non-opposition, the Court APPROVES Angeion Group LLC as the notice provider. Thus, the Court GRANTS the motion for approval of class notice provider and class notice program on this basis.

Having considered the parties' revised proposed notice program, the Court agrees that the parties' proposed notice program is the "best notice that is practicable under the circumstances." The Court is satisfied with the representations made regarding Angeion Group LLC's methods for ascertaining email addresses from existing information in the possession of defendants. Rule 23 further contemplates and permits electronic notice to class members in certain situations. See Fed. R. Civ. P. 23(c)(2)(B). The Court finds, in light of the representations made by the parties, that this is a situation that permits electronic notification via email, in addition to notice via United States Postal Service. Thus, the Court APPROVES the parties' revised proposed class notice program, and GRANTS the motion for approval of class notice provider and class notice program as to notification via email and United States Postal Service mail.

*PATORA v. TARTE, INC.*
**Case No. 7:18-cv-11760**

The Honorable Kenneth M. Karas, United States District Court, Southern District of New York (October 2, 2019):  The Court finds that the form, content, and method of giving notice to the Class as described in Paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the Proposed Settlement, and their rights under the Proposed Settlement, including but not limited to their rights to object to or exclude themselves from the Proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clauses of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

*CARTER, ET AL. v. GENERAL NUTRITION CENTERS, INC., and GNC HOLDINGS, INC.*
**Case No. 2:16-cv-00633**

The Honorable Mark R. Hornak, United States District Court, Western District of Pennsylvania (September 9, 2019):  The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise proposed Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the proposed Settlement Class. The Court finds that the notice is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, Rule 23 of the Federal Rules of Ci vii Procedure, and any other applicable laws.

*CORZINE v. MAYTAG CORPORATION, ET AL.*
**Case No. 5:15-cv-05764**

The Honorable Beth L. Freeman, United States District Court, Northern District of California (August 21, 2019):  The Court, having reviewed the proposed Summary Notice, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

*MEDNICK v. PRECOR, INC.*
**Case No. 1:14-cv-03624**

The Honorable Harry D. Leinenweber, United States District Court, Northern District of Illinois (June 12, 2019):  Notice provided to Class Members pursuant to the Preliminary Class Settlement Approval Order constitutes the best notice practicable under the circumstances, including individual email and mail notice to all Class Members who could be identified

through reasonable effort, including information provided by authorized third-party retailers of Precor. Said notice provided full and adequate notice of these proceedings and of the matter set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of F.R.C.P. Rule 23 (e) and (h) and the requirements of due process under the United States and California Constitutions.

### GONZALEZ v. TCR SPORTS BROADCASTING HOLDING LLP, ET AL.
### Case No. 1:18-cv-20048

The Honorable Darrin P. Gayles, United States District Court, Southern District of Florida (May 24, 2019):  The Court finds that notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e)(1) and Rule 23(c)(2)(B).

### ANDREWS ET AL. v. THE GAP, INC., ET AL.
### Case No. CGC-18-567237

The Honorable Richard B. Ulmer Jr., Superior Court of the State of California, County of San Francisco (May 10, 2019):  The Court finds that (a) the Full Notice, Email Notice, and Publication constitute the best notice practicable under the circumstances, (b) they constitute valid, due, and sufficient notice to all members of the Class, and (c) they comply fully with the requirements of California Code of Civil Procedure section 382, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.

### COLE, ET AL. v. NIBCO, INC.
### Case No. 3:13-cv-07871

The Honorable Freda L. Wolfson, United States District Court, District of New Jersey (April 11, 2019):  The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order. The Court finds that the Notice Plan constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this..., (iii) due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Fed. R. Civ. P. 23, and any other applicable law.

### DIFRANCESCO, ET AL. v. UTZ QUALITY FOODS, INC.
### Case No. 1:14-cv-14744

The Honorable Douglas P. Woodlock, United States District Court, District of Massachusetts (March 15, 2019):  The Court finds that the Notice plan and all forms of Notice to the Class as set forth in the Settlement Agreement and Exhibits 2 and 6 thereto, as amended (the "Notice Program"), is reasonably calculated to, under all circumstances, apprise the members of the Settlement Class of the pendency of this action, the certification of the Settlement Class, the terms of the Settlement Agreement, and the right of members to object to the settlement or to exclude themselves from the Class. The Notice Program is consistent with the

requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.

