## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BEVERLY ZIMMERMAN, et al., on
behalf of themselves and all others
similarly situated,

     Plaintiffs,

v.

THE 3M COMPANY f/k/a Minnesota
Mining and Manufacturing Co., et al.,

     Defendants.

Case No. 1:17-cv-1062

Hon. Hala Y. Jarbou

## PLAINTIFFS' UNOPPOSED MOTION FOR
## ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS

Class Counsel and Class Representatives Plaintiffs Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen (individually and as Trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Terry VanWuffen (individually and as Trustee of the Terry Alan VanWuffen and Michelle Lisa VanWuffen Trust), Rosalyn Ingham, Paul Groenendal, Nancy James (individually and as Trustee of the James Nancy I Trust), and Theodore James (collectively "Plaintiffs"), by and through their undersigned attorneys, respectfully move the Court for an Order:

(1) Approving attorneys' fees in the amount of one-third, or 33⅓%, of the Gross Settlement Fund after deduction of reasonable litigation costs and Service Awards, or $17,416,825.04;

(2) Approving reimbursement of reasonable litigation costs and expenses incurred by Class Counsel in the amount of $1,500,000;

(3) Granting Class Representatives in Tier One (as defined in the Settlement Agreement at § 1.ww., ECF No. 617-2, PageID.26867; *see also id.* at § 6.a., PageID.26877-26878), Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen and Terry VanWuffen, a Service Award of $25,000 each in recognition of their efforts on behalf of the Class, totaling in the aggregate $175,000;

(4) Granting Class Representatives in Tier Two (as defined in the Settlement Agreement at § 1.ww., *id.*; *see also id.* at § 6.a., PageID.26877-26878), Rosalyn Ingham, Paul Groenendal, Nancy James, and Theodore James, a Service Award of $15,000 in recognition of their efforts on behalf of the Class, totaling in the aggregate $60,000; and

(5) Awarding such other and further relief as the Court deems reasonable and just.

The undersigned counsel certifies that counsel communicated with opposing counsel on March 3, 2023, explaining the nature of the relief to be sought by way of this Motion and seeking concurrence in the relief; Defendants' counsel does not oppose the relief requested in this Motion.

Dated: March 3, 2023                     Respectfully submitted,

*/s/ Sharon. S. Almonrode*
Sharon S. Almonrode (P33938)            Esther Berezofsky (P00148)
E. Powell Miller (P39487)               Sarah Hansel (P00152)
Emily E. Hughes (P68724)                **MOTLEY RICE, LLC**
Dennis A. Lienhardt (P81118)            210 Lake Drive East, Ste. 101
**THE MILLER LAW FIRM, P.C.**           Cherry Hill, NJ 08002
950 West University Drive, Suite 300    Telephone: (856) 667-0500
Rochester, MI 48307                     eberezofsky@motleyrice.com
Telephone: (248) 841-2200               shansel@motleyrice.com
ssa@millerlawpc.com
epm@millerlawpc.com                     Anne McGinness Kearse
eeh@millerlawpc.com                     T. David Hoyle
dal@millerlawpc.com                     Fidelma L. Fitzpatrick
                                        **MOTLEY RICE, LLC**
*Co-Lead Class Counsel*                 28 Bridgeside Blvd.
                                        Mt. Pleasant, SC 29464
                                        Telephone: (843) 216-9140

*Co-Lead Class Counsel*
Dorothy P. Antullis
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Ste 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
dantullis@rgrdlaw.com
mdearman@rgrdlaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
**WEITZ & LUXENBERG, P.C.**
719 Griswold, Suite 620
Detroit, MI 48226
Telephone: (313) 800-4170
pnovak@weitzlux.com
dgjonaj@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5642
rgreenwald@weitzlux.com

Kara A. Elgersma
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Dr., Ste. 5450
Chicago, IL 60606
Telephone: (312) 346-2222

Robert Palmer (P31704)
Megan A. Bonanni (P52079)
**PITT, MCGEHEE, PALMER & RIVERS, PC**
117 West 4th Street, Ste. 200
Royal Oak, MI 48067
Telephone: (248) 398-9800

Jason J. Thompson (P47184)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
jthompson@sommerspc.com

*Interim Plaintiffs' Steering Committee*

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BEVERLY ZIMMERMAN, et al., on
behalf of themselves and all others
similarly situated,

     Plaintiffs,

v.

THE 3M COMPANY f/k/a Minnesota
Mining and Manufacturing Co., et al.,

     Defendants.

Case No. 1:17-cv-1062

Hon. Hala Y. Jarbou

## PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS

## STATEMENT OF ISSUES PRESENTED

1. Whether this Court should award Class Counsel attorneys' fees in the amount of one-third (33⅓%), or $17,416,825.04 from the Gross Settlement Fund of $54,000,000, a common fund created for the benefit of the Class, after deduction of reasonable litigation costs and Service Awards, to compensate and reimburse Class Counsel for achieving a substantial cash benefit for a class of property owners whose properties were allegedly contaminated by PFAS chemicals in the North Kent Study Area ("NKSA") in Kent County, Michigan?

   **Plaintiffs Answer**:              Yes

   **The Court Should Answer**:      Yes

2. Whether this Court should reimburse and award Class Counsel reasonable litigation costs in the amount of $1,500,000, incurred in representing the class of property owners whose properties were allegedly contaminated by PFAS in the NKSA?

   **Plaintiffs Answer**:              Yes

   **The Court Should Answer**:      Yes

3. Whether this Court should grant Class Representatives in Tier One (as defined in the Settlement Agreement at § 1.ww., ECF No. 617-2, PageID.26867; *see also id.* at § 6.a., PageID.26877-26878), Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen and Terry VanWuffen, Service Awards of $25,000 each, or $175,000 in the aggregate, in recognition of their efforts on behalf of the Class?

   **Plaintiffs Answer**:              Yes

   **The Court Should Answer**:      Yes

4. Whether this Court should grant Class Representatives in Tier Two (as defined in the Settlement Agreement at § 1.ww., *id.*; *see also id.* at § 6.a., PageID.26877-26878), Rosalyn Ingham, Paul Groenendal, Nancy James, individually and as Trustee of the James Nancy I Trust, and Theodore James,

i

Service Awards of $15,000 each, or $60,000 in the aggregate, in recognition of their efforts on behalf of the Class?