### *IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION*
### Case No. 3:17-md-02777

The Honorable Edward M. Chen, United States District Court, Northern District of California (February 11, 2019): Also, the parties went through a sufficiently rigorous selection process to select a settlement administrator. See Proc. Guidance for Class Action Sett. ¶ 2; see also Cabraser Decl. ¶¶ 9-10. While the settlement administration costs are significant – an estimated $1.5 million – they are adequately justified given the size of the class and the relief being provided.

In addition, the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice...practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

Finally, the parties have noted that the proposed settlement bears similarity to the settlement in the Volkswagen MDL. See Proc. Guidance for Class Action Sett. ¶ 11.

### *RYSEWYK, ET AL. v. SEARS HOLDINGS CORPORATION and SEARS, ROEBUCK AND COMPANY*
### Case No. 1:15-cv-04519

The Honorable Manish S. Shah, United States District Court, Northern District of Illinois (January 29, 2019): The Court holds that the Notice and notice plan as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held the Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated August 6, 2018. (Dkt. 191) Based on the declaration of Steven Weisbrot, Esq. of Angeion Group (Dkt. No. 209-2), which sets forth compliance with the Notice Plan and related matters, the Court finds that the multi-pronged notice strategy as implemented has successfully reached the putative Settlement Class, thus constituting the best practicable notice and satisfying due process.

### *MAYHEW, ET AL. v. KAS DIRECT, LLC, and S.C. JOHNSON & SON, INC.*
### Case No. 7:16-cv-06981

The Honorable Vincent J. Briccetti, United States District Court, Southern District of New York (June 26, 2018): In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr.

Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

### IN RE: OUTER BANKS POWER OUTAGE LITIGATION
### Case No. 4:17-cv-00141

The Honorable James C. Dever III, United States District Court, Eastern District of North Carolina (May 2, 2018):  The court has reviewed the proposed notice plan and finds that the notice plan provides the best practicable notice under the circumstances and, when completed, shall constitute fair, reasonable, and adequate notice of the settlement to all persons and entities affected by or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process. Thus, the court approves the proposed notice plan.

### GOLDEMBERG, ET AL. v. JOHNSON & JOHNSON CONSUMER COMPANIES, INC.
### Case No. 7:13-cv-03073

The Honorable Nelson S. Roman, United States District Court, Southern District of New York (November 1, 2017):  Notice of the pendency of the Action as a class action and of the proposed Settlement, as set forth in the Settlement Notices, was given to all Class Members who could be identified with reasonable effort, consistent with the terms of the Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law in the United States. Such notice constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

### HALVORSON v. TALENTBIN, INC.
### Case No. 3:15-cv-05166

The Honorable Joseph C. Spero, United States District Court, Northern District of California (July 25, 2017):  The Court finds that the Notice provided for in the Order of Preliminary Approval of Settlement has been provided to the Settlement Class, and the Notice provided to the Settlement   Class constituted the best notice practicable under the circumstances, and was in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, the United States Constitution, and any other applicable law. The Notice apprised the members of the Settlement Class of the pendency of the litigation;

of all material elements of the proposed settlement, including but not limited to the relief afforded the Settlement Class under the Settlement Agreement; of the res judicata effect on members of the Settlement Class and of their opportunity to object to, comment on, or opt-out of, the Settlement; of the identity of Settlement Class Counsel and of information necessary to contact Settlement Class Counsel; and of the right to appear at the Fairness Hearing. Full opportunity has been afforded to members of the Settlement Class to participate in the Fairness Hearing. Accordingly, the Court determines that all Final Settlement Class Members are bound by this Final Judgment in accordance with the terms provided herein.

## IN RE: ASHLEY MADISON CUSTOMER DATA SECURITY BREACH LITIGATION
### MDL No. 2669/Case No. 4:15-md-02669

The Honorable John A. Ross, United States District Court, Eastern District of Missouri (July 21, 2017):  The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —is the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process.