**Plaintiffs Answer**:                    Yes

**The Court Should Answer**:       Yes

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

- Fed. R. Civ. P. 23(h)

- *Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974)

## TABLE OF CONTENTS

**PAGE(S)**

STATEMENT OF ISSUES PRESENTED .................................................................. i

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ...................... iii

TABLE OF CONTENTS ......................................................................................... iv

TABLE OF AUTHORITIES ................................................................................. vii

I. INTRODUCTION ....................................................................................... 1

II. BACKGROUND ......................................................................................... 5

  A. Procedural History ......................................................................... 5

  B. Mediation and Settlement Negotiations ....................................... 8

III. SUMMARY OF THE SETTLEMENT ..................................................... 9

IV. THE REQUESTED FEE AWARD IS REASONABLE AND
  SHOULD BE APPROVED ........................................................................ 10

  A. Class Counsel Are Entitled to an Award of Attorneys'
   Fees from the Common Fund ....................................................... 10

  B. The Court Should Calculate Fees as a Percentage of the
   Common Fund ................................................................................ 11

  C. The Requested Attorneys' Fees Are Reasonable Under
   the Percentage-of-the-Fund Method ............................................ 13

V. THE REASONABLENESS OF THE REQUESTED FEES
  AND COSTS IS SUPPORTED BY THIS CIRCUIT'S SIX-
  FACTOR TEST ......................................................................................... 15

  A. The Value of the Benefit Rendered to the Settlement
   Class Supports the Requested Fee ............................................... 15

  B. The Value of Class Counsel's Services on an Hourly
   Basis, and a Lodestar Cross-Check, Supports the Fee
   Request ........................................................................................... 24

C.    The Contingent Nature of Class Counsel's
      Representation Supports the Fee Request..........................................20

D.    Society's Stake in Rewarding Attorneys Who Enforce
      The Securities Laws Supports the Fee Request.................................17

E.    The Complexity of the Litigation Supports the Fee
      Request...............................................................................................22

F.    The Professional Skill and Standing of Counsel
      Involved on Both Sides Supports the Fee Request...........................23

VI.   CLASS COUNSEL'S LITIGATION EXPENSES ARE
      REASONABLE AND SHOULD BE APPROVED ....................................24

VII.  THE REQUESTED SERVICE AWARD REFLECTS THE
      CLASS REPRESENTATIVES' ACTIVE INVOLVEMENT
      HERE AND SHOULD BE APPROVED......................................................30

VIII. CONCLUSION ..........................................................................................333

# TABLE OF AUTHORITIES

**Cases**

*Arp v. Hohla & Wyss Enterprises, LLC*,
  2020 WL 6498956 (S.D. Ohio Nov. 5, 2020)................................................. 25, 26

*Bailey v. AK Steel Corp.*,
  2008 WL 553764 (S.D. Ohio Feb. 28, 2008)....................................................28

*Blum v. Stenson*,
  465 U.S. 886 (1984) ........................................................................................12

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................10

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996).............................................................................15

*Bowman v. Art Van Furniture, Inc.*,
  2018 WL 6445389 (E.D. Mich. Dec. 10, 2018) .................................................19

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 907 (S.D. Ohio 2001) ...............................................................32

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988)............................................................................11

*Burges v. Bancorpsouth, Inc.*,
  No. 3:14-cv-01564 (M.D. Tenn. Sept. 21, 2018)................................................14

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991)............................................................................11

*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019) .....................................................31

*Dudenhoeffer v. Fifth Third Bancorp*,
  2016 WL 8135394 (S.D. Ohio July 11, 2016).....................................................14

*Eltman v. Grandma Lee's, Inc.*,
  1986 WL 53400 (E.D.N.Y. May 28, 1986) .........................................................17

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
  137 F.R.D. 240 (S.D. Ohio 1991) .......................................................................32

*Est. of McConnell v. EUBA Corp.*,
  2021 WL 1966062 (S.D. Ohio May 17, 2021) ....................................................25

*Fournier v. PFS Invs. Inc.*,
  997 F. Supp. 828 (E.D. Mich. 1998)...................................................................26

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016).............................................................................15

*Hadix v. Johnson*,
  322 F.3d 895 (6th Cir. 2003).............................................................................31

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991)...............................................................................11

*Henry v. Wolverine World Wide, Inc. et al.*,
  Case No. 19-cv-00379 (W.D. Mich.).....................................................................6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..............................................................................................24

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006).....................................................24

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).....................................................29

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................21

*In re Caraco Pharm. Labs., Ltd. Sec. Litig.*,
  No. 2:09-cv-12830 (E.D. Mich. June 26, 2013) ..................................................13

*In re Cardinal Health Inc. Sec. Litigation*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) ...................................................... 3, 15, 28

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .............................................................. passim

*In re Chemed Corp. Sec. Litig.*,
  2014 WL 12650642 (S.D. Ohio July 15, 2014)....................................................14

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .............................................................. passim

*In re DPL Inc., Sec. Litig.*,
  307 F. Supp. 2d 947 (S.D. Ohio 2004) .................................................................16

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) ........................................................................32

*In re F&M Distribs., Inc. Sec. Litig.*,
  1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999).............. 12, 20, 23, 28

*In re Flint Water Cases*,
  583 F. Supp. 3d 911 (E.D. Mich. 2022)................................................................18

*In re Gen. Motors. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)........................................................................... 11, 30

*In re JDS Uniphase Corp. Sec. Litig.*,
  No. 4:02-cv-01486-CW (N.D. Cal. Nov. 27, 2007) ............................................22

*In re Lason, Inc. Sec. Litig.*,
  No. 2:99-cv-76079 (E.D. Mich. Mar. 31, 2003)..................................................13

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010)..................................................................................21

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 19, 2009) .....................................................21

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015).....................................................14

*In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*,
2013 WL 12110279 (W.D. Tenn. Aug. 5, 2013).....................................................14

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
1996 WL 780512 (E.D. Mich. Dec. 20, 1996) .......................................................13

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)....................................................................................27

*In re S. Ohio Corr. Facility*,
175 F.R.D. 270 (S.D. Ohio 1997) ...........................................................................31

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013)............................................... passim

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 2946459 (E.D. Tenn. June 30, 2014).......................................................12

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 1029 (S.D. Ohio 2001) .......................................................... 17, 22

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) .....................................................................................11

*In re World Trade Ctr. Disaster Site Litig.*,
754 F.3d 114 (2d Cir. 2014).....................................................................................11

*Isabel v. City of Memphis*,
404 F.3d 404 (6th Cir. 2005)....................................................................................24

*Johns v. Wolverine World Wide, Inc., et al.*,
Case No. 18-cv-01302 (W.D. Mich.)..........................................................................5

*Johnston v. Comerica Mortg. Corp.*,
83 F.3d 241 (8th Cir. 1996)......................................................................................11

*Kogan v. AIMCO Fox Chase, L.P.*,
193 F.R.D. 496 (E.D. Mich. 2000) ..........................................................................28

*Lasalle Town Houses Coop Assoc. v. City of Detroit*,
2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) ......................................................31

*Loftus v. Outside Integrated Media LLC*,
Case No. 2:21-cv-11809 (E.D. Mich. Aug. 13, 2022).............................................25

*Love v. Gannett Co. Inc.*,
2021 WL 4352800 (W.D. Ky. Sept. 24, 2021).........................................................25

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009).....................................................................................15

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ..........................................................................10

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006)..............................................................................29

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974)....................................................................... passim
*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993)............................................................................... 11, 12
*Robbins v. Koger Props. Inc*.,
   116 F.3d 1441 (11th Cir. 1997)........................................................................22
*Stanley v. U.S. Steel Co.*,
   2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ....................................................20
*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ..........................................................................11
*The Bd. of Trs. of the City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*,
   2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) ................................................13
*The Rikos v. Proctor & Gamble Co.*,
   2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) ...................................................29
*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   436 F. App'x 496 (6th Cir. 2011) ......................................................................25
*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)..........................................................................11
*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................12


**Rules**
Fed. R. Civ. P. 12(b)(6)...................................................................................6
Fed. R. Civ. P. 23(h) ..................................................................................4, 5


**Other Authorities**
Michigan Regulation 325.10604g.........................................................................10

## I.    INTRODUCTION

After nearly five and a half years of dedicated litigation efforts, Class Counsel have successfully negotiated a settlement of this environmental class action with Defendants Wolverine Worldwide, Inc. ("Wolverine") and The 3M Company ("3M"). The proposed Settlement Agreement ("Settlement" or, "S.A."), if approved by the Court, will resolve this case and all claims brought in their entirety in exchange for $54 million in cash. *See* ECF No. 617-2. This substantial recovery was secured only as a result of persistent and diligent advocacy and the considerable investment of time, expenses, and risk-taking of Class Counsel. The Settlement provides a substantial and certain recovery for the Settlement Class, while eliminating the risks of continued litigation, through the completion of discovery, class certification, summary judgment, trial, and appeals. With no guarantee of recovery when they initiated the case, Class Counsel devoted the necessary time and financial resources in order to achieve a strong result for the Settlement Class. Moreover, Class Counsel have invested and will continue to invest time and resources to implement this Settlement. For these efforts, Class Counsel have received no compensation to date.