The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

## TRAXLER, ET AL. v. PPG INDUSTRIES INC., ET AL.
### Case No. 1:15-cv-00912

The Honorable Dan Aaron Polster, United States District Court, Northern District of Ohio (April 27, 2017):  The Court hereby approves the form and procedure for disseminating notice of the proposed settlement to the Settlement Class as set forth in the Agreement. The Court finds that the proposed Notice Plan contemplated constitutes the best notice practicable under the circumstances and is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e). In addition, Class Notice clearly and concisely states in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Settlement Class; (iii) the claims and issues of the Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*IN RE: THE HOME DEPOT, INC., CUSTOMER DATA SECURITY BREACH LITIGATION*

Case No. 1:14-md-02583

The Honorable Thomas W. Thrash Jr., United States District Court, Northern District of Georgia (March 10, 2017):  The Court finds that the form, content, and method of giving notice to the settlement class as described in the settlement agreement and exhibits: (a) constitute the best practicable notice to the settlement class; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notice is written in plain language, uses simple terminology, and is designed to be readily understandable by settlement class members.

*ROY v. TITEFLEX CORPORATION t/a GASTITE and WARD MANUFACTURING, LLC*

Case No. 384003V

The Honorable Ronald B. Rubin, Circuit Court for Montgomery County, Maryland (February 24, 2017):  What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make decision. To me that is a key piece of this deal. *I think the notice provisions are exquisite* [emphasis added].

*IN RE: LG FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION*

Case No. 2:08-cv-00051

The Honorable Madeline Cox Arleo, United States District Court, District of New Jersey (June 17, 2016):  This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Class, as reflected in the Settlement Agreement and the joint motion for preliminary approval. The Court has reviewed the notices attached as exhibits to the Settlement, the plan for distributing the Summary Notices to the Settlement Class, and the plan for the Publication Notice's publication in print periodicals and on the internet, and finds that the Members of the Settlement Class will receive the best notice practicable under the circumstances. The Court specifically approves the Parties' proposal to use reasonable diligence to identify potential class members and an associated mailing and/or email address in the Company's records, and their proposal to direct the ICA to use this information to send absent class members notice both via first class mail and email. The Court further approves the plan for the Publication Notice's publication in two national print magazines and on the internet. The Court also approves payment of notice costs as provided in the Settlement. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy.

*FENLEY v. APPLIED CONSULTANTS, INC.*

**Case No. 2:15-cv-00259**

The Honorable Mark R. Hornak, United States District Court, Western District of Pennsylvania (June 16, 2016):  The Court would note that it approved notice provisions of the settlement agreement in the proceedings today. That was all handled by the settlement and administrator Angeion. The notices were sent. The class list utilized the Postal Service's national change of address database along with using certain proprietary and other public resources to verify addresses. the requirements of Fed.R.Civ.P. 23(c)(2), Fed.R.Civ.P. 23(e) (l), and Due Process....


The Court finds and concludes that the mechanisms and methods of notice to the class as identified were reasonably calculated to provide all notice required by the due process clause, the applicable rules and statutory provisions, and that the results of *the efforts of Angeion were highly successful and fulfilled all of those requirements* [emphasis added].


*FUENTES, ET AL. v. UNIRUSH, LLC d/b/a UNIRUSH FINANCIAL SERVICES, ET AL.*

**Case No. 1:15-cv-08372**

The Honorable J. Paul Oetken, United States District Court, Southern District of New York (May 16, 2016):  The Court approves, as to form, content, and distribution, the Claim Form attached to the Settlement Agreement as Exhibit A, the Notice Plan, and all forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B-D, thereto, and finds that such Notice is the best notice practicable under the circumstances, and that the Notice complies fully with the requirements of the Federal Rules of Civil Procedure. The Court also finds that the Notice constitutes valid, due and sufficient notice to all persons entitled thereto, and meets the requirements of Due Process. The Court further finds that the Notice is reasonably calculated to, under all circumstances, reasonably apprise members of the Settlement Class of the pendency of the Actions, the terms of the Settlement Agreement, and the right to object to the settlement and to exclude themselves from the Settlement Class. The Parties, by agreement, may revise the Notices and Claim Form in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy or formatting for publication.