As detailed in the Joint Declaration, Class Counsel vigorously pursued this litigation from its outset, and was fully prepared to take the case to trial. Among their efforts, Class Counsel: (i) conducted a thorough legal and factual investigation into

the Settlement Class's claims; (ii) researched and drafted the initial underlying complaints, the Consolidated Amended Complaint, a Second Amended Complaint, and finally the operative Third Amended Complaint; (iii) opposed and defeated multiple motions including a motion to dismiss for lack of CAFA jurisdiction; opposed and substantially defeated Defendants' motions to dismiss; (iv) engaged in extensive and contested discovery, including: written discovery, coordination and production of Class Representative documents, review and analysis of over a million pages of documents from Wolverine, 3M, governmental agencies and third-parties, taking and defending multiple depositions, including depositions of Experts and fact witnesses, Class Representatives, participating in property inspections of Class Representatives' personal residences during the height of a global pandemic; (v) development of expert reports in multiple disciplines, including toxicology, epidemiology, fate and mobility of hazardous waste contamination, hydrogeology, and economic losses related to property damages and the affirmative and defensive research, drafting and submission of voluminous briefing related to multiple experts; (vi) extensive legal analysis related to the preparation of a detailed and well-founded motion for class certification; (vii) engaged in protracted and hard-fought settlement negotiations over an extended period of time with the former Chief Judge for the Eastern District of Michigan, the Honorable Judge Gerald J. Rosen ("Judge Rosen"); and (viii) moved for and obtained the appointment of a Special Allocation Master,

Retired Judge Marina Corodemus, and engaged in the substantial and diligent development of a fair and equitable plan of allocation. In addition to the above, Class Counsel engaged in innumerable other tasks related to managing and prosecuting this matter since its inception. *See generally* Joint Declaration of Co-Lead Class Counsel, Sharon S. Almonrode and Esther Berezofsky ("Joint Decl.").

From inception through February 15, 2023, Class Counsel have reported 38,354.89 hours—with a resulting lodestar of $22,367,689.95—to the investigation, prosecution, and resolution of the Action.[1] Joint Decl. at ¶ 21. Unlike most cases in which counsel seek a fee which *exceeds* their lodestar, *see, e.g.*, *In re Cardinal Health Inc. Sec. Litigation*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (observing that "[m]ost courts agree that the typical lodestar multiplier in a large … class action[] ranges from 1.3 to 4.5"), Class Counsel's fee request here is actually *less than* the total lodestar value of the time that Class Counsel dedicated to the Action. It is against this backdrop that Class Counsel respectfully submit their request for a fee award of one-third (or, 33⅓%), of the Settlement Fund, a request which is made pursuant to retention agreements with the Class Representatives at the outset of the litigation. This request is fully supported by the Class Representatives.

Pursuant to the Court's Preliminary Approval Order, 2,123 Short Form

---

[1]      Class Counsel will continue to devote resources to the Action through the completion of the settlement administration process.

3

Notices were disseminated by the General Administrator Angeion via first class mail to potential Settlement Class Members and nominees beginning on October 19, 2022. *See* contemporaneously filed Declaration of the Settlement Administrator ("Angeion Decl.") at ¶ 13. The Notice advises recipients that Class Counsel intend to apply to the Court for an award of attorneys' fees in an amount not to exceed one-third (or, 33⅓%), of the Settlement Fund, after deduction for reimbursement of reasonable litigation costs as well as Service Awards for Class Representatives not to exceed $235,000. *See* Ex. A to Angeion Decl. The litigation costs sought by Class Counsel are reasonable and do not exceed the amount of $1,500,000 set forth in the Settlement Agreement. *See* S.A. at § 6.a., ECF No. 617-2, PageID.26877.[2] The Notice further informs Settlement Class Members of their right to object to the requests for attorneys' fees, litigation costs and service awards.[3] No objections were received regarding attorneys' fees, litigation costs or service awards. Angeion Decl. at ¶ 26. A single objection to the Settlement was received on unrelated grounds.[4] *Id.*

---

[2]    Class Counsel cumulatively report costs of $1,514,524.88, however, due to the maximum amount of reasonable litigation costs pursuant to the Settlement Agreement, Plaintiffs and Class Counsel herein request $1,500,000, consistent with the Settlement Agreement. S.A. at § 6.a, ECF No. 617-2, PageID.26877.

[3]    Claimants had until December 5, 2022 to object. Angeion Decl. at ¶ 26.

[4]    *See* ECF Nos. 627 (Objection); ECF No. 629 (Plaintiffs' Response to Objection); ECF No. 630 (Defendants' Response to Objection).

Accordingly, Plaintiffs respectfully request, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve Class Counsel's request for reimbursement of reasonable litigation costs in the amount of $1,500,000, attorneys' fees of one-third (or, 33⅓%), of the Settlement Fund after reasonable litigation costs and service awards are deducted, or $17,416,825.04, as well as Service Awards of $25,000 for each Tier One Class Representative[5] and Service Awards of $15,000 for each Tier Two Class Representative[6], totaling $235,000 in the aggregate, for their substantial service and efforts to the Settlement Class.

For these reasons, and as explained further below, this Court should approve the requested attorney's fees, reasonable litigation costs, and service awards.

## II.    BACKGROUND

### A.    Procedural History

On December 1, 2017, the *Zimmerman* Plaintiffs filed the first-class action complaint in this litigation against Defendants The 3M Company and Wolverine World Wide, Inc. ECF No. 1. Subsequently, the *Johns* and *Henry* Plaintiffs filed class action complaints on October 8, 2018 (*Johns v. Wolverine World Wide, Inc., et al.*, Case No. 18-cv-01302 (W.D. Mich.)) and December 4, 2018 (*Henry v. Wolverine World Wide, Inc. et al.*, Case No. 19-cv-00379 (W.D. Mich.)). On

---

[5]    As defined in the Settlement Agreement under § 1.ww., ECF No. 617-2, PageID.26867; *see also id.* at § 6.a., PageID.26877-26878.

[6]    *Id.*

October 3, 2019, this Court entered an Order consolidating the three cases under the *Zimmerman* case number and caption for all purposes and directing the filing of an amended consolidated complaint. ECF No. 151. Plaintiffs collectively filed a new and Consolidated Amended Class Action Complaint on October 17, 2019. ECF No. 154.