*IN RE: WHIRLPOOL CORP. FRONTLOADING WASHER PRODUCTS LIABILITY LITIGATION*

**MDL No. 2001/Case No. 1:08-wp-65000**

The Honorable Christopher A. Boyko, United States District Court, Northern District of Ohio (May 12, 2016):  The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.


*SATERIALE, ET AL. v. R.J. REYNOLDS TOBACCO CO.*

**Case No. 2:09-cv-08394**

The Honorable Christina A. Snyder, United States District Court, Central District of California (May 3, 2016):  The Court finds that the Notice provided to the Settlement Class pursuant to

the Settlement Agreement and the Preliminary Approval Order has been successful, was the best notice practicable under the circumstances and (1) constituted notice that was reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, Due Process, and the rules of the Court.

### FERRERA, ET AL. v. SNYDER'S-LANCE, INC.
### Case No. 0:13-cv-62496
The Honorable Joan A. Lenard, United States District Court, Southern District of Florida (February 12, 2016):  The Court approves, as to form and content, the Long-Form Notice and Short- Form Publication Notice attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits 1 and 2 to the Stipulation of Settlement. The Court also approves the procedure for disseminating notice of the proposed settlement to the Settlement Class and the Claim Form, as set forth in the Notice and Media Plan attached to the Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement as Exhibits G. The Court finds that the notice to be given constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution.

### IN RE: POOL PRODUCTS DISTRIBUTION MARKET ANTITRUST LITIGATION
### MDL No. 2328/Case No. 2:12-md-02328
The Honorable Sarah S. Vance, United States District Court, Eastern District of Louisiana (December 31, 2014):  To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web- based forms of communication in the plan. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process. The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement. Moreover, the plan to combine notice for the Zodiac and Hayward settlements should streamline the process and avoid confusion that might otherwise be caused by a proliferation of notices for different settlements. Therefore, the Court approves the proposed notice forms and the plan of notice.

### SOTO, ET AL. v. THE GALLUP ORGANIZATION, INC.
### Case No. 0:13-cv-61747
The Honorable Marcia G. Cooke, United States District Court, Southern District of Florida (June 16, 2015):  The Court approves the form and substance of the notice of class action settlement described in ¶ 8 of the Agreement and attached to the Agreement as Exhibits A, C and D. The proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and shall

constitute due and sufficient notice to all persons and entities entitled to the notice. The Court finds that the proposed notice is clearly designed to advise the Settlement Class Members of their rights.

*OTT v. MORTGAGE INVESTORS CORPORATION OF OHIO, INC.*
**Case No. 3:14-cv-00645**
The Honorable Janice M. Stewart, United States District Court, District of Oregon (July 20, 2015): The Notice Plan, in form, method, and content, fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled thereto. The Court finds that the Notice Plan is reasonably calculated to, under all circumstances, reasonably apprise the persons in the Settlement Class of the pendency of this action, the terms of the Settlement Agreement, and the right to object to the Settlement and to exclude themselves from the Settlement Class.

# Exhibit H

# To Class Settlement Agreement



Corodemus & Corodemus
Attorneys at Law

Honorable Marina Corodemus (Ret.)
Director ADR Practice Area
mc@ccadr.com

September 9, 2022

*Via email* eberezofsky@motleyrice.com
Esther Berezofsky
Motley Rice LLC
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002

*Via email* ssa@millerlawpc.com
Sharon S. Almonrode
The Miller Law Firm, P.C.
950 West University Drive
Rochester, MI 48307

**Re:  Zimmerman v. 3M et al./Allocation Methodology**

Counsel:

As requested, below please find the allocation methodology for use in the settlement in *Zimmerman v. 3M et al.*   As always, please contact me with any questions.


**ALLOCATION METHODOLOGY**

A. **Introduction/Settlement Fund**

For a class action settlement to be enforceable, a court must find the settlement to be "fair, reasonable and adequate."  *Fed. R. Civ. P. 23(e)(2).* In reaching that determination, the court must consider a variety of factors including whether "the proposal treats class members equitably relative to each other."  *Fed. R. Civ. P. 23(e)(2)(D).* Accordingly, the

*All dollar values herein regarding allocation amounts are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

methodology developed for allocation in any class action settlement must be designed with the predominant goal of ensuring a fair, reasonable, adequate, and equitable allocation among class members based upon the settlement as negotiated between the parties.