On May 22, 2020, Plaintiffs filed the operative Second Amended Consolidated Class Action Complaint. ECF No. 197 (the "SAC"). The SAC asserts claims for negligence and nuisance against Defendants and seeks monetary compensation from Defendants for the contamination of Plaintiffs' soil and drinking water, the interference with and disruption of their lives, the loss of their right to quiet use and enjoyment of their properties, the diminution of the values of their properties as a result of Defendants' wrongful conduct, and the substantial risk of imminent harm from the continuing increased risk of contamination and exposure. The SAC also seeks injunctive, remedial, and medical monitoring relief. Interim Co-Lead Class Counsel and the Plaintiffs' Steering Committee (collectively "Class Counsel") was appointed on June 4, 2020. ECF No. 198. On January 11, 2021, Defendants moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 208-211. Defendants argued that Plaintiffs failed to adequately state a claim for their negligence and private nuisance claims, that Wolverine's settlement with the Michigan Department of Environmental Quality ("MDEQ")

precluded Plaintiffs' public nuisance claims, that the doctrine of primary jurisdiction barred Plaintiffs' claims for injunctive or remedial relief, and that Michigan law does not recognize medical monitoring. *Id*. On June 8, 2021, the Court entered an order granting in part and denying in part Defendants' motions to dismiss. ECF No. 262; *see also* Opinion, ECF No. 261. The Court ruled that Plaintiffs' negligence claim was dismissed only "to the extent the claim [wa]s based on physical injury, as opposed to injury to property." ECF No. 261, PageID.7666.

The Court denied Defendants' motions in all other respects. *Id.* More recently, the following motions were filed and remain pending:

- On August 30, 2021, Plaintiffs moved for class certification and served six expert reports in support thereof. ECF Nos. 291, 280-285;

- On September 24, 26 and 27, 2021, Defendants filed expert reports (ECF Nos. 311-327), and, on September 27, 2021, filed oppositions to Plaintiffs' class certification motion. ECF Nos. 331, 332;

- On October 12, 2021, Plaintiffs filed their reply to Defendants' opposition to Plaintiffs' motion for class certification. ECF No. 355;

- On November 12, 2021, Plaintiffs filed motions to exclude the reports and testimony of thirteen defense expert witnesses (ECF Nos. 381-382; 385-386; 389-390; 393-394; 397-398; 401-402; 408-409; 414-415; 418-419; 422-423; 427-428; 438-439; 447-448); and to preclude

cumulative expert testimony (ECF Nos. 443-444), and Defendants moved to exclude the reports and testimony of five Plaintiff expert witnesses. ECF Nos. 406-407; 411-412; 426; 432; 431; 434; 435-436; 437; 440; and the Parties filed their respective oppositions and replies on February 3, 2022 and February 28, 2022. ECF Nos. 485-509; 542-568; and

- On November 18, 2021, Defendants filed eight motions for summary judgment, seeking to dismiss the claims of various class representatives and putative class members as well as Plaintiffs' negligence claims and claims for non-economic damages. ECF Nos. 455-474. Plaintiffs filed oppositions to Defendants' summary judgment motions on February 24, 2022. ECF Nos. 518, 523, 525, 527, 528, 531, 533, 536.

During the pendency of these motions, the Parties continued to engage in extensive mediation sessions. Thus, the Court has not issued rulings on Plaintiffs' motion for class certification, the motions to exclude various experts or evidence, or on Defendants' motions for summary judgment.

### B.    Mediation and Settlement Negotiations

The Parties mutually agreed to mediate and selected as mediator, the Honorable Judge Gerald J. Rosen, Retired Chief Judge of the Eastern District of Michigan, who was appointed by the Court on February 3, 2021. ECF No. 222.

Thereafter, the Parties began mediation efforts, including extensive written mediation statements and proposals for resolution, as well as substantive discussions with Judge Rosen.

The Parties continued to engage in good faith mediation efforts for over a year. On March 8, 2022, following a seventeen-hour mediation session with Judge Rosen in the Federal Courthouse in Lansing, the Parties reached a settlement in principle, subject to client approval, and placed this confidential agreement in principle on the record before the Court. Over the next several months, the Parties negotiated the details of the settlement and drafted the written settlement agreement, requisite notices, and other settlement related documents. The written Settlement Agreement was fully executed by all Parties on September 15, 2022.

## III.    SUMMARY OF THE SETTLEMENT

The Settlement—the product of, then, nearly five years of litigation and extensive negotiations—creates a non-reversionary common fund of $54 million that will provide direct payments to Settlement Class Members for claimed damages to properties for diminution of value, nuisance resulting in the inconvenience and loss of use and quiet enjoyment of Settlement Class Members' properties, and other relief. S.A. at § 1.xxx, ECF No. 617-2, PageID.26872. The Settlement provides relief to property owners in the North Kent Study Area (NKSA) related to the alleged PFAS contamination of their water supply and properties from Defendants' alleged

wrongful conduct. Accordingly, subject to the terms of the S.A., the largest payments will be allocated to those property owners whose residential drinking water wells tested positive for PFAS compounds regulated by the State of Michigan in excess of the levels provided for in Michigan Regulation 325.10604g ("Maximum Contaminant Levels" or "MCLs"). To be eligible for compensation, current or former owners of real property located within the boundaries of the NKSA as of November 1, 2017, who were not supplied with drinking water from a municipal water source as of November 1, 2017, must register and submit a claim.

## IV.   THE REQUESTED FEE AWARD IS REASONABLE AND SHOULD BE APPROVED

### A.   Class Counsel Are Entitled to an Award of Attorneys' Fees From the Common Fund

It has long been recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Here, Class Counsel successfully negotiated and obtained a substantial gross settlement of $54,000,000 for the benefit of the Settlement Class, which constitutes a common fund. In awarding attorneys' fees, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9

10

F.3d 513, 516 (6th Cir. 1993) (citation omitted). In the Sixth Circuit, the standard for an award of attorneys' fees in a common fund case is that the award be "reasonable under the circumstances." *Id.*; *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008). As established below, the requested fees overwhelmingly satisfy this standard.

### B.    The Court Should Calculate Fees as a Percentage of the Common Fund

Where a settlement produces a common fund, courts in the Sixth Circuit have discretion whether to employ either the percentage-of-the-fund method or the lodestar method in awarding attorneys' fees. *Rawlings*, 9 F.3d at 516-17. Notwithstanding that discretion, this Circuit has observed a "trend towards adoption of a percentage of the fund method in [common fund] cases." *Id.* at 515; *see also In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013).[7]

---

[7]    Other circuits have similarly endorsed the percentage-of-recovery method. *See, e.g.*, *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014); *In re Gen. Motors. Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988). The Eleventh and District of Columbia Circuits even require the use of the percentage method in common fund cases. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Moreover, in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund

Similarly, courts in Michigan District Courts have noted a "preference for the percentage-of-the fund method." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003); *see also In re F&M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999).