Pursuant to the Settlement Agreement between the parties, the defendants have agreed to pay fifty-four million dollars ($54,000,000) into a Settlement Fund. Class counsel has advised that there are a total of 1733 Settlement Class Members. Following deduction from the Settlement Fund for attorneys' fees and costs, Class Representatives' service awards, and the costs of notice and administration of settlement, the balance of the Settlement Fund will be allocated to the Settlement Class Members who submit claims, subject to approval by the Court. The defendants have the right to terminate the settlement if a designated number of Settlement Class Members elect to exclude themselves from the settlement.

**B. Settlement Class Subclasses**

There are three subclasses within the Settlement Class. The subclasses are as follows:

Settlement Subclass - 1 Municipal Water Extension: Settlement Class Members who transitioned to municipal water, or are scheduled to transition to municipal water, under the EGLE/Wolverine Consent Decree.

Settlement Subclass - 2 Filtration Systems: Settlement Class Members who were offered, and or received, a filtration system from Wolverine or its agents pursuant to the Consent Decree to treat their well-sourced water and who are not members of Settlement Subclass 1: Municipal Water Extension.

Settlement Subclass - 3 Other: Settlement Class members who are not in Settlement Subclass 1: Municipal Water Extension or Settlement Subclass 2: Filtration Systems.

**C. Allocation Methodology**

The methodology set forth herein has been designed in accordance with the goals set forth in *Fed. R. Civ. P. 23(e)* to ensure a fair, reasonable, adequate, and equitable allocation of the Settlement Fund among all participating Settlement Class Members. The individual allocations are dependent upon the level of PFAS on the property, the subclass to which the Settlement Class Member belongs, and certain enhancing factors as set forth below. Appeals will be allowed for properties in all subgroups for which testing revealed PFAS levels above the maximum contaminant level (MCL). Finally, ten percent (10%) of the available net settlement funds will be held back at the time of initial allocation only in those subgroup categories where appeals are allowed (i.e., properties that are above MCL). Upon

*All dollar values herein regarding allocation amounts are estimates. The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

completion of all appeals, any residual funds remaining in the holdback reserve will be allocated on a *pro rata* basis to all Settlement Class Members in that particular subgroup category.

All dollar values herein regarding allocation are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

1. **Subclass 1:   Total of 687 Properties/Approximately $21,465,000 from Settlement Fund for Allocation**

a. **Properties with PFAS greater than MCL to 500:  Total of 111**

There are a total of 111 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $11,000,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial allocation of base points. Additional points will be awarded based upon the following enhancing factors:  1) MCL greater than 100 but less than 200 will be allocated an additional 5% of base points; 2) MCL greater than 200 but less than 500 will be allocated an additional 10% of base points; 3) Greater than 2 but less than 5 residents in the house (meeting definition to be provided for residents) will be allocated an additional 5% of base points; 4) Greater than 5 residents in the house will be allocated an additional 10% of base points; 5) Resided in the house longer than 5 years but less than 15 years will be allocated an additional 5% of base points; and 6) Resided in the house longer than 15 years will be allocated an additional 10% of base points.  Settlement Class Members in this category will be provided with the opportunity to appeal their allocation to the Special Master.

b. **Properties with PFAS greater than 500:  Total of 27**

There are a total of 27 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $5,130,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial allocation of base points. The base points in this category will be almost double the number of base points as allocated to properties in this subgroup that had PFAS greater than MCL but less than 500. Additional points will be awarded based upon the following enhancing factors:  1) MCL greater than 1000 but less than 2000 will be allocated an additional 10% of base points; 2) MCL greater than 2000 will be allocated an additional

*All dollar values herein regarding allocation amounts are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

15% of base points; 3) Greater than 2 but less than 5 residents in the house (meeting definition to be provided for residents) will be allocated an additional 5% of base points; 4) Greater than 5 residents in the house will be allocated an additional 10% of base points; 5) Resided in the house longer than 5 years but less than 15 years will be allocated an additional 5% of base points; and 6) Resided in the house longer than 15 years will be allocated an additional 10% of base points. Settlement Class Members in this category will be provided with the opportunity to appeal their allocation to the Special Master.