The rationale for compensating counsel in common fund cases using the percentage-of-the-fund method is sound. First, this method "more accurately reflects the results achieved" and "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (citation omitted). In other words, the percentage-of-the-fund method "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *In re Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). Second, the percentage-of-the-fund method decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis, and courts employing the percentage-of-the-fund method often utilize a less arduous lodestar "cross-check" to confirm the reasonableness of the requested fee. *See infra* Section V.(F); *see also Rawlings*, 9 F.3d at 515. Moreover, as also set forth below in Section V.(F), a lodestar "cross-check" is not required, and is merely an additional

---

doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class[.]"

12

and optional check to confirm the reasonableness of a requested fee under the percentage-of-the-common fund approach.

### C. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Class Counsel's one-third (33⅓%), fee request falls well within the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512, at *18 (E.D. Mich. Dec. 20, 1996) (recognizing acceptable range of fees to be 20% to 50% of the common fund). In complex class actions, Judges in Michigan District Courts commonly grant fee awards between 30-33% percent of the settlement fund. *See, e.g.*, *In re Caraco Pharm. Labs., Ltd. Sec. Litig.*, No. 2:09-cv-12830 (E.D. Mich. June 26, 2013), ECF No. 96 (Tarnow, J.) (awarding 33% fee) (attached hereto as **Exhibit 1**); *Bd. of Trs. of the City of Birmingham Emps.' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *6 (E.D. Mich. Dec. 27, 2013) (Murphy, J.) (awarding 30% fee); *In re Lason, Inc. Sec. Litig.*, No. 2:99-cv-76079 (E.D. Mich. Mar. 31, 2003), ECF No. 93 (Tarnow, J.) (awarding 30% fee) (attached hereto as **Exhibit 2**); *In re Cardizem*, No. 2:99-md-1278 (E.D. Mich. Nov. 25, 2002), Order No. 47 (Edmunds, J.) (awarding 30% fee) (attached hereto as **Exhibit 3**).

Moreover, ample Sixth Circuit precedent exists for granting fees to plaintiff's counsel in class actions and other complex litigation that are equal to Class Counsel's 33⅓% fee request here. *See In re Se. Milk*, 2013 WL 2155387, at *3

13

(finding 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"). *See, e.g.*, *Burges v. Bancorpsouth, Inc.*, No. 3:14-cv-01564 (M.D. Tenn. Sept. 21, 2018), ECF No. 265 (awarding fees of 33⅓% of $13 million settlement fund, resulting in negative multiplier) (attached hereto as **Exhibit 4**); *Dudenhoeffer v. Fifth Third Bancorp*, 2016 WL 8135394, at *1 (S.D. Ohio July 11, 2016) (awarding fees of 33⅓% of $6 million settlement fund, resulting in 0.65 multiplier); *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *4-5 (E.D. Mich. Jan. 20, 2015) (awarding 33.3% of $19 million settlement fund, resulting in 3.01 multiplier); *In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*, 2013 WL 12110279, at *7-8 (W.D. Tenn. Aug. 6, 2013) (awarding 30% of $62 million settlement fund, resulting in 3.1 multiplier); *In re Se. Milk*, 2013 WL 2155387, at *8 (awarding 33⅓% of $158.6 million settlement fund, resulting in 1.90 multiplier); *In re Chemed Corp. Sec. Litig.*, 2014 WL 12650642, at *1 (S.D. Ohio July 15, 2014) (awarding 33% of $6 million settlement fund, resulting in 0.85 multiplier).

Here, Class Counsel's request of one-third is well within the range of reasonableness in this Circuit due to Class Counsel's substantial recovery for the benefit of the Settlement Class, coupled with the extensive work and substantial risk and complexity of the claims over the lengthy duration of over five and a half years,

resulting in a negative multiple. As such, this Fee Request is fair, reasonable, and should be approved.

## V.   THE REASONABLENESS OF THE REQUESTED FEES AND COSTS IS SUPPORTED BY THIS CIRCUIT'S SIX-FACTOR TEST

The Sixth Circuit articulates six factors that are "germane" to determining the reasonableness of a requested percentage to award as attorneys' fees: (1) the value of the benefit to the class; (2) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (3) whether the work was performed on a contingent fee basis; (4) the complexity of the litigation; (5) the skill and standing of counsel on both sides; and (6) the value of the legal services performed on an hourly basis. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 280 (6th Cir. 2016) (describing the *Ramey* factors as "germane" to the fee inquiry, and citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). Each of the *Ramey* factors confirms that the requested 33⅓% fee is fair and reasonable.

### A.   The Value of the Benefit Rendered to the Settlement Class Supports the Requested Fee

The first *Ramey* factor requires courts to evaluate the benefit of the recovery for the class. "District courts in this Circuit widely regard [this] factor as the most important." *Cardinal Health*, 528 F. Supp. 2d at 764; *see also In re DPL Inc., Sec.*

*Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004) ("Herein, the award of attorneys' fees must be driven by the results obtained by Plaintiffs' counsel."). Here, the $54 million Settlement is an excellent result for the Settlement Class, both quantitatively and especially so when considering the risk of obtaining a smaller recovery (or no recovery) had the Action proceeded to trial.

In addition to representing a substantial portion of the Settlement Class's estimated damages, the Settlement is also significant in light of the risks to further litigation. Presently, *twenty* Daubert motions and multiple Motions in Limine are pending before this Court; that is in addition to Plaintiffs' Motion for Class Certification and Defendants' *eight* Motions for Summary Judgment. *See* ECF Nos. 381, 385, 389, 393, 397, 401, 406, 408, 411, 414, 418, 422, 426, 427, 431, 434, 437, 438, 444, 447 (Dauberts); 291 (class certification); 518, 523, 525, 527, 528, 531, 533, 536 (MSJs). Extensive time and resources of the Court and Parties will necessarily be required for the preparation of, and oral argument and for the Court to issue written opinions on each and every pending motion, including nine dispositive motions. Only after the Court's rulings on all the legal issues pending as described herein, could the Parties engage in the time-intensive pre-trial requirements including drafting and arguing jury instructions, evidentiary disputes over voluminous exhibits, numerous deposition designations, multiple motions in limine, preparing and entering the final pre-trial order and a lengthy and complex

final pre-trial conference, in addition to the very considerable costs associated with prosecuting a potentially lengthy jury trial.

A jury trial would be lengthy and complex given the factual and legal issues involved. Assuming Plaintiffs prevailed at trial, given the likelihood of post-trial motions and appeals to follow, it would likely still be years before Settlement Class members would receive any compensation. Alternatively, the Settlement efficiently provides prompt and substantial relief to the Settlement Class.

Thus, the Settlement Amount—$54 million, particularly given the above described uncertainty, and necessary resources —provides an outstanding value to the Class that will provide a guaranteed recovery, while avoiding the many complexities and risks of further litigation.