c. **Properties with PFAS below MCL:  Total of 259**

There are a total of 259 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $3,885,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial flat rate allocation in the amount of $15,000. There will not be any additional points/dollars awarded based upon any enhancing factors. If 50% or more of the Settlement Class Members in this category submit claims, then any monies remaining in the residual fund after the initial flat rate allocation will be divided evenly among all participants in this category only. However, if less than 50% of the members in this category submit claims, then any residual funds remaining after the initial flat rate allocation will be allocated pro rata among all Settlement Class Members in accordance with their initial allocation percentage. Settlement Class Members in this category will not be provided with the opportunity to appeal their allocation.

d. **Properties at Non-Detect (ND) level of PFAS: Total of 290**

There are a total of 290 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $1,450,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial flat rate allocation in the amount of $5,000. There will not be any additional points/dollars awarded based upon any enhancing factors. If 50% or more of the Settlement Class Members in this category submit claims, then any monies remaining in the residual fund after the initial flat rate allocation will be divided evenly among all participants in this category only. However, if less than 50% of the members in this category submit claims, then any residual funds remaining after the initial flat rate allocation will be allocated pro rata among all Settlement Class Members in accordance with their initial allocation percentage. Settlement Class Members in this category will not be provided with the opportunity to appeal their allocation.

*All dollar values herein regarding allocation amounts are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

**2.** **Subclass 2:  Total of 48 Properties/Approximately $7,500,000 from Settlement Fund for Allocation**

**a.** **Properties with PFAS greater than MCL to 500:  Total of 46**

There are a total of 46 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $6,900,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial allocation of base points. The base points in this category will be approximately 50% higher than the base points allocated to properties at this MCL in subgroup 1. Additional points will be awarded based upon the following enhancing factors: 1) MCL greater than 100 but less than 200 will be allocated an additional 5% of base points; 2) MCL greater than 200 but less than 500 will be allocated an additional 10% of base points; 3) Greater than 2 but less than 5 occupants in the house (meeting definition to be provided for occupants) will be allocated an additional 5% of base points; 4) Greater than 5 occupants in the house will be allocated an additional 10% of base points; 5) Resided in the house longer than 5 years but less than 15 years will be allocated an additional 5% of base points; and 6) Resided in the house longer than 15 years will be allocated an additional 10% of base points.  Settlement Class Members in this category will be provided with the opportunity to appeal their allocation to the Special Master.

**b.** **Properties with PFAS greater than 500:  Total of 1**

There is a total of 1 Settlement Class Member in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $285,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial allocation of base points. The base points in this category will be almost double the number of base points as allocated to properties in this subgroup that had PFAS greater than MCL but less than 500. Additional points will be awarded based upon the following enhancing factors:  1) MCL greater than 1000 but less than 2000 will be allocated an additional 10% of base points; 2) MCL greater than 2000 will be allocated an additional 15% of base points; 3) Greater than 2 but less than 5 occupants in the house (meeting definition to be provided for occupants) will be allocated an additional 5% of base points; 4) Greater than 5 occupants in the house will be allocated an additional 10% of base points; 5) Resided in the house longer than 5 years but less than 15 years will be allocated an additional 5% of base points; and 6) Resided in the house longer than 15 years will be allocated an additional 10% of base points. Settlement Class Members in this category will be provided with the opportunity to appeal their allocation to the Special Master.

*All dollar values herein regarding allocation amounts are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

**c.   Properties with PFAS below MCL:  Total of 15**

There are a total of 15 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $300,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial flat rate allocation in the amount of $20,000. There will not be any additional points/dollars awarded based upon any enhancing factors. If 50% or more of the Settlement Class Members in this category submit claims, then any monies remaining in the residual fund after the initial flat rate allocation will be divided evenly among all participants in this category only. However, if less than 50% of the members in this category submit claims, then any residual funds remaining after the initial flat rate allocation will be allocated pro rata among all Settlement Class Members in accordance with their initial allocation percentage. Settlement Class Members in this category will not be provided with the opportunity to appeal.