## B. Society's Stake in Rewarding Attorneys Who Produce Meaningful Benefits to Class Members Supports the Fee Request

The second *Ramey* factor requires courts to consider "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others." *In Re Cardizem*, 218 F.R.D. at 533; *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources."). Adequate compensation is a necessary component of encouraging attorneys to undertake such risk. *See Eltman v. Grandma Lee's, Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make

17

certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); *In re Flint Water Cases*, 583 F. Supp. 3d 911, 938 (E.D. Mich. 2022) ("The interest in encouraging lawyers to bring complicated cases, which likely will involve a multi-year commitment, particularly where an entire community of people allege that they suffered harm to their health, their property . . . is significant."). Complex environmental contamination class actions such as this are resource intensive and require a significant commitment of time and expense to pursue. This is especially true where, as here, the claims at issue require extensive expert testimony and the individual damages suffered by some Plaintiffs may be significantly less than the cost of prosecuting the action. Public policy thus strongly supports the requested fee. Without the prospect of eventual compensation for Plaintiffs' Counsel here, these cases might never have been brought. Approving Class Counsel's fee request will help ensure that plaintiffs' attorneys continue to take up important cases like this one in the future. Finally, the Settlement Class's reaction to the requested fee award demonstrates recognition of the societal value of the work performed by Class Counsel. *See Delphi*, 248 F.R.D. at 504 ("The Class's overwhelming favorable response lends further support to the conclusion that the requested fee award is fair and reasonable.").

The Notices, preliminarily approved by the Court, specifically stated Class Counsel intent to move for reimbursement of reasonable litigation costs, Service

Awards not to exceed $235,000, and apply for a fee of up to 33⅓% of the Settlement Fund (after deduction of reasonable litigation costs and Service Awards). *See* Order, ECF No. 623, PageID.27174 (preliminarily approving all terms of the S.A. and its Exhibits); ECF No. 617-2, PageID.26978 (Notice, Ex. D to the S.A.). Since the dissemination of the Notice, not a single Settlement Class Member has submitted an objection to the Settlement on the grounds of the fee, cost, or service award request. Only one total Objection out of approximately 1,733 putative class members was filed—on grounds unrelated to Attorneys' Fees, Costs or Service Awards. *See* ECF No. 627 (Objection) and ECF Nos. 629 and 630 (Plaintiffs' and Defendants' Responses to Objections). As numerous courts have observed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Bowman v. Art Van Furniture, Inc.*, 2018 WL 6445389, at *6 (E.D. Mich. Dec. 10, 2018) (Edmunds, J) (quotation omitted). Further, where the "overwhelming majority of class members have elected to remain in the Settlement Class, without objection, [that] constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *In re Cardizem*, 218 F.R.D. at 527. Here, only a single objection was filed, constituting an objection rate of 0.058%, which raises a strong presumption that the Settlement is favorable for the Class and "demonstrates that the Settlement is 'fair, reasonable, and

adequate.'" *Id.*

Thus, the Settlement Class, as a microcosm of society as a whole, has recognized the societal value of this litigation by giving the Settlement a resounding stamp of approval, thus supporting this factor of the requested award.

### C.    The Contingent Nature of Class Counsel's Representation Supports the Fee Request

"Whether counsel's services were undertaken on a contingent fee basis is another factor for the Court to consider in evaluating a fee request." *Delphi*, 248 F.R.D. at 503. Indeed, courts in this Circuit recognize that the attorneys' contingent risk "counsels in favor of a generous fee." *F&M*, 1999 U.S. Dist. LEXIS 11090, at *18 (noting importance that counsel "undertook this case on a contingent fee basis, which required them to fund all significant litigation costs while facing the risk of rejection of their clients' claims on the merits"); *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."). Class Counsel have received no compensation during *the more five and a half years* that this Action has been ongoing. During this time, Class Counsel invested over 38,354.89 hours for a total lodestar of $22,367,689.95 and incurred out-of-pocket reasonable litigation costs of $1,514,524.88.[8] Joint Decl. at ¶¶ 21, 23. Additional and substantial further work in

---

[8]      See FN.2 above.

20

connection with the Settlement, the present Motion, the Motion for Final Approval, and Claims Administration will still be required.

Moreover, any fee award to Class Counsel has always been at substantial risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and costs. This risk was substantially increased by the nearly five-and-a-half-year duration of the case to date. Unlike defense counsel—who are typically paid for their time whether they win or lose—Class Counsel sustained the entire risk by funding the expenses of this Action and that, unless Class Counsel succeeded, would not be entitled to any compensation or reimbursement of expenses whatsoever. *See Delphi*, 248 F.R.D. at 503-04 (granting fee request where "Counsel for the Securities Class have prosecuted this action entirely on a contingent basis, knowing that it possibly could last for four or five years, require the expenditure of thousands of attorney hours and millions of dollars in expenses and ultimately result in a loss at summary judgment or at trial.").[9]

---

[9]     The commencement of a class action is no guarantee of success; these cases are not always settled, nor are counsel for plaintiffs always successful. There have been numerous hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, where many years of excellent professional efforts of members of the plaintiffs' bar produced no fee to a plaintiff's counsel. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiffs' counsel had incurred over $6 million in expenses and a lodestar of approximately $48 million (based on over 100,000 hours of time) *aff'd*,

### D.    The Complexity of the Litigation Supports the Fee Request

The fourth *Ramey* factor—the complexity of the litigation—is a significant factor to be considered in determining the reasonableness of an attorneys' fee award. *See Delphi*, 248 F.R.D. at 504. "[M]ost class actions are inherently complex." *In re Telectronics*, 137 F. Supp. 2d at 1013. This case is no exception.

As the Court is aware, this Action involved numerous complex and disputed questions of law and fact that created significant risk for the ultimate outcome of the case. Indeed, Plaintiffs faced significant challenges associated with prevailing on any of the following, which, if lost, would significantly if not completely eliminate Plaintiffs' claims: (1) class certification; (2) eight pending motions for summary judgment; (3) numerous challenges to expert testimony; (4) multiple evidentiary challenges; and (5) the difficulty of prevailing at trial. As detailed in the Joint Declaration, Class Counsel and the Class Representatives faced significant risks to proving Defendants' liability, class certification, and damages. Joint Decl. at ¶ 8. Throughout the Action, Defendants vigorously contested Plaintiffs' claims,

---

627 F.3d 376 (9th Cir. 2010)); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming summary judgment in favor of defendants on loss causation grounds); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law following plaintiff verdict); *In re JDS Uniphase Corp. Sec. Litig.*, No. 4:02-cv-01486-CW (N.D. Cal. Nov. 27, 2007), ECF No. 1883 (verdict for defendants) (attached hereto as **Exhibit 5**); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal).

standing, the viability and even size of the potentially impacted putative class, scope of contamination, various causes of action, and alleged damages.

The foregoing case-specific complexities made it far from certain that any recovery, let alone one as substantial as here, would ultimately be obtained.

### E. The Professional Skill and Standing of Counsel Involved on Both Sides Supports the Fee Request

The fifth *Ramey* factor evaluates the professional skill and standing of counsel in determining the reasonableness of a fee request. *See Cardizem*, 218 F.R.D. at 533. Here, the skill and standing of counsel for all parties was of the highest caliber.

Both Class Counsel firms have national standing and extensive experience in litigating environmental and other complex class actions. *See* firm résumés attached as Exs. 1 & 2 to Joint Decl. Class Counsel prosecuted the case vigorously, provided high quality legal services, and achieved an excellent result for the Settlement Class. Moreover, the effort and skill of Class Counsel in surviving Defendants' initial motions to dismiss, navigating through highly contested discovery, putting forth a strong class certification motion and numerous Daubert Motions and Motions in Limine, compellingly opposing eight Summary Judgment motions and presenting a strong case throughout the Parties' settlement discussions was essential to achieving a meaningful resolution of the Action. *See F&M*, 1999 U.S. Dist. LEXIS 11090, at *19 ("The skill and competence of the attorneys for the Plaintiffs was evident, especially when viewed on the basis of the results that they obtained in this case[.]").