**d.   Properties at Non-Detect (ND) level of PFAS: Total of 2**

There are a total of 2 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $10,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial flat rate allocation in the amount of $5,000. There will not be any additional points/dollars awarded based upon any enhancing factors. If 50% or more of the Settlement Class Members in this category submit claims, then any monies remaining in the residual fund after the initial flat rate allocation will be divided evenly among all participants in this category only. However, if less than 50% of the members in this category submit claims, then any residual funds remaining after the initial flat rate allocation will be allocated pro rata among all Settlement Class Members in accordance with their initial allocation percentage. Settlement Class Members in this category will not be provided with the opportunity to appeal.

**3.   Subclass 3:  Properties on Well Water with No Filtration Systems and Below MCL: Total of 575 Properties/Approximately $4,095,000 from Settlement Fund for Allocation**

**a.   Properties with PFAS below MCL:  Total of 244**

There are a total of 244 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate

*All dollar values herein regarding allocation amounts are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

total of $2,440,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial flat rate allocation in the amount of $10,000. There will not be any additional points/dollars awarded based upon any enhancing factors. If 50% or more of the Settlement Class Members in this category submit claims, then any monies remaining in the residual fund after the initial flat rate allocation will be divided evenly among all participants in this category only. However, if less than 50% of the members in this category submit claims, then any residual funds remaining after the initial flat rate allocation will be allocated pro rata among all Settlement Class Members in accordance with their initial allocation percentage. Settlement Class Members in this category will not be provided with the opportunity to appeal.

**Properties at Non-Detect (ND) level of PFAS: Total of 331**

There are a total of 331 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $1,655,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial flat rate allocation in the amount of $5,000. There will not be any additional points/dollars awarded based upon any enhancing factors. If 50% or more of the Settlement Class Members in this category submit claims, then any monies remaining in the residual fund after the initial flat rate allocation will be divided evenly among all participants in this category only. However, if less than 50% of the members in this category submit claims, then any residual funds remaining after the initial flat rate allocation will be allocated pro rata among all Settlement Class Members in accordance with their initial allocation percentage. Settlement Class Members in this category will not be provided with the opportunity to appeal.

4. **Subclass 3:  Vacant or Not Tested: Total of 407 Properties/Approximately $2,035,000 from Settlement Fund for Allocation**

There are a total of 407 Settlement Class Members in this category, although it is premature to determine the ultimate number of Members who will submit claims. An approximate total of $2,035,000 from the Settlement Fund will be allocated among Members in this category. Each Settlement Class Member in this category who submits a claim will receive the same initial flat rate allocation in the amount of $5,000. There will not be any additional points/dollars awarded based upon any enhancing factors. If 50% or more of the Settlement Class Members in this category submit claims, then any monies remaining in the residual fund after the initial flat rate allocation will be divided evenly among all participants in this category only. However, if less than 50% of the members in this category submit claims,

*All dollar values herein regarding allocation amounts are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.

then any residual funds remaining after the initial flat rate allocation will be allocated pro rata among all Settlement Class Members in accordance with their initial allocation percentage. Settlement Class Members in this category will not be provided with the opportunity to appeal.

**D.**  **Appeals**

Only those settlement class members whose properties had total regulated PFAS levels above the maximum contaminant level (MCL) will be eligible to file an appeal. At present, there are 185 class members/properties in this group.  These settlement class members will have 10 days from the date on which class counsel advises them of their initial allocation in which to file an appeal.

In support of any appeal, the settlement class member must prepare a written submission for Special Master Judge Corodemus identifying the specific basis for their appeal. They must provide the submission directly to class counsel who then will forward to Judge Corodemus for consideration and ruling.  Any appeal must be based upon extenuating factors other than the enhancing factors already utilized in the initial allocation (i.e., level of total regulated PFAS, number of residents, years in residence)

---
HON. MARINA CORODEMUS (Ret.)

*All dollar values herein regarding allocation amounts are estimates.  The actual values will depend upon the total net funds available for allocation after deduction of attorneys' fees, costs, class representatives' service awards, and costs of notice and administration.