The quality of opposing counsel is also important in evaluating the services rendered by Class Counsel. *See Delphi*, 248 F.R.D. at 504. Defendants were represented by very skilled attorneys from the nationwide firms of Arnold & Porter, Mayer Brown, LLP, Warner Norcross & Judd LLP, and Miller Canfield Paddock & Stone—all of which have well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of Class Counsels' work."). In the face of this formidable opposition, Class Counsel were able to persuade Defendants to settle the case at both a point in the litigation and on terms that were highly favorable to the Settlement Class.

Given the skill and standing of counsel on both sides, the reasonableness of the requested fee award is apparent.

## F.     The Value of Class Counsel's Services on an Hourly Basis Is Reasonable

The sixth and final factor assesses the value of the legal services performed on an hourly basis. *In re Cardizem*, 218 F.R.D. at 533. The value of the legal services performed on an hourly basis is also known as the "lodestar." *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In this case, as discussed above, the percentage-of-the-fund method, not the lodestar method, is the appropriate method for computing a reasonable fee in this case. Thus, the only potential use for counsel's lodestar in this case would be to "cross-check" that amount with the amount of fees requested by counsel as a percentage-of-the-fund. Even then, however, a cross-check of counsel's lodestar is "not required," and merely an option to emphasize reasonableness under a percentage-of-the-fund approach. *See Loftus v. Outside Integrated Media LLC*, Case No. 2:21-cv-11809 (E.D. Mich. Aug. 13, 2022) (Goldsmith, J.), ECF No. 36 (Order granting motions for final approval and attorneys' fees, approving attorneys' fee of 35% without lodestar cross check, finding it reasonable in light of the multi-factor *Ramey* test) (*Loftus* Order attached hereto as **Exhibit 6**). *Arp v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020); *Love v. Gannett Co. Inc.*, 2021 WL 4352800, at *6 (W.D. Ky. Sept. 24, 2021) (noting that a "cross-check isn't required," and citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011)); *Est. of McConnell v. EUBA Corp.*, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) (noting that, in considering the *Ramey* factors, "a lodestar cross-check" is "not required"). Rather, where the percentage-of-the-fund method is used to compute counsel's fee, a lodestar cross-check is optional and entirely discretionary. *See Van Horn*, 436 F. App'x at 501 (finding that district courts have complete discretion when deciding to calculate attorneys' fees

based on the percentage-of-the-fund or lodestar methods, and thus a cross-check analysis is optional). *Delphi*, 248 F.R.D. at 503 (applying percentage-of-the-fund method in awarding fees in common-fund settlement, without addressing the *Ramey* factor pertaining to "the value of the services on an hourly basis"); *Fournier v. PFS Invs. Inc.*, 997 F. Supp. 828, 832-33 (E.D. Mich. 1998) (same); *Arp*, 2020 WL 6498956, at *7-8 (same).

In this case, like in *Loftus*, *Delphi*, *Fournier*, and *Arp*, the circumstances giving rise to the Settlement demonstrate that a "cross-check" of the requested fee (33⅓% of the Settlement Fund) with the lodestar value of the time Class Counsel expended on the prosecution of solely this case is not necessary. As outlined above, the non-reversionary common-fund Settlement achieved in this case is a direct result of Class Counsel's multi-year investigation into the contamination of Plaintiffs' soil and drinking water, the interference with and disruption of their lives, the loss of their right to quiet use and enjoyment of their properties, the diminution of the values of their properties as a result of Defendants' wrongful conduct. These extensive and time-consuming efforts are detailed at length in the Joint Decl. at ¶¶ 7-9 and above in Section II. Thus, the Court should not view this Settlement, or even this case, in a vacuum, but rather as part of an over five-and-a-half year project in which counsel devoted substantial time, money, and other resources for the benefit of owners of property in the North Kent Study Area—all on a contingency basis and without any

guarantee of recovering fees for their work or being reimbursed their out-of-pocket expenses.

Should the Court choose to "cross-check" the requested fee, a lodestar cross-check fully supports Class Counsel's 33⅓% fee request. As detailed herein and in the Joint Declaration, for over five-and-a-half years Class Counsel exerted substantial efforts in advancing this litigation in the face of aggressive and highly-skilled defense attorneys. In total, Class Counsel spent over 38,354.89 hours of attorney and other professional support time prosecuting the Action for the benefit of the Settlement Class from inception through February 15, 2023. Joint Decl. at ¶ 21. Based on these hours, Class Counsel's lodestar is $22,367,689.95. *Id.* Accordingly, the 33⅓% fee request, after deduction of reasonable litigation costs of $1,500,000 and $235,000 requested in Service Awards, equates to $17,416,825.04 (before interest) and is negative multiple.

A "negative" or fractional multiplier is well below the range of multipliers commonly awarded in comparable litigation. Fee awards in class actions with substantial contingency risks generally represent positive multipliers of counsel's lodestar, often ranging from one to four times the lodestar or even higher. *See Cardinal Health*, 528 F. Supp. 2d at 767 (approving multiplier of approximately 5.9, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, 2008 WL

553764, at *2-3 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically . . . increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); *see also Cardizem*, No. 2:99-md-1278-NGE at Order No. 47 (awarding fees amounting to 3.7 multiplier) (Ex. 5 hereto); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (awarding fees amounting to 2.49 multiplier); *F&M*, 1999 U.S. Dist. LEXIS 11090, at *5, 19-20 (awarding fees amounting to 1.35 multiplier). Likewise, a review of the lodestar multipliers in the Sixth Circuit cases cited above at Section IV.(C), all of which involved percentage awards of 30% or higher in comparable complex litigation.

Here, despite the numerous substantial litigation risks in the case from the outset, Class Counsel are seeking a fee that is *less than* the lodestar value of their time. Courts have repeatedly recognized that a percentage fee request that is less than counsel's lodestar provides strong confirmation for the reasonableness of the award. *See, e.g.*, *The Rikos v. Proctor & Gamble Co.*, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) ("Dividing the amount Plaintiffs' Counsel request ($4,139,987.48) by the lodestar results in a negative multiplier, which demonstrates that the fee sought is reasonable."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("courts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award").

Accordingly, the final *Ramey* factor also confirms the reasonableness of the requested fee award of 33⅓% of the Settlement Fund.

## VI.   CLASS COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Class Counsel also request reimbursement of the expenses they incurred in prosecuting and resolving the Action in the total amount of $1,500,000. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634-35 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *see also In re Se. Milk*, 2013 WL 2155387, at *7 (noting "[e]xpense awards are customary" in common fund cases).

The amount of expenses for which Class Counsel seek reimbursement are detailed in the Joint Declaration of Co-Lead Counsel. The types of expenses for which Class Counsel seek reimbursement were necessarily incurred in this Action and are of the type routinely charged to classes in contingent litigation and clients billed by the hour. These include expenses associated with, among other things, research, travel, experts, document hosting/management, and mediation. *See, e.g.*, *Gen. Motors*, 315 F.R.D. at 244-45 (approving comparable expense categories and

29

finding them "the type routinely billed by attorneys to paying clients in similar cases"); *Delphi*, 248 F.R.D. at 505 (same).

Accordingly, reimbursement of the requested expenses is reasonable and appropriate.

In addition, the amount of expenses requested for reimbursement, a total of $1,500,000, is consistent with the maximum amount stated in the Settlement Agreement. *See* S.A. at § 6.a., ECF No. 617-2, PageID.26877. As set forth above, to date, there have been no objections to the maximum expense amount set forth in the Settlement Agreement. Joint Decl. at ¶ 20.

## VII.  THE REQUESTED SERVICE AWARDS REFLECT THE CLASS REPRESENTATIVES' ACTIVE INVOLVEMENT HERE AND SHOULD BE APPROVED

Service awards are frequently awarded in common-fund cases within this Circuit. *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003); *see also Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019) ("[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."). The approval of an incentive award is examined through the following factors: (1) the actions taken to protect the class's interests and whether that resulted in a substantial benefit to the class; (2) the financial risk the class

30

representative assumed; and (3) the time and effort the class representative dedicated. *Lasalle Town Houses Coop Assoc. v. City of Detroit*, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016). Based on these factors, a service award of $25,000 for Tier One Plaintiffs and a service award of $15,000 for Tier Two Plaintiffs is reasonable.

Courts regularly approve similar awards to reimburse class representatives for their time and effort on behalf of a class. *In re Cardizem*, 218 F.R.D. at 535; *see also In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 273 & n.3 (S.D. Ohio 1997) (listing cases where incentive awards have been taken out of a common settlement fund); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving incentive awards of $50,000 to each of the class representatives out of a settlement fund of $56.6 million); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000 out of a $18 million settlement fund); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001).

As detailed in their accompanying Declarations, the Class Representatives dedicated their personal time to the prosecution of the Action on behalf of the Settlement Class. Both Tier One and Tier Two Class Representatives, as classified by the Settlement Agreement (S.A. § 1.ww., ECF No. 617-2, PageID.26867, 26877-26878), reviewed significant pleadings and briefs; communicated regularly with

Class Counsel regarding issues in the case significant case developments, and litigation strategy; searched for and gathered documents in response to Defendants' document requests; and authorized the release of their personal records. Further, both Tier One and Tier Two Class Representatives made the inside and outside of their properties and personal residences available for inspection and permitted Defendants' experts and counsel to conduct lengthy and intrusive inspections during the height of the COVID pandemic and approved the Settlement as well as Class Counsel's fee and expense requests. *See* contemporaneously filed Declarations of Class Representatives Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen, Terry VanWuffen, Rosalyn Ingham, Paul Groenendal, Nancy James, and Theodore James ("Class Representatives Decls.").

Further, Therese Cooper, Michelle and Terry VanWuffen, Dennis and Malia Gregory, and Megan and Michael Johns, who are classified as Tier One Class Representatives, have been involved and assisted Class Counsel since the inception of the Action, providing critical information and documentation to support Plaintiffs' and the putative Class's claims from inception. The Tier One Class Representatives have been subjected to longer, and continuous, discovery obligations and supplemental responses, approval of additional pleadings throughout the nearly five-and-a-half year Action and sat through lengthy and invasive

depositions conducted by defense counsel, including being forced to answer questions about their personal health histories and those of their family members, personal habits, and other private matters for the benefit of the Class. *See* Class Representatives Decls., Ex. 9.

As such, the proposed Tier One and Tier Two Service Awards are overwhelmingly fair, reasonable, and should be approved.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion and enter an Order:

(1) Approving attorneys' fees in the amount of one-third, or 33⅓%, of the Gross Settlement Fund after deduction of reasonable litigation costs and Service Awards, or a total amount of attorneys' fees of $17,416,825.04;

(2) Approving reimbursement of reasonable litigation costs incurred by Class Counsel in the amount of $1,500,000;

(3) Granting Class Representatives in Tier One (as defined in the Settlement Agreement at § 1.ww., ECF No. 617-2, PageID.26867; *see also id.* at § 6.a., PageID.26877-26878), Therese Cooper, Dennis Gregory, Malia Gregory, Megan Johns, Michael Johns, Michelle VanWuffen, and Terry VanWuffen, a Service Award of $25,000 each, or $175,000 in the aggregate, in recognition of their efforts on behalf of the Class;

33

(4) Granting Class Representatives in Tier Two (as defined in the Settlement Agreement at § 1.ww., *id.*, PageID.26867; *see also id.* at § 6.a., PageID.26877-26878)), Rosalyn Ingham, Paul Groenendal, Nancy James, individually and as Trustee of the James Nancy I Trust, and Theodore James, a Service Award of $15,000 each, or $60,000 in the aggregate, in recognition of their efforts on behalf of the Class; and

(5) Awarding such other and further relief as the Court deems reasonable and just.[10]

Dated: March 3, 2023

Respectfully submitted,

*/s/ Sharon S. Almonrode*
Sharon S. Almonrode (P33938)
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
ssa@millerlawpc.com
epm@millerlawpc.com
eeh@millerlawpc.com
dal@millerlawpc.com

*Co-Lead Counsel*

Esther Berezofsky (P00148)
Sarah Hansel (P00152)
**MOTLEY RICE, LLC**
210 Lake Drive East, Ste. 101
Cherry Hill, NJ 08002
Telephone: (856) 667-0500
eberezofsky@motleyrice.com
shansel@motleyrice.com

Anne McGinness Kearse
T. David Hoyle
Fidelma L. Fitzpatrick
**MOTLEY RICE, LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9140

*Co-Lead Counsel*

---

[10] Proposed Order attached as **Exhibit 7** hereto.

34

Dorothy P. Antullis
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
dantullis@rgrdlaw.com
mdearman@rgrdlaw.com

Paul F. Novak (P39524)
Diana Gjonaj (P74637)
**WEITZ & LUXENBERG, P.C.**
719 Griswold, Suite 620
Detroit, MI 48226
Telephone: (313) 800-4170
pnovak@weitzlux.com
dgjonaj@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
Telephone: (212) 558-5642
rgreenwald@weitzlux.com

Kara A. Elgersma
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Dr., Ste. 5450
Chicago, IL 60606
Telephone: (312) 346-2222

Robert Palmer (P31704)
Megan A. Bonanni (P52079)
**PITT, MCGEHEE, PALMER & RIVERS, PC**
117 West 4th Street, Ste. 200
Royal Oak, MI 48067
Telephone: (248) 398-9800

35

Jason J. Thompson (P47184)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300
jthompson@sommerspc.com

*Interim Plaintiffs' Steering Committee*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs, in compliance with L.R. 7.2(b)(i)-(ii), used 8,062 words in Plaintiffs' foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated: March 3, 2023                    Respectfully Submitted:

<u>/s/ *Sharon S. Almonrode*      </u>
Sharon S. Almonrode (P33938)
**THE MILLLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48306
Tel: (248) 841-2200
ssa@millerlawpc.com

*Co-Lead Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Sharon S. Almonrode, hereby certify that on March 3, 2023 I served the above and foregoing motion all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system and served a copy via UPS Next Day Air on Mr. William J. Mitchell at:

> William J. Mitchell
> 2280 Algoma Woods Drive
> Rockford, MI 40341

<u>/s Sharon S. Almonrode</u>
Sharon S. Almonrode